IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMERICAN SEED COMPANY, INC.,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　Individually, and on behalf of all　　　　)
　　others similarly situated　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　C. A. No. 05-535-SLR
　　　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
MONSANTO COMPANY et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　)


## MEMORANDUM IN SUPPORT OF MONSANTO'S
## MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MISSOURI


OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: August 25, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorney for MONSANTO COMPANY,
AMERICAN SEED, INC. CORN STATES
HYBRID SERVICE, INC., HOLDEN
FOUNDATION SEEDS, INC., DEKALB
SEEDS, CALGENE, L.L.C., CHANNEL
BIO CO., NC+ HYBRIDS AND SEMINS,
INC.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY OF THE ARGUMENT ..................................................................................... 1

RELEVANT FACTUAL BACKGROUND............................................................................ 2

    A.    The Relationship Between the Parties ........................................................... 2

    B.    Termination of American Seed and The Prior Pending Action in
        the Eastern District of Missouri .................................................................... 3

    C.    American Seed's Present Antitrust Complaint .............................................. 4

ARGUMENT ....................................................................................................................... 5

I.    THE FORUM SELECTION CLAUSES REQUIRES THE TRANSFER
    OF THIS ACTION TO THE EASTERN DISTRICT OF MISSOURI. ..................... 5

    A.    The Forum Selection Is Valid, Binding and Enforceable ............................. 5

    B.    The Instant Antitrust Action Falls Within The Scope of The Broad
        and Unconditional Forum Selection Clauses ............................................... 8

II.    AMERICAN SEED'S ANTITRUST CLAIMS ARE COMPULSORY
    COUNTERCLAIMS TO ITS ALREADY PENDING ACTION IN THE
    EASTERN DISTRICT OF MISSOURI ............................................................... 10

III.    TRANSFER TO THE EASTERN DISTRICT OF MISSOURI IS
    APPROPRIATE UNDER OTHER FACTORS TO BE WEIGHED
    UNDER § 1404 ................................................................................................... 12

CONCLUSION.................................................................................................................. 16

TABLE OF AUTHORITIES

CASES

*Allergan, Inc. v. Alcon Laboratories,*
    C.A. No. 02-1682-GMS, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25,
    2003) .................................................................................................................... 13

*Bayer Bioscience N.V. v. Monsanto,*
    C.A. No. 03-023GMS, 2003 U.S. Dist. LEXIS 4494 (D. Del. Mar. 25,
    2003) .................................................................................................................... 13

*BBDova, LLC v. Automotive Technologies, Inc.,*
    358 F. Supp. 2d 387 (D. Del. 2005) .......................................................... 6, 12

*Blades et al. v. Monsanto Company,*
    Case No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001) ............... 7

*Brunswick Corp. v. Precor Inc.,*
    C.A. No. 00-691-GMS, 2000 U.S. Dist LEXIS 22222 (D. Del. Dec. 12,
    2000) .................................................................................................................... 14

*Burlington Industries v. Milliken & Co.,*
    690 F.2d 380 (4th Cir. 1982) ............................................................................ 11

*Cadapult Graphic Systems, Inc. v. Tektronix, Inc.,*
    98 F. Supp. 2d 560 (D.N.J. 2000) ................................................................ 5, 14

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991) ............................................................................................ 6

*Crescent International, Inc. v. Avatar Communities, Inc.,*
    857 F.2d 943 (3d Cir. 1988) ......................................................................... 9, 10

*Fleming & Hall, Ltd. v. Cope,*
    30 F. Supp. 2d 459 (D. Del. 1998) ..................................................................... 5

*Foster v. Chesapeake Ins. Co., Ltd.,*
    933 F.2d 1207 (3d Cir. 1991) ............................................................................. 6

*Gilbane Building Co. v. Nemours Foundation,*
    606 F. Supp. 995 (D. Del. 1985) ...................................................................... 11

*Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc.,*
    286 F.2d 631 (3d Cir. 1961) ............................................................................. 10

*In re Harnischfeger Indust., Inc.,*
    293 B.R. 650, 660 (D. Del. 2003) ................................................................................. 5

*Hay Acquisition Co., I, Inc. v. Schneider,*
    No. Civ. A. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. April 27, 2005) ..................... 8

*Hoffer v. InfoSpace.com, Inc.,*
    102 F. Supp. 2d 556 (D.N.J. 2000) ............................................................................ 12

*IKOS Sys. Inc., v. Cadence Design Systems Inc.,*
    C.A. No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574 (D. Del. Oct. 21,
    2002) ....................................................................................................................... 14

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982) ................................................................................................... 5

