# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 252124
**(Cite as: Not Reported in F.Supp.2d)**

C

Not Reported in F.Supp.2d, 2003 WL 252124

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

William MCGURK, Plaintiff,

v.

SWISHER HYGIENE FRANCHISE CORP., Defendant.

**No. Civ.A. 02-1337-SLR.**

Jan. 30, 2003.

MEMORANDUM ORDER

ROBINSON, J.

**\*1** At Wilmington this 30th day of January, 2003, having considered defendant's motion to transfer (D.I.3) and the papers filed in connection therewith;

IT IS ORDERED that the motion to transfer to the District of North Carolina is granted for the reasons that follow:

1. Background. Defendant Swisher Hygiene Franchise Corp. ("Swisher") is a North Carolina corporation, with its principal place of business in Charlotte, North Carolina. (D.I.3, Ex. C) Swisher offers and sells franchises for the restroom hygiene business. Plaintiff William McGurk ("McGurk") is a citizen of Delaware. McGurk instituted this action alleging breach of the franchise agreement with Swisher. (D.I.1) Swisher has moved to transfer contending that the forum selection clause in their franchise agreement mandates that all litigation related thereto be filed in North Carolina. (D.I.3) McGurk concedes that there is a forum selection clause, however, argues there are overwhelming reasons to maintain the action here.

2. Standard of Review. Generally, a motion to transfer is reviewed under 28 U.S.C. § 1404(a), which allows a district court to transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. *See* *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).* Before engaging in a transfer analysis, however, an examination of the forum selection clause, in the contract signed by the parties, is necessary.

The United States Supreme Court, in *M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972),* announced a general rule that forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10; *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988).* A party can resist imposition of a forum selection clause if it could demonstrate that the contract resulted from "fraud, undue influence, or overweening bargaining power," *id.* at 12, or that "enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." *id* . at 15. The Third Circuit Court of Appeals has interpreted *Bremen* to mean that

a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or over-reaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir.1983), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495 (1989).* As far as unreasonableness, under *Bremen* it is

**\*2** incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*Bremen, 407 U.S. at 18.* "This standard is satisfied if a litigant can demonstrate that it 'would face blatant prejudice in the foreign forum' or 'if enforcement of the foreign forum selection would be severely impractical." ' *Mobilificio San Giacomo S.P.A. v. Stoffi, 1998 WL 125534 at \*8 (D.Del.1998).*

It is undisputed that in April 1997 McGurk signed a contract to purchase a franchise from Swisher. (D.I.3, Ex. A) Pursuant to ¶ 20.2(b) of the contract, the parties agreed that any action brought by the franchisee (McGurk) against the franchisor (Swisher) must be instituted in "Charlotte, North Carolina, or in the judicial district in which the franchisor then has its principal place of business." For approximately

Westlaw.

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2003 WL 252124
**(Cite as: Not Reported in F.Supp.2d)**


four years, McGurk owned and operated the Swisher
franchise in Delaware. (D.I.4, Ex. E) In September 2001,
however, the terms of the relationship began to change and
eventually deteriorated in April 2002, when Swisher
terminated McGurk's franchise agreement. Consequently,
McGurk filed this action for wrongful termination of their
contract. (*Compare* D.I. 3, Ex. C *with* D.I. 4, Ex. E)

The uncontradicted record reflects that the forum selection
clause was never altered from the original terms agreed
upon by the parties in 1997. There is likewise nothing
demonstrating that the terms of the forum selection clause
should be invalidated by the court. Although McGurk
indicates that he has had surgeries on his knees as well as
amputation of part of his foot, and that he is immobile, this
does not suggest an impairment that would prevent him
from prosecuting this action in the Western District of North
Carolina.

3. Conclusion. Having determined that the forum selection
clause is valid and enforceable, the motion to transfer
(D.I.3) to the Western District of North Carolina is granted.

D.Del.,2003.
McGurk v. Swisher Hygiene Franchise Corp.
Not Reported in F.Supp.2d, 2003 WL 252124

Briefs and Other Related Documents (Back to top)

• 1:02CV01337 (Docket) (Jul. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2001 WL 775980
**(Cite as: Not Reported in F.Supp.2d)**

H
Not Reported in F.Supp.2d, 2001 WL 775980
Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court, S.D. Illinois.
Randy BLADES, et al., Plaintiffs,
v.
MONSANTO COMPANY, Defendant.
**No. 00-CV-4034-DRH.**

Jan. 3, 2001.

*MEMORANDUM AND ORDER*

HERNDON, J.

I. *Introduction and Procedural Background*

*1 This matter comes before the Court on Monsanto Company's motion to dismiss pursuant to Rules 12(B)(3) and 12(B)(6) or alternatively, transferring the case to the Eastern District of Missouri pursuant to 18[sic] U.S.C. § 1404(a) or § 1406 (Doc. 21) and Plaintiffs' motion to modify motions to withdraw and substitute in light of consolidation, to identify purported class representatives and to identify lead and liaison counsel for plaintiffs (Doc. 83). Based on the reasons stated herein, the Court grants Monsanto Company's motion to transfer the case to the United States District Court for the Eastern District of Missouri, denies Monsanto Company's motion to dismiss pursuant to Rule 12(b)(3) and denies as moot Monsanto Company's motion to dismiss pursuant to Rule 12(b)(6). Further, the Court grants Plaintiffs' motion to modify motions to withdraw and substitute in light of consolidation, to identify purported class representatives.

On February 14, 2000, Randy Blades, Collin Cain, Frederick Samples, Mark A. Jent, and Roger Rivest d/b/a Rivest Farms (ESSEX) LTD., on behalf of themselves and other similarly situated persons filed a seven-count complaint against Monsanto Company ("Monsanto") in this Court (Doc. 1). This case arises out of Monsanto's sale of Genetically Modified ("GM") soybean and corn seeds to Plaintiffs, who are farmers. The sixty three page complaint alleges, *inter alia,* that Monsanto Company committed

antitrust violations and violations of other laws in the pricing, selling, marketing and promotion of the GM corn and soybean seeds.

Prior to the filing of this case, two very similar purported class actions complaints were filed in other district courts against Monsanto Company: (1) *Massey v. Monsanto Company* was filed in the United States District Court for the Northern District of Mississippi in November 1999; and (2) *Higginbotham v. Monsanto Company* was filed in the United States District Court for the District of Columbia in December 1999. FN1 On May 22, 2000, Judge Colleen Kollar Kotelly, transferred *Higginbotham* to this judicial district to determine whether the case should remain in this judicial district or proceed in the Eastern District of Missouri. FN2 Subsequently, Judge Allen Pepper transferred *Massey* to the Eastern District of Missouri based on the forum selection clause contained in the Technology Agreements entered between Massey and Monsanto.

> FN1. *Higginbotham* and *Blades* are virtually identical.

> FN2. Judge Kollar Kotelly's Order states: "The parties agree that all three of these putative class-action lawsuits should proceed in the same forum.... In order to facilitate uniform treatment of these suits, the Court has determined that it would be in the interest of justice to transfer this case to the Southern District of Illinois where it can be consolidated with *Blades* for consideration of all pending motions. The *Blades* court is in a superior position to assess the propriety of trying these cases in the Southern District of Illinois or the Eastern District of Missouri." (*Higginbotham* record, Doc. 42).

On August 4, 2000, this Court consolidated *Higginbotham* with this case and ordered that all further pleadings shall be filed in *Blades,* the lead case (Doc. 68). FN3 On August 28, 2000, Judge Rodney W. Sippel of the Eastern District of Missouri allowed Massey to amend his complaint, thereby, dropping the class action allegations that are similar to the issues in this matter. Thereafter, Plaintiffs moved to modify the motions to withdraw and substitute class representative

Not Reported in F.Supp.2d                                                                                 Page 2
Not Reported in F.Supp.2d, 2001 WL 775980
(Cite as: Not Reported in F.Supp.2d)

members (Doc. 83). Specifically, Plaintiffs move to withdraw Randy Blades, Collin Cain, George Higginbotham, Mark Jent and Peggy Naylor as class representatives and to substitute Bob McIntosh, thereby making McIntosh and Peterson the named class representatives for Class I (Doc.83). Because Monsanto does not object to the motions to withdraw and substitute class representative members. Accordingly, McIntosh and Peterson are the purported named class representatives for Class I.

> FN3. As of the date of the consolidation, the named plaintiffs in the *Higginbotham* case were George Higginbotham, C-K Farms (by and though Chris Peterson), George Naylor, Patrick De Kochko, and Peggy Naylor

> FN4. The Court notes that in response to the motion to modify the motions to withdraw and substitute, Monsanto argues that Plaintiffs' shuffling and changing of named class representatives reveals that this case is not proper for class certification. However, the Court need not address this argument for the purposes of addressing the motion to transfer.

**\*2** Now before the Court is Monsanto's motion to transfer the case. Monsanto argues that based on the forum selection clause in the Technology Agreements, the proper venue for claims arising under the Technology Agreements is the Eastern District of Missouri, Eastern Division. The Court agrees.

### II. *Analysis*

Monsanto asks the Court to transfer the case to the United States District Court for the Eastern District of Missouri in accordance with the Technology Agreement's forum-selection clause. Plaintiffs object to the motion to transfer. Based on the following, the Court finds that transfer to the Eastern District of Missouri is proper.

It is well-settled that contractual forum selection clauses are prima facie valid. *M/S Bremen v. Zapata Offshore Co., 407*

U.S. 1, 10 (1977). Such a clause is enforced unless the provision was procured by fraud or overreaching or enforcement would be unreasonable. *Paper Express Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757* (7th Cir.1992). In essence, the clause will be enforced unless its enforcement would be a "serious inconvenience." *Carnival Cruise Lines, Inc., v. Shute, 499 U.S. 585 (1991).* The Seventh Circuit pronounced that "the law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Paper Express, 972 F.2d at 757.* The existence of a forum-selection clause is a significant factor that figures centrally in the district court's calculus of whether to transfer a case. *Stewart Organization Inc. v. Ricoh Corp.,* 497 U.S. 22 (1988). Thus, "absent a showing that trial 'in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court,' "the parties will be held to their bargain as contained in the forum-selection clause." *Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1291* (7th Cir.1989).

From 1998 to 2000, the Technology Agreements between Monsanto and purchasers of patented GM seed technology required all claims arising under those agreements to be litigated in the United States District Court for the Eastern District of Missouri. Specifically, the Technology Agreements contained the following forum selection clause:

> "THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST.LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING UNDER THIS AGREEMENT."

The forum selection clause is located and printed in all capital letters in four areas of the Technology Agreement: on the back of the second printed page of the Technology

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 775980
(Cite as: Not Reported in F.Supp.2d)

Agreement under the "General Conditions" section and on the back of the final three pages of the technology agreement which are the triplicate signature pages.

**\*3** Here, the *Higginbotham* Amended Complaint alleges that C-K Farms, by and through Peterson, entered into a Technology Agreement with Monsanto. (Higginbotham Amended Complaint, ¶¶ 18-19). FN5 In response to the motion to transfer, Plaintiffs do not contest that Peterson, on behalf of himself and C-K Farms, signed a technology agreement which stated that the appropriate venue for any claim arising from that agreement between him and Monsanto is the Eastern District of Missouri. FN6 However, Plaintiffs claim that this forum selection clause should be given little or no weight since the contracts, on a "class-wide basis" were tainted by fraud. Plaintiffs assert that several of the signatures on these agreements have been forged. FN7 Thus, Plaintiffs cannot overlook the fact that one of the two named Plaintiffs, Peterson (on behalf of C-K Farms) who represents Class I, did sign the Technology Agreement. Therefore, these Plaintiffs cannot claim that his signature were obtained by fraud.

> FN5. The Blades complaint also alleges that Randy Blades entered into a technology agreement with Monsanto. The Court notes that it did not consider the Blades Technology Agreement because he is no longer a named class representative.

> FN6. Chris Peterson executed a single technology agreement on his own behalf and on behalf of C-K Farms.

> FN7. Plaintiffs claim that both Cain and Higginbotham's signatures were forged on the technology agreements. However, Cain and Higginbotham are no longer named class representatives in this action.

Further, Plaintiffs claim that the Technology Agreement was a contract of adhesion, claiming there is no evidence that the Technology Agreement resulted from arm's length bargaining or that the clause was negotiable. Plaintiffs also claim that the Technology Agreement is a boilerplate contract which does not represent the agreement of the parties. The Court is not persuaded by these arguments.

The burden for showing that a contract is an unenforceable contract of adhesion is demanding. *See Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 377-78* (7th Cir.1990)(upholding forum selection clause against challenge that it was unenforceable in contract of adhesion). The "mere inequality of bargaining power does not of itself make every term of the contract unconscionable." *Id.* Courts should ask whether the parties had a reasonable opportunity to read and understand the term, and whether the term itself is unreasonable or oppressive. *Id.* Forum selection clauses contained in boilerplate contracts are "subject to judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, 499 U.S. at 595.*

Here, the forum selection clause is printed in all capital letters and is legible. Moreover, the forum selection clause is not buried in the middle of a paragraph but is provided in four separate areas of the contract: (a) under the section titled "General Conditions" and (b) on the back page of the triplicate signature pages. Plaintiffs have not provided evidence that the forum selection clause was the product of fraud or overreaching. Plaintiffs merely argue that this is a classic contract of adhesion. Further, the record do not establish as a matter of law that the forum selection clause is unconscionable. Nor have Plaintiffs presented facts to support that Peterson did not have equal bargaining power. The Court cannot find that Peterson, on behalf of C-K Farms, signed the agreement due to fraud, undue influence or an overwhelming bargaining power.

**\*4** Having found the forum selection clause in the Technology Agreements entered into by Peterson valid, the Court concludes that venue in this judicial district is not proper, but instead lies within the United States District Court for the Eastern District of Missouri. Specifically, the Technology Agreement exclusively provides for both venue and jurisdiction in the Eastern District of Missouri, Eastern Division. In the case at bar, the parties freely negotiated the contractually chosen forum. Plaintiffs have not shown any fraud or overreaching by Monsanto in the Technology Agreement between Peterson and Monsanto. Therefore, Plaintiffs should not be allowed to bypass the contractual agreement now by bringing suit in the wrong court.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 775980
**(Cite as: Not Reported in F.Supp.2d)**

28 U.S.C. § 1406(a) allows a district court to transfer a case filed in the wrong venue if it is in the interests of justice to do so. The case may be transferred to any judicial district where it could have been brought. 28 U.S.C. § 1406(a). A district court must dismiss such a suit if it denies the transfer. *Id.* Here, the Court finds that the forum selection clause signed by Peterson and Monsanto shall be enforced. Therefore, the Court finds that it is in the interests of justice to transfer the case to the Eastern District of Missouri.

