IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN SEED CO. INC., | ) | |
| | ) | |
| Plaintiff, On Behalf Of Itself and Others Similarly Situated, | ) ) ) | |
| | ) | CIVIL ACTION NO. 05-535 SLR |
| v. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Monsanto Controlled Subsidiaries: | ) | CLASS ACTION |
| | ) | |
| AMERICAN SEEDS INC., | ) | |
| CORN STATES HYBRID, | ) | |
| SERVICE INC. | ) | |
| ASGROW SEED CO., INC., | ) | JURY TRIAL DEMANDED |
| HOLDEN FOUNDATION SEEDS, INC., | ) | |
| DEKALB SEEDS, | ) | |
| CALGENE, L.L.C., | ) | |
| CHANNEL BIO CO., | ) | |
| NC+ HYBRIDS, | ) | |
| SEMINIS INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO MONSANTO'S
## MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MISSOURI

SMITH, KATZENSTEIN & FURLOW LLP
Joelle E. Polesky (ID No. 3694)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
*Attorneys for American Seed Company Inc.*

Dated: September 15, 2005

10006647.WPD

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ............................ 1

SUMMARY OF THE ARGUMENT ........................................ 2

FACTUAL BACKGROUND ............................................. 4

      The Syngenta Antitrust Litigation ...................................... 4

      The American Seed Antitrust Litigation ................................ 5

      Monsanto's Lawsuit Against American Seed ............................ 6

ARGUMENT ...................................................... 8

I.     The Forum Selection Clause Is Permissive, Not Mandatory ................. 8

II.    Even If The Forum Selection Clause Were Mandatory,
        It Would Not Be Dispositive ................................... 11

III.   The 28 U.S.C. § 1404(a) Factors Weigh Against Transfer ................. 15

      The Interests of the Legal System Clearly Oppose Transfer ................ 15

      Convenience to Plaintiff is Not an Issue ............................... 18

      Monsanto's Own Selective, Tactical Approach To Venue Shows
        That This Court Is At Least As Convenient as Missouri ............ 18

      The Convenience Of Witnesses Would Clearly Be Prejudiced By Transfer. ... 19

      Other Factors. ..................................................... 20

IV.   American Seed's Antitrust Claims Do Not Involve Substantial
        Duplication Of Effort And Time And Therefore Are Not Compulsory
        Counterclaims To Monsanto's Claims Against American Seed ....... 21

CONCLUSION ..................................................... 27

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                    <u>Page(s)</u>

*Angelico v. Lehigh Valley Hosp., Inc.,*
    184 F.3d 268 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blades v. Monsanto Co.,*
    No. 00-CV-4034, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001) . . . . . . . . . . . . . . . . 11

*Bolton v. Tesoro Petroleum Corp.,*
    549 F. Supp. 1312 (E.D. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brunswick Corp. v. Puebo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Crescent International, Inc. v. Avatar Communities, Inc.,*
    857 F.2d 943 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*DataTreasury Corp. v. First Data Corp.,*
    243 F. Supp. 2d 591 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.,*
    No.Civ.A. 05-898, 2005 WL 1116318, (D.N.J. May 10, 2005) . . . . . . . . . . . . . 22

*Guidi v. Inter-Continental Hotels Corp.,*
    224 F.3d 142, 148 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Hay Acquisition Company, I, Inc. v. Schneider,*
    No. Civ.A. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005) . . . . . 10

*Heller Financial, Inc. v. Midwhey Powder Co.,*
    883 F.2d 1286 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re HA-LO Industries, Inc.,*
    Nos. 02B12059, 03C2441, 2003 WL 21982145 (N.D. Ill. Aug. 19, 2003) . . . . 14

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873, 880 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13, 15, 20, 21

*Keaty v. Freeport Indonesia, Inc.*,
  503 F.2d 955 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kerobo v. Southwestern Clean Fuels Corp.*,
  285 F.3d 531 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Massey v. Monsanto Co.*,
  No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) . . . . . . . . 11

*McNair v. Monsanto Co.*,
  279 F. Supp. 2d 1290 (M.D. Ga. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Monsanto Co. v. McFarling*,
  302 F.3d 1291 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Monsanto Co. v. Nelson*,
  No. 4:00-CV-1636, 2001 WL 34079479 (E.D. Mo. Sept. 10, 2001) . . . . . . . . . 11

*Monsanto Co. v. Swann*,
  308 F. Supp. 2d 937 (E.D. Mo. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Monsanto Co. v. Swann*,
  No. 4:00-CV–1481, 2001 WL 34053250 (E.D. Mo. Sept. 25, 2001) . . . . . . . . . 11

*Monsanto Technology LLC v. Syngenta Crop Protection, Inc.*,
  212 F. Supp. 2d 1101 (E.D. Mo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Turtur*,
  743 F. Supp. 260 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Northwestern National Ins. Co. v. Donovan*,
  916 F.2d 372 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Red Bull Assocs. v. Best Western Int'l Inc.*,
  862 F.2d 963 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Steward v. Up North Plastics, Inc.*,
  177 F. Supp. 2d 953 (D. Minn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

*Stewart Organization Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Syngenta Seeds, Inc. v. Monsanto Co.*,
  No. Civ.A. 04-908-SLR, 2005 WL 678855 (D. Del. March 24, 2005) . . . . . . . . . 6

*Transamerica Occidental Life Insurance Co. v. Aviation Office of America, Inc.*,
  292 F.3d 384 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Utah Pizza Service, Inc. v. Heigel*,
  784 F. Supp. 835 (D. Utah 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Van Graffenreid v. Craig*,
  246 F. Supp. 2d 553 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wai v. Rainbow Holdings*,
  315 F. Supp. 2d 1261 (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Wild v. Jungle Media Group*,
  No. Civ.A. 02-5123, 2004 WL 834695 (E.D. Pa. March 17, 2004) . . . . . . . . . . 14

Statutes and Other Authorities

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20, 27, 14, 15

## NATURE AND STAGE OF THE PROCEEDINGS

On July 26, 2005, American Seed Company, Inc. ("American Seed"), filed a lawsuit in this Court against Defendant Monsanto Company and Defendants American Seeds Inc., Corn States Hybrid Service Inc., Asgrow Seed Co., Inc., Holden Foundation Seeds, Inc., DeKalb Seeds, Calgene, L.L.C., Channel Bio Co., NC+ Hybrids, and Seminis Inc., all of which are subsidiaries controlled by Monsanto Company (D.I. 1).[1] American Seed seeks to represent classes of purchasers of corn seed in prosecuting antitrust claims against Monsanto.

