# EXHIBIT B

Westlaw.

Slip Copy
Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735
**(Cite as: Slip Copy)**

Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735
Briefs and Other Related Documents

United States District Court,D. Delaware.
SYNGENTA SEEDS, INC., Plaintiff,
v.
MONSANTO COMPANY and Monsanto Technology LLC, Defendants.
**No. Civ. 04-908-SLR.**

March 24, 2005.

John W. Shaw , and Karen E. Keller , of Young Conaway Stargatt & Taylor, L.L.P. , Wilmington, Delaware; Steven C. Sunshine , and Heather Lamberg Kafele , of Shearman & Sterling, L.L.P. , Washington, District of Columbia; Richard F. Schwed , and Thomas A. McGrath III , of Shearman & Sterling, L.L.P., New York, New York, for Plaintiff.
Richard L. Horwitz , of Potter Anderson & Corroon L.L.P. , Wilmington, Delaware; Peter E. Moll , of Howrey Simon Arnold & White , Washington, District of Columbia; Susan Knoll , of Howrey Simon Arnold & White , Houston, Texas; Kenneth A. Letzler , of Arnold & Porter, Washington, District of Columbia, for Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 28, 2004, plaintiff Syngenta Seeds, Inc. sued defendants Monsanto Co. and Monsanto Technology LLC (collectively "defendants") alleging "improper and illegal monopolization and attempted monopolization in the supply chain for biotechnology seed traits used by farmers throughout the United States." (D.I.1). Presently before the court is defendants' motion to dismiss plaintiff's complaint or, in the alternative, to consolidate the present action with a patent infringement suit. (D.I.10) For the reasons set forth below, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate.

II. BACKGROUND

Through the use of biotechnology, it is possible to introduce new genetic characteristics, or traits, into seeds in order to add desirable characteristics to crops. (D.I. 8 at 2) For example, biotechnology seed traits permit farmers to grow corn or soybeans tolerant to a leading non-selective herbicide, glyphosate. (*Id.*) This glyphosate-tolerant trait allows growers to spray glyphosate herbicide over the entire crop and kill all weeds, without risking any damage to the corn or soybean crop. (*Id.*) Other biotechnology seed traits permit farmers to plant corn that is resistant to certain pervasive insects, such as corn rootworm and the European corn borer. (*Id.*) Plaintiff and defendants are major suppliers of biotechnology traits and seeds. (*Id.* at 6)

On May 12, 2004, plaintiff's affiliate announced that it had acquired intellectual property rights to "GA21," a glyphosate-resistant corn trait. (D.I.8 at 4; D.I. 11 at 3) Plaintiff's affiliate also announced its intent to acquire the corn and soybean seed businesses of Garst Seeds and the Golden Harvest Group. (*Id.*) That same day, defendants filed Civil Action Number 04-305 (the "Shah Litigation"), alleging infringement of U.S. Patent No. 4,940,835 ("the '835 patent") entitled "Glyphosate-Resistant Plants."

On July 28, 2004, plaintiff sued defendants, alleging that defendants' conduct in the corn trait and seed market violates Section 2 of the Sherman Act (the "Antitrust Litigation"). (D.I.1) Plaintiff filed an amended complaint on September

14, 2004. (D.I.8) The amended complaint alleges that defendants have willfully maintained monopolies in: (1) the glyphosate-tolerant corn trait market (*Id.* at 36-37); (2) the European corn borer trait market (*id.* at 37-38); and (3) the foundation corn seed market (*id.* at 38-39).

## III. STANDARD OF REVIEW

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a). "A compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Bristol Farmers Mkt. and Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir.1978). As this court noted in *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D.Del.1992), the United States Court of Appeals for the Third Circuit has embraced a fairly liberal interpretation of the "transaction or occurrence" standard, establishing as "the operative question in determining if a claim is a compulsory counterclaim ... [is] whether [the counterclaim] bears a logical relationship to an opposing party's claim." A counterclaim is logically related to the opposing party's claim "[w]here multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties ." *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961). In determining whether a "logical relationship" exists between an opposing party's claim and a counterclaim, the court will analyze several factors: (1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; (2) Would *res judicata* bar plaintiff's subsequent suit absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? *Metallgesellschaft*, 143 F.R.D. at 558.

*2 Pursuant to Fed.R.Civ.P. 42(a), district courts have the authority to consolidate "actions involving a common question of law or fact ... pending before the court." Decisions to consolidate cases are at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. *See United States v. Dentsply Int'l, Inc.*, 190 F.R .D. 140, 142-43 (D.Del.1999). Under Fed.R.Civ.P. 42(a), "a district court [has] broad power ... to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673 (3d Cir.1964).

## IV. DISCUSSION

Plaintiff's Antitrust Litigation does not arise from the same transaction or occurrence that is the subject matter of defendants' Shah Litigation. The Antitrust Litigation arises from defendants' allegedly anticompetitive conduct. The Shah Litigation arises from plaintiff's alleged infringement of the '835 patent. Because the Antitrust Litigation arises from defendants' conduct, and the Shah Litigation arises from plaintiff's conduct, the two actions could not arise from the same transaction or occurrence.

