# EXHIBIT E

Case 1:05-cv-00535-SLR    Document 36-6    Filed 09/15/2005    Page 1 of 9

Westlaw.
Slip Copy
Slip Copy, 2005 WL 1116318 (D.N.J.)
(Cite as: Slip Copy)

C
Slip Copy, 2005 WL 1116318 (D.N.J.)
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., Plaintiff,
v.
MERIX PHARMACEUTICAL CORP., Defendant.
No. Civ.A. 05-898(DRD).

May 10, 2005.

Robert J. Del Tufo , Kenneth A. Plevan , Skadden ARPS Slate Meagher & Flom LLP, Four Times Square, New York, NY, for Plaintiff.
James S. Richter , Ronald Y. Rothstein , Winston & Strawn LLP, Newark, NJ, for Defendant.

OPINION

DEBEVOISE, Senior J.
*1 Presently before the court is the motion of Defendant Merix Pharmaceutical Corporation ("Merix" or "Defendant") to dismiss for lack of personal jurisdiction or, in the alternative, to transfer and the motion of Plaintiff Glaxosmithkline Consumer Healthcare ("GSK" or "Plaintiff") to enjoin Merix from prosecuting a lawsuit that was filed in the Northern District of Illinois after the instant action was filed. For the reasons set forth herein, Merix's motion to dismiss or to transfer will be denied and GSK's motion to enjoin the Illinois lawsuit will be denied.

FACTS

I. *The parties*

GSK is a Delaware limited partnership with its principal U.S. office in Moon Township, Pennsylvania. GSK is the over-the-counter ("OTC") division of GlaxoSmithKline, a pharmaceutical company headquartered in the United Kingdom with extensive operations in the United States. GSK's Research and Development Group is located in Parsippany, New Jersey.

Merix is an Illinois corporation based in Barrington, Illinois. Merix has no offices or employees in New Jersey. It is not registered to do business in New Jersey and does not maintain a registered agent in New Jersey to accept service of process. Merix distributes its products for sale directly through the internet and at drug and convenience stores nationwide, including New Jersey. Sales are accomplished in part through Performance Sales & Marketing, a sales representative, FN1 which is located in New Jersey and, as GSK alleges upon information and belief, has called on drug and convenience stores in New Jersey. In addition, Merix has had direct dealings with Pathmark in New Jersey. GSK alleges that Merix has advertised to New Jersey customers through the packaging of its product Releev, radio advertisements, and an internet website.

> FN1. The parties dispute whether Merix has had any direct relationship with the New Jersey sales representative, with Merix contending that its sales representative in Missouri retained the New Jersey representative and GSK contending that Merix directly engaged the services of the New Jersey representative. For purposes of deciding the motion to dismiss, the distinction is largely irrelevant because even if the Missouri agent retained the New Jersey agent, the Missouri agent was acting on behalf of Merix in doing so.

II. *The products*

GSK makes Abreva, a non-prescription cold sore remedy approved by the Food and Drug Administration to shorten

the healing time for cold sores. Abreva has been publicly available since the fall of 2000 following the FDA's July 25, 2000 approval of New Drug Application 20-941 for OTC sale. Abreva generally sells at retail for approximately $15-$18 per 2-gram tube. In addition to Abreva, GSK also makes Valtrex, a prescription drug for cold sores and herpes.

In or before February 2003, Merix introduced Releev, an OTC cold sore remedy. GSK alleges that Releev has not been approved by the FDA for use in treating cold sores and has not been generally recognized as safe and effective for use in treating cold sores. According to the current packaging, the active ingredient in Releev is benzalkonium chloride, which is a recognized antiseptic agent but, according to GSK, has never been shown to be an effective "Cold Sore/Fever Blister Treatment" as asserted by Merix on the Releev package. Releev is sold, in a price range of $15-$20 per tube, to consumers nationwide through Merix's website and other buy-direct websites. Releev is also available in national and regional drug retailers, many of which have outlets in New Jersey. In 2004, sales of Releev in New Jersey constituted approximately 4.5% of Merix's total sales of Releev.

### III. *The claims*

*2 GSK's Complaint asserts claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-2. GSK seeks an injunction to stop Merix from using allegedly false and deceptive advertising and promotional claims to win market share from GSK and destroy good will. The Complaint alleges that Merix made materially false claims regarding Releev, including but not limited to the following claims:
1. Releev has been "clinically proven": (a) to be a "1 Day Cold Sore Treatment" and (b) to "prevent outbreaks" (these two claims are located on the front panel of the Releev package);
2. Releev is endorsed by the University of Chicago;
3. Clinical research by Releev's Principal Clinical Investigator has been published; and
4. Releev uses the product name ViraMedx.

