**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMERICAN SEED COMPANY, INC., Individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) C.A. No. 05-535-SLR ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| MONSANTO COMPANY, et al., | ) ) ) |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF MONSANTO'S
MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MISSOURI**

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: October 3, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorney for MONSANTO COMPANY, AMERICAN SEED, INC. CORN STATES HYBRID SERVICE, INC., HOLDEN FOUNDATION SEEDS, INC., DEKALB SEEDS, CALGENE, L.L.C., CHANNEL BIO CO., NC+ HYBRIDS AND SEMINS, INC.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.   AMERICAN SEED HAS NOT SATISFIED ITS HEAVY
     BURDEN TO CHALLENGE THE VALIDITY AND
     ENFORCEABILITY OF THE FORUM SELECTION CLAUSE..........................2

     A.   American Seed's Tortured Reading of The Forum Selection
          Is Unsupported and Defies "Common Sense"..............................................3

     B.   American Seed Waived Any Right To Object To Transfer .......................5

II.  THE § 1404 FACTORS WEIGH IN FAVOR OF TRANSFER.............................6

     A.   The *Syngenta* Litigation Does Not Alter the Transfer
          Analysis. ..........................................................................................................7

     B.   The Convenience of the Witnesses Factor Weighs in Favor
          of Transfer .......................................................................................................9

III. THE COMPULSORY NATURE OF AMERICAN SEED'S
     COUNTERCLAIMS CANNOT BE AVOIDED ...................................................10

CONCLUSION..............................................................................................................14

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Bolton v. Teroso Petroleum Corp.*,
    549 F. Supp. 1312 (E.D. Pa. 1982) ................................................................................9

*DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc.*,
    No. 96 C 50113, 2002 U.S. Dist. LEXIS 15846 (N.D. Ill. Aug. 23,
    2002) ..............................................................................................................................7

*Dunne v. Libbra*,
    330 F.3d 1062 (8th Cir. 2003) .......................................................................................3

*Farmers Ins. Co. v. Pierrousakos*,
    255 F.3d 639 (8th Cir. 2001) .........................................................................................3

*Fleming & Hall, Ltd. v. Cope*,
    30 F. Supp. 2d 459 (D. Del. 1998) ................................................................................2

*GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*,
    No. Civ. A. 05-898 (DRD), 2005 WL 1116318 (D.N.J. May 10, 2005) ....................11

*Gleason v. Norwest Mortgage, Inc.*,
    43 F.3d 130 (3rd Cir. 2001) ..........................................................................................3

*Guidi v. Inter-Continental Hotels Corp.*,
    224 F.3d 142 (2nd Cir. 2000) .......................................................................................7

*Hay Acquisition Co. v. Schneider*,
    No. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005) ................................5

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.*,
    883 F.2d 1286 (7th Cir. 1989) ...................................................................................4, 5

*Jumara v. State Farm Ins.*,
    55 F.3d 873 (3rd Cir. 1995) ......................................................................................2, 9

*Kachal, Inc. v. Menzie*,
    738 F. Supp. 771 (D. Nev. 1990) ..................................................................................3

*Keaty v. Freeport Indonesia, Inc.*,
    503 F.2d 955 (5th Cir. 1974) .........................................................................................4

*Miteq, Inc. v. Comtech Telecomms. Corp.*,
    C. A. No. 02-1336-SLR, 2003 WL 179991 (D. Del. Jan. 23, 2003) ..........................12

*Monsanto Tech. v. Syngenta Crop Protection, Inc.*,
   212 F. Supp. 2d 1101 (E.D. Mo. 2002) ...................................................................12

*M/S Bremen v. Zapata Of-Shore Co.*,
   407 U.S. 1 (1972) .......................................................................................................2

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*,
   743 F. Supp. 260 (S.D.N.Y. 1990) ............................................................................6

*OmniCom Group, Inc. v. Employers Reinsurance Corp.*,
   C. A. No. 01-839-GMS, 2002 WL 109346 (D. Del. Jan. 28, 2002)..........................12

