# EXHIBIT A

1 of 1 DOCUMENT

**ZOLTEK CO., INC., Plaintiff, vs. SCOTT-MACON, LTD., Defendant.**

**Case No. 4:04CV376SNL**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MISSOURI, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 27928**

**June 2, 2004, Decided**

**SUBSEQUENT HISTORY:** Transferred to, Partial summary judgment granted by, Summary judgment granted by Scott-Macon Secs., Inc. v. Zoltek Cos., 2005 U.S. Dist. LEXIS 9034 (S.D.N.Y., May 11, 2005)

**DISPOSITION:** [*1] Defendant's motion to dismiss (# 5) DENIED. Defendant's motion to transfer (# 5) GRANTED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Zoltek Companies, Inc., Plaintiff: Gerald M. Dunne, KODNER AND WATKINS, Clayton, MO.

For Scott-Macon Limited, Defendant: Thomas M. Buckley, III, BUCKLEY AND BUCKLEY, L.L.C., St. Louis, MO.

**JUDGES:** Stephen N. Limbaugh, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Stephen N. Limbaugh

**OPINION:**

### MEMORANDUM AND ORDER

Plaintiff filed this action seeking damages for breach of contract and fraudulent misrepresentations in connection with allegedly unsuccessful investment and financing procurement for the plaintiff. This matter is before the Court on the defendant's motion to dismiss or to transfer (# 5), filed April 8, 2004. Responsive pleading have been filed.

Plaintiff alleges that misrepresentations were made to it to induce it to enter into an "engagement letter" or contract in which efforts were to be made on plaintiff's behalf to identify and/or procure investors and financing in plaintiff.

Before addressing the instant motion, it is necessary for the Court to first setout a brief litigation history of this cause of action. Plaintiff is a Missouri corporation with its principal place [*2] of business in St. Louis County, Missouri. Defendant Scott-Macon Ltd. (hereinafter referred to as "S-M Ltd") is a Delaware corporation with its principal place of business in New York. Non-party Scott-Macon Securities (hereinafter referred to as "S-M Securities) is a wholly-owned subsidiary of S-M Ltd. and a registered securities broker-dealer with its principal place of business in New York.

On or about July 31, 2003 Zsolt Rumy, Chairman and President/CEO of plaintiff, met with Allan Benton, Vice-Chairman of S-M Securities and Jeffrey Tepper, Managing Director of S-M Securities at S-M Securities headquarters in New York. n1 The purpose of the meeting was to discuss the possibility of S-M Securities assisting plaintiff in locating potential investors and raising capital. Ultimately, the parties at this meeting negotiated the possible terms of such a business relationship.

n1 Alexander Scott, Senior Vice-President of S-M Securities attended portions of this meeting.

On or about September 5, 2003 S-M Securities [*3] sent a letter to plaintiff setting forth the terms of this business relationship; i.e. "engagement letter". Declaration of Allen M. Benton, Exhibit A to Benton Declaration. The agreement clearly states that the contractual relationship is between S-M Securities and Zoltek and that, among other things, S-M Securities would use "reasonable efforts" to procure financing for plaintiff. S-M Securities would act as the "exclusive agent" in efforts to identify and procure potential investors. Furthermore, if the plaintiff were to be contacted by interested potential

2004 U.S. Dist. LEXIS 27928, *

investors in the first instance, plaintiff was to so inform S-M Securities. In consideration, plaintiff agreed to pay S-M Securities a fee contingent upon S-M Securities obtaining said financing. The agreement contained a "choice of law" and "forum selection" clause which provided:

> "The internal laws, without regard to conflicts of laws principles, of the State of New York shall govern all questions concerning the construction, validity, interpretation and performance of this Agreement. Each party voluntarily submits to the jurisdiction of the federal and state courts located in the City of New York, State of New York, [*4] in any action or proceeding with respect to this Agreement. Each party hereto waives any objection that it may have to the location of the court in which an action or proceeding has been commenced in the aforesaid New York courts and waives any right it may have to a trial by jury. The Company agrees that it may be served with process at its address set forth on the firstpage hereof."

Exhibit A to Benton Declaration, P16. n2 Plaintiff executed the engagement letter in St. Louis County, Missouri. Mr. Rumy, acting on behalf of plaintiff, signed the agreement and forwarded it with his electronic signature to S-M Securities' office in New York. On September 6,2003 S-M Securities received in its New York office a facsimile copy of the engagement letter signed by Mr. Rumy.

> n2 In some instances, the litigants have filed duplicate exhibits. The Court will cite to only one exhibit; however, the choice of exhibit is not meant to indicate any judicial preference but only to achieve judicial economy and efficiency.

[*5]

In connection with its contractual obligations, S-M Securities allegedly contacted over two hundred and fifty (250) potential investors, mostly in New York and the surrounding area. However, in November 2003 plaintiff hired Gilbert, Kopolow & Associates, a St. Louis company, as its broker to obtain financing for plaintiff. Through the efforts of Gilbert, Kopolow & Associates' efforts, financing was procured from two (2) companies located in New York. Although S-M Securities had con-

tacted these two companies, financing through them had already been arranged independent of S-M Securities.

On February 27, 2004 plaintiff sued S-M Securities in the Circuit Court for St. Louis County alleging that S-M Securities had breached the engagement letter by not using "best efforts" to obtain financing for the plaintiff Declaration of Joseph B. Shumofsky, Exhibit A to Shumofsky Declaration.

