IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN SEED COMPANY, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 05-535-SLR |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) | |

**O R D E R**

At Wilmington this 5th day of December, 2005, having reviewed defendant's motion to transfer and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 25) is denied, for the reasons that follow:

1. **Background.** In April 2005, defendant Monsanto Company filed a complaint against plaintiff American Seed Co., Inc. in the United States District Court for the Eastern District of Missouri. Monsanto Company and Monsanto Technology LLC v. American Seed Company, Inc., Cause No. 4:05CV00554ERW ("the Missouri action"). In the Missouri action, Monsanto asserted that American Seed: (a) failed to submit timely sales reports to Monsanto under certain license agreements (breach of contract claim); and (b) sold seed including Monsanto traits after termination of the license agreements (patent, trademark, Lanham

Act, and unjust enrichment claims). In May 2005, American Seed answered and counterclaimed, asserting, inter alia, that the agreements at issue were unconscionable.

2. In July 2005, American Seed initiated the instant litigation by filing a class action antitrust complaint against Monsanto. In its complaint, American Seed generally alleges that Monsanto has unlawfully maintained monopolies "to deny Monsanto's actual and potential competitors (a) access to foundation seed companies and others needed for the creation or manufacture of competitive corn seed with the competitors' biotechnological traits; and (b) the distribution these Monsanto competitors require to market their biotechnological corn seed. [Monsanto's] agreements impose massive financial penalties on seed companies unless a very high percentage of seeds they sell contain Monsanto traits." (D.I. 1, ¶ 3) More specifically, American Seed asserts that Monsanto has used exclusive dealing contracts and bundling agreements to exclude competitors, particularly Syngenta Seeds, Inc. (D.I. 1, ¶¶ 80-95)

3. Pending in this court as of July 2004 was a suit filed by Syngenta Seeds against Monsanto. <u>Syngenta Seeds, Inc. v. Monsanto Co.</u>, Civ. No. 04-908-SLR (the "Syngenta action"). Syngenta is Monsanto's leading competitor in biotechnology corn seed. In its suit, Syngenta alleges that Monsanto has monopolized (and attempted to monopolize) markets for particular

2

biotechnology traits in corn.  Like American Seed, Syngenta alleges that Monsanto has used exclusive dealing contracts and bundling agreements to exclude competitors.  Both Syngenta and American Seed have asserted that Monsanto has pressured customers (e.g., foundation seed companies) not to deal with Syngenta.

    4.    **Standard of Review.**  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice.  Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

    5.    The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants."  Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail".  ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

6.   **Discussion.**   Monsanto moves to transfer this lawsuit to the United States District Court for the Eastern District of Missouri, arguing that American Seed has waived any objections to such a transfer by virtue of a forum selection clause contained in the now terminated Monsanto license agreements.  Monsanto further argues that American Seed's antitrust allegations constitute compulsory counterclaims in the Missouri action.

7.   **Forum selection clause.**   The forum selection clause at issue provides as follows:

> IT IS THE INTENTION OF THE PARTIES HERETO THAT ALL QUESTIONS WITH RESPECT TO THE CONSTRUCTION OF THIS AGREEMENT AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI APPLICABLE TO BUSINESS ARRANGEMENTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF MISSOURI.  THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF MISSOURI IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS AGREEMENT; (B) AGREE THAT ALL CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR OTHER LEGAL PROCEEDING MAY BE HEARD AND DETERMINED IN, AND ENFORCED IN AND BY, ANY SUCH COURT; AND C) WAIVE ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO VENUE IN ANY SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM.

(D.I. 27, exs. A-C at ¶ 11.08; ex. D at ¶ 8.08)(capitalization in originals)

8.   I conclude that the above recited forum selection clause does not mandate that American Seeds' antitrust claims must be heard in Missouri.  My understanding of the language is simply that all claims raised in any suit, action or other legal

proceeding relating to a Monsanto agreement[1] **may** be heard and determined by a state or federal court in Missouri; if such a suit is brought in a Missouri court, the parties may not object to such suit based on lack of personal jurisdiction or move to transfer based on forum non conveniens.

9. **Compulsory counterclaim.** A counterclaim is considered to be compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). "For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 389 (3d Cir. 2002). Put another way, "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." Great Lakes Rubber Corp. V. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961).

---

[1] Of course, there is the further question of whether American Seed's antitrust claims "relate" to a Monsanto agreement.

10.  The question, as framed by the papers, is whether the interests of justice are best served by trying American Seed's antitrust claims with the license dispute being litigated in the Missouri action or in conjunction with the antitrust claims being litigated in the Syngenta action.  I conclude that the broad issues at stake in the instant antitrust case are more akin to the Syngenta action than the Missouri action.  Therefore, Monsanto's motion to transfer is denied, without prejudice to renew if it becomes apparent through further discovery and other pretrial proceedings that the interests of justice warrant a transfer to Missouri.

_____
United States District Judge