**EXHIBIT B**

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209
───
(202) 326-7900
FACSIMILE:
(202) 326-7999

January 3, 2006

*By Facsimile and First-Class Mail*

John J. Rosenthal, Esquire
Howrey LLP
1299 Pennsylvania Ave. N.W.
Washington, D.C. 20004

> Re: **Results of Second Conference Call Regaring Plaintiffs' First Request for Production of Documents Relating to Class Issues, C.A. No. 05-535-SLR (D. Del.)**

Dear John:

This letter sets forth plaintiffs' understandings after our second teleconference as to Monsanto responses to plaintiffs' class document production requests, as well as where plaintiffs perceive continuing disputes requiring the Court's guidance.[1]

This second consultation sought to resolve disputes not resolved by our first conference, as well as our first follow-up letter of December 15th.

If any of the following is in error in your view (as to agreements reached or outstanding issues), please let us know in writing by close of business Thursday, January 5, 2006. If you have any questions, please do not hesitate to contact me or Steve Berry.

---

[1] We recently asked whether Monsanto would oppose the supplementation of our proposed class representation in the Iowa action by adding Dave Johnson (and then provided Monsanto further information as to whether Mr. Johnson buys under a corporate name). Tiffany Joseph-Daniels of your office called this evening to confirm that Monsanto will not oppose plaintiffs' motion to file an amended complaint, naming Mr. Johnson as an additional class representative.

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

John J. Rosenthal, Esquire
January 3, 2006 - Page 2

      1.      Monsanto continues to refuse to produce (in response to requests 21-30) any margin, cost, market share, or other data from its operations in Spain, where it apparently faces greater competition from Syngenta as to the sale of the relevant biotech corn seed. As we have explained, the Monsanto gross margins from this more-competitive market should help show class-wide, formulaic proof of price overcharges in the U.S. (that is, the class may be able to apply – or bench mark – these more-competitive, Spanish margins to Monsanto's U.S. unit costs for the relevant seed to solve for estimated competitive pricing "but for" Monsanto's alleged anti-competitive conduct in the U.S.).

      We note that you were careful *not* to assert in this context that this Spanish information is not available at Monsanto headquarters in Missouri or elsewhere in the U.S. Further, you were careful *not* to assert that this information is not controlled by Monsanto wherever it is kept.

      2.      As we mentioned in our previous letter, in the context of plaintiffs' possible use of competition for biotech soybean seed as a bench mark for class proof, we are prepared to withdraw request 2 (relating to Monsanto pricing of biotech soybean seed) *if* we receive documents that are responsive to request 1 (relating to Monsanto margins and unit costs for this seed – including how these margins and units costs are computed, differences in these margins/costs for particular soybean seeds, etc.).

      During our call, you indicated that Monsanto will not provide any documents in response to request 1 and merely respond to request 6 (which seeks database extracts for actual margin, unit cost and other data). As we discussed, we believe it is essential that we receive both relevant documents describing and analyzing the margins (including the mode of calculation) as sought in request 1, as well as the actual margin data and unit costs sought in request 6. Also, unless we receive all this data, request 2 stands.

      You also indicated that Monsanto takes the same positions concerning similar requests 10, 11, and 15 (relating to the bench mark candidate Monsanto Roundup herbicide in the U.S.) and requests 31, 32, 37 (relating to Monsanto biotech corn seed data used for bench mark contrast).

      3.      You further indicated that Monsanto would be unwilling to respond fully to request 3 or request 12, which ask for documents regarding Monsanto's market positions in the markets for sale to direct and indirect purchasers of two potential bench mark seed products, that is, Monsanto Roundup Ready soybean seed and Monsanto Roundup herbicide sold in the U.S. Again, these documents are directly relevant to our motion for class certification and selection of bench mark seed products with which our experts hope to estimate "but for" competitive prices for the relevant biotech corn seed, and we therefore ask that Monsanto reconsider its unwillingness to provide us with this information.

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

John J. Rosenthal, Esquire
January 3, 2006 - Page 3

We understand that you are providing such data in response to request 25 for Monsanto biotech corn seed, which is puzzling given your soybean and herbicide positions.

4.   To bench mark "but for" biotech corn seed pricing, we also believe it is essential that we receive all documents responsive to Requests 4, 5, 13, 14, 35, and 36. All of these requests seeking information regarding Monsanto discounts and related programs used in its sale of Roundup Ready soybean seed, Roundup herbicide, and biotech corn seed. By carefully tracking these various Monsanto discount practices in computing the various corn and bench mark margins, plaintiffs can ensure that they are providing "apple to apple" margin contrasts among these Monsanto products in the bench marking analysis.

If we understand you correctly, Monsanto is willing to provide information on "national" discount programs *only*, and will not provide documents regarding "one-off" or individualized discounts given by Monsanto nationally, regionally, or locally. As we stressed during our call, it is absolutely essential that we receive documents regarding all such discounts, regardless of whether or not this information is centrally maintained.

Monsanto must maintain this critical pricing data somewhere. Otherwise it could not properly book its actual revenues. Therefore, with respect to all requests which ask for information regarding discount or rebate programs, we are asking for any information regarding *all* discount programs, including without limitation "one-off", regional, local, or occasional discounts.