*John Wyeth & Brother Ltd. v. Cigna Int'l Corp.,*
    119 F.3d 1070 (3d Cir. 1997) ..................................................................................... 8

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995) .................................................................................. 5, 13

*M/S Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) ...................................................................................................... 6

*Massey v. Monsanto Co.,*
    No. 299 CV 218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2001) .......................... 8

*McGurk v. Swisher Hygiene Franchise Corp.,*
    Civ. A. No. 02-1337-SLR, 2003 WL 252124 (D. Del. Jan. 30, 2003) ........................... 6

*McNair v. Monsanto Co.,*
    279 F. Supp. 2d 1290 (M.D. Ga. 2003) ...................................................................... 8

*Memminger v. Infocure Corp.,*
    C.A. No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077 (D. Del. Nov. 14,
    2000) ....................................................................................................................... 13

*Monsanto Co. v. McFarling,*
    302 F.3d 1291 (Fed. Cir. 2002) .................................................................................. 7

*Monsanto Co. v. Nelson,*
    No. 4:00-CV-1636 CEJ, 2001 WL 34079479 (E.D. Mo. Sept. 10, 2001) ..................... 8

*Monsanto Co. v. Swann,*
    308 F. Supp. 2d 937 (E.D. Mo. 2003) ........................................................................ 7

*Monsanto Co. v. Swann,*
    No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (F.D. Mo. Sept. 25, 2001) ............................... 8

*National Equipment Rental, Ltd. v. Szukhent,*
    375 U.S. 311 (1964) ................................................................................................................... 5

*Resource Ventures, Inc. v. Resources Management International, Inc.,*
    42 F. Supp. 2d 423, 431 (D. Del. 1999) ................................................................................... 6

*Salovaara v. Jackson Nat. Life Ins. Co.,*
    246 F.3d 289 (3rd Cir. 2001) .................................................................................................... 5

*Stewart Organization, Inc. v. Ricoh Corp.,*
    487 U.S. 22, 108 S.Ct. 2239 (1988) ......................................................................................... 5

*Tischio v. Bontex, Inc.,*
    16 F. Supp. 2d 511 (D.N.J. 1998) ........................................................................................... 13

*Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.,*
    292 F.3d 384 (3d Cir. 2002) .................................................................................................... 10

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
    C.A. No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ........................................... 12

*USM Corp. v. SPS Technologies, Inc.,*
    102 F.R.D. 167 (N.D. Ill. 1984) ............................................................................................. 11

## STATUTES

28 U.S.C.A. § 1404 ............................................................................................................... 1, 5, 7, 12

## RULES

Fed. R. Civ. P. 13(a) ........................................................................................................................ 9, 10

## NATURE AND STAGE OF PROCEEDING

On July 26, 2005, Plaintiff American Seed Company, Inc ("American Seed") filed a putative class action against defendants Monsanto Company and several of its subsidiaries (collectively, "Monsanto" or "the Monsanto companies"). That case should be transferred to the United States District Court for the Eastern District of Missouri.

## SUMMARY OF THE ARGUMENT

1.     Transfers to the Eastern District of Missouri is appropriate, to give effect to the valid and binding forum selection clause agreed to by the parties. American Seed's antitrust claims against Monsanto arise from contracts between Monsanto and American Seed; American Seed's antitrust claim alleges that Monsanto's "monopoly power" is maintained by virtue of these contracts. Each of these contracts contains a valid and binding forum selection clause that requires all disputes "relating to" the contracts to be litigated in Missouri. Monsanto's contracts with the putative class members contain the identical forum selection clauses.

2.     American Seed's antitrust claims are compulsory counterclaims to a lawsuit between American Seed and Monsanto currently pending in the Eastern District of Missouri. That lawsuit, like this one, arises from the contractual relationship between Monsanto and American Seed. American Seed's broad counterclaims in that action demonstrate that the claims filed here are compulsory counterclaims there. The entirety of the dispute between Monsanto and American Seed should be heard in one court.

3.     Under 28 U.S.C.A. § 1404, transfer to the Eastern District of Missouri – where Monsanto's headquarters is located – is appropriate for the convenience of the parties and witnesses.

## RELEVANT FACTUAL BACKGROUND

### A.    The Relationship Between the Parties

American Seed, located in Pennsylvania, is a seed company engaged in the distribution of agricultural products, including corn seed. (Compl. ¶ 8.) Monsanto supplies corn traits to seed companies such as American Seed. (*Id.* ¶¶ 10-18.) Certain of the corn traits sold by Monsanto are patented transgenic traits that impart desirable features, such as tolerance to herbicides or resistance to harmful insects.