### III. *Conclusion*

Accordingly, the Court GRANTS in part, DENIES in part and DENIES as moot Monsanto Company's motion to dismiss pursuant to Rules 12(b)(3) and 12(b)(6) or in the alternative Monsanto Company's motion to transfer the case to the Eastern District of Missouri (Doc. 21). The Court DENIES Monsanto Company's motion to dismiss pursuant to Rule 12(b)(3), DENIES as moot Monsanto Company's motion dismiss pursuant to Rule 12(b)(6) and GRANTS Monsanto Company's motion to transfer the case to the Eastern District of Missouri. Pursuant to 28 U.S.C. § 1406(a), the Court TRANSFERS this case to the United States District Court for the Eastern District of Missouri. In addition, the Court GRANTS Plaintiffs' motion to modify motions to withdraw and substitute in light of consolidation, to identify purported class representatives (Doc. 83). Further, the Court DENIES as moot the remaining pending motions.

IT IS SO ORDERED.

S.D.Ill.,2001.
Blades v. Monsanto Co.
Not Reported in F.Supp.2d, 2001 WL 775980

Briefs and Other Related Documents (Back to top)

• 4:00CV04034 (Docket) (Feb. 14, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 34053250
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2001 WL 34053250
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Missouri, Eastern
Division.
MONSANTO COMPANY, Plaintiff,
v.
Hal SWANN, et al., Defendants.
**No. 4:00-CV-1481 CEJ.**

Sept. 25, 2001.

*ORDER*

JACKSON, J.
**\*1** This matter is before the Court upon the defendants'
motion to dismiss the complaint for lack of jurisdiction. The
defendants also request that this action be transferred to the
Northern District of Mississippi. The plaintiff has filed a
response, and the issues are fully briefed.

In their motion, the defendants challenge the validity of a
choice of law and forum selection clause contained in the
licensing agreements they signed. The clause, which was
printed in all capital letters, stated as follows:
   THIS AGREEMENT IS GOVERNED BY THE LAWS
   OF THE STATE OF MISSOURI AND THE UNITED
   STATES (OTHER THAN THE CHOICE OF LAW
   RULES). THE PARTIES CONSENT TO THE
   EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT
   COURT FOR THE EASTERN DISTRICT OF
   MISSOURI, EASTERN DIVISION, AND THE
   CIRCUIT COURT OF THE COUNTY OF ST. LOUIS,
   STATE OF MISSOURI, FOR ALL DISPUTES
   ARISING UNDER THIS AGREEMENT.
This Court has been called upon to consider this clause on
several prior occasions, and has consistently found that it is
both valid and enforceable. *See Monsanto Company v.
Nelson,* No 4:00-CV-1636(CEJ) (E.D.Mo. September 6,
2001); *Monsanto Company v. Dawson,* No.
4:98-CV-2004(TCM) (E.D.Mo. August 18, 2000);
*Monsanto Company v. McFarling,* No. 4:00-CV-84(CDP)
(E.D.Mo. April 13, 2000); *Monsanto Company v.
Godfredson,* No. 4:99-CV-1691 (CDP) (E.D.Mo. April 13,

2000). The defendants present no argument compelling a
different conclusion. On the basis of the well-reasoned
opinions cited above, the Court concludes that the choice of
law and forum selection clause contained in the agreements
the defendants signed is enforceable as to jurisdiction and
venue.

Accordingly,

IT IS HEREBY ORDERED that the defendants' motion to
dismiss [Doc. # 16] is denied.

E.D.Mo.,2001.
Monsanto Co. v. Swann
Not Reported in F.Supp.2d, 2001 WL 34053250

Briefs and Other Related Documents (Back to top)

• 4:00CV01481 (Docket) (Sep. 14, 2000)

END OF DOCUMENT

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 34079479
**(Cite as: Not Reported in F.Supp.2d)**

C

Not Reported in F.Supp.2d, 2001 WL 34079479
Only the Westlaw citation is currently available.
United States District Court,E.D. Missouri, Eastern
Division.
MONSANTO COMPANY, Plaintiff,
v.
Greg NELSON and Nelson Farm Enterprises, Defendants.
**No. 4:00-CV-1636 CEJ.**

Sept. 10, 2001.

*MEMORANDUM AND ORDER*

JACKSON, J.

**\*1** This matter is before the Court upon the defendants'
motion to dismiss or, in the alternative, to transfer this
action for improper venue. Also before the Court is
plaintiff's motion to enjoin or stay the arbitration
proceedings pending in North Dakota.

Defendants Greg Nelson and Nelson Farm Enterprise,
residents of North Dakota, entered into an agreement to
purchase Roundup Ready soybean seeds manufactured by
plaintiff Monsanto Company. In connection with the
purchase the defendants executed a "Monsanto Technology
Agreement" dated March 31, 1999, in which they
acknowledged plaintiff's patents on the seed technology and
agreed that they would not harvest or replant seeds from the
Roundup Ready product or from any other Monsanto seed
product. In the instant action, plaintiff alleges that in 1999
the defendants used Roundup Ready soybean seed that had
been saved from the 1998 planting season in order to
produce a crop of soybeans containing plaintiff's Roundup
Ready technology.

The Technology Agreement contained the following forum
selection provision:

THIS AGREEMENT IS GOVERNED BY THE LAWS
OF THE STATE OF MISSOURI AND THE UNITED
STATES (OTHER THAN THE CHOICE OF LAW
RULES). THE PARTIES CONSENT TO THE
EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT
COURT FOR THE EASTERN DISTRICT OF
MISSOURI, EASTERN DIVISION, AND THE

CIRCUIT COURT OF THE COUNTY OF ST. LOUIS,
STATE OF MISSOURI, FOR ALL DISPUTES
ARISING UNDER THIS AGREEMENT.

The defendants argue that the provision is not valid for the
following reasons: (1) the forum selection clause in the
technology agreement does not constitute a choice of forum
or venue; (2) under 28 U.S.C. § 1400(b) the District Court
for North Dakota is the exclusive venue for this matter; and
(3) venue in North Dakota would be a more convenient
forum.

Forum selection clauses are valid and enforceable unless
they are unjust or unreasonable for reasons such as fraud or
overreaching. *M.B. Restaurants, Inc. v. CKE Restaurants,
Inc., 183 F.3d 750, 752 (8th Cir.1999).* Plaintiff's forum
selection clause is neither unjust, unreasonable, nor invalid.
Defendants' arguments that the forum selection clause does
not constitute a choice of forum or venue and that § 1400(b)
provides exclusive jurisdiction to the federal court in North
Dakota are without merit. The forum selection clause
specifically states that any disputes arising under the
Technology Agreement are to be resolved in the United
States District Court for the Eastern District of Missouri or
in the St. Louis County Circuit Court. Defendants' execution
of the agreement constitutes valid consent to venue in this
district.

Defendants alternatively argue that the case should be
transferred to North Dakota where they and their witnesses
reside because of the inconvenience that will be presented
by traveling to Missouri. While convenience of the parties
and witnesses are factors to consider in determining whether
to transfer a cause of action, the most significant factor in a
court's decision is a forum selection clause. *See Stewart
Organization, Inc. v. Ricoh Corp ., 487 U.S. 22, 29 (1988).*
Inconvenience alone does not constitute a valid reason to
transfer a matter to a different district, especially after a
party has agreed to a forum selection clause.

**\*2** Defendants also argue that the Technology Agreement
does not govern this action because the alleged infringement
occurred, if at all, at a time prior to the date of the
Agreement. This argument is without merit. Once the
defendants agreed not to violate plaintiff's patent on
Roundup Ready technology, they became bound by that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 34079479
**(Cite as: Not Reported in F.Supp.2d)**

agreement for the duration of the contract. Thus, the defendants' planting of saved Roundup Ready seeds at any time after they signed the Agreement constitutes a violation of plaintiff's patent.

On January 21, 2001, after this lawsuit was filed, the defendants submitted this matter, without plaintiff's consent, to arbitration before the North Dakota State Seed Arbitration Board. This action involves federal patent law and defendants' attempt to remove it to a state arbitration board without plaintiff's consent is an apparent attempt to avoid this Court's jurisdiction over this matter. Defendants cannot circumvent the terms of the Technology Agreement nor can they avoid litigating the instant case in this district pursuant to the forum selection clause. Accordingly, the defendants will be enjoined from pursuing or participating in the pending arbitration proceedings.

For the foregoing reasons,

IT IS HEREBY ORDERED that defendants' motion to dismiss or, in the alternative, to transfer for improper venue [Doc. # 15] is denied.

IT IS FURTHER ORDERED that plaintiff's motion for an emergency hearing [Doc. # 41] is denied as moot.

IT IS FURTHER ORDERED that plaintiff's motion for an order enjoining defendants from pursuing arbitration of this matter or, in the alternative, staying arbitration proceedings before the North Dakota Department of Agriculture [Doc. # 40] is granted.

IT IS FURTHER ORDERED that the defendants are enjoined from pursuing or participating in any arbitration proceedings concerning the claims and issues involved in the instant case. Alternatively, all such proceedings commenced before the North Dakota Department of Agriculture Board are stayed pending the resolution of the instant action.

E.D.Mo.,2001.
Monsanto Co. v. Nelson
Not Reported in F.Supp.2d, 2001 WL 34079479

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2000 WL 1146705, 2000-2 Trade Cases P 72,995
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Not Reported in F.Supp.2d, 2000 WL 1146705, 2000-2
Trade Cases P 72,995

United States District Court, N.D. Mississippi, Delta
Division.
Rudolph MASSEY, et al., Plaintiffs,
v.
MONSANTO COMPANY, et al., Defendants.
**No. 299CV218-P-B.**

June 13, 2000.

*MEMORANDUM OPINION*

PEPPER

**\*1** This case is presently before the Court on defendants'
motions to dismiss [7-1 and 8-1], plaintiff's motion to
voluntarily dismiss without prejudice [11-1], and
defendants' motion to transfer to the Eastern District of
Missouri [16-1]. Finding that this case should be transferred
to the Eastern District of Missouri, this Court will deny the
defendants' motions to dismiss and the plaintiff's motion to
dismiss without prejudice. The relevant facts of the case are
as follows:

FACTUAL BACKGROUND

Plaintiff Rudolph Massey, a farmer in Coahoma County,
Mississippi, purchased Hartz Roundup Ready soybean
seeds, manufactured by Defendant Monsanto Company. On
November 8, 1999, he filed this lawsuit against Monsanto
and Terra International on behalf of himself and other
persons who purchased these biologically-engineered
soybean seeds, alleging violations of the Sherman Anti
Trust Act, violations of Mississippi's anti-trust laws,
violations of RICO, negligence, fraud and deceit, breach of
implied warranty of merchantability, and breach of implied
duty of good faith and fair dealing. On January 31, 2000, the
defendants filed motions to dismiss certain counts of the
complaint. On March 8, 2000, Massey filed a motion to
voluntarily dismiss without prejudice. Subsequently, on
April 10, 2000, the defendants filed a motion to transfer the
case to the Eastern District of Missouri.

This case is very similar to other class action complaints

filed in the United States District Court for the District of
Columbia and the United States District Court for the
Southern District of Illinois. *Massey, et al. v. Monsanto* was
filed in the Northern District of Mississippi in November of
1999, *Higginbotham, et al. v. Monsanto* was filed in the
District of Columbia in December of 1999, and *Blades, et
al. v. Monsanto* was filed in the Southern District of Illinois
in February of 2000. On May 22, 2000, Judge Colleen
Kollar Kotelly, U.S. District Court Judge for the District of
Columbia, ordered that *Higginbotham* be transferred to the
Southern District of Illinois, where the *Blades* case is
pending. The *Blades* court has set a hearing on June 19,
2000, on Monsanto's motion to dismiss and Monsanto's
motion to transfer venue to the Eastern District of Missouri.

All parties agree that the lawsuits should be tried together;
however, Monsanto does not agree that the Southern
District of Illinois is the proper forum. In this case, as in the
others, Monsanto relies heavily on a "forum selection
clause" contained in Monsanto's Technology Agreement
("TA"), which states that the appropriate venue for claims
arising under the TA is the Eastern District of Missouri.
FN1

> FN1. The provision reads "THIS AGREEMENT IS
> GOVERNED BY THE LAWS OF THE STATE
> OF MISSOURI AND THE UNITED STATES
> (OTHER THAN THE CHOICE OF LAW
> RULES). THE PARTIES CONSENT TO THE
> EXCLUSIVE JURISDICTION OF THE U.S.
> DISTRICT COURT FOR THE EASTERN
> DISTRICT OF MISSOURI, EASTERN
> DIVISION, AND THE CIRCUIT COURT OF
> THE COUNTY OF ST. LOUIS, STATE OF
> MISSOURI, FOR ALL DISPUTES ARISING
> UNDER THIS AGREEMENT."

LEGAL ANALYSIS

I. Forum Selection Clause

A forum selection clause should control absent a strong
showing that it should be set aside. *The Bremen v. Zapata
Off Shore Company, 407 U.S. 1, 15, 92 S.Ct. 1907, 32
L.Ed.2d 513 (1972).* Such a "strong showing" would

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 1146705, 2000-2 Trade Cases P 72,995
**(Cite as: Not Reported in F.Supp.2d)**

include clauses which are tainted by fraud, undue influence, or overwhelming bargaining power. *Id.*

**\*2** In the case presently before this Court, Massey acknowledges that he signed an agreement which stated that the appropriate venue for any claim arising from that agreement between Massey and Monsanto is the Eastern District of Missouri. However, he claims that this forum selection clause should be given little or no weight since the contracts, on a "class-wide basis," were tainted by fraud. Massey asserts that several of the signatures on these agreements may have been forged. See Def.'s Mem. Supp. Summ. J. at 6, *Monsanto v. Stratemeyer,* Civil No. 99CV01218CEJ (E.D.Mo.) ; George Higginbotham Aff., *Higginbotham v. Monsanto,* Civil No. 1:99CV03337CKK (D.C.Cir.); Collin Cain Aff., *Blades v. Monsanto,* Civil No, 00-4034-GPM (S.D.Ill.) But Massey, the only named plaintiff in this case, *did* sign his Technology Agreement. Therefore, he cannot claim that *his* signature was obtained by fraud.