On August 2, 2005, American Seed filed a Motion for Coordination of Pretrial Discovery with *Syngenta Seeds Inc. v. Monsanto Company*, C.A. No. 04-908-SLR (Member Case) (D.I. 17), based on the overlap among witnesses, documents, and issues between this case and *Syngenta*. On August 25, 2005, Monsanto filed an answering brief in opposition to the Motion for Coordination (D.I. 29) and also filed a Motion to Transfer this case to the U.S. District Court for the Eastern District of Missouri (D.I. 25).

This brief is submitted in opposition to Monsanto's Motion to Transfer. Concurrently with this submission, American Seed is also submitting a reply brief in support of its Motion for Coordination.

---

[1]  In this brief, Defendants will be referred to collectively as "Monsanto."

## SUMMARY OF THE ARGUMENT

1. The forum selection clause in this case is permissive. It provides only that, if a party is sued in Missouri, that party submits to exclusive personal jurisdiction of the Court in (and for purposes of) that case. The forum selection clauses do not provide that all suits must be brought in Missouri, or that general jurisdiction over any such case shall exist only in Missouri.

2. Under 28 U.S.C. § 1404(a), the presence of a forum selection clause is only a non-dispositive factor in determining whether to transfer a case. In this case, American Seed's and the classes' antitrust claims are virtually identical to many of the claims being prosecuted by Syngenta in this Court. When there is related litigation in the same district, transfer is disfavored because of the strong judicial interest in having one court handle and coordinate two cases presenting identical issues, facts, and witnesses. Transfer is also disfavored because of the potential inconvenience to witnesses who may have to provide depositions, and be subject to potentially inconsistent discovery orders in two different jurisdictions. By contrast, Monsanto's own selective invocation of forum selection clauses, and its voluntary decision to litigate related issues in this Court, shows that its desire for transfer in this case is simply tactical and that it will not be inconvenienced if transfer is denied. Moreover, Monsanto apparently had the same forum selection clause in the *Syngenta* case[2] but decided for tactical reasons not to invoke it; Monsanto now refuses to provide a copy of its license with Syngenta and yet wants this Court to transfer this case without having this highly relevant information.

---

[2] *Syngenta Seeds Inc. v. Monsanto Co.*, C.A. No. 04-908-SLR (D. Del.).

3.  American Seed's antitrust claims (and, still more so, the classes') are not compulsory counterclaims in Monsanto's litigation against American Seed in Missouri. The Missouri litigation focuses entirely on claims that American Seed failed to provide timely sales reports to Monsanto and then sold corn seed including Monsanto traits after the termination of its licenses. These claims focus entirely on American Seed's conduct, while this case focuses on Monsanto's conduct. The two cases involve both different facts and different legal issues and create no likelihood of substantial duplication of effort.

## FACTUAL BACKGROUND

### The Syngenta Antitrust Litigation

In July 2004, Syngenta Seeds Inc., Monsanto's leading competitor in biotechnology corn seed, sued Monsanto in this Court for monopolization and attempted monopolization in markets for particular biotechnology traits in corn seed – specifically, traits that allow corn seed to grow despite the presence of herbicide and weed killer (that is, glyphosate-tolerant corn seed), corn rootworm, or European corn borer.  Amended Complaint, *Syngenta Seeds, Inc. v. Monsanto Co. et al.*, No. 04-908-SLR (D. Del.) ("*Syngenta* Am. Compl.").[3]

Syngenta asserts (among other things) that Monsanto uses "Licensee Incentive Agreements" that effectively require companies licensing traits from Monsanto to use 70% Monsanto seeds for *every* trait, or else lose incentive payments for *all* traits.  *Syngenta* Am. Compl. ¶¶ 4, 51, 111-13.  Syngenta also claims that Monsanto imposes exclusive dealing arrangements on customers, *id.* ¶¶ 97-110; prosecutes sham patent infringement suits, *id.* ¶¶ 9, 72-78, engages in misrepresentation and disparagement of Syngenta by claiming that they are infringing Monsanto's patents, *id.* ¶¶ 73-81; pressures customers not to deal with Syngenta, *id.* ¶ 82, and engages in other unfair practices.  As a result, Syngenta claims, Monsanto has monopolized the glyphosate-tolerant corn trait market (Count I) and the European corn borer-resistant corn trait market (Count II) and has a dangerous probability of success in attempting to monopolize the foundation corn seed market (Count III).

---

[3] A copy of the *Syngenta* Amended Complaint is attached as Ex. A to the Opening Brief in Support of Motion for Coordination (D.I. 18).