Furthermore, the Antitrust Litigation presents distinct factual issues from the Shah Litigation. In the Antitrust Litigation, defendants are alleged to have monopolies in the glyphosate-tolerant trait market, the European corn borer trait market, and the foundation corn seed market. (D.I. 8 at 36-39) More specifically defendants are alleged to have: (1) bundled commercial incentives across several products sold to corn growers to create a barrier to plaintiff and other competitors (*id.* at 24, 28); (2) enforced exclusive dealing contracts to prevent plaintiff or other competitors from entering markets (*id.* at 21-23); (3) filed the "baseless" Shah Litigation against plaintiff (*id.* at 16-17); (4) filed separate "baseless" patent case in Illinois concerning two other glyphosate-tolerant trait patents (*id.* at 17-18); (5) misrepresented plaintiff's ability to commercialize glyphosate-tolerant traits to discourage seed companies from dealing with plaintiff (*id.* at 18); (6) demanded destruction of all GA21 production to impair plaintiff's entry into the glyphosate-tolerant traits market (*id.* at 19-21); (7) intimidated seed companies not to do business with plaintiff (*id.* at 22-23); and (8) denied plaintiff access to foundation seeds and pressured foundation seed companies not to deal with plaintiff (*id.* at 25). While several of these allegations are specific to the glyphosate-resistant seed trait market, most of the allegations are broader. In contrast, the Shah Litigation only involves infringement of a patent relating to glyphosate-resistant plants. As a result, the Antitrust Litigation presents different factual issues than the Shah Litigation.

The Antitrust Litigation also presents legal issues which are different from those of the Shah Litigation. The Shah Litigation will focus on patent issues such as construction of patent claims, whether defendants are estopped from asserting the '835 patent based on representations made in prior litigations, whether the '835 patent is valid, and whether plaintiff infringes the '835 patent. The Antitrust Litigation will focus on typical antitrust issues such as whether defendants are monopolists and whether defendants engaged in anticompetitive conduct. Thus, the legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct. FN1

FN1. The different legal issues presented by the Antitrust Litigation and the Shah Litigation will require presentation of different evidence. The Antitrust Litigation will require examination of, among other things: defendants' contracts with seed companies, defendants' incentive program, alleged threats to companies, and relevant product and geographic markets. The Shah Litigation will not consider any of this evidence and will instead focus on the '835 patent.

Defendant does not cite, and the court is unable to find, any precedent suggesting that resolution of defendants' Shah Litigation would create a *res judicata* bar on plaintiff's Antitrust Litigation. Consequently, this is yet another factor suggesting that the claims underlying plaintiff's Antitrust Litigation are not compulsory counterclaims of defendants' Shah Litigation.

*3 The reasoning of *Rohm & Haas Co. v. Brotech Corp.*, 770 F.Supp. 928 (D.Del.1991), does not suggest that the claims of plaintiff's Antitrust Litigation should have been a compulsory counterclaim of the Shah litigation. In *Rohm*, Rohm sued the Brotech, alleging infringement of four patents ("the Delaware Litigation"). Brotech then filed suit in Pennsylvania, alleging Rohm engaged in anticompetitive behavior in the prosecution and enforcement of ten patents ("the Pennsylvania Litigation"), including the four patents in the Delaware Litigation. *Id.* The *Rohm* court found that "the later filed antitrust and fraud claims alleging fraud on the [Patent and Trademark Office], are logically related to the patent claims at issue in the earlier filed suit." *Id.* at 933. Brotech's antitrust allegations were based solely on Rohm's actions in obtaining and enforcing the patents in suit in the Delaware Litigation. Unlike the facts as examined in *Rohm*, plaintiff's antitrust allegations arise from a broader range of defendants' actions and are not limited to defendants' enforcement of the '835 patent. Consequently, *Rohm* is not instructive in the present matter.

Nevertheless, the court does find that the Shah Litigation and the Antitrust Litigation do present minimal factual and legal overlap. Furthermore, the court finds that consolidating the Shah Litigation and the Antitrust Litigation will be more efficient than managing the cases separately. The court does not perceive any expense or fairness issues which would marshal against consolidating the two litigations. Consequently, the court exercises its broad power to consolidate causes of action to consolidate the Shah Litigation and the Antitrust Litigation.

V. CONCLUSION

For the reasons set forth above, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate. An appropriate order shall issue.

ORDER

At Wilmington this 24th day of March, 2005, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss (D.I.10) plaintiff's complaint is denied.

2. Defendants' motion to consolidate (D.I.10) the present action (Civ. No. 04-908-SLR) with Civ. No. 04-305-SLR is granted.

3. No further filings shall be made under the above captioned matter. Instead, all future filings shall be made in Civ. No. 04-305-SLR.

D.Del.,2005.
Syngenta Seeds, Inc. v. Monsanto Co.
Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735

Briefs and Other Related Documents (Back to top)

• 1:04cv00908 (Docket) (Jul. 28, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