GSK alleges that Merix has disseminated false and deceptive advertising for Releev in New Jersey in three principal ways: (a) on the Releev packaging; (b) on the website operated by Merix; and (c) in radio advertisements in New Jersey and the New York metropolitan area. GSK alleges that Merix's false claims for Releev are deceiving consumers, diverting sales away from GSK to Merix, and causing GSK to suffer immediate and severe irreparable injury to its investment in the good will of the Abreva brand.

### IV. *Procedural history*

On July 2, 2004, GSK filed an advertising challenge with the National Advertising Division of the Council of Better Business Bureaus, Inc. (the "NAD"). In response, Merix submitted several clinical studies which purportedly substantiated its claims for Releev. GSK alleges that the clinical studies suffer from serious shortcomings in methodology, data collection, and analysis and fall short of meeting U.S. drug testing standards. The NAD recommended that Merix discontinue its efficacy claims and use of its "before and after" pictures for Releev.

According to the Complaint, the FDA sent a "Warning Letter" to Merix on May 20, 2003, advising Merix that statements made on the product packaging and Merix's website made the ViraMedx products "drugs" as defined in Section 201(g) of the Federal Food Drug and Cosmetic Act. The Warning Letter stated that the labeling claims made for the ViraMedx products subjected them to the requirements for new drugs "because there is no evidence that these products are generally recognized as safe and effective for their claimed uses." GSK alleges that the Warning Letter concluded that the drugs are "misbranded" because their labeling fails to contain adequate directions for the conditions for which they are offered as treatment.

The instant action was filed in the District of New Jersey on February 16, 2005. Merix filed an action in the Northern District of Illinois on March 9, 2005 (the "Illinois Action"). The Illinois Action concerns GSK's false advertising relating to its Abreva and Valtrex products and its anticompetitive actions directed at Merix. More specifically, Merix's complaint in the Illinois Action asserts the following claims against GSK:
*3 1. False advertising under the Lanham Act and Illinois law for advertising claims concerning GSK's Abreva and prescription drug Valtrex, and
2. Sherman Act and state law antitrust claims.

On March 14, 2005, Merix filed an amended complaint which eliminated the antitrust claims and contained only the false advertising claims. The allegedly false claims made by GSK are as follows:

Allegedly false advertising concerning Abreva:
• Speeds healing like a prescription, without a prescription

- Speeds healing like a prescription, without one
- Heals cold sores fast
- Heal it fast with Abreva
- Makes cold sores disappear fast with Abreva

• Allegedly false advertising concerning Valtrex:
  • One-day cold-sore treatment
  • 3-day outbreak therapy

DISCUSSION

I. *Exercising personal jurisdiction*

Rule 4(e) of the Federal Rules of Civil Procedure authorizes the court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the court sits, in this case New Jersey. New Jersey's long-arm rule, N.J. Civ. P.R. 4:4-4, extends jurisdiction over a non-resident defendant to the "to the uttermost limits permitted by the United States Constitution." Charles Gendler Co. v. Telecom Equity Corp., 102 N.J. 460, 469, 508 A.2d 1127 (N.J.1986) (citation omitted). Constitutional due process permits the court to exercise personal jurisdiction over a non-resident defendant who has "minimum contacts" with the forum state, if maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Accordingly, determining whether an assertion of personal jurisdiction comports with due process requires a two-step analysis. First, the court must determine whether the defendant has established minimum contacts with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Defendant's conduct and connection with the forum state must be such that it could reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Where the cause of action arises out of or is related to Defendant's contacts with the forum state, the court may exercise "specific" personal jurisdiction over the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where the cause of action does not arise out of Defendant's forum activities, a court may exercise "general" personal jurisdiction if Defendant has engaged in "continuous and systematic" contacts with the forum state. *Id.* Plaintiff bears the burden of establishing, by a preponderance of the evidence, that Defendant's contacts with the forum state are sufficient to give the court personal jurisdiction over Defendant. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir.1992); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984).

*4 Once Plaintiff has made out a *prima facie* case, the burden shifts to Defendant, which "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir.1992) (citing Rudzewicz, 471 U.S. at 477). Defendant's contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Rudzewicz, 471 U.S. at 476-77 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Relevant factors include: (1) the burden imposed on Defendant; (2) the forum state's interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. Woodson, 444 U.S. at 292. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Rudzewicz, 471 U.S. at 477. On the other hand, the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if Defendant has purposefully directed its activities at the forum state. *Id.* at 477-78.