*Red Bull Assocs. v. Best Western Int'l, Inc.*,
   862 F.2d 963 (2d Cir. 1988) ......................................................................................5

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
   817 F. Supp. 473 (D. N.J. 1993) ................................................................................6

*Syngenta Seeds, Inc. v. Monsanto Co.*,
   C. A. No. 04-908-SLR, 2005 WL 678855 (D. Del. Mar. 24, 2005) ..........................9

*Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.*,
   292 F.3d 384 (3rd Cir. 2002) .....................................................................................9

*Union City Barge Line, Inc. v. Union Carbide Corp.*,
   823 F.2d 129 (5th Cir. 1987) .....................................................................................7

*USM Corp. v. SPS Tech., Inc.*,
   694 F.2d 505 (7th Cir. 1982) ...................................................................................11

*USM Corp. v. Standard Pressed Steel Co.*,
   453 F. Supp. 743 (N.D. Ill. 1978) ............................................................................11

*Utah Pizza Service, Inc. v. Heigel*,
   784 F. Supp. 835 (D. Utah 1992) ..............................................................................4

*Von Graffenreid v. Craig*,
   246 F. Supp. 2d 553 (N.D. Tex. 2003)......................................................................5

*Wai v. Rainbow Holdings*,
   315 F. Supp. 2d 1261 (S.D. Fla. 2004) ......................................................................4

*Zoltek Co. v. Scott-Macon, Ltd.*,
   No. 4:04CV376SNL, 2004 U.S. Dist. LEXIS 27928
   (E.D. Mo. Jun. 2, 2004) .............................................................................................3

## PRELIMINARY STATEMENT

In response to Monsanto's Motion to Transfer, American Seed cobbles together a hodgepodge of counterarguments, none of which are dispositive or compelling. Implicitly conceding that the forum selection clause is valid and enforceable, American Seed posits that the language of that clause is permissive, not mandatory, and therefore should not be given effect. To reach this conclusion, American Seed asks this Court to read the word "exclusive" out of the clause and to focus on select words in isolation as opposed to reading the clause as a whole. American Seed asserts (without support) that the clause was only intended to apply if a party was sued in Missouri. However, the plain meaning of the forum selection clause is that any and all potential disputes be heard before a Missouri federal or state court. The mandatory language of the clause could not be clearer and should be given full force and effect. Moreover, America Seed has expressly waived any objection to transfer to Missouri. (Rosenthal Decls., Exs. A, B, and C, § 11.08; Ex. D § 8.08). (D. I. 27).

American Seed has failed to carry its "heavy burden" to demonstrate that the private and public interest factors of § 1404(a) weigh against transfer to the Eastern District of Missouri. For example, American Seed concedes that its own convenience in proceeding in Missouri is not an issue. Despite American Seed's assertion to the contrary, there can be little question that much of the evidence it will seek to discover in the case in terms of witnesses and documents are located in Missouri at Monsanto's headquarter offices. There is no evidence that these claims have any particular relationship to Delaware other than the separately filed and distinct Syngenta Antitrust Action.

American Seed's efforts to distinguish the compulsory nature of its claims here from first filed claims and counterclaims in the Eastern District of Missouri Action is without merit. American Seed simply cannot avoid the fact that its defenses to Monsanto's claims and its broad counterclaims filed in the Eastern District of Missouri

Action arise out of the same set of facts relating to the contractual relationship between the parties. Plaintiff's attempt to rely upon this Court's decision that Syngenta's antitrust claims were not compulsory counterclaims is misplaced. The issue is whether the two actions arise out of the same transaction or occurrence, namely the contract between the parties. Clearly they do and, as a result, American Seed's claims are properly compulsory counterclaims in the pending Eastern District of Missouri Action.

American Seed already contractually chose the forum in which to litigate disputes arising out of its relationship with Monsanto, including any antitrust claims. And American Seed filed unfair competition counterclaims in Missouri. Class counsel's subsequent attempt to forum shop – when the parties are already engaged in litigation in another court – should not be countenanced. Litigating American Seed's claims in Delaware will potentially expose Monsanto to conflicting judgments and will not promote judicial economy or conserve the resources of the parties. Transfer is appropriate.