On March 8, 2004 Robert J. Dwyer, representing the legal interests of S-M Securities sent a demand letter to Thomas Litz, counsel for plaintiff. The demand letter sought outstanding fees that S-M Securities believed was owed to it by the plaintiff. Exhibit B to Shumofsky Declaration. Included with the demand [*6] letter were two (2) invoices: one from defendant S-M Ltd. for $ 10,000.00 for "monthly retainer" as of December 5, 2003 - January 4, 2004; and the other invoice was from S-M Securities for out-of-pocket expenses of $ 20,983.22. This demand letter was forwarded to Gerald M. Dunne, counsel for plaintiff (in the instant lawsuit). Upon review of the "history of the relationship between Zoltek and Scott-Macon Securities, Inc.", Mr. Dunne asserted that "misrepresentations were made to Zoltek by Scott-Macon Securities to induce Zoltek to enter into the Agreement". He further averred that plaintiff had to "pursue other sources of financing because of Scott-Macon's insufficient performance." Exhibit C to Shumofsky Declaration. Plaintiff refuted any obligation regarding fees to S-M Securities and refused the demand.

On March 12, 2004 plaintiff amended its state complaint by substituting defendant S-M Securities as the only party defendant. Thus, S-M Securities was no longer a party to plaintiff's state court lawsuit. Although no longer a party to plaintiff's lawsuit, both S-M Securities and defendant S-M Ltd. were served with the plaintiff's original and amended complaints on March 25, 2004. Meanwhile, [*7] on March 17, 2004 S-M Securities filed a multicount complaint against Zoltek in the United States District Court for the Southern District of New York for breach of contract, breach of implied covenant of good faith and fair dealing, and for specific performance and/or damages. Exhibit F to Shumofsky Declaration.

On March 26, 2004 defendant S-M Ltd removed plaintiff's state court action to federal court where it was ultimately assigned to this Court.

Defendant S-M Ltd. seeks to dismiss this lawsuit because it is not the proper party defendant. It asserts that the proper party defendant is S-M Securities since plaintiff and S-M Securities are the only signatories to the engagement letter. It contends that the contractual relationship established by the engagement letter is strictly between S-M Securities and plaintiff; and that the pri-

2004 U.S. Dist. LEXIS 27928, *

mary issue in the instant lawsuitis whether or not S-M Securities fulfilled its contractual obligations under the engagement letter. In the alternative, should this Court not dismiss the lawsuit, defendant S-M Ltd seeks to transfer this lawsuit to the United States District Court for the Southern District of New York. It contends that not only have the [*8] requirements of transfer under 28 U.S.C. § 1404(a) been met, but that the forum selection clause in the engagement letter mandates that all litigation regarding the engagement letter be heard in New York. Finally, it contends that the best interests of judicial economy and efficiency necessitate transferring this case to the United States District Court for the Southern District of New York where the litigation between the contractual parties regarding the engagement letter is currently pending. Plaintiff, on the other hand, contends that under theories of alter ego and agency S-M Ltd. is a proper party defendant. It further contends that the requirements for transfer under § 1404(a) have not been met. Finally, it contends that the forum selection clause did not place "exclusive" jurisdiction with the federal and state courts in New York; and more importantly, plaintiff's choice of litigating in Missouri should be honored pursuant to the "first-filed rule".

After careful review of the parties' pleadings and the courtfile, the Courtag rees that plaintiff has no cause of action under the first amended complaint which is presently pending before this Court. This [*9] case involves the contractual relationship of two parties: the plaintiff and S-M Securities and whether one or both breached the engagement letter/agreement. As it stands now, only one of the contractual parties is before the Court - the plaintiff. Since the first amended complaint makes no allegations regarding alter ego and/or agency as to defendant S-M Ltd., there does not appear (at this time) under the standard for a motion to dismiss that plaintiff can state any facts which would entitle it to recover as a matter of law. The Court realizes that the plaintiff has recently requested leave to file a second amended complaint which adds S-M Securities as a party-defendant, and makes additional allegations in an attempt to keep S-M Ltd in this lawsuit; however, the Court finds such a maneuver to really just beg the question of S-M Ltd being a proper party defendant. Furthermore, the Court cannot just ignore the fact that another lawsuit is pending in a federal court in New York between the proper parties to this dispute which addresses the same issues presenth ere. Therefore, assuming that the requirements for transferring this case under § 1404(a) are met, the Court prefers to transfer [*10] this case instead of dismissing it.

Defendant seeks transfer pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In making a § 1404(a) analysis, a plaintiff's choice of proper forum is given great weight and should not be disturbed unless the movant makes a clear showing that the balance of interest weighs in favor of the movant. Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F.Supp.2d. 1015, 1022 (E.D.Mo. 2002); Graff v. Qwest Communications Corp., 33 F.Supp. 2d. 1117, 1120-21 (D.Minn. 1999) citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947); Houk v. Kimberly-Clark Corp., 613 F.Supp. 923 (W.D.Mo. 1985). Merely shifting the burden of inconvenience and cost is not enough to grant a transfer. Medicine Shoppe Int'l v. Tambellini, 191 F.Supp.2d. 1065, 1069 (E.D.Mo. 2002) citing Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d. 688, 696-97 (8th Cir. 1997); [*11] Houk, at 927-28; see also, Van Dusen v. Barrack, 376 U.S. 612, 646, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964). The interests to be considered include the convenience of the parties and witnesses, the availability of judicial process to compel attendance of hostile witnesses, the governing law, relative ease of access to sources of proof, possibility of delay and prejudice if a transfer is granted, and practical considerations of cost and efficiency. Terra International, at 696; Biometics, L.L.C. v. New Womyn, Inc., 112 F.Supp.2d. 869, 875 n.4 (E.D.Mo.2000); General Committee of Adjustment v. Burlington Northern Railroad, 895 F.Supp. 249, 252 (E.D.Mo. 1995); New Dawn Natural Foods v. Natural Nectar Corp., 670 F.Supp. 869, 873 (E.D.Mo. 1987); Midwest Mechanical Contractors, Inc. v. Tampa Constructors, 659 F.Supp. 526, 532 (W.D.Mo. 1987); Houk, at 927; see also, May Department Stores v. Wilansky, 900 F.Supp. 1154, 1165 (E.D.Mo. 1995). However, a district court is not limited to evaluating a transfer motion based upon these enumerated factors alone. Such an evaluation requires a case-by-case evaluation of the [*12] particular circumstances involved, as well as consideration of all relevant factors. Terra International, at 691; Graff, at 1121.