5.   As we discussed, you have agreed to provide us with relevant data from Monsanto's databases in response to requests 6, 15, and 37. This information can be provided in Microsoft Access format, provided the data file is smaller than 2GB. If the file is larger than 2GB, please provide in it Microsoft SQL format. In addition, you agreed to provide us with detailed column descriptions for the data provided so that we can determine how the entries in each data field were calculated.

6.   As we mentioned in our previous letter, we are willing to withdraw requests 7, 11, 16, 29 and 32 if we receive data in response to requests 6, 10, 15, 28, and 31 that are adequate to show the criteria listed in that request. Monsanto agrees to provide the latter data.

7.   Request 8 goes to arguably exclusionary bundling or exclusionary contracts and communications. Monsanto has agreed to provide contracts, but has refused to provide parallel communications with purchasers of Monsanto traits for Roundup Ready soybean seed. We believe such communications are relevant to our motion for class certification and the demonstration of formulaic class-wide price injury (because plaintiffs need to get a clear picture if any of the markets for bench mark candidates are fully or partially tainted by the same exclusionary practices we believe Monsanto has employed in the sale of biotech corn).

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

John J. Rosenthal, Esquire
January 3, 2006 - Page 4

We also understand that Monsanto refuses to provide similar communications in response to request 17 (Roundup Ready herbicide).

8. Monsanto agreed to respond in part to request 9 (relating to Monsanto discounts for its biotech soybean seed); however, you indicated that Monsanto would not provide information which would permit plaintiffs to determine the states in which any relevant discounts were employed. This information is directly relevant to plaintiffs' bench marking of corn prices, particularly as to the Iowa and Minnesota actions.

9. As we discussed, any agreements we reach regarding requests 1 through 8 shall be construed to apply to any parallel requests in items 10 through 17 and 31-38.

10. Monsanto agreed to respond in full to request 20. In addition, as we indicated in our earlier letter, we are willing to modify requests 18 and 19 to seek the results of discrete studies.

11. You mentioned that we would be receiving documents identifying direct purchasers of Monsanto biotech corn seed in response to request 33. As indicated, we require these data by seed trait variety sold.

12. As we discussed, we are willing to withdraw request 38 on the assumption we receive full production as to other requests going to Monsanto biotech corn seed.

13. Monsanto refuses to provide documents in response to request 40, which relates to Monsanto's competitive response to Syngenta entry into biotech corn seed and trait markets. Again, we believe information as to Monsanto's pricing and other competitive responses to Syngenta's prospective or actual entry into these markets should be of assistance to our effort to model pricing for the relevant corn seed in more competitive environments, and generally assist us in learning how Monsanto behaves when the competitive environment changes.

14. We offered to give you until February 15, 2006, to provide any relevant documents from Nc+ Hybrids and Channel Bio Corp., and any other seed companies controlled by Monsanto marketing to direct purchasers the relevant Monsanto biotech corn seed. Please accept this accommodation by January 5th, or produce the documents in mid-January with the rest of your mandated production.

15. We asked Monsanto to identify distributors or resellers of the relevant Monsanto biotech corn seed selling to farmers or other end users in Iowa or Minnesota using its distributor and licensing files. Please confirm by January 5th that Monsanto will do so, or we shall have to infer that it is unwilling to do so.

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

John J. Rosenthal, Esquire
January 3, 2006 - Page 5

  16. You agreed to take request 42 (giving us the number of farmers or other end users purchasing the relevant Monsanto biotech corn seed in Iowa and Minnesota) under consideration. Please confirm by January 5th that Monsanto will do so, or we shall have to infer that it is unwilling to do so.

  17. Monsanto will produce the documents responsive to requests 43 and 44 by February 15, 2006.

  18. You indicated that Monsanto would respond to request 46, but refuse to provide the data on a state by state basis.

  19. As with all other requests regarding discounts and rebates used by Monsanto, request 47 shall be interpreted to include all such discounts or rebates, including "one-off", regional, local or other occasional discount programs.

  20. You indicated that Monsanto would produce guides to the organization of Monsanto, as well as organizational charts in being.

  21. Monsanto will provide documents in response to request 49 going to sales of the relevant biotech corn seed in Iowa or Minnesota.

  22. Finally, Monsanto will provide us with a list of direct or indirect subsidiaries or affiliates of Monsanto, whether or not named in this lawsuit, which sell Monsanto biotech corn seed to direct purchasers in response to request 50.

  Please let us know if we have incorrectly stated your positions with respect to any of the above requests by Thursday, January 5th.

  As we stressed during our call, we are eager to move forward with discovery in this matter. To that end, we have agreed to compromise on many of our document requests (as indicated in our letter of December 15th and herein), and are willing to discuss any reasonable proposals you may have to expedite the discovery process.

  As necessary, we look forward to your prompt reply no later than January 5.

  Best regards.

               Very truly yours,

               Steven F. Benz

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

John J. Rosenthal, Esquire
January 3, 2006 - Page 6

cc:   R. Stephen Berry
      Joelle E. Polesky
      Richard F. Schwed