Monsanto's license of corn traits to American Seed was governed by contracts – the Roundup Ready® Corn License and Seed Services Agreement (Rosenthal Decl., Ex. A), the Roundup Ready® (NK603) Corn License and Seed Services Agreement (Rosenthal Decl., Ex. B), and the YieldGard® Corn License and Seed Services Agreement (Rosenthal Decl., Ex. C), (collectively, the "License Agreements").[1] Monsanto and American Seed have also entered into an agreement entitled the Amended and Restated Licensee Incentive Agreement (the "Incentive Agreement"), which governs certain incentives offered to seed companies regarding the sale of Monsanto products. (Rosenthal Decl., Ex. D). The License and Incentive Agreements executed by American Seed are essentially identical to the agreements Monsanto entered into with other seed companies.

The License and Incentive Agreements all contain the identical forum selection clause by which the parties agree that the only appropriate forum is Missouri:

> IT IS THE INTENTION OF THE PARTIES HERETO THAT ALL QUESTIONS WITH RESPECT TO THE CONSTRUCTION OF THIS AGREEMENT AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI APPLICABLE TO BUSINESS ARRANGEMENTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF MISSOURI. THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF MISSOURI IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING

---

[1] The Declaration of John Rosenthal is being filed concurrently herewith.

> RELATING TO THIS AGREEMENT; (B) AGREE THAT ALL CLAIMS IN
> RESPECT OF ANY SUCH SUIT, ACTION OR OTHER LEGAL
> PROCEEDING MAY BE HEARD AND DETERMINED IN, AND ENFORCED
> IN AND BY, ANY SUCH COURT; AND (C) WAIVE ANY OBJECTION
> THAT THEY MAY NOW OR HEREAFTER HAVE TO VENUE IN ANY
> SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM.

(Rosenthal Decl., Exs. A, B, and C, § 11.08; Ex. D, § 8.08) (capitalization in original.) This

same forum selection clause is contained in each of Monsanto's License Agreements and

Incentive Agreements entered into with other seed companies. (Rosenthal Decl. ¶ 7.)

### B.    Termination of American Seed License Agreements and The Prior Pending Action in the Eastern District of Missouri

**Termination.** In late 2004, Monsanto terminated its contractual relationship with

American Seed for failure to remit quarterly sales reports relating to its commercialization of the

transgenic traits covered under the License Agreements. (Rosenthal Decl. ¶ 9.) As a result of the

termination, American Seed was no longer authorized to market, offer to sell, or sell corn seed

containing Monsanto's traits. (*Id.*) Nevertheless, American Seed continued to sell corn seed

containing Monsanto's transgenic traits after the termination in violation of Monsanto's patent

and trademark rights.

**Monsanto's Action in the Eastern District of Missouri.** On April 7, 2005, in

connection with its termination of its License Agreements with American Seed, Monsanto filed

an action against American Seed in the Eastern District of Missouri, *Monsanto Company et al. v.*

*American Seed Company, Inc.*, Case No. 4:05CV00554 ERW (the "Eastern District of Missouri

Action"), alleging that American Seed had breached its License Agreements with Monsanto.

(Rosenthal Decl., Ex. E, ¶¶ 45-56.) Monsanto also brought claims for patent infringement,

statutory and common law trademark infringement, unfair competition, trademark dilution, and

unjust enrichment for American Seed's continuing advertisement and sale of corn seed

containing Monsanto's traits after the termination of the License Agreements. (*Id.*)

**Injunctive Relief Granted by the Court.** On the same day it filed the Eastern District

of Missouri Action, Monsanto sought and obtained from the Missouri federal court a temporary

restraining order, prohibiting American Seed from obtaining, transferring or selling Roundup

Ready® corn and Yieldgard® corn. (Rosenthal Decl., Ex. F)  American Seed also consented to

the entry of a preliminary injunction prohibiting it from obtaining, transferring or selling

Roundup Ready® corn and Yieldgard® corn until a trial on the merits. (Rosenthal Decl., Ex. G)

**American Seed's Counterclaims in the Eastern District of Missouri.**  On May 23,

2005, American Seed filed its affirmative defenses and broad-ranging counterclaims against

Monsanto. (Rosenthal Decl., Ex. H)  Among the affirmative defenses, American Seed alleges

that Monsanto misused its patent and trademarks "***through attempts to assert and enforce an***