Massey also claims that the agreement was the result of unequal bargaining power between this conglomerate and an average farmer, and that since he was forced to sign the agreement if he wanted to purchase soybeans from Monsanto, his assent to the agreement was not truly voluntary. See *Bank of Indiana, N.A. v. Holyfield,* 476 F.Supp.104, 109-110 (S.D.Miss.1979) ("A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."). However, Monsanto points out, and the Court agrees, that Massey had the opportunity to purchase any of the numerous other soybean seed varieties available on the market. Thus, Massey, as the "weaker party," was not prevented in anyway from refusing to enter into the agreement. Despite Massey's contentions to the contrary, this Court cannot find that he signed the agreement due to fraud, undue influence, or an overwhelming bargaining power.

In addition, Massey asserts that, given the standard form language, or "boilerplate nature," of this forum selection clause, this Court should give the clause little weight in ruling on the motion to transfer. When a forum selection clause is "an obscure boilerplate provision, obviously inserted only for the convenience of the defendant, with no indication of having been freely bargained between the parties," a court may deny enforcement. *Couch v. First Guaranty Limited,* 578 F.Supp. 331, 333 (N.D.Tex.1984). Forum selection clauses contained in boilerplate contracts are "subject to judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute,* 49 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991). Massey asserts that the forum selection clause in the agreement is an obscure boilerplate provision, in that it is "not even located anywhere near the signature line, but is buried at the end of a lengthy page of clauses." Opp. at 9. This Court has reviewed the agreement in question, and finds that Massey's argument is without merit. The entire agreement is only two pages, and the forum selection clause is the last paragraph on the second page. Furthermore, the clause is the only provision in the agreement that is written entirely in capital letters. Clearly, the provision is not "obscure" as Massey claims, and the boilerplate clause is enforceable.

2. 28 U.S.C. § 1404(a)

**\*3** A case brought in federal court may be transferred to any other district or division where it might have been brought "[f]or the convenience of the parties and witnesses [and] in the interests of justice." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to avoid "waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (citations omitted). The decision to transfer a suit to a more convenient location is in the sound discretion of the Court. *Nowell v. Dick,* 413 F.2d 1204 (5th Cir .1969). When determining the convenience of the parties and the interests of justice, the Court is allowed to consider a wide range of circumstances under the particular facts of each case. *Stewart Organization, Inc. v. Riouch Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988).

The Court may consider the following factors when determining whether to transfer a case under § 1404(a):

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 1146705, 2000-2 Trade Cases P 72,995
**(Cite as: Not Reported in F.Supp.2d)**

1. the relative ease of access to sources of proof;

2. the availability of compulsory process, where necessary, over witnesses;

3. the cost of obtaining witnesses for attendance at trial;

4. the possibility of a view of the premises, if appropriate;

5. the enforceability of a judgment;

6. administrative difficulties of the courts;

7. the local interest of the controversy, and the imposition of jury duty on citizens residing in a community having no relation to the litigation;

8. the propriety of having the action tried in a forum "at home" with the state law governing the case;

9. the plaintiff's choice of forum;

10. the possibility that trial in the original forum will result in inconvenience, vexation, oppression, or harassment of the defendants;

11. all other practical problems that make the trial of a case easy, expeditious, and inexpensive.

*First Mississippi Corporation v. Thunderbird Energy, Inc., 876 F.Supp. 840, 845 (S.D.Miss1995)* (citing *Radio Sante Fe, Inc. v. Sena, 687 F.Supp. 284, 287 (E.D.Tex.1988)*). The Court is allowed to consider the above factors, even when a forum selection clause is present, if the Court concludes "that enforcement of the clause would effectively 'deprive [the party moving for the change of venue] of [his] day in court.' " *Id.* (citing *Seattle First Nat'l Bank v. Mangas, 900 F.2d 795, 799 (5th Cir.1990)*).

With regard to the "convenience" factor of § 1404(a), the plaintiff in this case urges the Court that the defendants have failed to establish that transfer to the Eastern District of Missouri is necessary for the convenience of the parties. See *Resolution Trust Corp. v. Cumberland Dev. Corp., 776 F.Supp. 1146, 1151 (S.D.Miss.1991)*. Massey claims that since virtually no difference exists between the U.S. District Court for the Eastern District of Missouri and the U.S. District Court for the Southern District of Illinois, then this case should be sent to the Southern District of Illinois as the plaintiff's chosen forum. "Defendant Monsanto is headquartered in St. Louis, Missouri, which is located a scant 4 miles across the Mississippi River from downtown East St. Louis, Illinois, where the District Court for the Southern District of Illinois is located." Plaintiff's Mem. at p. 3. The Court must point out, however, that "the deference

accorded the plaintiff's choice of forum is diminished ... when the plaintiff has brought suit in a forum which is not its 'home turf.' " *Armco Steel Co. v. CSX Corp., 790 F.Supp. 311, 323 n. 11 (D.C.Cir.1991)* (citations omitted).

**\*4** The convenience of the parties will not alone justify a change of venue; a transfer should also be in the interests of justice. *Henry v. First National Bank of Clarksdale, 50 F.R.D. 251, 270 (N.D.Miss.1970)*. The "interest of justice" requirement of § 1404(a) may, in itself, be determinative of the decision to transfer a case, even if the convenience of the parties and witnesses would call for a different result. *Frazier v. Commercial Credit Equipment Corp., 755 F.Supp. 163, 167 (S.D.Miss.1991)*. This Court cannot determine that the interests of justice would best be served by transferring this case to the Southern District of Illinois. As such, the forum selection clause signed by both parties will be enforced, and the case will be transferred to the Eastern District of Missouri.

CONCLUSION

Based on the foregoing, the Court hereby finds that the defendants' motions to dismiss should be DENIED and the plaintiff's motion to voluntarily dismiss without prejudice should be DENIED. The Court also finds that the defendants' motion to transfer to the Eastern District of Missouri should be GRANTED.

An order will issue accordingly.

This, the %% day of June, 2000.

N.D.Miss.,2000.
Massey v. Monsanto Co.
Not Reported in F.Supp.2d, 2000 WL 1146705, 2000-2 Trade Cases P 72,995

END OF DOCUMENT

EXHIBIT F

Slip Copy                                                                                          Page 1
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

Slip Copy, 2005 WL 1017804
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
HAY ACQUISITION COMPANY, I, INC. et al., Plaintiffs,
v.
Bernd SCHNEIDER et al., Defendants.
**No. Civ.A. 2:04-CV-1236.**

April 27, 2005.

Glenn A. Beard, Philadelphia, PA, for Plaintiffs.
John J. Barrett, Jr. , Saul Ewing LLP , and Michael J. Salmanson , Salmanson Goldshaw, P.C., Philadelphia, PA, for Defendants.

*MEMORANDUM*

DAVIS, J.

**\*1** Presently before the Court is the Motion to Dismiss or to Stay filed by Defendants Bernd Schneider and Lucie Boller-Bockius (Defs.' Mot., Doc. No. 19). For the reasons that follow, Defendant Schneider's Motion to Dismiss is GRANTED with respect to all Plaintiffs. The Court will decline to exercise its jurisdiction over their claims against Schneider, as they are bound to bring those claims in Germany under the forum selection clause in Schneider's employment contract. These dismissals shall be effected without prejudice, in the event that the German Courts cannot or will not adjudicate their claims.

Defendant Boller-Bockius' Motion to Stay is GRANTED with respect to all Plaintiffs. Moreover, the Court will stay the instant action in its totality until the German Courts conclude the parallel, pending litigation involving both Defendants Schneider and Boller-Bockius.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Plaintiffs in this matter are Hay Acquisition Company I, Inc. ("Hay Acquisition"), Hay Group Management, Inc. ("Hay Management"), Hay Group, Inc. ("Hay Group"), and Hay Group International, Inc. ("Hay International") (collectively,

"Plaintiffs" or "Hay U.S. Companies"). Hay Acquisition is the owner of Hay Management, Hay International, and Hay Group. *Id.* at 26. Hay Acquisition and Hay Group GmbH ("Hay Germany") are owned by an entity known as Hay Group Investment Holding B.V. ("HGIH B.V."). Pls.' Compl. at ¶ 27. An entity that will be referred to as "HG Bermuda" sits atop the foregoing organizational structure, as the ultimate parent company of all the above named entities. *Id.* at ¶ 28. HG Bermuda is governed by an Ownership Board consisting of approximately fifteen shareholders; according to Plaintiffs' Complaint, this Board acts as the "ultimate governing body for all the Hay companies." *Id.* at ¶ 33. The organizational head of HG Bermuda is Chris Matthews, who is the Chairman and Chief Executive Officer of that entity, as well as the Chairman of the Boards of HGIH B.V. and all the Plaintiff entities. *Id.* at ¶ 31. Relevant to this Motion is the fact that Hay Management is the center of accounting for all of the subsidiaries of HG Bermuda, including all the Plaintiffs and Hay Germany. *Id.* at ¶ 30.

The individual defendants in this case are all former employees of the various Hay entities. Defendant Bernd Schneider is the former Chief Executive Officer of HGIH B.V., the former President of all the Plaintiff entities, a former officer of Hay Germany, and a former director of Hay Acquisition. *Id.* at ¶ 15. Defendant Lucie Boller-Bockius is the former Finance Director and an officer of Hay Germany. Pls.' Compl. at ¶ 18. Defendant Suresh Bhula is a former director and treasurer of Hay Group, Hay Acquisition, and Hay International. *Id.* at ¶ 7. He has not joined in the instant motion to dismiss.

### B. Schneider's Employment Contract and the Cost Allocation Agreement

**\*2** In October 2001, Schneider entered into an employment agreement with HGIH B.V. ("Employment Agreement" or "Agreement"), pursuant to which he became Chief Executive Officer of that entity. *Id.* at ¶ 32. In February 2003, he was appointed director of Hay Acquisition; in March of 2003, he was appointed president of each of the Plaintiff entities. *Id.* Prior to Schneider's appointment to the presidency of the Plaintiff entities, that position was filled by Chris Matthews. *Id.* at ¶ 31.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 2
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

The Employment Agreement is dated October 1, 2001; signed by Schneider, Matthews, and William Heppleston, who is identified as a "managing director;" and reviewed and approved by two employees of HGIH B.V. FN1 9/2/04 Thees Decl., Ex. B. The Agreement appears to be the sole document governing the terms and conditions of Schneider's employment with HGIH B.V. or any other Hay affiliate. In connection with their opposition to this Motion, Plaintiffs have submitted the sworn declaration of the General Counsel of Hay Group, Jeffrey H. Marcus, who states that Schneider received no additional compensation after his appointment to the presidency of the Hay U.S. Companies. Marcus Decl. at ¶ 16. Marcus also states that Schneider's employment contract was not amended in any way after he was appointed to be President of the Hay U.S. Companies. *Id.*

> FN1. As an evidentiary matter, the Court notes that the Employment Agreement is relevant to Defendant Schneider's motion to dismiss under Rule 12(b)(6), which is based on the existence of a valid forum selection clause. While a Court may ordinarily not consider matters outside of the pleading attacked by a Rule 12(b)(6) motion, the Third Circuit has recognized that a Court may rely on documents that the defendant attaches to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claim. *See Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002). Because the Plaintiffs' complaint refers to the employment agreement and it is central to the claims asserted, as will be discussed, the Court may properly consider the employment contract in determining whether dismissal is warranted under Rule 12(b)(6) due to the forum selection clause contained therein. Defendants ground the remainder of their dismissal motion in the doctrines of international comity and *forum non conveniens* rather than Rule 12(b)(6). The Court may therefore properly rely on the other supporting documents attached to the parties' motions, replies, and sur-replies in evaluating the merits of those arguments.

The Employment Agreement contains several provisions relevant to this Motion to Dismiss. Article VI of the Agreement contains both a choice of law provision and a forum selection clause:

> This agreement contains the entire agreement between the parties and shall be governed by and construed in accordance with the internal substantive laws of Germany. [HGIH B.V. and its assignees] and [Schneider] each consent to the exclusive jurisdiction of, and agree that any controversy between them arising out of this Agreement shall be brought only in the Labor Court of Germany or such other court venued in Frankfurt, Germany as may have subject matter jurisdiction over the controversy.... FN2

> > FN2. The forum selection clause does make an exception for violations of Schneider's covenant not to compete. Such claims may be brought by HGIH B.V. and its assignees wherever such violation(s) shall occur. 9/2/04 Thees Decl., Ex. B at ¶ 6.3.

9/2/04 Thees Decl., Ex. B. at 10, ¶ 6.3. Article II of the Employment Agreement sets forth the manner in which Schneider's base salary and bonus shall be determined and paid. Certain subsections of Articles III and IX speak to the definition of "for cause" termination and the consequences thereof. *Id.* at 4-6, ¶¶ 3.1, 3.5; 12-13, ¶ 9.4

The Employment Agreement refers to the Hay U.S. Companies in a number of ways, though not by their individual names. Article 9.1 of the Employment Agreement defines the "Affiliated Group" as HGIH B.V. and its subsidiaries, a category to which the Hay U.S. Companies indisputably belong. *Id.* at 12, ¶ 9.1. Article 1.2 of the contract states that Schneider shall serve as "a member of the Board of Directors or other governing body of each member of the Affiliated Group." *Id.* at 2, ¶ 1.2. Article 2.3 of the contract provides that Schneider may participate in certain benefit plans of the Affiliated Group, so long as his participation does not present an unreasonable difficulty; Article 2.6 allows Schneider to be reimbursed for expenses incurred in connection with his services to the Affiliated Group. *Id.* at 3, ¶¶ 2.3, 2.6. Article 2.7(a) gives HGIH B.V. the right to force members of the Affiliated

Slip Copy                                                                                    Page 3
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

Group to comply with Schneider's requests for payment under the contract. *Id.* at 4, ¶ 2.7(a). The entirety of Article V imposes a covenant not to compete upon Schneider in the event of his departure from HGIH B.V.; that covenant expressly includes a prohibition on engaging in activities that would be directly competitive with members of the Affiliated Group, misappropriating intellectual property and disclosing confidential information of the Affiliated Group. *Id.* at 7-9, ¶¶ 4.1-4.3. Lastly, the Agreement states that a termination for "just and reasonable cause" may result from behaviors that are materially harmful to any member of the Affiliated Group: (1) "an intentional act of fraud, embezzlement or theft in connection with his duties or in the course of employment with ... any [ ] member of the Affiliated Group"; (2) "intentional wrongful damage to property of ... any [ ] member of the Affiliated Group"; (3) "intentional wrongful disclosure of secret processes or confidential information of ... any [ ] member of the Affiliated Group"; (4) "intentional wrongful engagement in competitive activity in violation of this Agreement." *Id.* at 13, ¶ 9.4(a)-(d).