Syngenta's antitrust complaint reflects that Syngenta's claims are related to a license agreement whereby Monsanto licensed the Bt11 corn-borer resistant trait to Syngenta. *Id.* ¶¶ 60, 116. This license apparently includes a forum selection clause requiring suit in Missouri. See Monsanto's Memorandum in Support of Motion to Transfer (D.I. 26) ("Transfer Mem.") at 3; Declaration of John Rosenthal in Support of Motion to Transfer (D.I. 27) ("Rosenthal Decl.") ¶ 7(all of Monsanto's License Agreements with seed companies contain the same forum selection clause requiring suit in Missouri). Despite this, Monsanto never sought to transfer the *Syngenta* antitrust case to Missouri.[4]

## The American Seed Antitrust Litigation

In July 2005, American Seed filed a class action antitrust complaint against Monsanto.[5] American Seed alleges that Monsanto has unlawfully maintained monopolies "to deny Monsanto's actual and potential competitors (a) access to foundation seed companies and others needed for the creation or manufacture of competitive corn seed with the competitors' biotechnological traits; and (b) the distribution these Monsanto competitors require to market their biotechnological corn seed. These agreements impose massive financial penalties on seed companies unless a very high percentage of seeds they sell contain

---

[4] On September 9, 2005, American Seed requested a copy of the Syngenta license(s) from Monsanto. However, Monsanto has refused to provide it on the ground that it is "confidential." *See* September 12, 2005 Letter by Peter E. Moll (attached as Ex. A).

[5] Monsanto asserts that "Monsanto supplies corn traits to seed companies such as American Seed," Transfer Mem. at 2, and that the proposed classes are direct purchasers of "traits and seeds from Monsanto." *Id.* at 4. It should be noted that neither American Seed nor the class members purchase "traits." Rather, both American Seed and the classes are purchasers of corn seeds that have the traits. *See American Seed* Compl. (D.I. 1) ¶¶ 8, 52, 58, 64.

5

Monsanto traits." *American Seed* Compl.¶ 3.

American Seed alleges that Monsanto has used exclusive dealing contracts, *id.* ¶¶ 80-89, and bundling agreements, *id.* ¶¶ 90-95, to exclude competitors – particularly Syngenta – in four relevant markets: for corn seed tolerant of glyphosate, *id.* ¶¶ 24-29; for corn seed resistant to European corn borer, *id.* ¶¶ 30-37; for corn seed resistant to root worm, *id.* ¶¶ 38-45; and for corn seed with stacked traits, *id.* ¶¶ 46-51. American Seed also alleges that Monsanto has pressured customers not to deal with Syngenta. *Id.* ¶ 89.

Thus, both American Seed, on behalf of the classes, and Syngenta allege that Monsanto "(1) bundled commercial incentives across several products sold to corn growers to create a barrier to [Syngenta] and other competitors; (2) enforced exclusive dealing contracts to prevent [Syngenta] or other competitors from entering markets; ... (7) intimidated seed companies not to do business with plaintiff; and (8) ... pressured foundation seed companies not to deal with plaintiff." *Syngenta Seeds, Inc. v. Monsanto Co.*, No. Civ.A. 04-908-SLR, 2005 WL 678855, at *2 (D. Del. March 24, 2005) (characterizing Syngenta's claims) (attached as Ex. B).

## Monsanto's Lawsuit Against American Seed

In April 2005, Monsanto had filed a complaint against American Seed based entirely on (1) American Seed's alleged failure to submit timely sales reports to Monsanto under its licenses, which Monsanto alleges was a breach of contract, Monsanto Compl. (Rosenthal Decl. Ex. E) ¶¶ 45-54; and (2) American Seed's alleged sale of some seed including Monsanto traits after the termination of its licenses, *id.* ¶¶ 58-63, on which Monsanto founds patent, trademark, Lanham Act, and unjust enrichment claims.

In May 2005, American Seed answered and counterclaimed, asserting that the agreements were unconscionable, that Monsanto failed to provide proper notice of termination or to comply with Missouri franchise law, that Monsanto was estopped and had waived noncompliance, that the trademarks and registrations were invalid and unenforceable, and that the patent at issue was invalid and unenforceable. *See* American Seed Answer and Counterclaim ¶¶ 123-136 (Rosenthal Decl. Ex. H). American Seed did not assert either federal or state antitrust claims in the Missouri case.

## ARGUMENT

### I.   The Forum Selection Clause Is Permissive, Not Mandatory

Courts draw a sharp distinction between mandatory and permissive forum selection clauses – between clauses that require parties to bring suit in a particular jurisdiction, and clauses that simply provide that the parties consent to jurisdiction if they are sued in a particular forum. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1270-72 & n.7 (S.D. Fla. 2004). Only mandatory clauses can provide a reason for transferring a case.

In this case, the forum selection clause states:

> The parties hereto irrevocably (A) submit to the exclusive personal jurisdiction of any state or federal court in the state of Missouri in any suit, action or other legal proceeding relating to this Agreement; (B) agree that all claims in respect of any such suit, action or other legal proceeding may be heard and determined in, and enforced in and by, any such court; and (C) waive any objection that they may now or hereafter have to venue in any such court or that such court is an inconvenient forum.

Rosenthal Decl., Exs. A, B, and C, § 11.08; Ex. D, § 8.08 (capitalization omitted). First, it should be noted that Sections B and C are clearly permissive only. Section B only provides that claims "*may* be heard and determined" in Missouri. *Id*. (emphasis added). Section C simply waives any objection to venue in Missouri. On their face, "B" and "C" only apply to bar a party from objecting if the *other* party brings suit in Missouri, not to require the party to bring its own suit in Missouri.

Thus, to show that American Seed was required to bring suit in Missouri, Monsanto must rely on Section A. This provides that the parties "submit to the exclusive personal jurisdiction of any state or federal court in the state of Missouri in any suit, action or other

legal proceeding relating to this Agreement." By its terms, this provision (unlike Section C) does not apply either to "venue" or to "jurisdiction" in general, but rather to "submit[ting]" to a particular type of jurisdiction, *personal* jurisdiction. The only reasonable interpretation of "submitting to personal jurisdiction," however, is that each party agrees to submit to personal jurisdiction if it is a *defendant* in a case brought in Missouri.