A. Minimum contacts

Merix argues that it is not subject to the court's jurisdiction because it is an Illinois company which does not have any offices, facilities, or employees in New Jersey, is not registered to do business in New Jersey, and does not maintain a registered agent in New Jersey to accept service of process. These arguments are unpersuasive because an absence of physical contacts does not defeat personal jurisdiction. Rudzewicz, 471 U.S. at 476. Physical presence is not necessary to transact business in a state.

Merix contends that it merely placed its products into the stream of commerce, which is not sufficient to establish personal jurisdiction. Merix is correct that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality op.) (O'Connor, J.). In this case, however, GSK alleges that Merix did not merely and passively place Releev into the stream of commerce. GSK alleges that Merix has purposefully disseminated false and deceptive advertising in New Jersey on the Releev packaging which is displayed in numerous pharmacies in New Jersey, the website operated by Merix, in radio advertisements broadcast in New Jersey, and through a sales agent in New Jersey. These attempts to reach out to New Jersey customers through various media demonstrate that Merix "purposefully availed" itself of the privilege of engaging in activity in New Jersey. *Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir.2003) (noting that sufficient minimum contacts may be shown when defendant directly targets its web site to the state, knowingly interacts with residents of the forum state via a web site, or through sufficient other related non-internet activities).

**\*5** In addition, Merix has made substantial sales to New Jersey customers, comprising 4.5% of Releev's total sales in 2004. GSK has submitted charts which summarize the total amount of Releev shipped by Merix to individual customers, retailers and distributors in New Jersey. (Plevan Certification, Ex. 4.) From January 1, 2001 through March 7, 2005, Merix shipped 902 units of Releev, totaling $23,850.12, to 347 individual customers in New Jersey who placed their orders through the Merix website and/or a toll-free phone number. (*Id.*) Additionally, from 2003-05, Merix shipped 18,288 units, totaling $219,456.00, to retailers and distributors in New Jersey. (*Id.*) These sales support the exercise of personal jurisdiction over Merix.

GSK's claims arise out of Merix's contacts with New Jersey, including its dissemination of allegedly false and deceptive advertising in New Jersey and its substantial sales in New Jersey. GSK has shown that Merix "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing *Int'l Shoe,* 326 U.S. at 319). Accordingly, GSK has shown that Merix has established minimum contacts with New Jersey. Unless Merix can present a compelling case that considerations of fair play and substantial justice would render jurisdiction unreasonable, the court will exercise personal jurisdiction over Merix.

### B. Fair play and substantial justice

Merix argues that fair play and substantial justice considerations do not support personal jurisdiction for the following reasons:
- the burden on Merix to litigate in New Jersey would be "significant" because Merix has no offices, facilities or employees in New Jersey;
- New Jersey has no interest in resolving a dispute between a British company with its U.S. operations based in North Carolina and Pennsylvania and its Illinois-based competitor; and
- the interests of the interstate judicial system and the states would not be advanced by exercising jurisdiction.

Merix has not met its burden of showing that these considerations present a compelling reason for the court to decline jurisdiction. Merix's conclusory arguments are not supported by evidence showing how or why litigating in New Jersey would be a significant burden, or how the interests of the interstate judicial system would be affected. Merix has also not shown why New Jersey has no interest in resolving this dispute, given that advertisements marketing Releev were made in New Jersey and 4.5% of Releev's total sales in 2004 were made in New Jersey. In *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495 (3d Cir.1976), the Court of Appeals found that it was not unfair to require the defendants to stand trial in New Jersey because New Jersey sales accounted for approximately five percent of total national sales, which constituted "substantial business." *Id. at 497.*

**\*6** The court can and will exercise personal jurisdiction over Merix. Because Merix is subject to personal jurisdiction, venue is also proper in the District of New Jersey. *See* 28 U.S.C. § 1391 ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

### II. *Transferring to the Northern District of Illinois*

Although venue is proper here, Merix seeks a transfer to the Northern District of Illinois. Merix argues that if the court has personal jurisdiction over Merix, the court should nevertheless transfer this action to the Northern District of Illinois, contending that the majority of its likely witnesses and evidence are located in Illinois, its headquarters in Illinois is responsible for all decisions and activities relating to the marketing, sales, and research and development of

its products.