## ARGUMENT

### I. AMERICAN SEED HAS NOT SATISFIED ITS HEAVY BURDEN TO CHALLENGE THE VALIDITY AND ENFORCEABILITY OF THE FORUM SELECTION CLAUSE

American Seed correctly points out that the presence of a mandatory forum selection clause is not itself dispositive in determining the propriety of transfer. (Opp'n Mem. at 11-15.) Yet, American Seed does not and cannot contest that "parties' agreement as to the most proper forum . . . is entitled to substantial consideration," and that American Seed "bear[s] the burden of demonstrating why [it] should not be bound by [its] contractual choice of forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd Cir. 1995). Nor can American Seed contest that it "has a particularly high burden" to demonstrate that the forum selection clause is either invalid or that its enforcement would

be unreasonable and unjust.  *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 463 (D. Del. 1998); *M/S Bremen v. Zapata Of-Shore Co.*, 407 U.S. 1, 15 (1972).  American Seed has not carried its heavy burden here.

### A.  American Seed's Tortured Reading of The Forum Selection Is Unsupported and Defies "Common Sense"

In an attempt to avoid the clear consequence of the forum selection clause, American Seed offers up a twisted and convoluted reading of the clause by parsing out particular subsections and words in a manner that defies logic and the plain meaning of the forum selection clause.  American Seed, for example, claims the inclusion of the word "submit" in lieu of "consent" renders the forum selection clause permissive, not mandatory, and requires American Seed to consent to the jurisdiction of the Missouri courts only if it is a defendant.  It asks this Court to focus on the "common-sense" of the phrase "submitting to jurisdiction," a phrase that does not appear in the forum selection clause.

To reach this strained interpretation, American Seed essentially asks the Court to read the word "*exclusive*" out of the forum selection clause, which states:

> THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF MISSOURI IN ANY SEED OR ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS AGREEMENT.

(Rosenthal Decls., Exs. A, B, and C, § 11.08; Ex. D § 8.08).  The word "exclusive," read in the context of the overall forum selection clause, demonstrates the mandatory nature of the clause and the parties' intent that all disputes be resolved before a Missouri court. *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3rd 130, 140 (3d Cir. 2001) (courts interpreting contract terms "construe the contract as a whole"); *Farmers Ins. Co. v. Pierrousakos*, 255 F.3d 639, 644 (8th Cir. 2001) ("Under Missouri law, contracts are to be construed as a whole.")

3

Numerous federal courts have held that the term "exclusive" renders a forum selection clause mandatory. *See Kachal, Inc. v. Menzie*, 738 F. Supp. 771, 373-74 (D. Nev. 1990) ("Mandatory forum selection clauses contain language such as 'exclusive'"); *Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (the term "exclusive" suggests exclusivity). Indeed, federal courts have also found that forum selection clauses similar to the one at issue here that do not even include the word "exclusive" are nonetheless mandatory. In *Zoltek Co. v. Scott-Macon, Ltd.*, No. 4:04CV376SNL, 2004 U.S. Dist. LEXIS 27928 (E.D. Mo. Jun. 2, 2004) (Ex. A hereto), for example, the District Court addressed an argument similar to that proffered by American Seed of the permissive nature of the following forum selection clause:

> Each party voluntarily submits to the jurisdiction of the federal and state courts located in the City of New York, State of New York, in any action or proceeding with respect to this Agreement. Each party hereto waives any objection that it may have to the location of the court in which an action or proceeding has been commenced in the aforesaid New York courts . . . .

In rejecting plaintiff's assertion that the clause was permissive in nature, the District Court held

> The courts have found that in cases wherein the word "shall" has been used in dictating the location of the forum, such clauses are considered mandatory. However, there is nothing in these decisions which mandates that the use or nonuse of the word "shall" (or other similar terms like "must", "only", or "exclusive") is the sole indicator of whether a forum selection clause is permissive or mandatory. Given the federal policy favoring the application of forum selection clauses and the lack of the usual factors for non-application of the forum selection clause, this Court chooses to read the clause as a whole and finds that the language of the clause (as a whole) strongly suggests exclusivity.