Although a change in venue is well within the trial court's discretion, it should not be freely granted. In Re Nine Mile, Ltd., 692 F.2d. 56, 61 (8th Cir.1982); Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., at 1022. After weighing the relevant factors and considering the particular circumstances present in the case, unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should be left undisturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 91 L. Ed. 1055,

!

67 S. Ct. 839 (1947); Medicine Shoppe Int'l v. Tambel-lini, at 1069; May Department Stores v. Wilansky, at 1165; New Dawn, 670 F.Supp. at 874; St. Louis Federal Savings and Loan v. Silverado Banking, 626 F.Supp.379, 383 (E.D.Mo. 1986). To prevail on its motion to transfer, defendant must show that its inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred. Nelson v. Soo Line Railroad Co., 58 F.Supp.2d. 1023, 1026 (D.Minn. 1999); Imation Corp. v. Sterling Diagnostic Imaging, Inc., 47 U.S.P.Q.2d (BNA) 1745, 1747 (D.Minn. 1998). [*13]

Upon review of the matter, the Court determines that defendant S-M Ltd.'s motion to transfer should be granted. As stated before, this case involves the contractual relationship between plaintiff and S-M Securities. Plaintiff's amended complaint alleges that this contractual relationship was broken by S-M Securities due to S-M Securities' inadequate performance, under the engagement letter/agreement, in failing to find financing for plaintiff. Plaintiff also alleges that it was induced to enter into the contractual relationship by misrepresentations made by S-M Securities. Thus, the conduct at issue occurred in New York. The contractual parties met in New York to discuss the terms of their business relationship and most, if not all, of S-M Securities' efforts to secure financing for plaintiff occurred in New York or in the adjacent area.

Although plaintiff's principal place of business is in Missouri, it has already shown that traveling to New York is not a major inconvenience. Its' President and CEO went to New York to negotiate the agreement. Furthermore, most of the witnesses to the contractual agreement and to S-M Securities' efforts to locate potential investors are in New York [*14] or on the east coast. The companies contacted by S-M Securities are located in or near New York City, including the two companies that ultimately agreed to provide financing to plaintiff. Although plaintiff has records concerning this dispute stored in St. Louis, the records of S-M Securities (as well as S-M Ltd.) and the records of the contacted potential investors and actual investors are in or around New York City.

As stated before, the conduct giving rise to this lawsuit originated in New York. The agreement was negotiated in New York, executed both in St. Louis and New York City, and presumably most, if not all, efforts by S-M Securities to procure financing occurred in New York or surrounding vicinity.

Furthermore, the agreement contains a "choice of law" and "forum selection clause" which stipulates that the governing law is New York law and that the place for litigation are the state and federal courts located in New York. The parties agree that New York law governs this lawsuit pursuant to the "choice of law" portion of the clause but disagree as to its application with respect to the forum. Plaintiff contends that the forum selection clause is "permissive"; i.e. it is not [*15] required under the clause to litigate in New York. It argues that there is no language in the clause rendering New York as the exclusive forum to litigate matters in connection with the engagement agreement. The Court disagrees.

Federal law determines whether or not a forum selection clause is enforced. See, Rainforest Cafe, Inc. v. Eklecco, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003)(citations omitted) n3; see also, RK Dixon Co. v. Dealer Mktg. Servs., 284 F. Supp. 2d 1204, 1208 (S.D.Iowa 2003)(citations omitted). The federal rule on the enforcibility of forum selection clauses requires that the clause should control and be enforced unless it can be shown that the clause is unreasonable and unjust, or that the clause is invalid because of fraud or overreaching, or that the lawsuit is broader that the intended scope of the clause. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522 (1991); Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972); Dominium Austin Partners, L.L.C. v. M.J. Emerson, et. al., 248 F.3d. 720, 726-27 (8th Cir. 2001); [*16] M.B. Restaurants v. CKE Restaurants, 183 F.3d. 750, 752 (8th Cir. 1999); RK Dixon, at 1209-10; Reliance Ins. Co. of Illinois v. Weis, et. al., 148 B.R. 575, 579 (E.D.Mo. 1992) aff'd 5 F.3d 532 (8th Cir. 1993)(unpublished). Forum selection clauses are "prima facie valid" and "should control absent a strong showing that it should be set aside." The Bremen v. Zapata Off-Shore Co., 407 U.S. at 10, 15. Wherein a forum selection clause is made "in an arm's length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be . . . enforced by the courts." RK Dixon, at 1210 quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. at 12.

n3 As in Rainforest Cafe, supra., the parties in the instant case have not argued that state law controls the question of whether the forum selection clause applies, and in fact, cite to various federal court decisions in support of their respective positions.

[*17]

Plaintiff's only argument in support of non-application of the forum selection clause is that it is "permissive" thereby allowing it to properly file suit in Missouri. It makes no argument whatsoever attacking the merits of the clause or that the scope of its lawsuit is out-

2004 U.S. Dist. LEXIS 27928, *

side the reach of the clause. Its argument is simple and straightforward - since the clause does not name New York as the "exclusive" jurisdiction for all disputes arising under the engagement agreement, the plaintiff is not prohibited from bringing suit in Missouri. The Court disagrees.