***unconscionable, oppressive and unreasonable franchise/license agreements alleged in the***

***complaint to be breached*.**" (*Id.* ¶ 106) (emphasis added.)  American Seed's counterclaims

allege, among other things, unfair competition and unfair trade practices and that Monsanto

misused the License Agreements.  In Count I of the Counterclaims, for example, American Seed

alleges that the License Agreements are "unconscionable, unreasonable, oppressive and

overreaching." (Id. ¶ 125(a).)  American Seed also alleges that Monsanto failed to perform its

obligations under the License Agreements and thus waived or was estopped from enforcing those

agreements. (*Id.* ¶ 125(b)-(g).)  In other counts, American Seed made other allegations regarding

the validity and enforceability of Monsanto's patents – including that Monsanto had misused its

patent "through unconscionable, oppressive, and onerous attempts to assert agreements", by

enforcing the terms of its License Agreements. (*Id.* ¶ 136(b).)

### C.    American Seed's Present Antitrust Complaint

Only two months after filing its counterclaims in Missouri, American Seed filed this

action alleging that Monsanto has monopolized four corn seed markets in the United States ("D.

Del. Action") (Rosenthal Decl., Ex. I).  The instant action was filed on behalf of four putative

classes comprised of "direct purchasers" of traits and seeds from Monsanto.  While the legal

theories pursued here are based upon Section 2 of the Sherman Act, the gravamen of this action

is the same as its Eastern District of Missouri Counterclaims – Monsanto's License Agreements and Incentive Agreement are allegedly oppressive and unreasonable.

## ARGUMENT

I.    **THE FORUM SELECTION CLAUSES REQUIRES THE TRANSFER OF THIS ACTION TO THE EASTERN DISTRICT OF MISSOURI.**

"[A] party may bring a motion to transfer from the initial federal forum to another federal court based on a valid forum selection clause." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297 (3rd Cir. 2001).[2]  In deciding whether to transfer an action under § 1404, "*[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus.*" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (emphasis added.).  While "[i]n an ordinary case, 'the burden of establishing the need for transfer ... rests with the movant' . . . '*[w]here the forum selection clause is valid, the [opposing party] bear[s] the burden of demonstrating why [it] should not be bound by the[] contractual choice of forum.*'" *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 567 (D.N.J. 2000) (internal citation omitted) (emphasis added).  Transfer to the Eastern District of Missouri is appropriate because the forum selection clause in the License and Incentive Agreements:  (i) is valid and enforceable, and (ii) it covers American Seed's claims.

A.    **The Forum Selection Is Valid, Binding and Enforceable**

A party challenging a forum selection clause "has a particularly high burden." *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 463 (D. Del. 1998).  Indeed, "a forum selection clause is

---

[2] "'[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court'" by including a forum selection clause in their contract. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (quoting *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)).  "In federal court, the effect to be given a contractual forum selection clause . . . is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *see also Fleming & Hall Ltd v. Cope*, 30 F. Supp. 2d 459, 462 (D. Del. 1998) (same); *In re Harnischfeger Indust., Inc.*, 293 B.R. 650, 660 (D. Del. 2003) (under federal common law, "forum selection clauses are 'prima facie valid and should be enforced'").

presumptively valid." *Resource Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999); *McGurk v. Swisher Hygiene Franchise Corp.*, C.A. No. 02-1337-SLR, 2003 WL 252124, at *2 (D. Del. Jan. 30. 2003) (Ex. A hereto) ("forum selection clauses are '*prima facie* valid'"). The presumption applies even when the forum selection clause is boilerplate language that was not the subject of negotiation or bargaining. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991); *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) ("That there may not have been actual negotiations over the clause does not affect its validity.")

A party seeking to avoid the enforcement of a forum selection clause must demonstrate that it is invalid or its enforcement would be unreasonable and unjust. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also BBDova, LLC v. Auto. Tech., Inc.*, 358 F. Supp. 2d 387, 390 (D. Del. 2005) (forum selection clause "will be enforced . . . unless the party objecting to its enforcement establishes (1) that it is the result of fraud or over-reaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable"); *see also Foster*, 933 F.2d at 1219 (same).

American Seed cannot establish any exceptional circumstance that would render the forum selection clause invalid. Monsanto did not fraudulently induce American Seed – or any other company that signed a License or Incentive Agreement – to agree to a forum selection clause. (Rosenthal Decl. ¶ 7.) To the contrary, the same language appears prominently in all the agreements, printed in all capital letters. (Rosenthal Decl., Exs. A, B, and C, § 11.08; Ex. D, § 8.08). In American Seed's case, these agreements were not entered into lightly, but over the course of a three-year period from 1999 to 2001. No public policy mitigates against enforcing the clauses. On the contrary, these forum selection clauses serve a beneficial purpose for Monsanto licenses – they provide a level playing field among licensees by assuring that each of them will be subject to the same body of law in having its license rights determined. In addition, the Eastern District of Missouri is equally capable of determining American Seed's antitrust

claim. Nor would it be credible for American Seed to assert that Missouri is an inconvenient forum; the parties are already litigating there.