**\*3** On October 24, 2003, Hay Germany, HGIH B.V., and Hay Management executed a Cost Allocation Agreement, to memorialize how Hay Management would reimburse HGIH B.V. for services provided to that entity by Schneider. [FN3] 9/2/04 Thees Decl., Ex. C (Cost Allocation Agreement dated October 24, 2003). In this agreement, Hay Management agrees to assume "all other contractual obligations as triggered by the Employment Contract," meaning the original Employment Agreement between Schneider and HGIH B.V. *Id.* The agreement states that it is retroactive to October 1, 2001, the date of Schneider's original Employment Agreement, and goes on to proclaim that "This contract is governed by German law. Venue is Frankfurt am Main." *Id.*

> [FN3.] The Cost Allocation Agreement is dated October 24, 2003. It was not signed by Chris Matthews, on behalf of HGIH B.V. and Hay Management, until November 1, 2003. Because the agreement is retroactive to October 1, 2001, the date on which the parties actually placed their signature on the document is irrelevant to the

Court's analysis.

### C. Alleged Misdeeds by Schneider and Boller-Bockius

A material amount of the allegations in the Complaint against Schneider and Boller-Bockius stem from a dispute between Schneider, the Ownership Board, and a subset of the Ownership Board known as the Compensation Committee. Plaintiffs allege that the conflict began in late 2002, when the Compensation Committee, which was advised by Plaintiffs' Chief Financial Officer Stephen D. Kaye, recommended a bonus of less than 100% of Schneider's eligible bonus under his Employment Agreement and required that the bonus he did receive be reinvested in HG Bermuda. Pls.' Compl. at ¶¶ 35, 38. Plaintiffs allege that, in response to these and other actions Schneider perceived as unjust, he began to engage in a variety of improper activities with the goal of retaliating against Hay personnel who supported the decisions of the Ownership Board and the Compensation Committee, including Mr. Kaye. Plaintiffs allege that one such improper action was Schneider's commencement and maintenance of a malicious and unfounded internal investigation against Mr. Kaye. In the course of pursuing this investigation and other retaliatory activities, Plaintiffs claim that Schneider recruited other Hay employees, specifically Bhula and Boller-Bockius, whom he rewarded for their participation. *Id.* at ¶¶ 73-95.

Plaintiffs also allege that Schneider, in order to rectify what he perceived to be an underpayment of his fiscal year 2002 bonus, paid himself a secret bonus of $230,000 USD in Hay Germany funds. These funds were then primarily recharged to Hay Management. *Id.* at ¶ 50. This payment was allegedly made in concert with Boller-Bockius and without the knowledge or consent of the Compensation Committee. [FN4] *Id.* Plaintiffs further allege that Schneider engaged a fleet of attorneys in four different countries to prepare resolutions and documents that would impede the independent operation of the Ownership Board; as with the secret bonus payment, Schneider allegedly used Hay Germany funds to pay these attorneys, then charged those funds to Hay Management. *Id.* at ¶¶ 52-54. Plaintiffs allege that both the excess bonus payment and the attorneys' fees charged to Hay Management caused a financial loss to that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

entity, as well as to the other Plaintiffs, who share the allocated costs of central management. *Id.* at ¶¶ 66, 67.

> FN4. The Complaint, however, indicates that Schneider has returned this overpayment and executed a statement of waiver. *Id.* at ¶ 68.

**\*4** Plaintiffs also allege that Schneider, in order to reward Boller-Bockius for his complicity in the above-detailed activities, promoted her to the position of "Finance Director" of Hay Germany, a position for which she was not qualified and in which she had control over the financial affairs of that entity. *Id.* at ¶ 128. Schneider then purportedly raised Boller-Bockius's salary, provided her with secret pension and severance agreements, and improperly transferred to her a portion of his interest in HG Bermuda. Again, Plaintiffs claims that none of these actions were known to or approved by the Plaintiffs or Hay Germany. *Id.* at ¶¶ 130, 136. As a result, the Hay Germany fiscal 2003 audit did not reflect the cost of the secret termination agreement allegedly entered into by Schneider and Boller-Bockius; this erroneous audit was incorporated into the consolidated financial results of HIGH B.V. *Id.* at ¶¶ 142-144. The overstated consolidated results resulted in the appearance of a much larger pool of income from which to determine executive bonuses, including Schneider's; Plaintiffs allege that the resulting overpayment of bonuses caused the Hay companies to suffer a financial loss. *Id.* at ¶¶ 152-153.

### D. The German Court Actions

On December 9, 2003, the Ownership Board terminated Schneider for cause from all his positions in the Hay companies, including his position as president of the Plaintiff companies and director of Hay Acquisition. *Id.* at ¶ 154. Schneider filed suit in the Labor Court in Frankfurt, Germany on December 23, 2003, contesting that he was terminated for cause and seeking a declaration that he was improperly terminated. Defs.' Mot. at 4. In his original complaint in the German court, Schneider states his belief that the basis for HGIH B.V.'s termination was his execution and amendment of the pension agreement for Boller-Bockius without the required prior approval of the attendees of HGIH B.V.'s annual meeting and his failure to

immediately inform the Hay Group and its auditors of this agreement, leading to "a negative financial effect worldwide." 9/2/04 Thees Decl., Ex. E at. ¶ 9.

Schneider has amended his complaint in the German Court to ultimately include all the Plaintiffs in this action. With respect to the Plaintiffs in this action, on April 16, 2004, Schneider amended his complaint to include a demand for a declaratory judgment that he was terminated without cause and that he is entitled to a claim for damages, that he is entitled to bonus payments, that he is not liable to Plaintiffs for damages, that Plaintiffs are liable for his legal fees, and that any judgment rendered in the matter before this Court would not be enforceable in Germany. 9/2/04 Thees Decl. at ¶ 21e.

Boller-Bockius is also pursuing litigation against various Hay entities in German court. According to her German counsel, Dr. Holger Thomas, after Hay Germany refused Boller-Bockius' request for severance payments, she filed suit against that entity on February 18, 2004. 9/1/04 Thomas Decl. at ¶ 6. In that action, Boller-Bockius seeks payments due her under her original employment agreement with Hay Germany dated October 1, 1972, her supplemental agreement dated January 16, 2003, and her severance payment agreement dated July 15, 2003. *Id.* at ¶ 7; see also *id.*, Ex. B at 2-3. In its responsive pleading to Boller-Bockius' complaint, Hay Germany asserts that the January 2003 and July 2003 agreements are not valid because of various wrongdoings engaged in by Boller-Bockius; these wrongdoings are exclusively related to actions taken in concert or at the behest of Schneider. Hay Germany further states that Schneider unilaterally and inappropriately entered into these agreements with Boller-Bockius without notice to or the required approval of his or her employer or its shareholders. *Id.*, Ex. B at 20-22. Hay Germany's pleading also details the concealment of these agreements by Schneider and Boller-Bockius from the auditors that performed the 2002/2003 audits on all the Hay subsidiaries and that concealment's impact on the financial results of those entities; her collaborations with Schneider in his allegedly retaliatory activities against Mr. Kaye; and her assistance in securing Schneider's excessive bonus in the year 2002. *Id.* at 5, 17, 23. In addition to pursuing her own

action, Boller-Bockius joined Schneider's action in the Labor Court on April 16, 2004, in the same filing that Schneider joined the Hay U.S. Companies to that action. 9/2/04 Thees Decl. at ¶ 21(e).

**\*5** On October 13, 2004, the German Labor Court held an oral hearing in chambers, pursuant to which it took several actions. 11/30/03 Thees Decl. at ¶ 3. In an order dated November 17, 2004, the Labor Court ultimately separated the complaints of Boller-Bockius and Schneider, retaining jurisdiction over the claims asserted in the former and declining jurisdiction over those asserted in the latter. FN5 *Id.* at ¶¶ 5, 9. Counsel for the Hay U.S. Companies attending this hearing, as well as a subsequent conference on November 17, 2004. *Id.* at ¶¶ 3, 5. The Court referred the remainder of Schneider's claims, including his amended claims over the Hay U.S. Companies, to the District Court of Frankfurt. *Id.* at ¶ 5. According to the latest declaration from Schneider's counsel in the German action, Dr. Thomas Thees, Schneider has paid the required filing fees to commence the action in the District Court and all files from the Labor Court have been copied and transferred to that institution so that it can begin to consider the merits of those claims. 3/4/05 Thees Decl. at ¶ 2. Oral argument on the merits of Boller-Bockius' claims in the Frankfurt Labor Court has been scheduled for May 11, 2005. *Id.* at ¶ 7.

> FN5. The German Labor Court did retain jurisdiction over one of Schneider's claims related to a consulting agreement between Schneider and Hay Germany. It has stayed any resolution of that claim until the District Court in Frankfurt renders its decision on Schneider's transferred claims.

*E. Defendants' Motion to Dismiss Or, in the Alternative, to Stay the Instant Case*

Defendants have moved to dismiss the instant action on a number of grounds. First, Defendant Schneider alleges that the forum selection clause contained in his Employment Agreement is binding on all Plaintiffs, requiring them to litigate their claims in Frankfurt, Germany. Second, both Defendant Schneider and Defendant Boller-Bockius move the Court to dismiss or stay this action in favor of the pending, parallel litigation in Germany under the doctrine of

international comity. Third, both Defendant Schneider and Defendant Boller-Bockius move the Court to dismiss this case on the grounds of *forum non conveniens.* The Court will address the forum selection clause and international comity grounds in turn. As the Court finds that an analysis under those two grounds resolves the instant dismissal motion, it will not consider the parties' *forum non conveniens* arguments.

### II. FORUM SELECTION CLAUSE

Defendant Schneider claims that a valid and enforceable forum selection clause requires Plaintiffs to pursue their claims against him in the German court system. Defs.' Mot. at 2. Plaintiffs argue that the forum selection clause is irrelevant to this case, because (1) the claims in this case do not involve any breach of the employment contract and (2) the original signatory to the employment contract, HGIH B.V., is not a party to this action, and no other party, including the Hay U.S. Companies, is bound by the forum selection clause. Pls.' Opp'n at 8.

The Supreme Court has held that a valid international forum selection clause should be enforced unless "enforcement is shown by the parties to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).* In adopting the holding of *The Bremen,* the Third Circuit stated that

> **\*6** a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir.)* cert denied, *464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).* Plaintiffs do not assert that the forum selection clause is the result of fraud or overreaching nor that enforcement would violate public policy. Plaintiffs' arguments are grounded in the last factor of *The Bremen*-that application of the forum selection clause in the particular circumstances of this case would be unreasonable.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

*A. Nature of Plaintiffs' Claims*

Plaintiffs' first claim of unreasonableness stems from the nature of the claims asserted in their complaint and the scope of the forum selection clause. Plaintiffs argue that their claims do not sound in contract, and specifically do not sound in the employment contract between Schneider and HGIH B.V., and so are not governed by the forum selection clause.

A district court sitting in diversity determines the effect of a forum selection clause under federal, not state, law. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir.1995)*. Third Circuit case law is clear that "broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum ... apply to all claims, whether they be based in tort or contract, and shall be enforced." *Oak Systems v. Fracotyp-Postalia, Inc. et al.,* 2002 U.S. Dist. LEXIS 2213, *7 (3d Cir.2002). Moreover, "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain." *Coastal Steel, 709 F.2d at 202*. In *Coastal Steel,* the forum selection clause required any dispute arising out of the conditions of the contract to be heard by the courts of England; the Third Circuit squarely rejected the contention that the forum selection clause was inapplicable to tort claims. *Id.* at 203. The Court stated that "[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as ... misrepresentation." *Id.*

Plaintiffs assert four separate claims against Defendant Schneider; none of these claims are explicitly contractual. First, Plaintiffs seek a declaratory judgment that Schneider was terminated for cause, as the bylaws of HG Bermuda forbid the payment of a post-termination distribution to such a former employee. Pl.'s Compl. at ¶¶ 161, 162. Second, Plaintiffs seek a declaratory judgment that Schneider is no longer due the excessive and subsequently returned 2002 bonus payment that was ultimately paid from the Hay Management coffers. *Id.* at ¶ 170. Third, Plaintiffs claim that Schneider breached his fiduciary and legal duties as president of Plaintiffs and director of Hay Acquisition by taking an excessive bonus, retaining outside counsel to harass and investigate certain employees and officers of Plaintiffs, awarding Boller-Bockius undeserved promotions, salary, and benefits, and engaging in other improper actions. *Id.* at ¶¶ 171-181. Fourth, Plaintiffs assert that Schneider's concealment of the benefits awarded to Boller-Bockius amount to negligent and intentional misrepresentation. *Id.* at ¶ 185-191.

**\*7** Plaintiffs' claims in this case clearly stem from the existence of the contractual relationship between Schneider and HGIH B.V. To begin, Plaintiffs' complaint alleges that Schneider was terminated from all the positions he held with the various Hay companies by the Ownership Board of HG Bermuda, which is the entity specified in Schneider's Employment Agreement with the power to take such action. Plaintiffs request that this Court determine that the entity that actually fired Schneider did so for cause and that Schneider is not due his 2002 bonus; both of these questions are governed by the terms of the Employment Agreement signed by HGIH B.V., which delineates the acts that the Ownership Board may use to justify a termination for cause. FN6 Moreover, Plaintiffs' other demands-that this Court find that Schneider breached his fiduciary duties to the Hay U.S. Companies, and that he negligently misrepresented facts related to Boller-Bockius' severance agreement-are all claims grounded in actions Schneider was able to take due to his position as an officer and director of the Hay U.S. Companies-positions that Plaintiffs claim Schneider only obtained due to his preexisting status as CEO of HGIH B.V.

> FN6. Notably, the "for cause" provisions explicitly include actions that have a "materially harmful" effect on the Plaintiffs in this case.

It is clear that the Third Circuit's holding in *Coastal Steel* requires this Court to find that the forum selection clause at issue would encompass Plaintiffs' claims. The forum selection clause in this case is phrased slightly differently than that in *Coastal Steel,* but its purpose is identical-to guarantee that all disputes growing out of the contractual relationship between Schneider and HGIH B.V. be heard in a specified jurisdiction. As the disputes in this case grow out of the terms, conditions, and duties created and imposed by Schneider's Employment Contract, the Court finds that they falls within the scope of the forum selection cause.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 7

Slip Copy, 2005 WL 1017804

**(Cite as: Slip Copy)**

### B. Plaintiffs' Alleged Non-Party Status

The above discussion, though, presupposes that the Plaintiffs in this action are bound by the employment contract, a proposition that Plaintiffs dispute. With respect to this particular issue, the Plaintiffs in the matter find themselves in two separate factual positions: Hay Management is a party to the Cost Allocation Agreement, which makes reference to the initial Employment Agreement; Hay Acquisition, Hay Group, and Hay International are not.