It is not reasonable to conclude that, by agreeing to "submit" to "personal jurisdiction" in Missouri, a party agrees not to *bring suit* anywhere else. Rather, the only reasonable interpretation is that, if sued, the defendant agrees to submit to personal jurisdiction. When a party agrees to "submit" to jurisdiction, "[s]uch language means that the party agrees to be subject to that forum's jurisdiction if sued there. It does not prevent the party from bringing suit in another forum." *Utah Pizza Service, Inc. v. Heigel*, 784 F. Supp. 835, 838 (D. Utah 1992); *see also Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956, 957 (5th Cir. 1974) (agreement to submit to jurisdiction is permissive); *Wai*, 315 F. Supp. 2d at 1270-72 & n.7.

Monsanto may argue that there is a difference because the party is not only submitting to personal jurisdiction, but submitting to "exclusive" personal jurisdiction. But this cannot change the common-sense meaning of "submitting to jurisdiction." The parties did not provide for exclusive jurisdiction in Missouri courts; rather, they *submitted* to exclusive personal jurisdiction over their respective selves. By submitting to exclusive personal jurisdiction, the party only agrees that once it is sued in a particular court in Missouri, it acknowledges that that court has exclusive personal jurisdiction over it *in that case*.

This interpretation is still more appropriate in light of two rules of construction.

First, ambiguous terms are construed against the drafter – including forum selection clauses. *Utah Pizza Service*, 784 F. Supp. at 838 n.1. Second, Section A should be interpreted, if possible, so as to give meaning to Sections B and C. Section B provides that the parties "agree that all claims in respect of any such suit, action or other legal proceeding may be heard and determined in, and enforced in and by, any such court." Section C provides that the parties "waive any objection ... to venue in any such court or that such court is an inconvenient forum." If Section A had already provided that parties must bring all claims without exception in Missouri, then Sections B and C would be meaningless and would add nothing to Section A. In fact, Section C is the only explicit venue provision – the only one that actually refers to "venue," while Section A is limited to personal jurisdiction – and it is permissive.

It is instructive to compare the forum selection clause here with the clauses at issue in other cases cited by Monsanto. In *Crescent International, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988), the forum selection clause required that "*any* litigation about any of [its] terms ... *shall be maintained*" in the designated forum. *Id.* at 944 (emphasis added). In *Hay Acquisition Company, I, Inc. v. Schneider*, No. Civ.A. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005) (Transfer Mem. Ex. F), the provision required that the parties "each consent to the exclusive jurisdiction of, and *agree that any controversy* between them arising out of this Agreement *shall be brought only* in" the designated forum. *Id.* at *2 n.2 (emphasis added).

Even the cases Monsanto cites in which Monsanto itself was a party (*see* Transfer Mem. at 7-8) involved much different language. In *every one* of those cases, the parties had

"*consent[ed]* to the exclusive *jurisdiction*" of Missouri courts.[6]  In those cases, the parties

did not merely "submit" to jurisdiction, they "consented" to jurisdiction; and the jurisdiction

at issue was not merely "personal jurisdiction" but general jurisdiction.  Even in those cases,

a question can be raised as to whether the provisions were truly mandatory.[7]  But in this case,

it is not reasonable to interpret the agreement as requiring parties to bring suit in Missouri,

as opposed to consenting to personal jurisdiction in Missouri if they are sued there.

## II.    Even If The Forum Selection Clause Were Mandatory, It Would Not Be Dispositive

Monsanto argues that this case must be transferred to the Eastern District of Missouri

because of the forum selection clause.  As discussed below, in the absence of such a clause,

transfer would probably not even be thought of because of the clear judicial and witness

efficiencies in having the same court handle both this case and the *Syngenta* case.  Therefore,

the issue is how much difference the forum selection clause makes.

Monsanto argues that it is dispositive.  However, the case law is clear that even

mandatory forum selection clauses are "non-dispositive."  *Jumara v. State Farm Ins. Co.*, 55

F.3d 873, 880 (3d Cir. 1995).  Rather, in considering a transfer motion, the *only* effect of

---

[6] See *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002); *Monsanto Co. v. Swann*, 308 F. Supp. 2d 937, 943 (E.D. Mo. 2003); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1295 (M.D. Ga. 2003); *Monsanto Co. v. Swann*, No. 4:00-CV-1481, 2001 WL 34053250, at *1 (E.D. Mo. Sept. 25, 2001) (Transfer Mem. Ex. C); *Monsanto Co. v. Nelson*, No. 4:00-CV-1636, 2001 WL 34079479, at *1 (E.D. Mo. Sept. 10, 2001) (Transfer Mem. Ex. D); *Blades v. Monsanto Co.*, No. 00-CV-4034, 2001 WL 775980, at *2 (S.D. Ill. Jan. 3, 2001) (Transfer Mem. Ex. B); *Massey v. Monsanto Co.*, No. 299CV218-P-B, 2000 WL 1146705, at *1 n.1 (N.D. Miss. June 13, 2000) (Transfer Mem. Ex. E).

[7] In four of the seven decisions, Monsanto was the plaintiff bringing suit in Missouri, so it did not matter whether the provision was mandatory or permissive.

such a clause is that it waives the plaintiff's ability to argue that the proposed transfer would

be inconvenient to *itself*. The Court has broad discretion and remains free – and is, indeed,

required – to take into consideration convenience to witnesses, judicial efficiency, and the

presence of related cases under its supervision in deciding whether transfer is warranted.