In its discretion, a court may transfer any civil action to another district where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The court must consider the private and public interests affected by the transfer. Clark v. Burger King Corp., 255 F.Supp.2d 334, 337 (D.N.J.2003). The private interest factors to be considered in determining whether to transfer venue include:
   (1) the convenience and preference of the parties, including the plaintiff's choice of forum;
   (2) the convenience of witnesses;
   (3) where the claim arose;
   (4) access to books and records.
Id. at 337-38. In addition, the public interest factors include:
   (1) practical considerations that would make the trial easy, expeditious, or inexpensive;
   (2) court congestion in each forum;
   (3) the location where the events at issue took place and the interest of the respective courts in deciding local controversies;
   (4) enforceability of any judgment; and
   (5) the judge's familiarity with the applicable law.
Id. at 338. This list is not exhaustive, and the court may consider other relevant factors.

The moving party must demonstrate that jurisdiction and venue lie properly in the transferee district, Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir.1970), and that the alternative forum is more appropriate than the present one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995). It appears undisputed that the instant action could have been initiated in the Northern District of Illinois, which could have exercised jurisdiction over Merix, an Illinois company. Therefore, Merix must only show that transfer to the Northern District of Illinois is warranted based on a consideration of public and private interest factors. Because Merix has not made such a showing, the motion to transfer will be denied for the reasons set forth below.

A. Private interest factors

*7 Plaintiff's choice of forum is a paramount consideration that should not lightly be disturbed. Clark, 255 F.Supp.2d at 338. Merix argues that GSK's choice of forum should be afforded less weight because New Jersey is not GSK's "home forum" FN2 and has little connection with the operative facts of the lawsuit. These arguments are not strong enough to disturb GSK's choice of forum. First, GSK has a significant research and development facility in Parsippany, New Jersey, where at least some of its witnesses concerning scientific and regulatory standards are employed. Second, it appears that New Jersey has a material connection to the dispute and significant contact with the underlying events. See Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203, 210 (S.D.N.Y.1998) ("[P]laintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim.") As discussed in the preceding section concerning personal jurisdiction, almost five percent of total sales of Releev were made in New Jersey in 2004. Several retailers carried Releev and presumably displayed the packaging in their stores. Moreover, Merix directed radio advertisements to listeners in New Jersey. These contacts with New Jersey show that the underlying false advertising dispute has a connection to New Jersey. Merix has not demonstrated that these contacts did not occur or should not weigh in favor of keeping the action in New Jersey.

> FN2. Merix contends that a "home forum" for GSK would be the Eastern District of Pennsylvania or the District of North Carolina, the locations of GSK's principal U.S. offices.

Regarding the convenience of parties and witnesses, Merix contends that transferring to the Northern District of Illinois would be more convenient for Merix and third-party witnesses, and would be as convenient as New Jersey for GSK's potential key witnesses. Unless the balance of inconvenience of the parties is strongly in favor of Defendant, Plaintiff's choice of forum should prevail. Clark, 255 F.Supp.2d at 338. Here, the convenience of the parties does not weigh in favor of transfer because such transfer would shift the inconvenience of litigating in a particular forum from one party to the other. Virgin Enterprises Ltd. v. Am. Longevity, No. 99 Civ. 9854(CSH), 2001 WL 34142402, at *9 (S.D.N.Y. Mar.1, 2001). Both parties apparently have witnesses located in their respective choices of fora. Although it may be true that Merix is a much smaller operation (with four full-time employees) compared to GSK, Merix has not provided evidence to support its contention that Merix would have to shut down operations if its employees were to testify in New Jersey. As for the convenience of non-party witnesses, Merix identifies three potential witnesses who are respectively located in Chicago, Brazil and New Mexico. Courts, however, do not generally consider the convenience for witnesses who reside or work in neither forum. Id. As for the professor at the University of Chicago

who might be called as GSK's witness, "it has been repeatedly held by courts that the convenience of expert witnesses is of little or no significance on a motion to transfer." *Id.* (citations omitted).

*\*8* Finally, Merix argues that there is no indication that material evidence is located in New Jersey. Rather, Merix contends that documentary evidence relating to GSK's claims will either be at Merix's headquarters or at the Illinois offices of third-party design and advertising companies retained by Merix. Merix has not, however, argued that shipping documents from Illinois to New Jersey would create an undue burden, *see Print Data Corp. v. Morse Financial, Inc.,* Civ. No. 01-CV-4430 (WGB), 2002 WL 1625412, at *8 (D.N.J. July 12, 2002). "When documents can be transported and/or easily photocopied, their location is entitled to little weight." *Clark,* 255 F.Supp.2d at 339 (D.N.J.2003) (citation omitted). In the day of the internet and electronic transmission of documents, location of documents assumes even less significance.