Id. at *17-18 (citations omitted).

Here, American Seed's novel theory of contract construction is not supported by any authority, including those cases cited in its Opposition Memorandum. To the contrary, *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1289 (7th

4

Cir. 1989), relied on by American Seed, involved a similar forum selection clause in which the parties agreed to "submit . . . to the exclusive jurisdiction" of the Illinois courts. Not surprisingly, the *Heller Financial* court enforced the forum selection clause. *Id*. at 1292. The other cases cited by American Seed in support of its novel construction addressed forum selection clauses with different language than the one at issue here – none of which contained the word "exclusive." *See Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) ("…the parties submit to the jurisdiction of the courts of New York" - word "exclusive" not included), *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261 (S.D. Fla. 2004) ("…parties hereby agree to submit [to] the jurisdiction of the Courts of SINGAPORE" – word "exclusive" not included), and *Utah Pizza Service, Inc. v. Heigel*, 784 F. Supp. 835, 838 (D. Utah 1992) ("nothing in the [forum selection clause] provision indicates an intent to prohibit litigation elsewhere" – word "exclusive" not included).

### B. American Seed Waived Any Right To Object To Transfer

Subsection C of the forum selection clause states in clear terms:

> THE PARTIES HERETO IRREVOCABLY . . . (C) WAIVE ANY OBJECTION THAT THEY MAY OR NOW OR HEREAFTER HAVE TO VENUE IN ANY SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM.

(Rosenthal Decls., Exs. A, B, and C, § 11.08; Ex. D § 8.08). The plain meaning of this subsection cannot be avoided – American Seed has waived any objection to venue in Missouri or inconvenient forum, including any right to object to the instant motion to transfer.

In an effort to avoid this clear result, American Seed asserts – without any support – that subsection C "only appl[ies] to bar a party from objecting if the *other* party brings suit in Missouri . . . ." (Opp'n Mem. at 8). Yet, American Seed concedes that it has "contractually waived the argument that the Eastern District of Missouri is an

5

inconvenient venue" (*Id.* at 18), indicating it believes that the clause of subsection C is operative for the purposes of this motion. If the inconvenient forum waiver language of subsection C is operative – regardless of whether American Seed is a defendant – then logic and basic principles of contract construction dictate that the language of subsection C waiving any objection to venue is also operative – regardless of whether it is a defendant. *See Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003) (finding venue proper in contractually agreed upon forum where party waived any objection based on improper venue).[1]

## II. THE § 1404 FACTORS WEIGH IN FAVOR OF TRANSFER

In its opening memorandum, Monsanto demonstrated that the relevant § 1404(a) factors weigh in favor of transfer.[2] In response, American Seed raises only two arguments: (i) the pendency of the Syngenta litigation weighs against transfer; (ii) and the convenience of witnesses would be prejudiced by transfer. As to the other factors, American Seed conclusively argues they "are not necessarily relevant . . . and . . . have

---

[1] American Seed asserts that subsection C is "meaningless" if the forum selection clause "had already provided that parties must bring all claims without exception in Missouri." (Opp'n Mem. at 10.) American Seed's argument appears to be that the forum selection clause at issue must be permissive because a party could never object to a mandatory forum selection clause. Of course, American Seed's reading ignores the wealth of cases – including cases American Seed relies on in its Opposition – in which parties *have* attempted to object to mandatory forum selection clauses. *See, e.g.*, *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963 (2nd Cir. 1988) (affirming denial to enforce forum selection clause on public policy grounds); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir. 1989) (challenging "exclusive jurisdiction" clause as unreasonable); *Hay Acquisition Co. v. Schneider*, No. 2:04-CV-1236, 2005 WL 1017804, *6 (E.D. Pa. Apr. 27, 2005) (challenging exclusive forum selection clause on grounds of unreasonableness) (Opening Mem. Ex. F).