It is undisputed that plaintiff "voluntarily submits to the jurisdiction of the federal and state courts located in the City of New York, State of New York, in any action or proceeding with respect to this Agreement" and furthermore, "waives any objection that it may have to the location of the court in which an action or proceeding has been commenced in the aforesaid New York courts". The courts have found that in cases wherein the word "shall" has been used in dictating the location of the forum, such clauses are considered mandatory. *See,* Rainforest Cafe, at 546; Dunne v. Libbra, 330 F.3d. 1062, 1064 (8th Cir. 2003); [*18] RK Dixon, at 1210. However, there is nothing in these decisions which mandates that the use or nonuse of the word "shall" (or other similar terms like "must", "only", or "exclusive") is the sole indicator of whether a forum selection clause is permissive or mandatory. Given the federal policy favoring the application of forum selection clauses and the lack of the usual factors for non-application of the forum selection clause, this Court chooses to read the clause as a whole and finds that the language of the clause (as a whole) strongly suggests exclusivity. The parties to this agreement were not naive laymen but rather experienced corporate executives. There is nothing to suggest that it was not the legitimate expectations of the parties when drafting this agreement that any disputes would be litigated in a forum other than New York City. The issues raised in the instantl awsuit are squarely covered by the forum selection clause. Moreover, the parties agreed to waive any objection to venue in New York City. *See,* Dominium Austin Partners, at 727 n.5 ("Moreover, a forum selection clause may be viewed as a waiver of a defendant's right to objectt o venue."). Finally, enforcing [*19] the forum selection clause in the agreementa t issue here will not "deprive the [plaintiff] of [its] fair day in court." M.B. Restaurants, at 752; *see also,* Dominium Austin Partners, at 727. Enforcement of the forum selection clause is lawful under the circumstances of this case.

Plaintiff's last argument objecting to transfer of this case is raised in connection with the "first-filed rule". Plaintiff contends that since it filed first in Missouri, jurisdiction should remain here. Defendant contends that the "first-filed rule" is inapplicable since the parties differ in the litigation pending in New York from the litigation before this Court.

In instances wherein parallel litigation has been instituted by the same or different parties in different courts, the "first-filed rule" gives priority to choice of

venue of the party who first established jurisdiction. Northwest Airlines v. American Airlines, 989 F.2d. 1002, 1004-1006 (8th Cir. 1993) (internal citations omitted); *see,* Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 503 n.2 (8th Cir. 1999) *citing* Northwest Airlines, *supra.;* Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 n.3 (8th Cir. 1999) [*20] *citing* Northwest Airlines, *supra.;* Monsanto Technology LLC v. Syngenta Crop Protection, Inc., 212 F. Supp. 2d 1101, 1103 (E.D.Mo. 2002) *citing* Northwest Airlines, *supra.;* General Committee of Adjustment GO-386 et. al. v. Burlington Northern Railroad, 895 F. Supp. 249, 251-52 (E.D.Mo. 1995). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; however, the rule should not be applied in a rigid, mechanical or inflexible manner but rather should serve as a means to facilitate the interests of justice. Id. The prevailing standard is that in the absence of "compelling circumstances" the first-filed rule should apply. Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System, 57 F.3d. 638, 641 (8th Cir. 1995) *citing* Northwest Airlines, *supra.;* Monsanto Technology, at 1102-03; Eveready Battery Co. v. Zinc Products Co., 21 F.Supp.2d. 1060, 1061-62 (E.D.Mo. 1998); Commercial Union Ins. v. Torbaty, 955 F.Supp. 1162, 1163 (E.D.Mo. 1997); General Committee of Adjustment GO-386, at 251-52 (citations omitted). [*21]

The Eighth Circuith as identified "two red flags" that indicate possible compelling circumstances justifying the non-application of the first-filed rule. Firstly, whether the "first" lawsuit was filed after the other party gave notice of its intention to sue; and secondly, whether the "first" action was for declaratory relief rather than for damages or equitable relief. Northwest Airlines, at 1007; *see,* Anheuser-Busch, Inc. v. Supreme Int'l Corp., at 419; Boatmen's First National Bank of Kansas City, at 641; Eveready Battery, at 1062; Commercial Union Ins., at 1163. However, if the first-filed suit bears the indicia of bad faith or a preemptive strike, a court may disregard the first-filed rule. *See,* Federal Cartridge Co. v. Remington Arms Co., 2003 U.S. Dist. LEXIS 23482, 2003 WL. 23101805 (D.Minn. Dec. 31, 2003) (citations omitted).

Finally, the cases do not have to be identical as to parties and/or issues, but must be so related that there is substantial overlap between the cases regarding the issues raised. Monsanto Technology, at 1103; General Committee of Adjustment GO-386, at 252.

After careful consideration [*22] of the matter, the Court determines that albeit plaintiff filed first in St. Louis, compelling circumstances support the transfer of this case to New York.

The agreement at issue contains a valid forum selection clause establishing jurisdiction in New York state

2004 U.S. Dist. LEXIS 27928, *

and federal courts. Plaintiff has offered insufficient evidence challenging the validity of the clause. It has presented no justification why this Court should simply ignore a forum selection clause which clearly covers the issues contained in this lawsuit, which the parties intelligently and knowingly negotiated its inclusion in the agreement, and which the parties have agreed to voluntarily waive any objections to the location of the court in **New York** wherein litigation has commenced concerning the subject agreement. Furthermore, as previously noted, the considerations of § 1404(a) mandate a transfer of this case to New York. Finally, given the existence of the forum selection clause, the Court believes that the plaintiff's decision to sue in St. Louis is indicative of bad faith and appears to be little more than a preemptive strike. Plaintiff filed its state case on or about February 27, 2004 and summons for out-of-state [*23] service was issued on March 1, 2004. Plaintiff's Exhibits D and E. However, plaintiff did not serve its complaint and/or amended complaint until March 22 and 25, 2004, after receiving S-M Securities' demand letter of March 6th and the filing of S-M Securities' lawsuit in New York on or about March 17th. Plaintiff offers absolutely no explana-

tion as to why it waited almost thirty (30) days to serve its lawsuit on a defendant with no obstacles to service (such as an unknown address). The circumstances of plaintiff's filing in St. Louis is suspect and the Court chooses not to indulge this race to the courthouse by crowning the plaintiff the winner.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss (# 5) be and is **DENIED.**

**IT IS FINALLY ORDERED** that defendant's motion to transfer (# 5) be and is **GRANTED.** This cause of action, along with all pending motions including plaintiff's motion for leave to file second amended complaint, be and is transferred to the United States District Court for the Southern District of New York.