American Seed cannot argue that the putative class should not be required to litigate this matter in the Eastern District of Missouri. The other putative class members who are seed companies have entered into nearly identical agreements as American Seed that contain the very same forum selection clauses. The same is true for the farmers who American Seed alleges are part of the putative class. (Compl. ¶¶ 52, 58, 64, and 70). The farmers also have written agreements with Monsanto – Technology Agreements. (Rosenthal Decl., Ex. J)[3] Each of these agreements has a forum selection clause similar to that in the License Agreement; the Technology Agreements provide that Missouri will be the agreed forum for "all disputes arising under this agreement." (*Id.*) Moreover, no class has been certified.

The validity and enforceability of these very forum selection clauses has already been upheld by several federal courts, **even in the context of antirust claims**. For example, the United States District Court for the Southern District of Illinois addressed a similar situation involving allegations that Monsanto had violated antitrust laws. That case involved farmer license agreements, which contained a similar forum selection clause designating Missouri as the forum for suits relating to the agreements. Based upon the forum selection clause in the agreements involved in the action, District Judge David Herndon granted Monsanto's request, pursuant to 28 U.S.C. § 1404(a), to transfer that matter to the Eastern District of Missouri. *Blades v. Monsanto Co.*, No. 00-CV-4034-DRH, 2001 WL 775980, at *4 (S.D. Ill. Jan. 3, 2001) (Ex. B hereto) ("Plaintiffs should not be allowed to bypass the contractual agreement now by bringing suit in the wrong court."); *see also Monsanto Co. v. McFarling*, 302 F.3d 1291, 1295 (Fed. Cir. 2002) (affirming district court holding that forum selection clause was valid and enforceable); *Monsanto Co. v. Swann*, 308 F. Supp. 2d 937, 943 (E.D. Mo. 2003) (recognizing

---

3    The Technology Agreements allow farmers to license Monsanto's patented biotechnology to grow corn with specified genetic traits. (Rosenthal Decl. ¶ 14) Farmers cannot purchase Monsanto corn without entering into a Technology Agreement. (*Id.*)

validity of provision); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1301 (M.D. Ga. 2003) ("the Court finds the forum selection clause contained in the 1998 [Technology] Agreement is valid and enforceable"); *Monsanto Co. v. Swann*, No. 4:00-CV-1481 CEJ, 2001 WL 34053250, at *1 (E.D. Mo. Sept. 25, 2001) (Ex. C hereto) (noting that court "has been called upon to consider this clause on several [four] prior occasions, and has consistently found that it is both valid and enforceable"); *Monsanto Co. v. Nelson*, No. 4:00-CV-1636 CEJ, 2001 WL 34079479, at *1 (E.D. Mo. Sept. 10, 2001) (Ex. D hereto) (Monsanto's "forum selection clause is neither unjust, unreasonable, nor invalid"); *Massey v. Monsanto Co.*, No. 299 CV 218-P-B, 2000 WL 1146705, at *2 (N.D. Miss. June 13, 2000) (Ex. E hereto) (finding contention that forum selection clause was obscure "without merit").

### B.    The Instant Antitrust Action Falls Within The Scope of The Broad and Unconditional Forum Selection Clauses

"Third Circuit case law is clear that 'broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum ... apply to all claims, whether they be based in tort or contract, and shall be enforced.'" *Hay Acquisition Co., I, Inc. v. Schneider*, No. Civ. A. 2:04-CV-1236, 2005 WL 1017804, at *6 (E.D. Pa. Apr. 27, 2005) (Ex. F hereto). The forum selection clause at issue is both broad and unconditional in nature by the use of the term "relating to this agreement." There can be little question that the instant antitrust action not only *relates* to the terms of the License and Incentive Agreements, it is *based solely upon* the terms of these Agreements.

The Third Circuit has construed language similar to this forum selection clause – "arising in relation to" – to mean "that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some 'logical or causal connection' to" the contract. *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997). American Seed's antitrust claim more than meets that standard. American Seed's allegation is that Monsanto's use and enforcement of the terms of its License and Incentive Agreements allow Monsanto unlawfully to maintain monopoly power. Throughout its complaint, American Seed references these

agreements.[4] The four classes it seeks to have certified are purchasers of Monsanto corn traits –

but in order to purchase Monsanto corn traits, Monsanto requires each company to enter into a

License Agreement. (Rosenthal Decl. ¶ 7) The claims have a logical and causal connection to

the Agreements.