### 1. Plaintiff Hay Management

The Court finds that, by virtue of its status as a party to the Cost Allocation Agreement, Plaintiff Hay Management is bound by the choice of law and forum selection clauses contained in the original employment agreement. Hay Management argues, in its opposition brief, that the Cost Allocation Agreement merely acted to lay out how costs would be allocated among members of the corporate group for tax and accounting purposes and fails to support any inference that Hay Management adopted the forum selection clause. Pls.' Opp'n at 13. The plain terms of the cost allocation agreement, however, make clear that Hay Management explicitly agreed to assume *all* of the contractual obligations contained in the original employment agreement. 9/2/04 Thees Decl., Ex. C. There is absolutely nothing in the Cost Allocation Agreement that exempts Hay Management from the choice of law provision or the forum selection clause in the original Agreement. Thus, because the claims articulated by Hay Management fall under the forum selection clause, as discussed above, and because Hay Management has agreed to abide by the provisions of the original contract between HGIH B.V. and Schneider, its claims against Schneider must be pursued in the German Courts.

### 2. Plaintiffs Hay Acquisition, Hay Group, and Hay International

**\*8** With respect to the remaining three Plaintiffs, the Court finds that they are, in fact, bound by the choice of law provisions and the forum selection clauses contained in the original employment contract between Schneider and HGIH

B.V. The Third, Seventh, and Ninth Circuits have determined that, in certain circumstances, a non-signatory to a contract may be bound by a forum-selection clause found therein. *See Coastal Steel,* 709 F.2d at 203 (holding that a third-party beneficiary of a contractual relationship is bound by the choice of law provision and forum selection clause); *Manetti-Farrow, Inc. v. Gucci Am., Inc.* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (holding that a parent company to a contracting party and individual directors are bound by forum selection clause); *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993) (holding that corporations owned and controlled by contracting party are bound by forum selection clause); *Jordan v. SEI Corp.,* 1996 WL 296540 \*6 (E.D.Pa. Jun.4, 1996) (holding that entity 100% owned by contracting party and used to further purpose of original contract bound by forum selection clause).

In the Third Circuit, a third-party will not be bound by a forum selection clause in the absence of a certain relationship to either the contract containing the forum selection clause or the parties thereto. In the closely-analogous arbitration clause context, the Third Circuit explicitly stated its willingness to hold "a variety of nonsignatories ... bound by such agreements under ordinary common law contract and agency principles." *In re Prudential Ins. Co. of Am.,* 133 F.3d 225, 229 (3d Cir.1998) (citing *Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923, 938 (3d Cir.1985), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1112 (3d Cir.1993)). In a situation more directly akin to the case at hand, in *Coastal Steel,* the Third Circuit found that a forum selection clause was binding on a third-party beneficiary to a contract, as the non-signatory third-party beneficiary was so "closely related" to the dispute that it was "foreseeable" that it would be bound. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir.). The Court noted that such a holding was consistent with the general reluctance of courts to interfere with freely negotiated contracts and stated that to find otherwise would be "inconsistent with the law of contracts, which has long recognized that third party-beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable." *Id.* Schneider relies on *Coastal Steel* to argue that the Hay U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                          Page 8
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

Companies should be bound by the forum selection clause in this instance as they were third party beneficiaries to the Employment' Agreement.

The question for the Court, then, is whether the Hay U.S. Companies are third-party beneficiaries to the Employment Agreement. Under Pennsylvania law, there are two tests for third party beneficiary status. First, "a party becomes a third party beneficiary ... where both parties to the contract express an intention to benefit the third party in the contract itself." *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 150 (Pa.1992). Second, a party not named in the contract may be classified as a third-party beneficiary where "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 150-51.

**\*9** The Court finds that the application of the second test articulated in *Scarpitti* leads to the conclusion that the Hay U.S. Companies enjoy third-party beneficiary status under the Employment Contract. Plaintiffs are correct to note that there is nothing in the Employment Agreement that required Schneider to assume the Presidency of the Hay U.S. Companies. Pls.' Opp'n at 9. The Agreement, however, does provide that Schneider will "serve as a Member of the Board of Directors or other governing body of each member of the Affiliated Companies," indicating that the parties intended that Schneider serve the Hay companies in a variety of capacities, not solely as CEO of HGIH B.V. Thus, the contract created the right of the Hay U.S. Companies to benefit from Schneider's services as a high-ranking executive. The contract also created, as detailed above, the right of the Hay U.S. Companies to enjoy these services without malfeasance on the part of Schneider. Specifically, the parties (1) drafted a definition for termination taken for "just and reasonable cause" to include offenses against the Hay U.S. Companies and (2) included language that limited Schneider's ability to compete with the Hay U.S. Companies by misappropriating their trade secrets and confidential information.

Plaintiffs' claims that Schneider's employment as President of those entities arose independently of his position at HGIH B.V. is belied by the fact that Schneider accepted absolutely no additional compensation for taking on those positions nor assented to any other change in his existing Employment Agreement. This indicates to the Court that the parties understood from the inception of his employment as HGIH B.V. CEO that he would take on some governance functions at the Hay subsidiaries as part of his existing Employment Agreement with HGIH B.V. and pursuant to the terms contained therein.

Moreover, using the language of the Third Circuit in *Coastal Steel,* it should have been perfectly "foreseeable" by the Hay U.S. Companies that any issues arising out of Schneider's employment as a high-level executive in the Hay conglomerate of entities would be governed by his Employment Agreement with HGIH B.V. This is especially so because the Employment Agreement was signed by Chris Matthews, who was not only the Chairman of the Board of HGIH B.V. but the Chairman of the Board of all the Hay U.S. Companies as well. Moreover, the Employment Agreement's provides for Schneider's termination for acts of corporate malfeasance taken against the Hay U.S. Companies. As the Employment Agreement further provides that the resolution of any legal dispute arising out of the contract shall take place in Germany, it can only be concluded that any contest over whether Schneider was terminated for cause for acts of malfeasance against the Hay U.S. Companies would have to be litigated in Germany. Given this combination of circumstances, the Court finds that it should have been perfectly foreseeable that the Hay U.S. Companies might have to litigate in the German courts at the time Chris Matthews, the head of the Hay U.S. Companies, signed the Employment Agreement.

**\*10** Given the above, the Court finds that the Employment Agreement, when read as a whole, indicates that the Schneider and HGIH B.V. intended to delineate the conditions of and duties arising out of Schneider's new employment relationship with HGIH B.V. *and* the "Affiliated Group," which includes the Hay U.S. Companies. It is clear that the parties understood that Schneider's employment with the Hay Companies would

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

include positions at both parent and subsidiary level, and the parties therefore took steps in drafting the contract to benefit and protect the subsidiaries. As the Court finds that the Plaintiffs in this matter are third-party beneficiaries to the Employment Agreement, it finds under the holding in *Coastal Steel* that it is proper for the non-signatory Plaintiffs in this case to be considered bound by the forum selection clause.

### 3. Dismissal Without Prejudice

For the reasons stated above, the Court will enforce the forum selection clause contained in Schneider's Employment Agreement against all Plaintiffs. The Court notes, however, that the existence of a forum selection clause does not oust a court of subject matter jurisdiction. The *Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).* The Hay U.S. Companies stress in their pleadings that they have a motion to dismiss pending in the German courts and that a dismissal in this Court followed by a subsequent dismissal in that forum would leave Plaintiffs without a legal avenue to pursue their claims against Schneider. The Court is mindful of this situation and reiterates that its refusal to entertain the instant action is based on its belief that, though it has jurisdiction, it should decline to exercise it at this time. Should the German courts decline to exercise their jurisdiction over these claims at some later date, Plaintiffs should certainly continue to have access to the courts of the United States in order to have the merits of their claims fully and fairly considered. Therefore, Plaintiffs' claims against Schneider shall be dismissed without prejudice.

### III. INTERNATIONAL COMITY

Both Defendants Schneider and Boller-Bockius contend that this Court should dismiss or stay the present action in favor of the first-filed, pending, and parallel litigation in Germany in which they are the named plaintiffs. As the Court determined above that the Plaintiffs' claims against Schneider should be dismissed due to the forum selection clause in his Employment Agreement, it will analyze the comity arguments as they apply to Boller-Bockius only. FN7 "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases

touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the So. Dist. of Iowa, 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 96 L.Ed.2d 461 (U.S.1987).* FN8 It permits the "recognition of foreign proceedings to the extent that such proceedings are determined to be orderly, fair and not detrimental to the nation's interests." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 165 B.R. 379, 384 (S.D.N.Y.1994).*

> FN7. Though the Court will not fully analyze Schneider's claim that international comity would require a stay or dismissal of the instant claims against him, the Court notes that its preliminary review of the applicable law and facts reveals that his litigation in Germany is parallel to that before this Court and that application of the *Paraschos* factors would likely lead to a stay or dismissal of this action in favor of that taking place in the German court.

> FN8. Because this is a diversity case, it is possible that Pennsylvania law would apply to the substantive issues of comity. Because the parties do not address this in their briefs, the Court will apply well-settled Third Circuit precedent. *See Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, 44 F.3d 187, 191 n. 4 (3d Cir.1994).*

*11 Principles of international comity permit a district court, in its discretion, to dismiss or stay a case over which it has subject matter jurisdiction in deference to the laws and interests of another foreign country. *Lexington Ins. Co. v. Forrest, 263 F.Supp.2d 986, 1002 (E.D.Pa.2003)* ; *Paraschos v. YBM Magnex Int'l, Inc., 130 F.Supp.2d 642, 645 (E.D.Pa.2000).* The Third Circuit has stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, 44 F.3d 187, 191 (3d Cir.1994) cited in Paraschos, 130 F.Supp.2d at 645.* Comity, therefore, is not extended to foreign proceedings where doing so would be contrary to the public policy of the United States. *Philadelphia Gear Corp., 44 F.3d at 191; Paraschos, 130 F.Supp.2d at 645* (citation omitted). Courts

Slip Copy                                                                                    Page 10
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

have also declined to extend comity where the suits at issue are neither duplicative nor parallel. *See, e.g., Lexington Ins. Co., 263 F.Supp.2d at 1002.*

A threshold question for this Court, then, is whether the instant action is "parallel" to those brought by Schneider and Boller-Bockius in Germany. An action is parallel to another action where "substantially all the same parties are contemporaneously litigating substantially the same issues in another forum." *Paraschos v. YBM Magnex Int'l, Inc., 2000 WL 325945 at \*5 (E.D.Pa. Mar.29, 2000)* (citation omitted). While the cases are not required to be identical, "the issues must be sufficiently similar, in that there must be a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.' " *Id.* (citing *Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir.1985)*).

The Court finds that the cases are parallel. First, the parties are certainly "substantially similar." In her German court action, Boller-Bockius is seeking payment under the benefit agreements into which she and Schneider entered in 2003. According to the attorney representing Plaintiffs in the German court action, she has added the Hay U.S. Companies in her claims for damages. 2/17/05 Schuster Decl. at ¶ 8. Boller-Bockius has also joined Schneider's suit, which names all the Plaintiffs in this case as defendants. FN9

> FN9. While the claims of Boller-Bockius have been severed from Schneider's claims by the German Labor Court, there is nothing in the record that indicates that her part of his suit against Plaintiffs is not still active in the German Labor Court.

Second, the issues being litigated are substantially the same in both forums. Plaintiffs' German counsel has defined the issues in that case to encompass whether or not those agreements were duly authorized under German corporate law and whether Boller-Bockius and Schneider negotiated these contracts at arm's length. *Id.* While Plaintiffs argue that these issues are completely unrelated to those before this Court, the Court finds the opposite to be true. In the instant action, Plaintiffs allege that Boller-Bockius and

Schneider inappropriately and clandestinely entered into these severance agreements and that their concealment from the Hay executives and the Hay Germany auditors caused financial harm to the Hay U.S. Companies. A review of Hay Germany's defenses in the German action reveals that the German court is being asked to determine factual and legal issues related to whether Boller-Bockius is due payment under those severance agreements. These requested determinations include whether any of the alleged wrongdoings in this case would prevent her from obtaining payments under those agreements. As the Plaintiffs in this case have been joined to the case against Hay Germany, this Court expects that they will pursue the same defenses with vigor. While the exact legal claims pursued in this Court by Plaintiffs and the defenses asserted in Germany are not identical, they need not be. *See Paraschos, 2000 WL 325945 at \*5.* The Court thus finds the actions parallel for purposes of this international comity analysis.

**\*12** Once a district court has found that litigation is parallel to that taking place in the courts of a foreign sovereign, it must look for "extraordinary circumstances" that necessitate dismissal, which include (1) the desirability of avoiding duplicative litigation, (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim. *Id.* In the absence of such extraordinary circumstances, the district court should retain jurisdiction over the action. *Id.* Though the Third Circuit has not yet spoken on what standard governs the issuance of a stay where parallel litigation is pending in a foreign jurisdiction, other courts have found that the factors determining the appropriateness of a stay are "virtually identical" to those determining that of a dismissal. *See Lexington Ins. Co. v. Forrest, 263 F.Supp.2d 986, 1005 (E.D.Pa.2003)* (citing *Nat'l Union First Ins. Co. of Pittsburgh v. Kozeny, 115 F.Supp.2d 1243 (D.Colo.2000)*).