In *Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), the United States

Supreme Court held:

> Section 1404(a) directs a district court to take account of
> factors other than those that bear solely on the parties' private
> ordering of their affairs. The district court also must weigh in
> the balance the convenience of the witnesses and those
> public-interest factors of systemic integrity and fairness that,
> in addition to private concerns, come under the heading of
> "the interest of justice." It is conceivable in a particular case,
> for example, that because of these factors a district court
> acting under §1404(a) would refuse to transfer a case
> notwithstanding the counterweight of a forum-selection
> clause, whereas the coordinate state rule might dictate the
> opposite result .... [F]ocusing on a single concern or a subset
> of the factors identified in § 1404(a) would defeat that
> command. Its application would impoverish the flexible and
> multifaceted analysis that Congress intended to govern
> motions to transfer within the federal system. The forum-
> selection clause, which represents the parties' agreement as to
> the most proper forum, should receive neither dispositive
> consideration (as respondent might have it) nor no
> consideration (as Alabama law might have it), but rather the
> consideration for which Congress provided in §1404(a).

*Id.* at 30-31.

In *Jumara*, the Third Circuit Court of Appeals, noting the "broad discretion" of the

district court in deciding transfer, *id.* at 883, stated:

> a forum selection clause is treated as a manifestation of the
> parties' preferences as to a convenient forum.... Although the
> parties' agreement as to the most proper forum should not

> receive dispositive weight, it is entitled to substantial
> consideration .... the decision whether venue was appropriate
> in the original forum or whether the action should be
> transferred involves a multi-factored test incorporating the
> forum selection clause as one facet of the convenience-of-the-
> parties consideration. Hence, while the district court should
> have interpreted and considered the contractual choice of
> forum, it erred to the extent that it accorded the clause
> dispositive effect.

*Id.* at 879-880 (citations omitted). The court stated that it was "relegating the forum selection

clause to being a non-dispositive factor, albeit one entitled to 'substantial consideration.'"

*Id.* at 880. It also indicated that the district court can consider "practical considerations that

could make the trial easy, expeditious, or inexpensive," *id.* at 879 – including (as discussed

below) the presence of related litigation.

Judge Posner, speaking for the Seventh Circuit, has set forth a similar approach:

> the signing of a valid forum selection clause is a waiver of the
> right to move for a change of venue on the ground of
> inconvenience to the moving party. ... If there is
> inconvenience to some third party of which that third party
> may not even be aware, or to the judicial system itself, then
> either party to the suit is free to move for a change of venue.
> But one who has agreed to be sued in the forum selected by
> the plaintiff has thereby agreed not to seek to retract his
> agreement by asking for a change of venue on the basis of
> costs or inconvenience to himself.

*Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) (citation

omitted).

The Second Circuit has also addressed the issue:

> Congress declared two factors decisive on a motion for
> transfer pursuant to §1404(a). The private convenience of the
> parties ... was only one of the elements to be considered. The
> other component of the analysis – the interest of justice – is

> not properly within the power of private individuals to
> control. The existence of a forum selection clause cannot
> preclude the district court's inquiry into the public policy
> ramifications of transfer decisions.

*Red Bull Assocs. v. Best Western Int'l Inc.*, 862 F.2d 963, 967 (2d Cir. 1988); *see also*

*Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (forum

selection clause is only one factor to be considered); *Wild v. Jungle Media Group*, No. Civ.A.

02-5123, 2004 WL 834695, at *8 (E.D. Pa. March 17, 2004) (Ex. D hereto) (denying transfer

despite forum selection clause) (attached as Ex. C).

Courts hold that the presence of related litigation in a forum is a significant factor in

the "interests of justice" analysis under §1404(a). *Guidi v. Inter-Continental Hotels Corp.*,

224 F.3d 142, 148 (2d Cir. 2000) (existence of related litigation is "of major significance");

*Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Van*

*Graffenreid v. Craig*, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003); *Ricoh Co., Ltd. v.*

*Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993); *Bolton v. Tesoro Petroleum Corp.*,

549 F. Supp. 1312, 1317 (E.D. Pa. 1982).

In both *In re HA-LO Industries, Inc.*, Nos. 02B12059, 03C2441, 2003 WL 21982145,

*3 (N.D. Ill. Aug. 19, 2003) (attached as Ex. D), and *Steward v. Up North Plastics, Inc.*, 177

F. Supp. 2d 953, 959 (D. Minn. 2001), the courts, in denying transfer, relied on the presence

of related litigation in the district as a reason for refusing to honor a forum selection clause.

Conversely, in *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Turtur*, 743 F. Supp.

260, 263-64 (S.D.N.Y. 1990), the court transferred a case – contrary to a forum selection

clause – because the transferee court was hearing related cases.

Monsanto cites cases stating that forum selection clauses should be enforced. However, those cases involved situations in which the plaintiff claimed that the clause was *invalid. See* Transfer Mem. at 5-6, 7-8. That is far different from the question of whether a forum selection clause ends the Court's consideration of whether to transfer under § 1404(a). To the contrary, the Supreme Court and the Third Circuit both make clear that such clauses – *even if* valid – are "non-dispositive" and that the district court must still assess all of the § 1404(a) factors in deciding whether to transfer.

In this case, as discussed below, transferring this case will cause severe loss of efficiency because the *Syngenta* case, involving the same issues, discovery, and proof, will still remain in this Court. As a result, two different district courts will need to oversee discovery, decide summary judgment and other issues, involving the identical issues and facts, while the same witnesses will need to provide the same testimony on dual tracks. In such circumstances, forum selection clauses are "non-dispositive" and do not override the Court's "broad discretion." *Jumara*, 55 F.3d at 880, 883.

## III.    The 28 U.S.C. § 1404(a) Factors Weigh Against Transfer

In this case, the § 1404(a) factors clearly weigh against transfer.

**The Interests of the Legal System Clearly Oppose Transfer**.  Critical to the transfer analysis – "of major significance," *Guidi*, 224 F.3d at 148 – is the existence of closely related litigation already pending in this Court. As noted above, both Syngenta's and the class case allege bundling of commercial incentives among the various traits; exclusive dealing contracts as a barrier to use of competitors; and pressuring customers not to deal with Syngenta. *Compare Syngenta Seeds,* 2005 WL 678855, at *2 (Ex. B), *with American Seed*

Compl.¶¶ 80-95.