B. Public interest factors

Public interest factors do not tip the balance toward transfer. Merix argues that Illinois has a stronger local interest in adjudicating a dispute that involves an Illinois company. Little, if any, weight will be given to this broad argument for many of the reasons already discussed, including allegations that Merix's false advertising was directed at New Jersey and about five percent of total sales were made in New Jersey. Merix also argues that relative court congestion weighs in favor of transfer. As evidence, Merix cites the following statistics for 2004 from the Federal Court Management Statistics, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl:

- Although the Northern District of Illinois had more filings per judge, the number of pending cases per judge in Illinois was lower-350 pending in Illinois compared to 411 pending in New Jersey;
- The median time to disposition of a civil case was shorter in Illinois-5.9 months compared to 7.6 months; and
- The median time from filing to trial of a civil case was five months shorter in Illinois-28.4 months compared to 33.4 months.

Although these statistics weigh in favor of transfer, the differences in court congestion are relatively slight. Moreover, Merix has not shown that these statistics have any predictive value as to the disposition of this action. These statistics have varied from year to year, with some years' statistics indicating a quicker resolution in New Jersey. Therefore, the court congestion factor does not weigh heavily in favor of transfer.

The weight of the remaining public interest factors-practical considerations that would make the trial easy, expeditious, or inexpensive, enforceability of any judgment, and the judge's familiarity with the applicable law-are neutral in this case.

The weight of applicable public and private interest factors does not favor transfer. Accordingly, the motion to transfer to the Northern District of Illinois will be denied.

III. *Enjoining the Illinois Action*

GSK seeks an order enjoining Merix from prosecuting the lawsuit Merix filed on March 9, 2005 in the Northern District of Illinois, No. 05-CV-1403. First, GSK argues that the Illinois Action is the mirror image of the instant action and should be enjoined as a "second-filed" lawsuit. Merix, on the other hand, argues that the first-filed rule does not apply because neither action involves the same issues, the same core set of facts or the same allegedly false advertising. Second, GSK contends that Merix's claims in the Illinois Action are compulsory counterclaims under Rule 13(a) and must be asserted as such in this action. Merix argues that its claims are not compulsory counterclaims because they do not arise out of or relate to the transaction or occurrence that is the subject of GSK's claims in this action.

A. The first-filed rule

*\*9* The first-filed rule essentially provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988) (citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941)). Obvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs. To resolve such tensions, courts rely primarily on common sense and historical practice. *See, e.g., Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The first-filed rule is grounded in considerations of judicial administration, "giving regard to

conservation of judicial resources and comprehensive disposition of litigation." *Id.* (citations omitted). Although no precise rule has evolved, the general principle is to avoid duplicative litigation. *Id.* In exercising its discretion, the court should enjoin the subsequent prosecution of similar cases in different federal district courts. *EEOC, 850 F.2d at 971*.

Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer. *TPM Holdings v. Intra-Gold Indus., 91 F.3d 1, 4 (1st Cir.1996)* (citation omitted). But where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute. *Id.* The crucial inquiry of the first-filed rule is whether the issues substantially overlap; there is no requirement that the issues or the parties be identical. *Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir.1997)*.

The court's decision as to whether to enjoin the parties from proceeding in the Illinois Action is guided by the following six factors: (1) whether the court has jurisdiction; (2) whether this action was filed first; (3) whether the issues are the same; (4) whether the parties are the same; (5) whether parallel litigation will mean duplicate expenditures of judicial effort and the possibility of inconsistent results; and (6) whether the injunction will not aid GSK in an inequitable strategy or work an impermissible hardship on one or more of the parties. *Specialty Ins. Agency, Inc. v. Walter Kaye Associates, Inc.,* Civ. No. 89-1708(CSF), 1989 WL 65618, at *5 (D.N.J. June 7, 1989). Here, factors 2 and 4 are undisputed-this action was filed first and the parties are the same. The court has resolved factor 1, *supra* Section I of this opinion, finding that personal jurisdiction exists to hear this action. The three factors already considered favor GSK's motion to enjoin. However, factors 3, 5, and 6 remain to be considered.