[2] Factors weighing in favor of transfer include: (a) the parties' preferred forums, as evidenced by the forum selection clause, (b) where the claim arose, (c) the convenience of the parties, (d) the convenience of the witnesses, (e) the location of books and records, (f) the enforceability of the judgment, (g) practical considerations, (h) court congestion, and (i) public policy. (*See* Opening Mem. at 12.)

6

little or no weight in any event." (Opp'n Mem. at 20-21.) American Seed provides no explanation of its blanket statement, nor does it cite any case law. Each of these factors has been deemed relevant by the Third Circuit and this Court, and cannot be so lightly disregarded. As to the two factors American Seed does argue, it is wrong.

### A. The *Syngenta* Litigation Does Not Alter the Transfer Analysis.

American Seed notes that "the presence of related litigation in a forum is a significant factor in the 'interests of justice' analysis" that weighs in favor of transfer. (Opp'n Mem. at 14.) However, the litigation now pending in Delaware between Monsanto and third-party Syngenta should not operate to trump the interests of justice in the pending action between Monsanto and American Seed in the first filed Eastern District of Missouri Action. This first filed case is the "related litigation" for purpose of a § 1404 analysis. *See Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D. N.J. 1993) (noting that "related lawsuits" typically involve "'the same parties and issues'").

None of the authority cited by American Seed in support of the "related litigation" factor involved a case where there was *also* a first filed action between the parties simultaneously pending in the transferee forum, creating a risk of inconsistent outcomes. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F. Supp. 260, 264 (S.D.N.Y. 1990) ("absent transfer . . . there will be two litigations in different fora involving the same parties and issues") [3]

---

[3]   Indeed, American Seed does not cite to *any* § 1404(a) case in which a court denied transfer to a forum in which the plaintiff and defendant were currently involved in ongoing litigation. The only case American Seed cites in which the court denied a motion to transfer to a forum in which an action was pending involved a *forum non conveniens* motion that sought transfer to Egypt, where the defendant was litigating not against the plaintiffs, but against third parties who had similar claims. *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000). And, as the court noted, under a *forum non conveniens* analysis, the existence of related litigation "is not listed as a relevant factor." *Id*. at 148.

7

American Seed also fails to address – or even acknowledge – that the Syngenta case is significantly advanced.  Indeed, the Syngenta action has been pending for over one year – since July 28, 2004 – and the parties in that case have already exchanged discovery.  On the other hand, this case, which was only recently filed, will necessarily proceed on an entirely different schedule because, among other things, the parties will first have to resolve class certification issues.  Thus, the purported conveniences and efficiencies American Seed argues will result from litigating this case in this forum are largely illusory.  (*See* Monsanto's Opp'n to Mot. to Coordinate Discovery, D.I. 29, which is incorporated by reference herein).

While American Seed argues that coordination between the Eastern District of Missouri and this Court would be "very intrusive," it provides no support for this assertion.  To the extent relevant and necessary, American Seed and Monsanto can request the Missouri district court to allow the parties to use discovery from the Syngenta case in that forum.  Such orders are not uncommon.  *See, e.g., Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 135 (5th Cir. 1987) (noting the grant of access to discovery material from a related case); *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc.*, No. 96 C 50113, 2002 U.S. Dist. LEXIS 15846, at *9 (N.D. Ill. Aug. 23, 2002) (obtaining for use deposition transcripts in a related case in another district) (Ex. B hereto).