Dated this 2nd day of June, 2004.

Stephen N. Limbaugh

SENIOR UNITED STATES DISTRICT JUDGE

# EXHIBIT B

7 of 18 DOCUMENTS

## DeKalb Genetics Corp. vs. Pioneer Hi-Bred Int'l, Inc.

### 96 C 50113

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*2002 U.S. Dist. LEXIS 15846*

**August 23, 2002, Decided**

**DISPOSITION:** [*1] Defendant awarded costs.

**COUNSEL:** For DEKALB GENETICS CORP, plaintiff: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero, & France, Rockford, IL.

For DEKALB GENETICS CORP, plaintiff: David L. Parker, Mark J. Rozman, Gary J. Sertich, Nicole Stafford, Arnold, White & Durkee, Willem G. Schuurman, Vinson & Elkins LLP, Austin, TX.

For DEKALB GENETICS CORP, plaintiff: Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

For DEKALB GENETICS CORP, plaintiff: Charles H. De La Garza, Arnold, white & Durkee, Minneapolis, MN.

For MONSANTO COMPANY, intervenor: Daniel James McGrail, Attorney at Law, Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Annette Michele McGarry, Wildman, Harrold, Allen & Dixon, Randall S. Rapp, Sharon R. Barner, Jeanne Marie Gills, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, defendant: Eric H. Weisblatt, R. Danny Huntington, Regis E. Slutter, Burns, Doane, Swecker & Mathis, Alexandria, VA.

For PIONEER [*2] HI-BRED INTERNATIONAL, defendant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For PIONEER HI-BRED INTERNATIONAL, defendant: Michael F. O'Brien, McGreevy, Johnson & Williams, P.C., Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Sharon R. Barner, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Ronald M Wawrzyn, Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For DEKALB GENETICS CORP, counter-defendant: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero & France, Rockford, IL.

For DEKALB GENETICS CORP, counter-defendant: Mark B. Wilson, David L. Parker, Mark J. Rozman, Arnold, White & Durkee, Willem G. Schuurman, Vinson & Elkins LLP, Austin, TX.

For DEKALB GENETICS CORP, counter-defendant: Keith B. Willhelm, Danny L. Williams, Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

**JUDGES:** PHILIP REINHARD.

**OPINIONBY:** Philip Reinhard

**OPINION:**

2002 U.S. Dist. LEXIS 15846, *

## MEMORANDUM OPINION AND ORDER

In an order dated June 13, 2002, this court ruled, among [*3] other things, that Pioneer is entitled to its costs under *Fed. R. Civ. P. 54* in case numbers 96 C 50113 and 96 C 50240 ("the 113 and 240 cases"). Pursuant to that order, Pioneer has filed a consolidated Bill of Costs, detailing its costs in the 113 and 240 cases, DeKalb has filed a response thereto, outlining various objections to the Bill of Costs, and Pioneer has filed a reply thereto.

DeKalb's primary objection stems from a disagreement about the meaning of the court's previous order. In that order, the court stated: "Pioneer's costs are limited to those that were reasonable and necessary to just these two [the 113 and 240] cases. In other words, Pioneer may not recover costs related *only* to cases *other* than 96 C 50113 or 96 C 50240." DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc., Nos. 96 C 50113, 96 C 50240, *2002 WL 1308651*, *1 n.1 (N.D. Ill. June 13, 2002) (emphasis in original). Focusing on the first sentence, DeKalb interprets this passage to mean Pioneer is limited to those costs that are related exclusively to the 113 and 240 cases -- i.e., Pioneer must show the costs are not related to any of the other cases involving these parties that [*4] were filed in this court. This is certainly not what the court had in mind. Pioneer may indeed recover costs that are related to both the 113 and 240 cases *and* any of the other cases, so long as the costs are in fact related to the 113 and 240 cases. To put it another way, the only costs Pioneer may *not* recover are those (as the court said in its earlier order) that are related *only* to cases *other* than the 113 or 240 cases. This is, in the court's opinion, the only sensible way of reading *28 U.S.C. § 1920*. So long as the costs were "necessarily obtained for use" in the 113 and 240 cases, they may be recouped, *even if* they were *also* "necessarily obtained for use" in some other case. Thus, DeKalb has it backwards when it says Pioneer would have incurred the same costs in the other cases, regardless of the 113 and 240 cases. Rather, the relevant question is whether the costs Pioneer incurred were necessarily obtained in the 113 and 240 cases standing alone, regardless of the other cases.

DeKalb also implies that reading § 1920 in this way would allow Pioneer to make an end-run around the parties' settlement agreement. That agreement called [*5] for each side to bear its own costs in the other cases. Thus, by making DeKalb pay for the costs in the 113 and 240 cases that are also related to the other cases, Pioneer is in effect getting more than it should under the terms of the settlement. Perhaps this is so, but there is nothing the court can do about it. The agreement specifically reserved Pioneer's right to seek its costs in the 113 and 240 cases and, as just discussed, this necessarily includes

costs that may also happen to be related to the other cases.