Moreover, courts in this Circuit have consistently held that forum selection clauses

encompass far more than claims for breach of contract. In *Crescent International, Inc. v. Avatar*

*Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988), for example, the plaintiff argued that the

forum selection clause was "so narrowly drafted that it [did] not apply" to its non-contractual

claims – including its federal claim for violation of RICO. The court saw through this argument:

"Although only one of [plaintiff's] claims is based on a breach of contract theory, all of them

involve allegations arising out of the agreement implicating its terms." *Id.* The court affirmed

the district court's dismissal of the claims, holding that "pleading alternate non-contractual

theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of

---

4    The American Seed complaint refers to the License and Incentive Agreements as follows:
(footnote cont'd)

- Monsanto "has unlawfully maintained its monopolies . . . using exclusive dealing arrangements . . . . These agreements impose massive financial penalties on seed companies . . . ." (Compl. ¶ 3.)
- "Monsanto also has unlawfully maintained and enhanced its monopoly power through 'bundling' agreements." (Compl. ¶ 4.)
- "Monsanto's exclusive dealing and bundling of incentives provides additional barriers to entry for any competitor." (Compl. ¶¶ 28, 36, 44, 50.)
- "The Monsanto GA 21 License [a License Agreement] . . . typically provides substantial financial incentives." (Compl. ¶ 80.)
- "Substantially similar Monsanto agreements [other License Agreements] . . . control the use by seed companies . . . ." (Compl. ¶ 81.)
- Monsanto "bundl[ed] additional financial incentives" in the Incentive Agreement. (Compl. ¶ 90.)
- "To carry out its bundling plan, Monsanto has entered an 'Amended and Restated Licensee Incentive Agreement' . . . with seed companies." (Compl. ¶ 91.)
- " Monsanto's trait licenses, including its GA21 License and its Incentive Agreements are long term . . . . A majority of independent seed companies in the United States has signed Monsanto trait licenses and Incentive Agreements." (Compl. ¶ 94.)

the contractual relation and implicate the contract's terms." *Id.* Here, American Seed's federal antitrust claims arise out of the License and Incentive Agreements and relate to their terms.

## II.    AMERICAN SEED'S ANTIRUST CLAIMS ARE COMPULSORY COUNTERCLAIMS TO ITS ALREADY PENDING ACTION IN THE EASTERN DISTRICT OF MISSOURI

Rule 13(a) of the Federal Rules of Civil Procedure provides that: "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). "The policy underlying this rule is judicial economy." *Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.*, 292 F.3d 384, 389 (3d Cir. 2002).

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim '*bears a logical relationship to an opposing party's claim.*'" *Transamerica*, 292 F.3d at 389 (citation omitted) (emphasis added). Whether two claims have a logical relationship "has been viewed liberally," and is found "when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 389-90. Put another way, "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961).

The filing of this lawsuit in the District of Delaware is precisely what Fed. R. Civ. P. 13(a) was intended to avoid. Monsanto and American Seed are already litigating the enforceability, validity and effect of Monsanto's License and Incentive Agreements in the Eastern District of Missouri. There can be little question that the claims raised by American Seed's Delaware Complaint "'*bears a logical relationship to an opposing party's claim.*'" The

antitrust claims here are no more than an "offshoot[] of the same basic controversy" pending in the Eastern District of Missouri Action. Perhaps the best evidence of the compulsory nature of the antitrust claims brought here is the factual similarity to the affirmative defenses and counterclaims raised by American Seed in the Eastern District of Missouri Action, which allege the License Agreements are unconscionable, onerous, unreasonable, oppressive, and overreaching. The complaint similarly alleges that the License Agreements, as well as the Incentive Agreement, are unreasonable and unlawful. In addition, both the counterclaims and the antitrust claims also contain similar allegations of patent misuse.

No doubt, American Seed will attempt to argue that its antitrust claim bears no logical relationship to its counterclaims in Eastern District of Missouri Action for unfair competition and unfair trade practices. Logic and ample precedent, however, suggest otherwise. A "majority of courts . . . have held that antitrust claims are compulsory counterclaims under Rule 13(a) if the antitrust claim arises out of the same transaction or occurrence as the original claim." *USM Corp. v. SPS Tech., Inc.*, 102 F.R.D. 167, 169-70 (N.D. Ill. 1984) (citations omitted); *see, e.g., Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) ("Burlington's and Madison's antitrust claims against DMRC arose out of the very transaction which was the subject matter of DMRC's complaint – namely, the licensing agreement imposed by DMRC. Thus, the antitrust claims were compulsory counterclaims under Rule 13(a)"); *Gilbane Building Co. v. Nemours Found.*, 606 F. Supp. 995, 1000 (D. Del. 1985) (holding counterclaim was compulsory when it arose out of the same transaction or occurrence). Here, the Missouri and Delaware claims all arise out of the same contract.