In their motion, Defendants make much of the "first filed" rule, under which "comity counsels that priority generally goes to the suit filed first." *Ronar, Inc. v. Wallace, 649 F.Supp. 310, 318 (S.D.N.Y.1986).* The Third Circuit has defined the "first filed rule" as providing that, where similar

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                          Page 11
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

cases have been filed in different federal district courts, "it (is) the duty of the court first obtaining jurisdiction to enjoin the prosecution of the subsequent proceedings in the other court." *Triangle Conduit & Cable Co., Inc. v. Nat'l Elec. Prods. Corp.,* 125, F.2d 1008, 1009 (3d Cir.), *cert denied,* 316 U.S. 676 (1942). The Court first notes that Defendants have not asked this Court to enjoin the German proceedings, a situation in which this rule would be applicable. Moreover, the Third Circuit has declined to apply this rule where the two courts involved are not courts of the same sovereignty, as such an action would "involve[ ] delicate questions of comity" and could be "taken only with care and great restraint." *Compagnie des Bauxites de Guinea v. Ins. Co. of North Am.,* 651 F.2d 877, 887 n. 10 (3d Cir.1981) (citing *Canadian Filters (Harwich), Ltd. v. Lear-Siegler, Inc.,* 412 F.2d 577, 578 (1st Cir.1969). The Court will not consider the "first filed" rule to apply in this case such that it mandates automatic dismissal or a stay in favor of the action pending in Germany, but will instead treat the order of filing and subsequent progression of the German and instant cases as relevant under the above-cited five factor analysis articulated in *Paraschos.*

Plaintiffs correctly note in their opposition memorandum that neither a conflict of law problem nor the earlier filing of a foreign action is *per se* an extraordinary circumstance requiring dismissal or a stay under the *Paraschos* standard. The Court believes that the combination of circumstances in the instant case, however, is so extraordinary as to require the stay of the current action, pending resolution of the German court litigation. The Court will exercise its discretion to stay, rather than dismiss, the instant litigation in order to facilitate the resolution of any claims against Boller-Bockius that remain at the conclusion of the litigation in Germany, particularly Plaintiffs' claim that she be declared joint and severally liable for any damages owed them by Schneider and Plaintiffs' civil conspiracy claim.

**\*13** Principles of judicial economy, especially the need to avoid duplicative and piecemeal litigation, mandate a stay of the current action. *See, e.g., Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 860, 685 (7th Cir1987). To begin, at least two of Plaintiffs' claims against Boller-Bockius are dependant upon Plaintiffs' claims against Schneider, which

the Court has ruled must proceed in the German courts. First, Plaintiff requests a declaratory judgment that Boller-Bockius is joint and severally liable for Schneider's liability to Plaintiffs. Pls.' Compl. at ¶ 199. As the Court has determined that the existence of that liability should be litigated in the German courts, this Court cannot possibly render such a judgment until Schneider's underlying liability is determined at that forum. Second, Plaintiffs have filed a claim of civil conspiracy against Boller-Bockius, along with Schneider and Bhula. *Id.* at ¶¶ 234-244. As Plaintiffs point out in their memorandum in opposition to the instant motion, adjudicating the conspiracy claims against Boller-Bockius (and Defendant Bhula) while the claims against Schneider, whom they describe as the "lead conspirator and central witness" are being litigated in Germany would be "bizarre." Pls.' Opp'n at 13.

Plaintiffs also allege that Boller-Bockius breached her fiduciary and legal duties when she assisted Schneider in obtaining an improper 2002 bonus payment and in investigating Mr. Kaye; when she accepted improper compensation and benefits; when she failed to inform the Hay Germany auditors of her severance agreement; and when she falsely certified the Hay Germany financial results. Pls.' Compl. at ¶¶ 200-211. Plaintiffs further allege that Boller-Bockius engaged in a negligent and intentional misrepresentation by failing to inform the Hay Germany auditors of the severance agreement and subsequently certifying incorrect Hay Germany financial results. *Id.* at ¶¶ 212-219. As discussed above, the German court is being asked by the parties in the German litigation to determine whether these actions affect the validity of Boller-Bockius' severance agreement and her ability to be compensated under it. Moreover, Plaintiffs will be asking the German courts to making findings of fact and law regarding Schneider's involvement in these identical events. To allow both the German litigation and the claims against Boller-Bockius before this Court to proceed in tandem would be to expose almost all of the parties to the risk of inconsistent and potentially unenforceable judgments.

The Court also finds that the German courts' interest in hearing the instant dispute between Boller-Bockius and the Hay Companies is strong. Boller-Bockius is a German

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

citizen and Plaintiffs have not alleged that she ever held a position at any company but Hay Germany, an entity organized under German laws. Moreover, all of the alleged wrongdoings that Plaintiffs attribute to Boller-Bockius took place in Germany-the use of Hay Germany funds to obtain Schneider's secret bonus payment, the authorization of payments to Schneider's legal team, the acceptance of salary, benefits, and severance agreements not commensurate with her experience, the concealment of her severance agreement, and the false certification of the Hay Germany 2003 Fiscal Year audit. Pls.' Compl. at ¶¶ 50, 54, 63, 127, 129, 136, 142. As stated above, Plaintiffs claim that the primary effects of these wrongdoings was felt by Hay Germany prior to those effects trickling down to the remainder of the Hay companies as a result of their worldwide consolidated financial statements. Given such circumstances, the Court believes that a stay of the instant action will most appropriately place matters concerning the conduct of a German citizen alleged to have perpetrated a direct fraud upon a German business entity before the German courts.

**\*14** In addition, the German courts seem well on their way to resolving the Boller-Bockius litigation. A hearing on the merits of her claims against Hay Germany and Plaintiffs is scheduled for May 11, 2005. 3/4/05 Thees Decl. at ¶ 7. This Court has not yet held a Rule 16 conference with the parties nor has it issued a scheduling order to guide the motion and discovery process in this case. The Court believes that the procedural posture of the two cases, in addition to the more substantive concerns expressed above, further militates in favor of a stay of the instant matter.

Lastly, there is no evidence before the Court that would indicate that a dismissal or stay of this action would be contrary or prejudicial to the interests and public policy of the United States. While the United States does generally have an interest in protecting the rights of the business entities incorporated within its borders, the claims against Boller-Bockius in this case involve harms that were done primarily to a German business entity. Plaintiffs have not offered any evidence to the Court that would compel a finding that this Court's continued jurisdiction over its Boller-Bockius claims is necessary to protect the interests of

this country.

### IV. CLAIMS AGAINST DEFENDANT SURESH BHULA

Defendant Suresh Bhula has not moved for dismissal or a stay of the instant action. Nevertheless, the Court finds that the entirety of this action, including the claims against Bhula, should be stayed pending resolution of Schneider and Boller-Bockius' claims by the German courts. Plaintiffs articulate two claims against Bhula in their complaint: (1) a civil conspiracy claim, which also names Schneider and Boller-Bockius as defendants and (2) a claim for breach of fiduciary and legal duties arising from the various forms of assistance Bhula allegedly provided to Schneider. The Court will not detail the specific allegations underlying Plaintiffs' claims against Bhula, but notes that many, though not all, of the actions he has been accused of taking at Schneider's behest are all issue in Schneider and Boller-Bockius' German litigation. The same concerns for judicial efficiency that animate the Court's finding that the claims against Boller-Bockius should be stayed pending resolution of all parallel German litigation compel the Court to similarly stay Plaintiffs' claims against Bhula. The entirety of the instant action, therefore, will be stayed until the German courts resolve the outstanding litigation between Schneider, Boller-Bockius, and the various Hay entities.

### V. CONCLUSION

For all the forgoing reasons, Defendant Schneider's Motion to Dismiss is GRANTED with respect to all Plaintiffs, as they are required to abide by the forum selection clause in Schneider's Employment Agreement. The Court will dismiss Plaintiffs' claims without prejudice, in order to preserve their ability to be heard on the merits should the German Courts decline jurisdiction over their claims despite the existence of the forum selection clause.

**\*15** Defendant Boller-Bockius' Motion to Stay is granted with respect to all Plaintiffs, as the Court finds that to do so is proper under the doctrine of international comity. Moreover, the Court will stay the instant action in its totality, including the claims against Defendant Suresh Bhula, in order to prevent the confusion and waste of judicial resources that would result from this Court and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 13
Slip Copy, 2005 WL 1017804
**(Cite as: Slip Copy)**

German court's consideration of the same factual and legal questions.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of April, 2005, presently before the Court is the Motion to Dismiss or to Stay filed by Defendants Bernd Schneider and Lucie Boller-Bockius (Doc. No. 19). It is hereby ORDERED that:

   1. Defendant Schneider's Motion to Dismiss is GRANTED with respect to all Plaintiffs.

   2. Plaintiffs' claims against Schneider shall be dismissed without prejudice.

   3. Defendant Boller-Bockius' Motion to Stay is GRANTED with respect to all Plaintiffs.

   4. The present action shall be STAYED in its totality until the German Courts conclude the parallel, pending litigation involving both Defendants Schneider and Boller-Bockius. This stay necessarily includes Plaintiffs' claims against Defendant Suresh Bhula.

E.D.Pa.,2005.
Hay Acquisition Co., I, Inc. v. Schneider
Slip Copy, 2005 WL 1017804

Briefs and Other Related Documents (Back to top)

• 2:04cv01236 (Docket) (Mar. 22, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Slip Copy                                                                                      Page 1

Slip Copy, 2005 WL 441077
**(Cite as: Slip Copy)**

Slip Copy, 2005 WL 441077
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
TRILEGIANT LOYALTY SOLUTIONS, INC. Plaintiff,
v.
MARITZ, INC., Defendant.
**No. Civ.A. 04-360 JJF.**

Feb. 15, 2005.

Jack B. Blumenfeld , and Rodger D. Smith II , of Morris, Nichols, Arsht & Tunnell , Wilmington, Delaware, Steven Lieberman , Sharon L. Davis , and R. Elizabeth Brenner , of Rothwell, Figg, Ernst & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz , and Patricia Smink Rogowski , of Connolly Bove Lodge & Hutz LLP , Wilmington, Delaware, J. Bennett Clark , Jennifer E. Hoekel , and Marc W. Vander Tuig , of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is the Motion To Transfer Under 28 U .S .C. § 1404(a) (D.I.13) filed by Defendant Maritz, Inc. ("Maritz"). For the reasons discussed, Maritz's Motion To Transfer will be denied.

BACKGROUND

Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") initiated this lawsuit in this Court alleging patent infringement arising from Defendant Maritz's development and operation of online incentive programs. Trilegiant is incorporated in Delaware, and has its principal place of business in Richmond, Virginia. Maritz is a Missouri corporation with its principal place of business in Fenton, Missouri.

PARTIES' CONTENTIONS

By its motion, Maritz contends that a transfer to the Eastern District of Missouri is appropriate in this case pursuant to

the factors identified in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 (3d Cir.1995). Maritz contends that both the private and public interests favor a transfer to Missouri. With regard to the private interests, Maritz contends that none of the parties has a presence in Delaware, and that transfer to the Eastern District of Missouri would not significantly change the burden Trilegiant already bears by virtue of choosing Delaware. Maritz further contends that party witnesses and potential non-party witnesses appear to be located far from Delaware. Maritz also contends that accused activities likely took place in Missouri and that relevant documents are not likely to be located in Delaware. With regard to the public interests, Maritz contends that none of the interests involved in this lawsuit are unique to Delaware and that Missouri is the more practical venue for this lawsuit. Maritz did not address the following factors: 1) likelihood of an enforcement problem; 2) administrative difficulty in the two fora resulting from court congestion, and 3) familiarity with applicable state law.

In response, Trilegiant claims that its choice to bring suit in Delaware is entitled to substantial deference because Trilegiant chose to litigate in Delaware for several rational and legitimate reasons. Trilegiant contends that it sought the benefits of Delaware law by incorporation in this state. Trilegiant further contends that Magistrate Thyne mediated a previous case that involved two of the three patents in this suit. With regard to the convenience of the parties and witnesses, Trilegiant contends that Delaware is more convenient than Missouri for it and the inventor, Mr. Storey. Trilegiant stresses the Delaware Court has subpoena power over potential third-party Delaware corporations that would make access to documents easier in Delaware than in Missouri.

DISCUSSION

I. Legal Standard

Maritz moves for a transfer to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1404(a) is the general transfer statute that provides, "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                         Page 2
Slip Copy, 2005 WL 441077
**(Cite as: Slip Copy)**

brought." Courts in the Third Circuit apply the public and private interest factors outlined in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 (3d Cir.1995), to decide if they should order a transfer. The private interests outlined in *Jumara* include: (1) Plaintiff's forum preference; (2) Defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records-but only to the extent that the documents may be unavailable for trial in one of the fora. *Id.* at 879 (citations omitted).

**\*2** The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.*

Maritz bears the burden of establishing the need for transfer. *Id.*

II. Analysis

A. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* C.A. No. 01-309 JJF, 2002 WL 500920 at \*2 (D.Del. March 26, 2002).

Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Trilegiant's decision to file the instant action in Delaware. Trilegiant is a Delaware corporation. As the Court observed

in *Stratos,* a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at \*2. Therefore, to prevail on its Motion, Maritz must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

B. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and Maritz has its principal place of business in Missouri, I conclude that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri.

First, I conclude that the convenience of the parties does not favor venue in Missouri over Delaware. Neither party would be unduly burdened by litigating this action in Delaware. *See Pennwalt Corp. v. Purex Inds., Inc.,* 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). Maritz's annual sales approximate $1.4 billion (D.I. 16 App. D) and Trilgiant chose to litigate in Delaware. Therefore, I conclude that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt,* 659 F.Supp. at 290.

Next, although Maritz contends that the books and records necessary to litigate this action are in Missouri, Maritz does not contend that they could not be produced or would be unavailable in Delaware. Therefore, I do not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara,* 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum").

**\*3** Further, party witnesses or witnesses who are employed by Maritz or Trilegiant carry no weight in the "balance of convenience" analysis since each party is able to procure the attendance of its own employees. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998). With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey, would

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 3
Slip Copy, 2005 WL 441077
**(Cite as: Slip Copy)**

be unwilling to testify on its behalf. Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware.

Finally, although I appreciate the additional expense that Maritz may incur as a result of litigating in Delaware, I find that this hardship is substantially outweighed by the private interest considerations.

   C. Whether The Public Interests Strongly Favor Transfer

I also conclude that the public interests do not weigh strongly in favor of a transfer to Missouri. Maritz did not argue that the congestion of the Delaware courts strongly favors a transfer. Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos*, rights relating to patents are not local or state matters. *Stratos*, 2002 WL 500920 at *2. Therefore, patent rights do not alone give rise to a local controversy or implicate local interests. *Id.* Accordingly, I conclude that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

In addition, I find that the *Jumara* factor that requires examining the difficulty in enforcing a judgment, were Trilegiant to prevail in the Delaware litigation, does not weigh in favor or against a transfer because there has been no dispute in either state over in personam jurisdiction.

                        CONCLUSION

Based upon Trilegiant's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, I conclude that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, I will deny Maritz's Motion.

An appropriate Order will be entered.

                          *ORDER*

At Wilmington, this 15th day of February 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Transfer (D.I.13) filed by Defendant is *DENIED*.