These are virtually identical claims, involving identical proof and identical witnesses. The same testimony and the same documents will prove, or disprove, both Syngenta's and the classes' claims on these issues. It is clearly more efficient to handle these claims together, under one court's supervision, so that depositions can be coordinated and taken jointly, documents can be produced in both cases, discovery can be coordinated, and one district court can address the legal issues, discovery issues, and summary judgment motions in both cases. If this Court retains this case, it can coordinate the cases and ensure that they are treated consistently and that witnesses will only need to be deposed once. It will be much more efficient for one court to become familiar with the case rather than requiring two separate courts each to master the facts and law.

By contrast, none of the cases Monsanto cites – including lawsuits it was involved in during 2001-2003, before the filing of Syngenta's lawsuit, Transfer Mem. at 7-8 – involved such a situation.[8] Monsanto itself recognizes that the Court should be influenced by whether its decision "will lead to duplication of evidence, witnesses, and more importantly, similar or identical issues of law being decided by two separate District Courts." Transfer Mem. at 14. Despite this, up to the very end of its brief, Monsanto acts as if the *Syngenta* case does not exist. In an inconspicuous footnote at the very end of its brief, Monsanto tries to dismiss these efficiencies:

---

[8] Most of the cases Monsanto cites in which it was involved (Transfer Mem. at 7-8) were breach of contract cases, in which the forum selection clause in the contract would have particular force, and none of them involved a situation in which Monsanto sought to transfer a case away from a district in which related litigation was pending.

> despite the fact that both cases in this Court allege monopoly claims against Monsanto, the reality is that Syngenta's claims are dissimilar to American Seed's claims. American Seed alleges harm occurring vertically, through Monsanto's distribution chain, where contracts govern the business relationships. Syngenta, in contrast, has no business relationship [sic] with Monsanto, but instead alleges harm in its role as an alleged competitor.

Transfer Mem. at 15 n.5.[9]  This misses the point: Syngenta alleges that its harm was *caused* by conduct (to use Monsanto's words) "occurring vertically, through Monsanto's distribution chain, where contracts govern the business relationships." It is precisely the vertical contracts that Syngenta argues causes it harm by imposing bundling and exclusive dealing on Monsanto's distribution chain, which is blocked from dealing with Syngenta. *See Syngenta Seeds,* 2005 WL 678855, at *2. Conversely, the crux of American Seed's, and the classes', claims, are that Monsanto has excluded competitors, especially Syngenta. *See, e.g., American Seed* Compl.¶¶ 82-89.

Thus, Syngenta and American Seed will need to prove exactly the same things. To prove monopolization, Syngenta cannot merely show "harm in its role as an alleged competitor" (Transfer Mem. at 15 n.5); rather, both competitors and purchasers must show harm to *competition*, not just to competitors. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 275 n.1 (3d Cir. 1999) ("It is well-established that 'the antitrust laws ... were enacted for the protection of competition not competitors'") (*quoting Brunswick Corp. v. Puebo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 497 (1977)).

In the same footnote, Monsanto also asserts that "transfer need not cause any

---

[9] In fact, Syngenta does have a business relationship with Monsanto, in that it licenses the corn borer-resistant trait from Monsanto. *Syngenta* Am. Compl.¶¶ 60, 116.

duplication of discovery. The Eastern District of Missouri can coordinate discovery with discovery in the *Syngenta* case." Transfer Mem. at 15 n.5. Monsanto does not propose any ways in which this can be accomplished, short of a very intrusive process of inter-district consultation between judges. Monsanto also does not propose any solution to situations in which, for example, a witness seeks a protective order against a deposition in both courts and only one court grants it; or in which Monsanto claims privilege in producing a document and two different courts in two different jurisdictions are required to examine the privilege claim and reach potentially inconsistent decisions.

Moreover, consideration of the other factors either weigh in favor of transfer or do not strongly favor either side:

**Convenience to Plaintiff is Not an Issue.** Plaintiff assumes for purposes of this motion that it has contractually waived the argument that the Eastern District of Missouri is an inconvenient venue. There is, however, no reason to conclude that the Eastern District of Missouri is *more* convenient for Plaintiff than this district. Hence, this factor favors neither transfer nor retention.

**Monsanto's Own Selective, Tactical Approach To Venue Shows That This Court Is At Least As Convenient as Missouri.** Defendant's own conduct in litigating related claims in this Court, and its choice of this Court to hear a patent complaint involving related patent litigation, indicate that this Court is just as convenient for Defendant as the Eastern District of Missouri.

Monsanto itself asserts that *all* of its license agreements contain the same forum selection clause. Transfer Mem. at 3; Decl. of John Rosenthal ¶ 7. This indicates that

Monsanto's Bt11 license with Syngenta – directly at issue in Syngenta's antitrust suit, *Syngenta* Am. Compl.¶¶ 60, 116 – had the same forum selection clause. Yet Monsanto did not assert that clause in the *Syngenta* litigation, instead choosing to argue that the Syngenta claims should be raised in Monsanto's own patent case – which (notwithstanding its current claims of convenience in Missouri) Monsanto brought *in Delaware*. *Monsanto Co. v. Syngenta Seeds Inc.*, No. 04-305-SLR (D. Del.).[10]

As noted above, Plaintiff has requested a copy of the Syngenta license from Monsanto, but Monsanto has refused to provide it on the grounds that it is "confidential." (Ex. A). Monsanto will clearly have to produce that agreement in this case, but apparently hopes to postpone doing so until *after* the case is transferred, so that this Court cannot consider it.