*10 The first and most important issue is whether the issues in both actions substantially overlap. *Save Power, 121 F.3d at 950*. The issues need not be identical or the same. *Specialty Ins. Agency, 1989 WL 65618, at *3*. In this case, the factual issues concerning the three products are sufficiently different such that substantial overlap of issues cannot be found. It is true that one of the legal issues involved in both the Illinois Action and this action is the appropriate standard and requirements against which advertisements concerning the efficacy of cold sore remedies should be held. The allegations of false advertising in the two lawsuits, however, concern different products, one of which is Valtrex, a prescription drug. The standards by which a false advertising claim against a prescription drug would be judged would necessarily be different than the standards applicable to OTC medications such as Releev and Abreva. Moreover, the evidence regarding clinical and scientific research would differ product by product. The claims asserted in both actions do not involve a substantial overlap of factual and legal issues.

The second issue, *i.e.,* factor 5, concerns the duplication of judicial effort and the possibility of inconsistent results. Because the factual and some legal issues in the two actions differ, judicial effort would not be wasted if both actions proceeded in two district courts. Additionally, the possibility of inconsistent results appears unlikely, given that the two actions concern different products with different factual issues and that collateral estoppel would minimize the possibility of inconsistent results. These factors weigh against enjoining the Illinois Action.

The third issue, *i.e.,* factor 6, concerns equitable considerations that may weigh against applying the first-filed rule. *EEOC, 850 F.2d at 976-77*. Applicability of the first-filed rule is within the discretion of the court in which the first action was filed. *Id.* Bad faith, forum shopping, when the second-filed action had developed further than the initial suit, have always been regarded as proper bases for departing from the rule. *Id.* at 977. "Because the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action." *Id.* at 978. The party opposing application of the first-filed rule bears the burden of showing that special circumstances should bar its application. *Emerson Radio Corp. v. Emerson Elec. Corp.,* Civil Action No. 89-1979, 1990 U.S. Dist. LEXIS 8796, at *39 (D.N.J. March 29, 1990). In this case, Merix has not shown that special circumstances warrant deviation from the first-filed rule. Therefore, equitable considerations will not be given any weight.

Because the issues in both actions do not substantially overlap, judicial resources would not be substantially conserved by hearing all claims in one forum, and the possibility of inconsistent results seems unlikely given the different issues involved, the motion to enjoin the Illinois Action will be denied.

B. Compulsory counterclaims

*11 GSK argues that the claims in the Illinois Action are compulsory counterclaims that must be raised in this action. Rule 13(a) of the Federal Rules of Civil Procedure provides in pertinent part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....

Merix contends that its claims in the Illinois Action do not arise out of the same transaction or occurrence as GSK's claims in this action.

Because the objective of Rule 13(a) is to promote judicial economy, the term "transaction or occurrence" is construed generously to further this purpose. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 390 (3d Cir.2002). For Merix's claims to qualify as compulsory counterclaims, there need not be precise identity of issues and facts between those claims and GSK's claims in this action. Rather, the relevant inquiry is whether Merix's claims bear a "logical relationship" to GSK's claims. *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978). A logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id.* "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica,* 292 F.3d at 390 (3d Cir.2002) (citations omitted). "The hallmark of this approach is its flexibility. Basically, it allows the court to apply Rule 13(a) to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE 2d § 1410.

In this case, a substantial duplication of time and effort would not result from allowing both actions to proceed in their chosen fora. As discussed *supra* in Section III.A, factual issues concerning the three different products would be different and need to be developed individually; there would not be any duplication of judicial effort with respect to the factual issues. Because judicial economy would not be substantially promoted and the logical relationship test has not been met, Merix will not be compelled to assert its claims in the Illinois Action as compulsory counterclaims in this action.

## CONCLUSION

For the reasons discussed above, Merix's motion to dismiss for lack of personal jurisdiction, or to transfer in the alternative, will be denied. GSK's motion to enjoin the Illinois Action will be denied.

D.N.J.,2005.
Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.
Slip Copy, 2005 WL 1116318 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:05cv00898 (Docket) (Feb. 16, 2005)
• 2005 WL 692242 (Trial Pleading) Complaint for Preliminary Injunctive Relief and other Relief (Feb. 15, 2005)
• 2005 WL 692331 (Trial Pleading) Plaintiff's Memorandum of Law in Support of its Motion for Expedited Discovery (Feb. 15, 2005)
• 2005 WL 692332 (Trial Motion, Memorandum and Affidavit) Plaintiff Glaxosmithkline Consumer Healthcare, L.P.'s Memorandum of Law in Support of its Motion for a Preliminary Injunction (Feb. 15, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.