American Seed's reliance on the fact that Monsanto filed the Shah Patent case in this district as support for the proposition that "this Court is just as convenient" as the Eastern District of Missouri is a red herring.  Monsanto's decision to file a ***patent*** infringement lawsuit against a third party (Syngenta) in Delaware has no bearing on where disputes related to Monsanto's contract with American Seed should be litigated.  By focusing on the existence of the Syngenta litigation, American Seed apparently hopes

8

to distract from the fact that the parties are currently litigating against each other in the Eastern District of Missouri the alleged misuse of Monsanto's license agreements.[4]

### B. The Convenience of the Witnesses Factor Weighs in Favor of Transfer

The second factor American Seed contends weighs against transfer is convenience of the witnesses. In its opening memorandum, Monsanto noted that third-party and class witnesses were likely scattered throughout the country; this factor is thus neutral. (Opening Mem. at 12.) American Seed counters that if this case is transferred, it will be inconvenient for third-party witnesses because they may have to be deposed twice, in both the Syngenta litigation and in this litigation. (Opp'n Mem. at 20.) American Seed tellingly does not explain this assertion.

The plaintiffs (and potential witnesses) in the two litigations are different: one case involves seed companies and one case involves one of Monsanto's competitors. Certainly there may be some overlap in witnesses, but the parties can certainly stipulate that the depositions of any such witnesses from the Syngenta case can be used in the Eastern District of Missouri Action, which should alleviate American Seed's concerns. Moreover, if the American Seed case were to remain in this Court, certain witnesses may have to be deposed twice – in Missouri and here.

American Seed also mistakenly asserts, "[t]he convenience of *party* witnesses is not relevant to the § 1404(a) analysis." (Opp'n Mem. at 20, emphasis in original.)

---

[4] In its opposition brief, Plaintiff suggests that it is Monsanto that is engaging in forum shopping because it brought a case against Syngenta in Delaware rather than Missouri. However, unlike Monsanto's standard license agreements, each of which contains a forum selection clause, Syngenta Seed, Inc. has no license to sell Monsanto's glyphosate tolerant traits, much less one that contains a forum selection clause. In addition, Syngenta Seed, Inc.'s right to sell ECB seeds arises from a settlement agreement between Monsanto and Novartis, which Syngenta became a successor in interest there under. Monsanto has declined to provide American Seed with a copy of that confidential settlement agreement. That agreement, however, contains no forum selection clause.

9

American Seed bases its argument on one passage in *Jumara*, which notes that relevant transfer factors include "the convenience of the parties" as well as "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial." 55 F.3d at 879. American Seed appears to believe that party witnesses fall outside the scope of the "convenience of the witnesses" factor and that the location of party witnesses is never a relevant consideration. However this is not the case.

Party witnesses fall within the scope of the "convenience of the witnesses" factor, as illustrated by another case American Seed cites: "There is no question that the availability and convenience of witnesses *and parties* is an important consideration, perhaps the paramount consideration, in determining the desirability or necessity or a transfer." *Bolton*, 549 F. Supp. at 1315 (emphasis added). The *Bolton* court granted transfer in part because the defendant's headquarters were located in the transferee forum, and so transfer would "minimize the disruption to defendant's business activities which . . . [might] result if witnesses and documents involved in its ongoing operations must be produced in a forum far removed." *Id*. at 1316. The location of party witnesses is directly relevant to determining whether the "convenience of the witnesses" factor weighs in favor of transfer. As Monsanto noted in its opening memorandum, its witnesses and records are located in Missouri. The Eastern District of Missouri is a more convenient forum.

### III.    THE COMPULSORY NATURE OF AMERICAN SEED'S COUNTERCLAIMS CANNOT BE AVOIDED

American Seed fails to demonstrate that the Eastern District of Missouri Action does not "bear a logical relationship" to its claims here. *Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.*, 292 F.3d 384, 389 (3rd Cir. 2002). Instead, American Seed cites the recent decision in *Syngenta Seeds, Inc. v. Monsanto Co.*, C. A. No. 04-908-SLR, 2005 WL 678855 (D. Del. Mar. 24, 2005) (Opp'n Mem. Ex. B), as if it

10

ended all inquiry. It does not. In fact, that decision demonstrates exactly why transfer is required here.