Apart from these overall objections, DeKalb challenges some of Pioneer's costs in particular. First it argues Pioneer has improperly billed it for copies of certain documents made when Pioneer switched law firms to handle the 113 and 240 cases midway through the litigation. Specifically, Pioneer has charged DeKalb for copies the first firm made when the second firm took over so that the latter would have a "complete set of DeKalb's production documents." The court agrees that copies made for co-counsel are not recoverable. Because the first firm easily could have turned over its own set of the documents to the second firm, making an extra set of copies was not necessary. [*6] Pioneer cites Williams v. Waltierra, No. 00 C 5374, *2002 WL 424634* (N.D. Ill. Mar. 19, 2002), in support of its position but, as DeKalb correctly points out, this case allowed a party to recover for copies made to a co-*defendant's* counsel. See id. at * 2. There is obviously quite a difference between providing an initial set of copies to a completely separate party and providing an additional set of copies to co-counsel for the *same* party. The court therefore reduces the Bill of Costs by $ 3311.75. n1

> n1 DeKalb similarly accuses Pioneer of double billing for copies of depositions, one each for Pioneer's two law firms. It does not, however, point to a single specific instance of this in the rather voluminous Bill of Costs. With no evidence of such "double charging," the court overrules this objection.

Next DeKalb objects to Pioneer's internal copying costs. Besides arguing Pioneer has not shown these costs were necessary to "just" the 113 and 240 cases, an argument the court has already [*7] disposed of above, DeKalb also claims the internal copying costs for Pioneer's second firm is nearly double those of its first firm. It deduces from this that the second firm must have internally copied all of the documents relating to all of the cases starting from the very beginning. But as Pioneer reasonably explains, the bulk of the depositions in these cases were taken after it had switched firms, so naturally the second firm would have incurred more internal copying charges than the first firm, which handled only the initial phases of the litigation. As this explanation is borne out by the record, and DeKalb does not question whether the copies were in fact necessarily obtained for use in the 113 and 240 cases (even though they also may have been obtained for use in the other cases) or whether the amount of costs sought are reasonable, the court

2002 U.S. Dist. LEXIS 15846, *

awards Pioneers its requested internal copying costs in full.

DeKalb also objects to "Live Note," a service that allows attorneys to view a real time transcription of a deposition on their computers while the deposition is taking place. This court regularly denies costs for items such as minuscripts or diskettes of deposition transcriptions [*8] because they are merely for the convenience of the attorneys and it does not see why it should treat "Live Note" any differently. Pioneer, however, suggests "Live Note" was necessary to avoid duplicate questions during the depositions in light of the court's order to consolidate discovery in all of the related litigation between the parties. While "Live Note" certainly may have made this task somewhat *easier,* the court is hard-pressed to believe it was *necessary.* Pioneer also points out that all the attorneys, from both sides, used "Live Note" during the depositions. That may well be, and that may also mean Pioneer will end up paying for DeKalb's share of "Live Note," but this still does mean it was "part of the stenographic transcript *necessarily* obtained for use in the case." *28 U.S.C. § 1920*(2) (emphasis added). The court thus has deducted all charges for "Live Note" or "Interactive Realtime" from the deposition invoices (Def. Exh. A, Bates nos. 5, 18, 19, 22, 26, 29, 39-45, 48-50, 57-58, 60, 63, 64, 66-76, 78-79, 101-05, 108-19). Ac-

cording to the court's calculations, this comes to a total of $ 38,498.20 (which the court recognizes is $ 2322.00 [*9] less than DeKalb's "rough estimate" of $ 40,282.20).

Finally, DeKalb objects to copies Pioneer obtained of depositions taken in cases other than any of the consolidated cases pending in this court -- specifically, cases filed in the District of Delaware. The court, however, does not see, and DeKalb does not explain, why such deposition transcripts are any different from all of the depositions taken in the other cases in *this* court but which it tacitly concedes (by not objecting to them) were also related to the 113 and 240 cases. As the Delaware cases involved the same parties, and DeKalb offers the court no reason to doubt that Pioneer obtained copies of these depositions because they were reasonably necessary for use in the 113 and 240 cases, the court in its discretion awards these costs to Pioneer.

For the reasons stated above, the consolidated Bill of Costs is reduced by $ 41,809.95. The consolidated Bill of Costs is therefore awarded in the amount of $ 200,165.21.

PHILIP REINHARD

8/23/02

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

(Cite as: 2002 WL 109346 (D.Del.))

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
OMNICOM GROUP, INC., and Harrison & Star,
Inc., Plaintiffs,
v.
EMPLOYERS REINSURANCE CORPORATION,
Defendant.
No. Civ.A. 01-839-GMS.

Jan. 28, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On November 8, 2001, Employers Reinsurance
Corporation ("ERC") filed a declaratory judgment
action against Omnicom Group, Inc. ("Omnicom"),
Harrison & Star ("H & S"), and Merck & Co., Inc.
("Merck"), in the New York State Supreme Court,
New York County. On November 15, 2001,
Omnicom and H & S filed a declaratory judgment
action against ERC in the Delaware Superior Court.
ERC removed the Delaware Superior Court action
to the United States District Court for the District of
Delaware on December 17, 2001.

Presently before the court is ERC's motion to
dismiss, or alternatively, to transfer this case to the
Southern District of New York, or to stay this case
pending the outcome of the state court litigation in
New York County. ERC argues that the court
should dismiss or stay this action because a
concurrent similar action exists in a New York state
court. It further argues that, should the court not
dismiss or stay this action, the case should be
transferred to New York pursuant to 28 U.S.C. §
1404(a). For the reasons that follow, the court will

grant ERC's motion to transfer. [FN1]

> FN1. The court cannot transfer this case to
> the New York state court. Rather, it must
> transfer it to the Southern District of New
> York. The court recognizes that such an
> action will not alleviate the burden of
> having two identical cases being tried by
> two courts. However, the court remains
> convinced that it is less costly, and more
> convenient, to try the cases in one district,
> rather than across state lines. Moreover,
> while the court expresses no opinion on the
> propriety of such an action, remand of the
> case from the Southern District of New
> York to the New York State Supreme
> Court, New York County, will now be an
> option.