The compulsory nature of the D. Del. Action is further supported by the substantial duplication of effort that would be required if the antitrust claims were not transferred to the Eastern District of Missouri. Central to both cases will be evidence relating to the contractual relationships of the parties, Monsanto's intellectual property rights, Monsanto's need to protect its patents and trademarks through the use of License Agreements, Monsanto's enforcement of its patent and trademark rights, whether Monsanto's enforcement efforts were reasonable or

oppressive, and whether Monsanto has misused its License Agreements. While there are some factual distinctions in the two sets of claims, the facts are not required to be identical in order for the antitrust claim to be deemed compulsory in nature. The question is whether the factual issues substantially overlap, and they do.

In short, the antitrust claims brought here are compulsory counterclaims to the pending Eastern District of Missouri Action and should have been filed there in the first instance. A transfer of the Eastern District of Missouri, therefore, is appropriate.

### III.    TRANSFER TO THE EASTERN DISTRICT OF MISSOURI IS APPROPRIATE UNDER OTHER FACTORS TO BE WEIGHED UNDER § 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also BBDova*, 358 F. Supp. 2d at 390 (§ 1404(a) "allows a district court to transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice"). "The purpose of Section 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Hoffer v. InfoSpace com, Inc*, 102 F. Supp. 2d 556, 570 (D.N.J. 2000). These principles underlying §1404(a) weigh heavily in favor of transferring this matter to the Eastern District of Missouri.

Courts in this Circuit look to a number of private and pubic interest factors to decide whether transfer is warranted. *Jumara*, 55 F.3d 873. Private interest factors include: (i) the plaintiff's preferred forum; (ii) the defendant's preferred forum; (iii) where the claim arose; (iv) the convenience of the parties; (v) the convenience of the witnesses (to the extent that the witnesses may actually be unavailable for trial in one of the forums); and (vi) the location of books and records (again, to the extent that the documents may be unavailable for trial in one of the fora). *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, C.A. No. 04-360-JJF, 2005 WL 441077, at *1-2 (D. Del. Feb. 15, 2005) (Ex. G hereto). Public interest factors include: (i) the

enforceability of the judgment, (ii) practical considerations that could make the trial expeditious or inexpensive, (iii) relative court congestion, and (iv) public policy considerations. *Id.* Here, these factors weigh in favor of transfer. *See Allergan, Inc v Alcon Laboratories*, C.A. No. 02-1682-GMS, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25, 2003) (Ex. H hereto) (granting transfer because there was little connection to Delaware other than incorporation and parties were already litigating essential the same issue in California); *Bayer Bioscience N V v Monsanto*, No. C.A. 03-023GMS, 2003 U.S. Dist. LEXIS 4594, at *2 (D. Del. Mar. 25, 2003) (Ex. I hereto)(granting transfer because there was little connection to Delaware other than incorporation, and "mirror-image" action was pending in Missouri).

**Plaintiff's and Defendant's Preferred Forums.** In entering into the License Agreements and Incentive Agreement, American Seed agreed that Missouri was the preferable forum for all disputes that arose between the parties. *See Jumara*, 55 F.3d at 880 ("a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum"). In addition, less deference to American Seed's choice of forum is due here since American Seed has no connection to the State of Delaware. *See Tischio v. Bontex, Inc*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998) ("One situation where deference is curbed is where the plaintiff has not chosen his or her home forum.").

**Place Where the Claim Arose.** Since the parties agreed that the License Agreements and Incentive Agreements would be governed by Missouri law applicable "to business arrangements entered into and performed entirely within the State of Missouri," the most likely place the claim arose is Missouri. In any event, it did not arise in Delaware – American Seed is a Pennsylvania corporation, and all performance of the contracts and sales of corn seed took place in either Missouri or Pennsylvania. This factor favors transfer.