D.Del.,2005.
Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.
Slip Copy, 2005 WL 441077

Briefs and Other Related Documents (Back to top)

• 1:04CV00360 (Docket) (Jun. 08, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

LEXSEE 2003 US DIST LEXIS 2564

**ALLERGAN, INC. and ALLERGAN SALES, LLC, Plaintiffs, v. ALCON LABORATORIES, INC., ALCON RESEARCH LTD., ALCON INC., and BAUSCH & LOMB, INC., Defendants.**

**C.A. No. 02–1682–GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 2564*

**February 25, 2003, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer this case granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For ALLERGAN INC., ALLERGAN SALES LLC, plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For ALCON LABORATORIES, INCORPORATED, ALCON RESEARCH LTD., ALCON INC., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAUSCH & LOMB INC., defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above–captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B&L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B&L's motion to transfer this action to the Central District [*2] of California, Southern Division. For the reasons that follow, the court will grant this motion.

### II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B&L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non–infringement, which the court granted on May 8, 2002. *See Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219 (C.D. Cal. 2002).* B&L subsequently filed a similar motion, which was also granted. [*3]

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

### III. DISCUSSION

2003 U.S. Dist. LEXIS 2564, *3

Alcon and B&L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to *28 U.S.C. § 1404*(a). Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." *28 U.S.C. § 1404*(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* [*4]

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

    n1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

[*5]

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and [*6] the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

## III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

    1. The defendants' motion to transfer this case (D.I. 6) is GRANTED.

    2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Dated: February 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT I

1 of 1 DOCUMENT

**BAYER BIOSCIENCE N.V., Plaintiff, v. MONSANTO COMPANY, Defendant.**

**C.A. No. 03–023 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 4594*

**March 25, 2003, Decided**

**DISPOSITION:** [*1] Motion to transfer case granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For BAYER BIOSCIENCE N V, plaintiff: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For MONSANTO COMPANY, defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For MONSANTO COMPANY, counter–claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAYER BIOSCIENCE N V, counter–defendant: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to *28 U.S.C. § 1404(a)*. For the following reasons, the court will grant this motion. [*2]

**II. BACKGROUND**

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents–in–suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

**III. DISCUSSION**

**A. The "First–Filed" Rule**

Where two patent lawsuits involving the same claims are filed in [*3] different jurisdictions, the Federal Circuit requires that the first–filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993)*. The first–filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937*.

Applying the first–filed rule, Bayer now argues that it would be improper for the court to transfer this first–filed action to the Eastern District of Missouri. While the court does not dispute that this action is first–filed, albeit only by several hours, for the following reasons, the court

2003 U.S. Dist. LEXIS 4594, *3

concludes that the *1404(a)* factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id. at 937-38* (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

**B. *Section 1404(a)***

*Section 1404(a)* provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer [*4] this action to "any other district where it might have been brought." *28 U.S.C. § 1404(a)*. Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. n1 Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

> n1 As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" [*5] embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879*. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. n2 *Id. at 879*. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

> n2 The first three of these private interest col-

lapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998)*.

[*6]

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the ongoing relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

**IV. CONCLUSION** [*7]

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. Bayer's Motion for Leave to File a Sur-Reply (D.I. 10) is GRANTED as unopposed.

> 2. Monsanto's Motion to Transfer this case (D.I. 5) is GRANTED.

> 3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Dated: March 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT J

LEXSEE 2000 U.S. DIST. LEXIS 22077

**JOSEPH MEMMINGER, Plaintiff, v. INFOCURE CORPORATION, et al., Defendants.**

**Civil Action No. 00–707–JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 22077*

**November 14, 2000, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** Marc H. Snyder, Esquire, FRANK & ROSEN, New Castle, Delaware, for Plaintiff.

Alan L. Frank, Esquire, and Samantha A. Millrood, Esquire, FRANK & ROSEN, Philadelphia, Pennsylvania, for Plaintiff.

John H. Newcomer, Jr., Esquire, and Francis P. Newell, Esquire, MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP, Newark, Delaware, for InfoCure Corporation, Defendant.

Michael R. Smith, Esquire, David L. Green, Esquire, Of Counsel, KING & SPALDING, Atlanta, Georgia, for InfoCure Corporation, Defendant.

Keith E. Donovan, Esquire, SWARTZ, CAMPBELL & DETWEILER, Wilmington, Delaware, for Morris, Manning & Martin, LLP, Defendant.

Jeffrey B. McCarron, Esquire, and Richard J. Wall, Esquire, SWARTZ, CAMPBELL & DETWEILER, Philadelphia, Pennsylvania, for Morris, Manning & Martin, LLP, Defendant.

**JUDGES:** Joseph J. Farnan, Jr., District Judge.

**OPINIONBY:** Joseph J. Farnan, Jr.

**OPINION:**

**MEMORANDUM OPINION**

November 14, 2000
Wilmington, Delaware

Joseph J. Farnan, Jr., District Judge.

Presently before [*2] the Court is Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia Pursuant to *28 U.S.C. § 1404*(a) (D.I. 15). For the reasons stated below, the Court will grant Defendants' motion.

**BACKGROUND**

Plaintiff Joseph Memminger ("Plaintiff") was the President and principal shareholder of Scientific Data Management, Inc. ("SDM"), a Michigan corporation involved in developing, marketing, and supporting computer software customized specifically to assist in the management of physicians' offices. (D.I. 24 at 2). Plaintiff is a resident of Michigan. (D.I. 16 at 2). The Defendants include InfoCure Corporation ("InfoCure") and Morris, Manning & Martin ("MM&M") (hereinafter known collectively as "Defendants"). InfoCure is a Delaware corporation involved with healthcare software, with its principal place of business in Atlanta, Georgia. (D.I. 16 at 2). MM&M is a law firm also located in Atlanta, Georgia. (D.I. 16 at 2). In the Spring of 1999, InfoCure approached Plaintiff regarding InfoCure's interest in acquiring SDM. (D.I. 24 at 2). During this initial encounter, and at all times relevant to this litigation, MM&M served [*3] as legal counsel for InfoCure. n1 (D.I. 24 at 2).

> n1 The MM&M lawyers involved in these negotiations included Richard Haury, Bradley T. Pruitt, and Duncan Spears. (D.I. 24 at 3).

Defendants negotiated with Plaintiff regarding this potential transaction for several months. (D.I. 16 at 1). These negotiations eventually culminated with the parties signing a Letter of Intent on July 27, 1999. (D.I. 24 at 3). The Letter of Intent was an agreement between Plaintiff, SDM, and InfoCure, in which InfoCure would acquire SDM in a stock–for–stock, reverse triangular merger. (D.I. 24 at 3). The relevant terms of this agreement pro-

vided that InfoCure would acquire and merge SDM into a wholly-owned subsidiary of InfoCure, and in exchange, Plaintiff would receive a number of shares of InfoCure's stock, the exact number of which was to be determined by a formula set forth in the Letter of Intent. (D.I. 24 at 3).

After the parties entered into the Letter of Intent, a period of due diligence commenced during which a "Registration [*4] Rights Agreement" was entered into between Plaintiff and InfoCure. (D.I. 24 at 4). This Registration Rights Agreement detailed the process by which Plaintiff was to obtain registration of his InfoCure shares, which was important to Plaintiff because he planned on selling most or all of these shares in early 2000. (D.I. 24 at 4). Plaintiff alleges that, upon representations from Defendants promising that Plaintiff's InfoCure shares would be available for public sale by mid–November of 1999, the transaction was closed on August 31, 1999, in MM&M's offices in Atlanta. (D.I. 24 at 4; D.I. 16 at 2).

The relationship between Plaintiff and Defendants deteriorated during the ensuing months. Plaintiff alleges that only one–half of his shares were registered on time, in October of 1999. (D.I. 24 at 6). By December of 1999, Plaintiff had purchased options on these shares of stock. (D.I. 24 at 8). These options required Plaintiff to sell the shares at a set price; but, if the stock price subsequently increased or decreased, Plaintiff would still be required to sell the shares at that set price. (D.I. 24 at 8). The price of the shares soon started to increase, and Plaintiff sought to "unwind" [*5] his position in the options market by repurchasing the options. (D.I. 24 at 8). Plaintiff's effort to "unwind" his position was thwarted, however, because his shares had been placed on "legal hold" and could not be negotiated. (D.I. 24 at 8). Plaintiff alleges that his inability to sell the shares caused him significant monetary loss. n2 (D.I. 24 at 8). Plaintiff further contends that Defendants informed Plaintiff that his unregistered shares – which constituted one–half of all of his InfoCure shares – could not be registered due to a "blackout window" caused by a "significant event." (D.I. 24 at 9). As a result, Plaintiff was forced to retain ownership of these shares for longer than he desired. (D.I. 24 at 9). Meanwhile, InfoCure's stock closed at an all–time high of $36.625 per share on January 24, 2000. (D.I. 24 at 9).

> n2 Plaintiff's trading account had a negative balance of over $1,300,000 at this time. (D.I. 24 at 8).

During the ensuing months, Plaintiff was repeatedly told by Defendants that his unregistered [*6] shares still could not be registered. (D.I. 24 at 9). Not until May 10, 2000, did InfoCure's registration statement covering Plaintiff's shares become effective, thus enabling Plaintiff to sell them. (D.I. 24 at 9). At this point, however, InfoCure's stock price had dropped below $10 per share, again causing Plaintiff to suffer a significant monetary loss. (D.I. 24 at 9). Plaintiff subsequently filed this action in the United States District Court for the District of Delaware, alleging: (1) negligence, (2) conversion and trover, (3) breach of contract, (4) equitable fraud, (5) breach of fiduciary duty, and (6) negligent misrepresentation. (D.I. 1; D.I. 3). Defendants subsequently filed this motion, pursuant to *28 U.S.C. § 1404*(a), seeking transfer to the United States District Court for the Northern District of Georgia. (D.I. 15).

## DISCUSSION

### A. Legal Standard for Transfer of Venue Under *28 U.S.C. § 1404*(a)

Under *28 U.S.C. § 1404*(a), **"for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it** [*7] **might have been brought."** *28 U.S.C. § 1404*(a). **Since both parties agree that Plaintiff could have brought this action in the Northern District of Georgia, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer.**

**The Court of Appeals for the Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue.** *Jumara v. State Farm Ins. Co.*, **55 F.3d 873, 879–80 (3d Cir. 1995). These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that these books and records could not be produced in a certain forum.** *Id. at 879.* **The factors also include six public interests for courts to consider: (1) the** [*8] **enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.** *Id. at 879–80.* **District courts must balance all of the relevant factors and determine whether a transfer of venue would**

**best serve all of the aforementioned interests.** *Id. at 883.* **The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See** *Continental Cas. Co. v. American Home Assurance Co.***, 61 F. Supp. 2d 128, 131 (D. Del. 1999).**

**B. Analysis of the Factors**

1. Plaintiff's Choice of Forum; Defendants' Preference; and Whether the Claim Arose Elsewhere

Although Jumara provides that the plaintiff's choice of forum, the defendant's preference, and whether or not the claim [*9] arose elsewhere, are separate factors for district courts to consider in deciding whether or not to transfer venue, these factors are afforded substantial weight during consideration of several other Jumara factors. Thus, in order to avoid considering these factors twice, the Court will defer consideration of them until later in the analysis. See *Continental, 61 F. Supp. 2d at 131 n.7* (holding that these three factors are subsumed in Jumara's other factors); *Motorola Inc. v. PC-Tel, Inc., 58 F. Supp. 2d 349, 357 n.10 (D. Del. 1999)* (same); *Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197 (D. Del. 1998)* (same).

However, the Court will initially address the "home turf" rule even though it is traditionally discussed when considering the weight that a plaintiff's choice of forum deserves. The "home turf" rule requires a plaintiff's choice of forum to be given even greater weight than usual if the chosen forum is "the forum closest to a plaintiff's principal place of business in which personal service over the defendant can be obtained." *Sunds Defibrator, Inc. v. Durametal Corp., 1997 U.S. Dist. LEXIS 1859, 1997 WL 74660, at *2 n.2 [*10] (D. Del. Jan. 31, 1997).* The Court affirms other recent opinions of this Court declaring that the "home turf" rule does not affect the amount of deference given to a plaintiff's choice of forum. See e.g., *Affymetrix, 28 F. Supp. 2d at 199.* Rather, whether or not a plaintiff has brought an action on its "home turf" is one of the many factors courts should consider when balancing the convenience of the chosen forum. See *Sunds, 1997 U.S. Dist. LEXIS 1859, 1997 WL 74660, at *2 n.2* (holding that Delaware's "home turf" rule has been subsumed by Jumara's factors). The Court therefore concludes that the "home turf" rule has retained little, if any, vitality as a separate doctrine since the Third Circuit's decision in Jumara.

2. Convenience of the Parties as Indicated by their Relative Physical and Financial Positions

Defendants concede they have the financial resources to litigate in Delaware, which is a fact that weighs against transfer. See *Motorola, 58 F. Supp. 2d at 358* (holding that large, multi-million dollar companies with national markets are not significantly burdened by having to litigate in a distant forum); *Bering Diagnostics GMBH v. Biosite Diagnostics, Inc., 1998 U.S. Dist. LEXIS 531, 1998 WL 24354,* [*11] at *5 (D. Del. Jan. 6, 1998)(same). Thus, unless Defendants can articulate "some unique or unexpected burden associated with defending this action," the convenience factor should not weigh significantly in favor of transfer. *Motorola, 58 F. Supp. 2d at 358.* Articulating such a burden is especially difficult when considering how technological advancements have minimized the difficulty of litigating matters in distant fora. See *The Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 188–89 (D. Del. 1996).* See also *Motorola, 58 F. Supp. 2d at 358 n.12* (noting that the defendants need not attend courtroom proceedings other than the trial).

Defendants reside in Atlanta, Georgia, and Plaintiff resides in Michigan. Therefore, the amount of travel necessitated by litigating in Delaware compared to litigating in Georgia is significantly increased for Defendants. While Defendants would be required to travel from Georgia to Delaware if transfer is not granted, Plaintiff concedes he will only have one extra hour of travel time if required to travel to Georgia, as opposed to Delaware, which is an amount of time the Court deems "minimal" for [*12] purposes of venue transfer analysis. See *Falco v. Alpha Affiliates, Inc., 1997 U.S. Dist. LEXIS 20122, 1997 WL 782011,* at *3 (D. Del. Dec. 10, 1997). As a result, the Court concludes that it is more convenient for the parties to litigate this matter in Georgia. n3 But, because the extra burden imposed by increased travel time is not the kind of "unique or unexpected burden" that is required for parties with substantial financial resources, the Court concludes that this added convenience weighs only slightly in favor of transfer.

> n3 The Court reaches this conclusion even though it is somewhat troubled by Defendants' assertion of inconvenience in having to litigate in Delaware, when Defendant InfoCure is incorporated in Delaware – a move presumably deemed "convenient" for purposes of being governed by the provisions of Delaware's management-friendly corporate law. (D.I. 24 at 14).