Monsanto's selective decision to ignore the forum selection clause when it serves its own tactical purposes is further reason to conclude that Missouri is no more convenient for Monsanto than this district. *Cf. DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (where plaintiff originally brought case in one venue, then refiled same case in another, plaintiff's choice of forum is entitled to little weight). Moreover, the presence of the closely related *Syngenta* case in this Court means that it may well be more convenient for Monsanto itself if the same court handles both cases so that they can be effectively coordinated.

---

[10]  Both Monsanto and Syngenta are Delaware corporations, but neither has its principle place of business here.

## The Convenience Of Witnesses Would Clearly Be Prejudiced By Transfer.

Monsanto argues that witnesses are located in Missouri and that it is therefore more convenient to them for the case to proceed in Missouri. The convenience of *party* witnesses is not relevant to the § 1404(a) analysis. *Jumara*, 55 F.3d at 879 (convenience of witnesses only relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora"). Meanwhile, Syngenta's witnesses are likely to be more easily available in Delaware, where Syngenta is incorporated.

In any event, Monsanto's claim of witness inconvenience ignores the fact that precisely the same witnesses are involved in this case as are involved in Syngenta's case. If the case proceeds here, each witness can be subjected to one deposition that can be used in both cases. If this case is transferred, however, it greatly increases the likelihood that such witnesses will have to be deposed separately – on the same issues – in each case. Moreover, Syngenta witnesses – for whom Delaware is more convenient – are likely to play a significant role in the proof of Plaintiff's claims, as the crux of Plaintiff's claims is that competitors have been excluded.

Thus, this factor argues in favor of retaining the case in this Court. *Monsanto Technology LLC v. Syngenta Crop Protection, Inc.*, 212 F. Supp. 2d 1101, 1104 (E.D. Mo. 2002) (holding that Monsanto-brought case should be sent to Delaware to be handled together with pending Syngenta case, because of "the significant likelihood that, absent transfer, many witnesses will be inconvenienced by travel to two different fora to testify regarding the same issues").

**Other Factors**. Monsanto also points to other factors that are not necessarily

relevant under § 1404(a) and that have little or no weight in any event. While Monsanto

claims that its records are located in Missouri, Transfer Mem. at 13, the Third Circuit has

stated that "the location of books and records" is relevant only "to the extent that the files

could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879.

Monsanto also argues that "the most likely place the claim arose is Missouri" because

"the parties agreed that the License Agreements and Incentive Agreements would be

governed by Missouri law." Transfer Mem. at 13. However, federal law applies to antitrust

claims, so it is irrelevant for choice of law purposes where the antitrust claims arose. In any

event, the choice of law provisions in the agreements only purport to select law for

interpreting and determining rights under the agreement, not rights under the antitrust laws.

*See* Rosenthal Decl. Ex. A, §11.08; Ex. B, §11.08; Ex. C, §11.08; Ex. D, §8.08.

Similarly unpersuasive is Monsanto's claim that "[t]ransferring this litigation to

Missouri will actually result in decreased expense and inconvenience, since the parties have

already retained counsel there" (Transfer Mem. at 14) – as if the parties do not already have

counsel in this case.

## IV.    American Seed's Antitrust Claims Do Not Involve Substantial Duplication Of Effort And Time And Therefore Are Not Compulsory Counterclaims To Monsanto's Claims Against American Seed

As Monsanto points out, the criterion for whether a claim is a compulsory

counterclaim is whether the counterclaim "bears a logical relationship to an opposing party's

claim." Transfer Mem. at 10. But as Monsanto also acknowledges, the Third Circuit has

made clear that the test for whether such a "logical relationship" exists is whether "separate

trials on each of the claims would involve a substantial duplication of effort and time by the

parties and the courts." *Transamerica Occidental Life Insurance Co. v. Aviation Office of America, Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (internal quotation marks omitted). (Transfer Mem. at 10); *see also GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, No.Civ.A. 05-898, 2005 WL 1116318, at *11 (D.N.J. May 10, 2005)(applying "substantial duplication" test) (attached as Ex. E).

Monsanto's argument here is largely a recapitulation of its brief in *Syngenta*, in which it unsuccessfully argued before this Court that Syngenta's antitrust claims should be dismissed because they were compulsory counterclaims to Monsanto's patent case against Syngenta. In fact, Monsanto's argument was considerably stronger in that case than it is in this one.

The patent at issue in Monsanto's patent suit is directly at issue in Syngenta's antitrust suit. As part of its antitrust claims, Syngenta alleges that the patent at issue is "invalid or unenforceable." *Syngenta* Am. Compl.¶ 73. Indeed, Monsanto's patent suit is itself an issue in Syngenta's antitrust suit, because Syngenta claims that the patent suit is baseless and is itself part of Monsanto's anticompetitive conduct. *Id.* ¶¶ 9, 72-78. Thus, the determination of Syngenta's antitrust claims depends in part on a determination of the merits of Monsanto's patent case.

Nonetheless, this Court denied Monsanto's motion to dismiss despite the "factual and legal overlap" between the two claims, finding that the antitrust claims were not compulsory counterclaims in the patent lawsuit. *Syngenta Seeds,* 2005 WL 678855, at *3.

In this case, it is still more clear that the antitrust claims are not compulsory counterclaims in the Missouri litigation. While Syngenta's antitrust claims themselves

turned in part on a determination of whether Monsanto's patent claims were valid, the outcome of Monsanto's case against American Seed is irrelevant to whether American Seed and the classes can prevail on their antitrust claims.

In *Syngenta*, the Court defined the issues as following: "(1) Are the issues in fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar plaintiff's subsequent suit absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute the claim as well as the counterclaim?" *Id.* at *1.