As the Court is aware, Monsanto moved to dismiss Syngenta's antitrust complaint on the grounds that the claims should have been alleged as compulsory counterclaims to Monsanto's own patent infringement case; alternatively, Monsanto moved to consolidate the two cases. *Id*. As American Seed notes, the Court denied the motion to dismiss, holding that the two sets of claims did not arise from the same transaction or occurrence. *Id*. at *2. However, the Court did grant Monsanto's request for alternative relief: "[T]he court finds that consolidating the [cases] will be more efficient than managing the cases separately. . . . Consequently, the court exercises its broad power to consolidate causes of action to consolidate." *Id*. at *3. In contrast to the *Syngenta* case, Monsanto does not seek here to dismiss American Seed's claims. Instead, Monsanto seeks only to transfer those claims so that they can be heard by one Court.

Significantly, the factual differences that caused this Court to conclude that Monsanto's patent and Syngenta's antitrust claims did not arise from the same conduct (and were not therefore required to be alleged as counterclaims) are not present here. This Court found that Monsanto's patent complaint "only involve[d] infringement of a patent," whereas Syngenta's antitrust complaint dealt with Monsanto's alleged bundling of incentives and alleged misuse of exclusive dealing contracts. *Id*. at *2. In addition to involving different factual issues, this Court also found that the two complaints presented different legal issues. *Id*.

The exact opposite is true here. While American Seed significantly mischaracterizes its counterclaims in an attempt to downplay their true nature – arguing that "this case arises from alleged anticompetitive conduct, while the Missouri case arises from alleged failure to provide timely sales reports and its alleged sales of corn seed after termination of its licenses" (Opp'n Mem. at 25) – the reality is that the two cases present similar factual and legal issues. In the Eastern District of Missouri Action, American

11

Seed's counterclaimed[5] that Monsanto has misused its exclusive dealing contracts and has "attempt[ed] to assert and enforce an unconscionable, oppressive Franchise Agreement." (Rosenthal Decl., Ex. H ¶ 130(a)). American Seed specifically alleged that "Monsanto has misused the '605 Patent through unconscionable, oppressive and onerous attempts to assert agreements." (Rosenthal Decl., Ex. H ¶ 136(b)). Similarly, in this action, American Seed alleges that Monsanto has misused its exclusive dealing contracts and has attempted to enforce oppressive and unreasonable license agreements. (Compl. ¶ 3, D.I. 1). Certainly, some differences between the actions exist, but, as American Seed's own cases recognize, "[t]he issues need not be identical or the same," it is sufficient that they "substantially overlap." *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, No. Civ. A. 05-898(DRD), 2005 WL 1116318, at *10 (D. N.J. May 10, 2005) (Opp'n Mem. Ex. E).

Here, the cases do substantially overlap. The cases involve several of the same factual and legal issues and will involve much of the same evidence,[6] such as evidence relating to the contractual relationships of the parties, Monsanto's protection and enforcement of its patent and trademark rights, whether Monsanto's license agreements and other enforcement efforts were reasonable or oppressive, and whether Monsanto has misused its License Agreements. Several courts have recognized that claims of patent misuse are related to antitrust claims. *See*, *e.g.*, *USM Corp., v. SPS Tech., Inc.*, 694 F.2d 505, 511-12 (7th Cir. 1982) (noting the convergence of patent-misuse analysis with

---

[5] American Seed's transparent effort to distance itself from its own counterclaims by suggesting they "are largely simply defenses" should be disregarded. (Opp'n Mem. at 25). This characterization is belied by the fact that American Seed seeks damages and declaratory relief as a result of its counterclaims; its allegations are more than mere boilerplate defenses. (Rosenthal Decl., Ex. H ¶ A-I).

[6] As American Seed recognizes, these factors are important in determining whether two sets of claims bear a logical relationship. *Syngenta*, 2005 WL 678855, at *2; *see also* Opp'n Mem. at 23.