II. BACKGROUND

Omnicom is incorporated under the laws of the
State of New York, with its principle place of
business in New York. It is a holding corporation
for a number of other corporations, including its
wholly-owned subsidiary, H & S. H & S provides
marketing and advertising consultation and services.
It is also incorporated under the laws of the State of
New York, with its principle place of business in
New York. The defendant insurer, ERC, is
incorporated in the State of Missouri, and is
licenced to do business in New York.

In May 1996, ERC issued an insurance policy (the
"policy") in favor of Omnicom as the named
insured. ERC also provided coverage to H & S
under Omnicom's policy.

In January 1998, Omnicom notified ERC that "Jane
Doe" had filed a lawsuit against Merck and H & S
in the New York State Supreme Court, Suffolk
County (the "Suffolk County action"). The
complaint alleged various causes of action for libel,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

**(Cite as: 2002 WL 109346 (D.Del.))**

fraud, civil rights violations and intentional infliction of emotional distress. On September 21, 2001, the jury returned a verdict awarding Jane Doe compensatory and punitive damages.

On November 8, 2001, ERC filed a declaratory judgment action in the New York State Supreme Court, New York County, against Omnicom, Merck, H & S and Jane Doe. [FN2] In the complaint, ERC sought a declaratory judgment that it is not obligated to pay any portion of the punitive damages award against the named defendants in the Suffolk County action.

> FN2. Jane Doe is a nominal defendant against whom no relief is sought.

Subsequently, on November 15, 2001, Omnicom and H & S filed the present action in the Delaware Superior Court. ERC removed the case to the United States District Court for the District of Delaware on December 17, 2001. In this action, Omnicom and H & S seek a declaratory judgment that ERC is obligated to pay the punitive damages arising from the Suffolk County action.

For the following reasons, the court concludes that the "balance of convenience" tips in favor of granting ERC's motion to transfer. Because it finds that transferring the case is the appropriate outcome, the court need not address the alternative motions to stay or dismiss the Delaware action.

III. DISCUSSION
*2 ERC seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).
1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. *See Peregrine Corp. v. Peregrine Indus.*

*Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991).

As this rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court. Therefore, the court declines to further address the "first-filed" rule as a basis to transfer this action to New York. [FN3]

> FN3. Because the court finds other compelling reasons to transfer this case to New York, it expresses no opinion on whether the first-filed rule should apply to concurrent state and federal cases.

2. Section 1404(a)

Transfer to New York is, however, mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). While Omnicom and H & S do not expressly agree that this action could have been filed in the Southern District of New York as a diversity action, there can be little dispute that this is so. The plaintiffs are incorporated in New York, with their principle places of business in the Southern District of New York. The defendant is a Missouri corporation. Further, the amount in controversy is approximately $250,000. Accordingly, the Southern District of New York is an appropriate venue.

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara,* the Third Circuit provided a list of factors to assist the district court in determining "whether, on balance, the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 3

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

**(Cite as: 2002 WL 109346 (D.Del.))**

*See id.*

a. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. [FN4] *See id.*

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

1. The Convenience of the Parties

Geographically, New York is not inconvenient for Omnicom and H & S, both of which are incorporated and headquartered in New York. Furthermore, transfer to New York would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case pending in the New York Supreme Court. Bringing witnesses and relevant documents to only one location, here New York, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being

litigated at that time. Thus, this factor weighs in favor of transfer.

2. The Convenience of Witnesses

*3 Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Omnicom and H & S argue that ERC has failed to demonstrate that Delaware would be an inconvenient forum for potential non-party witnesses. The court agrees, and notes that ERC's bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. The court notes that all the material witnesses in this dispute, party or otherwise, will be in New York already to litigate the related state court case now pending in New York County. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

3. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Neither party argues that the records and documents are voluminous in this case. Thus, neither party can

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 4

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

**(Cite as: 2002 WL 109346 (D.Del.))**

claim one forum is better than another forum in this regard. However, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in New York for the litigation of the state court case. The court sees no need to require that Omnicom, H & S and ERC move the same documents from state to state. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra*.

b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

1. Administrative Difficulty

Omnicom and H & S argue that the Southern District of New York has many more case filings than the District of Delaware. Moreover, in 2000, Delaware had seventy civil cases that were over three years old, whereas the Southern District had over one-thousand. Thus, they argue that the Delaware court would be more able to expeditiously address this action.

*4 The court is mindful of the court congestion that concerns Omnicom and H & S. It thus finds that Delaware's lighter caseload weighs in favor of denying the transfer to New York. However, this is but one factor in the analysis and is not alone determinative of the issue.

2. Public Policies of the Fora

The next relevant factor concerns New York and Delaware's public policies. Delaware public policy favors the insurability of punitive damages. *See*

*Whalen v. On-Deck*, 514 A.2d 1072, 1074 (Del.1986). New York's policy favors the uninsurability of punitive damages. *See Home Ins. Co. v. American Home Products Corp.*, 75 N.Y.2d 196, 200 (N.Y.1990).

In this action, a New York insured seeks to enforce its insurance policy against an insurer with its principle place of business in New York, for coverage based on a cause of action arising within New York's borders. New York could thus make a compelling argument that its policy should be applied. Likewise, Omnicom and H & S are within their rights to argue that Delaware's policy should be applied because the insurance policy was allegedly issued in Delaware. However, where the policy was actually issued is a disputed fact and not for the court to decide on this motion. Accordingly, the court finds that, given the equally important policies of the states, and the conflicting evidence regarding the policy in question, this factor must remain neutral.

3. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

The parties do not dispute that the issue presented in both of the cases is identical. Specifically, the issue is whether ERC is obligated to insure Omnicom and H & S against punitive damages awards. To have courts in two different states each deciding this issue would not be in the interest of sound judicial administration. Nor would such a result be the most expeditious and inexpensive method of determining the parties' rights and liabilities. The parties are already located in New York, both to litigate the pending case in the New York Supreme Court, and to conduct their daily business.

Accordingly, the court finds that this factor weighs heavily in favor of transferring this case to New York.

4. Local Interest in Deciding This Action

Finally, the court finds that Omnicom and H & S have failed to articulate any clear interest that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 5

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

**(Cite as: 2002 WL 109346 (D.Del.))**

Delaware has in this case. Rather, they briefly allude to the possibility that the insurance contract may have been issued in Delaware. The court finds that this disputed factual issue alone is not enough to conclude that Delaware has a significant interest in this action.

In contrast, New York has a great interest in the outcome of this action. The parties are either New York corporations, or are licensed to do business in New York. Further, the insurance coverage dispute emanates from Jane Doe's original Suffolk County action. As such, the causes of action in the two cases currently at issue arise from alleged wrongful acts in the State of New York.

*5 Thus, this factor also weighs heavily in favor of transferring this case to New York.

IV. CONCLUSION

The court is mindful that there are several factors weighing against transferring this case to New York. However, there are an equal number of factors weighing in favor of transfer that the court finds are deserving of more significant weight. Particularly persuasive are the following facts. Delaware has no clear connection to this case. However, all the parties have significant connections to New York, the underlying action arose in New York, and the identical case is currently pending in a New York court. Thus, the court concludes that the "balance of convenience" tips in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
   1. Employers Reinsurance Corporation's alternative motion to transfer this action to the Southern District of New York (D.I.2) is GRANTED.
   2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.
   3. Omnicom Group, Inc. and Harrison and Star, Inc.'s Motion For Leave to File a Sur-Reply Brief (D.I.13) is declared MOOT.

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D

# Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)

**(Cite as: 2003 WL 179991 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**MITEQ, INC.**, Plaintiff,
v.
COMTECH TELECOMMUNICATIONS CORP.,
Defendant.
**No. Civ.A. 02-1336-SLR.**

Jan. 23, 2003

MEMORANDUM ORDER

ROBINSON, J.

## I. INTRODUCTION

*1 On July 29, 2002, plaintiff Miteq, Inc. filed this action against defendant Comtech Telecommunications, Corp. seeking a declaratory judgment that it does not infringe U.S. Patent No. 5,666,646 ("the '646 patent") owned by a subsidiary of defendant, or that the '646 patent is invalid. (D.I.1) Presently before the court is defendant's motion to dismiss, stay, or transfer this action. (D.I.6) This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. For the reasons that follow, the motion shall be granted.

## II. BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Hauppauge, New York. (D.I. 14 at 5) Plaintiff designs and manufactures satellite communications equipment, including the accused infringing products. (*Id* at 7) Defendant is a Delaware corporation with its principal place of business in Melville, New York.

(D.I.8) Comtech EF Data ("EF Data") is a wholly owned subsidiary of defendant with its principal place of business in Tempe, Arizona. (*Id.*) EF Data is the assignee of the '646 patent entitled "Radio Frequency (RF) Converter System with Distributed Protection Switching and Method Transfer." (*Id.*) Defendant and EF Data design and manufacture satellite communications equipment utilizing the technology of the '646 patent

On April 10, 2002, defendant filed a complaint against plaintiff in the United States District Court for the District of Arizona alleging infringement of the '646 patent. (D.I. 7 at 3) However, defendant asserts that it did not serve plaintiff in the Arizona case until August 1, 2002, in order to "permit a dialogue between the parties." (*Id.*) Prior to being served in the Arizona case, plaintiff filed this action and served defendant on July 29, 2002, seeking declaratory judgment of non-infringement and invalidity of the '646 patent. (D.I.1) Defendant now seeks to either dismiss this action, stay this case until resolution of the Arizona litigation, or transfer this case to the District of Arizona. (D.I.7)

## III. DISCUSSION

More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. M'Iver*, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824) ). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc.*, 769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.*, 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)

**(Cite as: 2003 WL 179991 (D.Del.))**

federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.* at 972, 977. However, invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule. *Id.* at 979.

*2 In this case, it is undisputed that the first-filed case in Arizona and the present case involve the same patent and the same issues. Therefore, the burden is on plaintiff to present some exceptional circumstances why the court should depart from the first-filed rule. In support of its argument opposing transfer, plaintiff states that all of its relevant witnesses reside in New York, all the documents and records related to the accused product are in New York, and the "center of gravity" of the case is New York. (D.I. 14 at 6-7) None of these arguments show that there are any exceptional circumstances requiring the court to depart from the first-filed rule.

Furthermore, defendant makes the same arguments in favor of transferring the case to Arizona. It argues that all of its relevant witness, documents, and products are either in or near Arizona. Therefore, by not allowing a transfer, the court would simply be transferring the inconvenience of traveling from plaintiff to defendant. Mere inconvenience to one party does not rise to the level of exceptional circumstances that would require the court to depart from the well-established principles of the first-filed rule. Since the patent litigation action in Arizona was filed first, transfer of the subsequently filed Delaware action will promote judicial administration and consistency of results.

IV. CONCLUSION

For the reasons stated, at Wilmington, this 23rd day of January, 2003, IT IS ORDERED that:

1. Defendant's motion to transfer (D.I.6) is granted.

2. Defendant's motions to dismiss and stay (D.I.6) are denied as moot.

3. The above-captioned action shall be transferred to the United States District Court for the District of Arizona.

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01336 (Docket)
                                             (Jul. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.