**Convenience of the Parties and Witnesses and Location of Books and Records.** Monsanto's witnesses and records are located in Missouri. (Rosenthal Decl. ¶ 15.) *Memminger v Infocure Corp.*, C.A. No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077, *13-14 (D. Del. Nov. 14, 2000) (Ex. J hereto) (noting that convenience of the expected trial witnesses is an important

factor in the analysis). American Seed's witnesses and records are likely located in Pennsylvania, not Delaware. But in light of the forum selection clause, American Seed "cannot now be heard to decry the resultant litigation expenses and inconvenience associated with a transfer . . . . By executing a forum-selection clause, the parties to the agreement bear the risks of such inconvenience." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 568 (D.N.J. 2000) (citation omitted). Third-party and class witnesses are likely scattered throughout the country. On balance, these factors favor transfer. *See Brunswick Corp. v. Precor Inc.*, C.A. No. 00-691-GMS, 2000 U.S. Dist LEXIS 22222 (D. Del. Dec. 12, 2000) (Ex. K hereto) (granting transfer because parties were headquartered in Washington state, witnesses, documents and relevant records were all located in Washington, and the product at issue was designed and manufactured in Washington); *IKOS Sys. Inc., v. Cadence Design Sys. Inc.*, C.A. No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574 (D. Del. Oct. 21, 2002) (Ex. L hereto) (granting transfer in part because parties were headquartered in Northern District of California and the majority of potential witnesses were located in that district).

**Enforceability of the Judgment.** The judgment will be equally enforceable regardless of the forum. However, since claims between the parties arising out of the same contracts are currently being litigated in Missouri, it makes the most sense to have one court enter judgment, not two.

**Practical Considerations and Court Congestion.** Another practical consideration is the present lawsuit between Monsanto and American Seed pending in Missouri. Transferring this litigation to Missouri will actually result in decreased expense and inconvenience, since the parties have already retained counsel there. Permitting this case to remain in Delaware will lead to duplication of evidence, witnesses, and more importantly, similar or identical issues of law being decided by two separate District Courts.[5]

---

[5]    Competitors of Monsanto have filed a class action complaint in the District of Delaware alleging that Monsanto has unlawfully maintained a monopoly in the same alleged "markets" as American Seed alleges here. *Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No 04-305-SLR. The existence of the *Syngenta* case should have no effect on the transfer analysis. First, the existence

**Public Policy.**  While Delaware has an interest in protecting the interests of its citizens from the effects of an allegedly unlawful monopoly, American Seed is not a Delaware corporation, and appears to have no connection whatsoever to Delaware.

---

(footnote cont'd)

of a similar claim by a different party is simply not a relevant factor in determining whether American Seed's antitrust claims are compulsory counterclaims to the Missouri action.  Second, despite the fact that both cases in this Court allege monopoly claims against Monsanto, the reality is that Syngenta's claims are dissimilar to American Seed's claims. American Seed alleges harm occurring vertically, through Monsanto's distribution chain, where contracts govern the business relationships. Syngenta, in contrast, has no business relationship with Monsanto, but instead alleges harm in its role as an alleged competitor.  Third, transfer need not cause any duplication of discovery. The Eastern District of Missouri can coordinate discovery with discovery in the *Syngenta* case.

## CONCLUSION

American Seed can and should litigate its antitrust claims in the Eastern District of Missouri. The forum selection clause in its contract requires American Seed to bring its claims there. Its claims are compulsory counterclaims to an existing lawsuit in that court. Finally, the relevant factors weigh in favor of transfer. This case should be transferred to the Eastern District of Missouri.

<br>

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: August 25, 2005
696604

POTTER ANDERSON & CORROON LLP

/s/ Richard L. Horwitz
By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    P. O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Attorney for MONSANTO COMPANY, AMERICAN SEED, INC. CORN STATES HYBRID SERVICE, INC., HOLDEN FOUNDATION SEEDS, INC., DEKALB SEEDS, CALGENE, L.L.C., CHANNEL BIO CO., NC+ HYBRIDS AND SEMINS, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on August 25, 2005, the within

document was filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following; that the document was served on the

following counsel as indicated; and that the document is available for viewing and

downloading from CM/ECF.

### BY HAND DELIVERY

Joelle E. Polesky, Esq.
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

I hereby certify that on August 25, 2005 I have sent by Federal Express

the foregoing document to the following non-registered participants:

| | |
|---|---|
| Steven V. Benz, Esq. | R. Stephen Berry, Esq. |
| Michael S. Zuckman, Esq. | J. Daniel Leftwich, Esq. |
| Kellogg, Huber, Hansen, Todd, Evans & | Gregory Baruch, Esq. |
| Figel P.L.L.C | Berry & Leftwich |
| 1615 M Street, NW | 1717 Pennsylvania Ave., NW |
| Suite 400 | Washington, DC  20006 |
| Washington, DC  20036 | |

/s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com