3. Convenience of the Witnesses as to their Availability at Trial

Convenience of the expected trial witnesses is the most important factor to consider [*13] when determin-

ing whether or not transfer is appropriate. See *Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 510 (D. Del. 1999).* Furthermore, the availability of "fact witnesses who possess first–hand knowledge of the events giving rise to the lawsuit" are the most important type of witnesses for purposes of venue transfer analysis. *Affymetrix, 28 F. Supp. 2d at 203.* But, because the convenience to witnesses is only relevant in how it may affect their availability for trial, only non–party witnesses need be considered because the parties are required to procure their own employees' attendance at trial. See id. The defendant, however, does not have to allege that the witnesses actually will be unavailable for trial to establish the necessary lack of "convenience." *Mentor Graphics, 77 F. Supp. 2d at 511* (noting that, if availability of a witness "cannot be guaranteed" in the present forum, this fact weighs in favor of transfer). See also *Continental, 61 F. Supp. 2d at 132, 132 n. 8* (ruling that, because five witnesses were located in the forum to which the defendant sought transfer, while [*14] the current forum only contained one witness, the convenience of witnesses factor weighed in favor of transfer).

Defendants assert that three material non–party fact witnesses are located in Georgia. No representations have been made regarding witnesses located in Delaware. Although Plaintiff points out that two of these three witnesses would be subject to Rule 30(b)(6) deposition notices, this is not the equivalent to witnesses being subject to compulsory process in this forum. See *United States v. Ismaili, 828 F.2d 153, 171 (3d Cir. 1987)* (recognizing the difference between a witness being subject to the court's subpoena power and her availability for purposes of a deposition). In view of the location in Georgia of three non–party fact witnesses, the Court concludes that this factor weighs strongly in favor of transfer.

4. Location of Books and Records

Defendants concede that, while all the books and records relevant to the case are located in Atlanta, Georgia, they would be capable of being produced if this case is tried in Delaware. (D.I. 16 at 11). Therefore, the Court concludes that this factor weighs neither for nor against transfer.

5. Enforceability of [*15] a Judgment

Both parties concede that a judgment in this District or in the Northern District of Georgia would be equally enforceable. Thus, the Court concludes this factor weighs neither for nor against transfer.

6. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

Defendants argue that, because MM&M has filed a motion to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)* (D.I. 22), this fact weighs in favor of transfer. (D.I. 16 at 17). Plaintiff responds by arguing that MM&M is clearly subject to this Court's jurisdiction and Defendants' assertions to the contrary are frivolous.

The Court has previously ruled that, without expressing any opinion on the merits of a motion to dismiss for lack of personal jurisdiction, if a transfer of venue would eliminate a jurisdictional question and thus save judicial resources, such fact weighs in favor of transfer. See *Mentor Graphics, 77 F. Supp. 2d at 512, 513 n.10.* Even if Plaintiff ultimately prevails on the jurisdictional issue, it is not clear to the Court at this time that MM&M's motion to dismiss lacks merit. n4 If MM&M's motion to dismiss [*16] has merit, a transfer of venue would avoid duplicitous litigation and save both parties substantial time and money. In these circumstances, the Court finds that the practical considerations involved in resolving this issue weigh in favor of transfer.

> n4 It is possible that an evidentiary hearing would be needed to determine the extent of MM&M's contacts with Delaware before the Court could rule on this issue.

7. The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

Defendants have submitted statistics indicating that the average length of time to trial in this District is 19 months, while the average length of time to trial in the Northern District of Georgia is 23 months. (D.I. 16). Plaintiff further observes that under Local District Court Rule 16.2, Delaware's Civil Justice Expense and Delay Reduction Plan, and the Civil Justice Reform Act of 1990, trials in this District are supposed to commence within 12 to 18 months after a complaint is filed. (D.I. 24 at 19). The Court [*17] has previously ruled that a two month average difference in respective times to trial among the two fora weighs against transfer "only slightly." *Affymetrix, 28 F. Supp. 2d at 206.* The Court has previously found that a nine month differential was only minimally significant due to the fact that the duration of time to trial varies greatly among different types of cases and can be affected by many different factors. *Mentor Graphics, 77 F. Supp. 2d at 513–14.* The Court finds the data in support of each side's argument demonstrates that this factor is insignificant in the Court's balancing, and therefore, the Court concludes this factor has no impact on the transfer analysis.

8. Local Interest in Deciding Local Controversies at Home

Defendants argue that the Northern District of Georgia has a significant interest in deciding this controversy because (1) Defendants' principal places of business are located in Georgia, (2) all of the relevant conduct occurred in Georgia, and (3) the contract involved is governed by Georgia law. (D.I. 16 at 14). Plaintiff responds by relying on *Banco Nominees Ltd. v. Iroquois Brands, Ltd., 748 F. Supp. 1070 (D. Del. 1990)* [*18] to demonstrate that Delaware has a strong interest in ensuring its corporations adhere to their contractual obligations. (D.I. 24 at 19). In the Banco case, the Court recognized Delaware's interest, but concluded that Delaware's interest was "greatly outweighed" by the other forum's (i.e., England's) interest in resolving a dispute between entities located within its borders and where all the relevant facts occurred. *Banco, 748 F. Supp. at 1077*. Further, the Banco Court concluded that the only connection the case had to Delaware was that the defendant was incorporated there, and that this connection alone did not override England's interest in resolving the matter. Id.

The facts in the present case are similar to those in Banco, and the Court concludes that Georgia's interest in resolving this action outweighs Delaware's interest in resolving it. See also *Lopez v. Consolidated Rail Corp., 1997 U.S Dist. LEXIS 15267, 1997 WL 633752*, at *2 (E.D. Pa. Sept. 30, 1997) (noting that the public interest is best served when a jury is composed of citizens "drawn from the community where the plaintiff resides and works, the incident occurred, and the defendant is an employer"). [*19] Thus, the Court concludes that the local interest weighs in favor of transfer.

### 9. Public Policies of the Fora

Defendants argue that denying transfer in this case would only "encourage forum shopping of the worst kind." (D.I. 16 at 14). The Court, however, is not persuaded that Plaintiff's choice of forum violates any public policy concerns. Defendants' only assertion implicating any public policy is that Plaintiff chose to litigate in Delaware solely to drive up Defendants' litigation costs. (D.I. 16 at 15). Plaintiff, however, has articulated other legitimate reasons for its choice of forum, such as litigating in a forum closer to Plaintiff's counsel and litigating in a forum in which cases proceed more quickly. (D.I. 24 at 20). On this record, the Court concludes that this factor does not weigh for or against transfer.

### 10. Trial Judge's Familiarity with the Applicable State Law

Plaintiff argues that the governing Georgia law is relatively straight forward and should not be problematic for the Court to apply. (D.I. 24 at 20). However, the District Court for the Northern District of Georgia is obviously more familiar with Georgia state law. Therefore, the Court concludes this factor [*20] weighs in favor of transfer, although only slightly, due to the lack of complexity of the relevant legal issues. See *Continental, 61 F. Supp. 2d at 132–33* (concluding that, because the legal issues were straight–forward, this factor weighed neither for nor against transfer).

### C. Balancing the Factors

Balancing all of Jumara's factors, as modified by subsequent rulings, the Court concludes that this case should be transferred to the Northern District of Georgia. The Court finds that the factors weighing strongly in favor of transfer include: (1) the convenience of the witnesses, (2) practical considerations regarding MM&M's motion to dismiss for lack of personal jurisdiction, and (3) Georgia's interest in resolving the controversy. Factors that weigh slightly in favor of transfer include: (1) the collective convenience of the parties, and (2) the Georgia Court's familiarity with the applicable Georgia law. Meanwhile, no factors weigh against transfer. Therefore, the Court concludes that transfer is warranted under the circumstances presented here.

### CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Transfer Action to United [*21] States District Court, Northern District of Georgia Pursuant to *28 U.S.C. § 1404*(a) (D.I. 15).

An appropriate Order will be entered.

### ORDER

At Wilmington this 14 day of November, 2000, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia Pursuant to *28 U.S.C. § 1404*(a) (D.I. 15) is GRANTED.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE

# EXHIBIT K

LEXSEE 2000 U.S. DIST. LEXIS 22222

**BRUNSWICK CORPORATION, Plaintiff, v. PRECOR INCORPORATED., Defendant.**

**C.A. No. 00–691–GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 22222*

**December 12, 2000, Decided**
**December 12, 2000, Filed**

**DISPOSITION:** [*1] Precor's motion to transfer granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For BRUNSWICK CORPORATION, plaintiff: Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For PRECOR INCORPORATED, defendant: Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its U.S. Patent No. *6,095,951* (" *951* patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to *28 U.S.C. § 1404*(a). Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted.

## I. BACKGROUND

### A. The parties

Life Fitness and Precor both design, manufacture, [*2] and sell exercise equipment and both directly compete with one another in the exercise fitness market. Although both parties are incorporated in Delaware, neither party maintains a physical presence (e.g., offices or facilities) in this state. Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington.

### B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.I. 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation"). At issue in the 1994 litigation were . U.S. Patent Nos *5,599,259*, *5,752,897* and certain Claims of U.S. Patent No. *5,382,207* (respectively the " *259*, *897*, and *207* patents"). The *207* patent is the parent of the *951* patent currently at issue in the case before the court.

In the 1994 litigation, Claims 1–36 of *207* patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal [*3] of the claims for infringement of the *259* and *897* patents as well as Claims 38–39 of the *207* patent. As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999. *See Precor Inc. v. Life Fitness*, No. C94–1586C (W.D. Wash. Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the *207* patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

## II. DISCUSSION

Pursuant to *28 U.S.C. § 1404*(a), the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving

the "interest of justice." *28 U.S.C. § 1404*(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See 28 U.S.C. S 1391*(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent [*4] infringement matter. *See 28 U.S.C. § 1400*(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).*

In *Jumara*, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. *55 F.3d at 879–80; see also Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 196–97 (D. Del. 1998).* These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara, 55 F.3d at 879–80.* n1 The court should apply these factors to determine, "on an individualized, case–by–case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id. at 883* (citing *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30–31, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)).* [*5] The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara*, at 879.

n1 The private interests may include:  1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara, 55 F.3d at 879–880.* The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

[*6]

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879–80 (3d Cir. 1995).* In this case, [*7] however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace, 56 F. Supp. 2d 542, 545 (E.D. Pa. 1999).* "The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen . . . a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).* Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make [*8] trial "easy, expeditious, or inexpensive." *Jumara, 55 F.3d at 879.* In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. n2 Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518,* (D.N.J. 2000) (citations omitted). Thus, the court finds that transferring this case would promote the

2000 U.S. Dist. LEXIS 22222, *8

interests of justice.

n2 The parties disagree as to whether this is a directly related matter.

**III. CONCLUSION.**

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's [*9] Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Date: December 12, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT L

LEXSEE 2002 U.S. DIST. LEXIS 20574

**IKOS SYSTEMS, INC., Plaintiff, v. CADENCE DESIGN SYSTEMS, INC., and QUICK TURN DESIGN SYSTEMS, INC., Defendant.**

**C.A. No. 02–1335–GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 20574*

**October 21, 2002, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer the case granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Ikos Systems Inc, PLAINTIFF: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, DEFENDANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, COUNTER–CLAIMANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Ikos Systems Inc, COUNTER–DEFENDANT: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On July 29, 2002, the plaintiff, IKOS Systems, Inc. ("IKOS"), filed the instant action for patent infringement against Cadence Design Systems, Inc. ("Cadence") and Quick Turn Design Systems, Inc. ("Quick Turn") (collectively "the defendants"). IKOS alleges that Quick Turn's Palladium TM design verification product infringes United States Patent No. *5,847,578* ("the *'578* patent"). The defendants, move [*2] to transfer this case to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404*(a) (D.I. 11). For the following reasons, the court will grant the defendants' motion.

**II. DISCUSSION**

Each of the parties in this case is a Delaware corporation n1 with headquarters located within several miles of one another in what is commonly known as the Silicon Valley of northern California.

> n1 IKOS is a subsidiary of Mentor Graphics Corporation ("Mentor") which is incorporated under the laws of the State of Oregon. The defendants assert that Mentor is the real party in interest in this action. IKOS does not seem to seriously contest this assertion. Nevertheless, given the court's analysis and conclusions as to the most appropriate forum for the litigation of this matter, the court need not reach this issue.

The defendants move to transfer this action to the District Court for the Northern District of California pursuant to *28 U.S.C. § 1404*(a) [*3] . Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." *28 U.S.C. § 1404*(a). It is the movants' burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)* (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id..* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all rele-

vant factors, including certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be [*4] produced in the alternative forum. n2 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879–80* (citations omitted).

n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion the court relied on the following considerations, among others: (1) while [*5] the defendants and the plaintiff are Delaware corporations and should reasonably expect to litigate in the forum, there seems to be little connection between Delaware and this action or the parties; (2) each party is headquartered in northern California; (3) the parties are large national and international organizations with apparently substantial assets; (4) because the parties maintain geographically diverse operating locations, travel time and convenience in the aggregate would be neither increased nor decreased substantially with a transfer of forum; (5) any disparity in court congestion is not so great as to justify a transfer of venue; (6) while patent disputes are often not properly characterized as "local" in nature or otherwise unique to a particular locale, *see Affymetrix, 28 F. Supp. 2d at 207,* the relevant industry,

the Electronic Design Automotive Industry, is apparently located in the Silicon Valley. Finally, IKOS has identified six potential witnesses who are not employed by the defendants and reside on the east coast. n3 However, it appears that the majority of the defendants' engineers, as well as other potential witnesses, are located in the Northern [*6] District. Thus, the court is convinced that this fact and the other public and private interests are sufficient to tip "the balance of convenience ... *strongly* in favor of [the] defendant[s]." *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)* (emphasis in original).

n3 In its brief and an accompanying declaration by Giovanni Mancini, a former employee of the plaintiff, IKOS has identified William R. Beausoleil as a seventh potential non-party employee witness. In his declaration, Mr. Mancini states that the witness elected not to join the defendant, Cadence. In contrast, the defendants offer the declaration of the witness himself. In that declaration, Mr. Beausoleil attests that he entered the employ of Cadence on March 28, 2002. The court will credit Mr. Beausoleil's declaration.

### III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion to transfer the case to the United States District Court for the Northern District [*7] of California (D.I. 11) is GRANTED.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Dated: October 21, 2002