Applying these criteria, the Court held that:

> The Antitrust Litigation arises from defendants' allegedly anticompetitive conduct. The Shah Litigation arises from plaintiff's alleged infringement of the '835 patent. Because the Antitrust Litigation arises from defendants' conduct, and the Shah Litigation arises from plaintiff's conduct, the two actions could not arise from the same transaction or occurrence.

*Id.* at *2. The Court went on to explain that "the Antitrust Litigation presents distinct factual issues from the Shah Litigation." The Shah Litigation involved infringement of a patent relating to glyphosate resistance.

> In the Antitrust Litigation, defendants are alleged to have monopolies in the glyphosate-tolerant trait market, the European corn borer trait market, and the foundation corn seed market. More specifically defendants are alleged to have: (1) bundled commercial incentives across several products sold to corn growers to create a barrier to plaintiff and other competitors; (2) enforced exclusive dealing contracts to prevent plaintiff or other competitors from entering markets; (3) filed the "baseless" Shah Litigation against plaintiff; (4) filed separate "baseless" patent cases in Illinois concerning two other glyphosate-tolerant trait patents;

> (5) misrepresented plaintiff's ability to commercialize
> glyphosate-tolerant traits to discourage seed companies from
> dealing with plaintiff; (6) demanded destruction of all GA21
> production to impair plaintiff's entry into the glyphosate-
> tolerant traits market; (7) intimidated seed companies not to
> do business with plaintiff; and (8) denied plaintiff access to
> foundation seeds and pressured foundation seed companies
> not to deal with plaintiff.

*Id.* at *2. Thus, although plaintiff's antitrust allegations did involve Monsanto's enforcement

of the '835 patent, they "arise from a broader range of defendants' actions." *Id.* at *3.

The Court also pointed out that the legal issues differed as well:

> The different legal issues presented by the Antitrust Litigation
> and the Shah Litigation will require presentation of different
> evidence. The Antitrust Litigation will require examination
> of, among other things: defendants' contracts with seed
> companies, defendants' incentive program, alleged threats to
> companies, and relevant product and geographic markets.

*Id.* at *2 n.1. By contrast, "[t]he Shah Litigation will not consider any of this evidence and

will instead focus on the '835 patent," including such issues as "construction of patent

claims, ... whether the '835 patent is valid, and whether plaintiff infringes the '835 patent."

*Id.* at *2 & n.1.

Using the same standard, American Seed's antitrust claims clearly are not compulsory

counterclaims in the Missouri case. When one actually compares the two cases – as opposed

to Monsanto's generalized assertions about them – it becomes clear that trying the antitrust

claims in this district will not create "a substantial duplication of effort and time by the

parties and the courts." *Transamerica*, 292 F.3d at 389; while, on the other side, any finding

that the antitrust claims must be transferred to Missouri would lead to precisely the

"substantial duplication of effort and time" that the compulsory counterclaim rule is

supposed to prevent.

To paraphrase the Court's ruling in *Syngenta*, this case arises from defendant's alleged anticompetitive conduct, while the Missouri case arises from plaintiff's alleged failure to provide timely sales reports and its alleged sales of corn seed after termination of its licenses. As this Court found in *Syngenta*, because this case arises from defendant's conduct, and the Missouri case arises from plaintiff's conduct, the two actions "could not arise from the same transaction or occurrence." *See Syngenta Seeds,* 2005 WL 678855, at *2. Similarly, this case presents distinct factual and legal issues from the Missouri case. The antitrust claims are not at issue in the Missouri case; American Seed's performance of the contract, and its alleged post-termination sales, are not at issue in the antitrust case. *Cf. id.* at *2. Moreover, American Seed seeks to represent classes of purchasers with antitrust claims, none of which have anything to do with Monsanto's claims against American Seed.

Monsanto also points to American Seed's counterclaims as supposedly overlapping with the antitrust claims. Even if this were so, it would not show that the antitrust claims are themselves compulsory counterclaims. *Id.* at *3 (Syngenta's antitrust claims not compulsory in Monsanto's patent case despite "factual and legal overlap"). But American Seed does not raise any antitrust claims – either state or federal – in its counterclaims (which, although styled as "counterclaims," are largely simply defenses to Monsanto's claims). Instead, American Seed raises completely different claims: unconscionability, failure to provide proper notice, noncompliance with Missouri franchise law, estoppel and waiver, and invalidity and unenforceability of the trademarks, registrations, and patent. *See* American Seed Answer and Counterclaim ¶¶ 123-136 (Rosenthal Decl. Ex. H). It is difficult to see

what overlap there is between these defenses and the antitrust claims, or how it would cause substantial duplication for them to be considered separately. Moreover, while Monsanto argues that "both the counterclaims and the antitrust claims also contain similar allegations of patent misuse," Transfer Mem. at 11, there are *no* allegations of patent misuse in American Seed's antitrust case.

## CONCLUSION

In light of the substantial overlap between this case and the *Syngenta* case, the factors

set forth in 28 U.S.C. § 1404(a) weigh strongly against transfer. Moreover, there is no

substantial duplication of effort and time between American Seed's antitrust claims and

Monsanto's litigation against American Seed in Missouri, so the antitrust claims cannot be

compulsory counterclaims in the Missouri case. Accordingly, Monsanto's motion to transfer

should be denied.

SMITH, KATZENSTEIN & FURLOW LLP

Joelle E. Polesky (ID No. 3694)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
*Attorneys for American Seed Company Inc.*

OF COUNSEL:
KELLOGG, HUBER, HANSEN,
TODD, EVANS & FIGEL P.L.L.C.
Steven F. Benz
Aaron M. Panner
David L. Schwarz
Michael S. Zuckman
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

BERRY & LEFTWICH
R. Stephen Berry
J. Daniel Leftwich
Gregory Baruch
1717 Pennsylvania Avenue, N.W.
Suite 450
Washington, DC. 20006
Telephone: (202) 296-3020

Dated: September 15, 2005

10006647.WPD                     27