12

standard antitrust analysis); *USM Corp. v. Standard Pressed Steel Co.*, 453 F. Supp. 743, 748-49 (N.D. Ill. 1978) ("The essence of patent misuse consists of an attempt by the patent holder to . . . extend his monopoly beyond that legally granted to him."), *aff'd in part, vacated in part on other grounds sub nom. USM Corp. v. SPS Tech., Inc.*, 694 F.2d 505 (7th Cir. 1982). The claims at issue between Monsanto and American Seed in the Eastern District of Missouri Action are substantially related to this case, and it is that case that should inform the Court's transfer determination – not the Syngenta litigation.

Additionally, the "first-to-file" doctrine weighs in favor of transfer. This doctrine provides that "a later-filed action should be stayed pending the resolution of an earlier action, or transferred to the court in which the earlier-filed action is pending." *OmniCom Group, Inc. v. Employers Reinsurance Corp.*, C. A. No. 01-839-GMS, 2002 WL 109346 (D. Del. Jan. 28, 2002) (Ex. C hereto); *Miteq, Inc. v. Comtech Telecomms. Corp.*, C. A. No. 02-1336-SLR, 2003 WL 179991 (D. Del. Jan. 23, 2003) (Ex. D hereto). The intent of the doctrine is to avoid concurrent litigation of the same issues between the same parties in more than one federal court. The rule gives priority to the party who first establishes jurisdiction "[t]o conserve judicial resources and avoid conflicting rulings." *Monsanto Tech. v. Syngenta Crop Protection, Inc.*, 212 F. Supp. 2d 1101, 1102 (E.D. Mo. 2002) (transferring case to the District of Delaware where the parties are already litigating overlapping issues). To warrant transfer, the two cases need not be identical as long as there are overlapping issues. *Id*. Here, Monsanto filed its action against American Seed in the Eastern District of Missouri months ago. American Seed's decision to file in this Court has created the exact situation that the first-to-file rule is intended to avoid.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to transfer this action to the Eastern District of Missouri.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON, LLP |
| Peter E. Moll<br>John DeQ. Briggs<br>Scott E. Flick<br>John J. Rosenthal<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC  20004<br>(202) 783-0800<br>(202) 383-6610 facsimile<br><br>Kenneth A. Letzler<br>Jonathan I. Gleklen<br>ARNOLD & PORTER LLP<br>555 12th Street, N.W.<br>Washington, D.C. 20004<br>(202) 942-5000<br>(202) 942-5454 facsimile | By: */s/ David E. Moore*<br>     Richard L. Horwitz (#2246)<br>     David E. Moore (#3983)<br>     Hercules Plaza, 6th Floor<br>     P. O. Box 951<br>     Wilmington, DE 19801<br>     (302) 984-6000<br>     rhorwitz@potteranderson.com<br>     dmoore@potteranderson.com<br><br>Attorney for MONSANTO COMPANY, AMERICAN SEED, INC. CORN STATES HYBRID SERVICE, INC., HOLDEN FOUNDATION SEEDS, INC., DEKALB SEEDS, CALGENE, L.L.C., CHANNEL BIO CO., NC+ HYBRIDS AND SEMINS, INC. |

Dated:  October 3, 2005

701925

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on October 3, 2005, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Joelle E. Polesky, Esq.
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

I hereby certify that on October 3, 2005 I have sent by Federal Express the foregoing document to the following non-registered participants:

| | |
|---|---|
| Steven V. Benz, Esq. | R. Stephen Berry, Esq. |
| Michael S. Zuckman, Esq. | J. Daniel Leftwich, Esq. |
| Kellogg, Huber, Hansen, Todd, | Gregory Baruch, Esq. |
|     Evans & Figel P.L.L.C | Berry & Leftwich |
| 1615 M Street, NW, Suite 400 | 1717 Pennsylvania Ave., NW |
| Washington, DC  20036 | Washington, DC  20006 |

                                                             */s/ David E. Moore*
                                                            Richard L. Horwitz (#2246)
                                                            David E. Moore (#3983)
                                                            Potter Anderson & Corroon LLP
                                                           Hercules Plaza
                                                           Wilmington, DE 19899
                                                           (302) 984-6000
                                                           rhorwitz@potteranderson.com
                                                           dmoore@potteranderson.com

696607