FILED UNDER SEAL – CONTAINS RESTRICTED CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN SEED CO. INC., | ) | |
| | ) | REDACTED |
|     Plaintiff, On Behalf of Itself | ) | |
|     and Others Similarly | ) | |
|     Situated, | ) | |
| | ) | C.A. No. 05-535-SLR |
|     v. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Monsanto Controlled Subsidiaries: | ) | |
| | ) | |
| AMERICAN SEEDS INC., | ) | |
| CORN STATES HYBRID | ) | |
|   SERVICE INC. | ) | |
| ASGROW SEED CO., INC., | ) | |
| HOLDEN FOUNDATION SEEDS, INC., | ) | |
| DEKALB SEEDS, | ) | |
| CALGENE, L.L.C., | ) | |
| CHANNEL BIO CO., | ) | |
| NC+ HYBRIDS, | ) | |
| SEMINIS INC., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| DARRELL SOUHRADA, and | ) | |
| DAVE JOHNSON, | ) | |
| | ) | |
|     Plaintiffs, On Behalf of Themselves | ) | |
|     and Iowa Citizens Similarly | ) | |
|     Situated, | ) | |
| | ) | C.A. No. 05-535-SLR |
|     v. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | |

| | |
|---|---|
| KENT DUXBURY, | ) |
| | ) |
| Plaintiff, On Behalf of Itself | ) |
| and Minnesota Citizens | ) |
| Similarly Situated, | ) |
| | ) C.A. No. 05-535-SLR |
| v. | ) |
| | ) |
| MONSANTO COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Filed on Behalf of Plaintiff American Seed Co. Inc.,
Intervenor Plaintiffs Darrell Souhrada,
Dave Johnson, and Kent Duxbury,
and Proposed Intervenor Plaintiff Jerry Ellefson**

SMITH, KATZENSTEIN & FURLOW LLP

Joelle E. Polesky (ID No. 3694)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
E-mail: jpolesky@skfdelaware.com
Attorneys for Plaintiffs

Dated: April 17, 2006

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONCISE STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    The Relevant Markets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.    Monsanto's Antitrust Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          a.    Exclusive Dealing Contracts . . . . . . . . . . . . . . . . . . . . . . . . 6

          b.    Bundling Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.    Proposed Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.    Proposed Class Representatives . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    5.    Proposed Benchmarks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    6.    Proposed Common Method Of Proving Injury And Damages
          For Each Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.    THE PROPOSED CLASSES SATISFY THE REQUIREMENTS
        OF RULE 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    Each Class Is So Numerous That Joinder Is
            Impracticable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        B.    There Are Many Common Factual And Legal Issues . . . . . . . 20

        C.    Plaintiffs' Claims Are Typical Of The Claims Of The
            Classes They Seek To Represent . . . . . . . . . . . . . . . . . . . . . 20

        D.    Plaintiffs And Their Counsel Will Fairly And
            Adequately Protect The Interests Of The Class
            Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.    COMMON ISSUES PREDOMINATE ACROSS THE
CLAIMS OF EACH CLASS ............................... 24

    A.    The Court's Predominance Inquiry Primarily Addresses
Predominance As To Liability Issues ................... 25

    B.    Common Issues Predominate With Regard To
Monsanto's Antitrust Violations ...................... 26

    C.    Common Issues Predominate With Regard To Injury ....... 28

    D.    Even Though Plaintiffs Are Not Required To Show
Predominance As To Damages Issues, Common
Issues Predominate As To Damages ................... 31

III.   THE CLASS ACTION IS SUPERIOR TO OTHER
AVAILABLE METHODS FOR ADJUDICATION OF
THIS CONTROVERSY ................................ 37

CONCLUSION ................................................. 39

## TABLE OF CITATIONS

Page

**Cases**

*Bally Mfg. Sec. Corp. Litig.*, *In re*, 141 F.R.D. 262 (N.D. Ill. 1992) . . . . . . . . . . . . . . . 22

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . 17

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 31

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802
     (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) . . . . . . . . . . . . . . 25, 28, 29, 31

*Bradburn Parent/Teacher Stores, Inc. v. 3M*, No. Civ. A. 02-7676,
     2004 WL 1842987 (E.D. Pa. Aug. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Comes v. Microsoft Corp.*, 696 N.W.2d 318 (Iowa 2005) . . . . . . . . . . . . . . . . . . . . . . . 35

*Cardizem CD Antitrust Litig.*, *In re*, 200 F.R.D. 297, 307 (E.D.
     Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 36

*Catfish Antitrust Litig.*, *In re*, 826 F. Supp. 1019 (N.D. Miss. 1993) . . . . . . . . . . . . . . 34

*Cephalo6 Sec. Litig.*, *In re*, No. 96-0633, 1998 WL 470160 (E.D.
     Pa. Aug. 12, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Collins v. International Dairy Queen, Inc.*, 186 F.R.D. 689 (M.D.
     Ga. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Commercial Tissue Prods.*, *In re*, 183 F.R.D. 589 (N.D. Fla. 1998) . . . . . . . . 29, 33, 36

*Chlorine & Caustic Soda Antitrust Litig.*, *In re*, 116 F.R.D. 622
     (E.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Christiana Mortg. Corp. v. Delaware Mortgage Bankers Ass'n*,
     136 F.R.D. 372 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27

*Corrugated Container Antitrust Litig.*, *In re*, 80 F.R.D. 244
     (S.D. Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Daniel8 v. Amerco*, 1983-1 Trade Cas. (CCH) ¶ 65,274 (S.D.N.Y. 1983) . . . . . . . . . . . 26

*Davis v. Southern Bell Tel. & Tel. Co.*, 1993-2 Trade Cas. (CCH)
¶ 70,480 (S.D. Fla. 1993), *recon. denied in pertinent part,*
158 F.R.D. 173 (S.D. Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551 (M.D.N.C. 2002) . . . . . . . . . . . . . . . . 32

*Disposable Contact Lens Antitrust Litig., In re*, 170 F.R.D. 524
(M.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34

*Domestic Air Transp. Litig., In re*, 137 F.R.D. 677
(N.D. Ga. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 33

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) . . . . . . . . . . . . 27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . 15, 24, 25, 30

*Elster v. Alexander*, 608 F.2d 196 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570 (E.D. Pa. 1984) . . . . . . . . . . . . 30, 35

*Flat Glass Antitrust Litig., In re*, 191 F.R.D. 472
(W.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25, 35, 36

*Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 24

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), *aff'd*
*sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . 19

*Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105550
(Minn. Dist. Ct. Dec. 15, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Greenhaw v. Lubbock County Beverage Ass'n*, 721 F.2d 1019
(5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982) . . . . . . . . . . . 17

iv

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*, Nos. C 87-1686 *et al.*,
    1994 WL 508735 (N.D. Cal. Sept. 2, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Independent Gasoline Antitrust Litig., In re*, 79 F.R.D. 552 (D. Md. 1978) . . . . . . . . . . 22

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981) . . . . . . . . . . . . . . . 32

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) . . . . . . . . . . . . . 29

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) . . . . . . . . . . . . . . . . 17

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004),
    *cert. denied*, 543 U.S. 1081 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 26, 31, 32, 37, 38

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003),
    *cert.denied*, 542 U.S. 953 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30, 32

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Linerboard Antitrust Litig., In re*, 305 F.3d 145
    (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25, 26, 29, 33

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas
    Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Lorazepam & Clorazepate Antitrust Litig., In re*, 202 F.R.D. 12
    (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lumco Indus., Inc. v. Jeld-Wen, Inc.*, 171 F.R.D. 168 (E.D. Pa. 1997) . . . . . . . . 25, 34, 36

*MCI Communications Corp. v. AT&T Co.*, 708 F.2d 1081 (7th Cir. 1983) . . . . . . . . . . 28

*Midwestern Mach. v. Northwest Airlines, Inc.*, 211 F.R.D. 562
    (D. Minn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*NASDAQ Market-Makers Antitrust Litig., In re*, 169 F.R.D. 493
    (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154
    (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wis. 2000) . . . . . . . . . . . . 32

*Polypropylene Carpet Antitrust Litig., In re*, 996 F. Supp. 18 (N.D. Ga. 1997) . . . . . . . 29

*Potash Antitrust Litig.*, *In re*, 159 F.R.D. 682 (D. Minn. 1995) . . . . . . . . . . . . 22, 34, 38

*Regal Communications Corp. Sec. Litig.*, *In re*, No. 94-179, 1995 WL
    550454 (E.D. Pa. Sept. 14, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*School Asbestos Litig.*, *In re*, 789 F.2d 996 (3d Cir. 1986) . . . . . . . . . . . . . . . . 26

*Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417
    (D.N.M. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sosna v. Iowa*, 419 U.S. 393 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Spark v. MBNA Corp.*, 178 F.R.D. 431 (D. Del. 1998) . . . . . . . . . . . . . . . . . 17, 25

*Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267
    (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 18

*Sugar Indus. Antitrust Litig.*, *In re*, 73 F.R.D. 322 (E.D. Pa. 1976) . . . . . . . . . . . . 32

*Terazosin Hydrochloride Antitrust Litig.*, *In re*, 220 F.R.D. 672
    (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Vitamins Antitrust Litigation*, *In re*, 209 F.R.D. 251 (D.D.C. 2002) . . . . . . . . . . . . 36

*Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) . . . . . . . . . . . . . 17

*Warfarin Sodium Antitrust Litig.*, *In re*, 212 F.R.D. 231 (D. Del. 2002),
    *aff'd*, 391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . 21

*Williams v. Empire Funding Corp.*, 183 F.R.D. 428 (E.D. Pa. 1998) . . . . . . . . . . . . 17

*Wirebound Boxes Antitrust Litig.*, *In re*, 128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . 22

*Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 547 (D. Del. 1979) . . . . . . . . . . . . . . . 25

*Visa Check/MasterMoney Antitrust Litig.*, *In re*, 280 F.3d 124
    (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) . . . . . . . . . . 28, 32

**Statutes and Rules**

Clayton Act

    § 4, 15 U.S.C. § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 29

    § 16, 15 U.S.C. § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sherman Act

    § 2, 15 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 27

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 21, 24

Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 37

Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 24, 26, 37, 39

Fed. R. Civ. P. 23(c)(1)© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

**Other Authorities**

7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*

    § 1785 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    § 1777 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    § 1779 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**STATEMENT OF NATURE AND STAGE OF THE PROCEEDING**

On July 26, 2005, Plaintiff American Seed Company Inc. ("American Seed") filed a lawsuit in this Court against Defendant Monsanto Company and Defendants American Seeds Inc., Corn States Hybrid Service Inc., Asgrow Seed Co., Inc., Holden Foundation Seeds, Inc., DEKALB Seeds, Calgene, L.L.C., Channel Bio Co., NC+ Hybrids, and Seminis Inc., all of which are subsidiaries controlled by Monsanto Company (D.I. 1).[1]  American Seed seeks to represent classes of direct purchasers of biotechnology corn seed in prosecuting antitrust claims against Monsanto under Section 2 of the Sherman Act (15 U.S.C. § 2 (2002)) and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26 (2002)).

On July 29, 2005, Plaintiffs Darrell Souhrada (of Iowa) and Kent Duxbury (of Minnesota) filed a motion to intervene to prosecute similar claims on behalf of classes of Iowa and Minnesota purchasers under Iowa and Minnesota law (D.I. 13).  On November 9, 2005, the Court granted both motions for intervention, and Mr. Souhrada and Mr. Duxbury filed complaints in intervention on November 15, 2005 (D.I. 45 and 46).  Defendants answered American Seed's complaint on August 25, 2005 (D.I. 24), and answered Mr. Souhrada's and Mr. Duxbury's complaints in intervention on November 29, 2005 (D.I. 50 and 51).

On January 19, 2006, the Iowa complaint was amended by stipulation to add Dave Johnson as a plaintiff and proposed class representative (*see* 1/19/2006 docket entry and D.I. 61).

---

[1] In this brief, Defendants will be referred to collectively as "Defendants" or "Monsanto."

On March 22, 2006, American Seed moved to amend its complaint to add Jerry Ellefson as a plaintiff and proposed class representative of the Direct Purchaser Classes ("American Seed Am. Compl.," D.I. 81).

The Court entered a scheduling order on December 6, 2005 (D.I. 56). Class certification discovery ended on April 12, 2006. Merits discovery is scheduled to begin on July 1, 2006.

## SUMMARY OF ARGUMENT

The Court should grant certification of the proposed classes for the following reasons:

1. Each class meets the requirements of Fed. R. Civ. P. 23(a). Each class is too numerous for joinder of all members to be practicable; there are numerous questions of law and fact common to the members of each class; the proposed class representatives' claims are typical of the claims of the classes they are to represent; and the proposed class representatives and their counsel will fairly and adequately protect the interests of their respective classes.

2. Common issues predominate under Fed. R. Civ. P. 23(b)(3). If any class member were to bring a lawsuit individually against Monsanto, the class member would have to prove the same elements as every other member of the same class. The class member would have to prove the relevant product market, Monsanto's monopoly power in that market, and Monsanto's violation of the antitrust laws. The class member would also have to prove injury and develop a formula for proving the amount of damages, using expert economic

2

testimony. There will be vast savings in time and resources for both the Court and the litigants if Monsanto's violation is proved on a common basis. Moreover, Plaintiffs submit with this brief economic evidence that it will be feasible to show injury and damages for every member of each class on a common basis, using recognized benchmarking methods.

3. A class action is superior to other methods for the fair and efficient adjudication of these claims under Fed. R. Civ. P. 23(b)(3). The potential damages and injunctive relief available to one farmer could not justify the costs and risks of litigating against a corporate giant such as Monsanto. As a practical matter, to hold that farmers (or even retailers) must bring their lawsuits against Monsanto individually is the same thing as holding that most or all of the potential plaintiffs have no claims at all. It is precisely in such circumstances that class certification is most clearly warranted.

## CONCISE STATEMENT OF FACTS

Monsanto − the dominant provider of biotechnology corn traits − has imposed exclusive dealing and bundled rebate programs upon seed companies that severely penalize those companies if they use corn traits from Monsanto's competitors. As a consequence, Monsanto has driven competing biotechnology corn seed out of the market, enabling it to charge monopoly prices to farmers and retailers.

This case involves class action claims brought by three groups of purchasers of biotechnology corn seed: a group of national direct purchasers who purchased biotechnology corn seed directly from Monsanto and its subsidiaries; a group of Iowa purchasers who purchased such seed from Monsanto, its subsidiaries, or its authorized distributors; and a

3

group of Minnesota purchasers who purchased such seed from Monsanto, its subsidiaries, or its authorized distributors. The national direct purchaser classes bring claims under federal antitrust law, while the Iowa and Minnesota classes bring claims under their respective states' laws.

1. **The Relevant Markets**

Traditionally, corn farmers – also known as "growers" – applied herbicides and insecticides to kill (respectively) weeds and insects that threatened their corn crops. More recently, biotechnology has made it possible to introduce new genetic characteristics into plant seeds. The genetic make-up (or "genome") of the seed can be altered to include a desirable characteristic, or "trait." Since 1996, there have been a number of commercially available corn traits for biotechnology corn seeds. For example, biotechnology can be used to make corn glyphosate-tolerant, so that – unlike regular corn – the corn can survive spraying with a glyphosate-based herbicide such as Monsanto's Roundup herbicide. When the grower plants corn with the glyphosate-tolerant trait, Roundup herbicide kills the weeds without damaging the corn. Biotechnology can also be used to make corn resistant to the European corn borer and rootworm pests. It is also possible to combine, or "stack," one or more traits in the same corn seed. American Seed Am. Compl. ¶¶ 20-24.

Growers purchase bags of biotechnology corn seed that contain the desired traits. Typically, they buy directly from Monsanto (including its subsidiaries) or indirectly from Monsanto's independent distributors or retailers that purchase from such distributors. In either case, Monsanto requires growers to enter into licensing agreements with Monsanto.

REDACTED

4

REDACTED

Plaintiffs allege that there are separate, nationwide relevant markets for the following types of corn seed: (1) corn seed tolerant of glyphosate herbicide, American Seed Am. Compl. ¶¶ 25-30; (2) corn seed resistant to European corn borer, *id.* ¶¶ 31-38; (3) corn seed resistant to rootworm, *id.* ¶¶ 39-46; and (4) corn seed with stacked traits (that is, two or more of glyphosate tolerance, borer resistance, or rootworm resistance), *id.* ¶¶ 47-52. Plaintiffs also allege that Monsanto dominates the markets for biotechnology corn with those traits. *Id.* ¶¶ 28-30, 36-38, 44-46, 50-52.

As described below, Monsanto has imposed conditions upon seed companies that incorporate Monsanto's corn traits into their seed. Those conditions have the purpose and effect of excluding competition for these traits, and as a consequence, excluding competition for the sale of biotechnology corn made with those traits in the downstream biotechnology corn seed markets. *Id.* ¶¶ 97-100.

**2.    Monsanto's Antitrust Violations**

Since 1997, Monsanto has sold YieldGard Corn Borer, a corn seed resistant to European corn borer. In 1998, Monsanto introduced Roundup Ready corn seed that is tolerant of its "Roundup" brand glyphosate herbicide, enabling growers to spray Roundup brand herbicide without damaging their crop. In 2003, Monsanto began selling its YieldGard Rootworm, a rootworm-resistant corn seed, and in 2004 it introduced YieldGard Plus, which stacks the European corn borer-resistant trait and the rootworm-resistant trait. Monsanto also

5

produces corn seed that stacks the borer-resistant and glyphosate-tolerant traits. American Seed Am. Compl. ¶¶ 76-78.

At Monsanto's request, the Court has postponed merits discovery until after class certification is decided. Plaintiffs therefore do not yet have access to all of the relevant facts regarding Monsanto's exclusionary conduct relating to these products. Nonetheless, the facts already available make clear that Monsanto's licensing provisions penalize seed companies that buy traits from Monsanto's competitors, and impede those seed companies from using traits from Syngenta and other vendors to produce biotechnology corn seed in competition with Monsanto seed. As a consequence, members of the proposed classes have been overcharged. American Seed Am. Compl. ¶¶ 106-108, 114-116, 122-124, 130-132.

Monsanto has engaged in two categories of conduct that Plaintiffs allege violate the antitrust laws: exclusive dealing contracts and product bundling.

**a. Exclusive Dealing Contracts**

Monsanto's exclusive dealing agreements include trait licenses with seed companies providing substantial financial incentives for those companies to sell a high proportion of biotechnology corn seed with Monsanto traits as opposed to biotechnology corn seed with similar traits provided by Monsanto's competitors. For example, Monsanto's GA21 licenses for the glyphosate-resistant trait reduce or waive milestone payments that otherwise would be due from the licensee if the licensee's sales of Roundup Ready corn seed constitute at least 85% of the licensee's total sales of herbicide-tolerant corn seed. American Seed Am. Compl. ¶¶ 81-82

REDACTED

6

licensee's production of biotechnology corn seed with non-Monsanto traits exceeds 15% of the licensee's total sales of herbicide-tolerant corn seed, the licensee is penalized by Monsanto and in effect pays a higher price to Monsanto solely because it has obtained some of its traits from Monsanto's competitor.

REDACTED

· Such penalties establish a significant disincentive for licensees to use competing corn traits and to produce biotechnology corn seed in competition with Monsanto.  American Seed Am. Compl. ¶¶ 81-82, 84.

REDACTED

REDACTED

Monsanto has also pressured seed companies not to deal with Syngenta (its leading competitor in corn traits in the United States) and has reportedly suggested that it may sue seed companies that cooperate with Syngenta and use its traits.  American Seed Am. Compl. ¶ 90.

### b. Bundling Agreements

The second category of exclusionary acts includes Monsanto's bundling of financial incentives across seed companies' purchases of different Monsanto traits.  *Id.* ¶¶ 91-96.

REDACTED

At least for certain times during the relevant period in this case, if the licensee did not achieve its target for any trait, it lost incentives across the entire line of its biotechnology corn seed with Monsanto traits, and was required to repay previous fees that had been waived. American Seed Am. Compl. ¶¶ 92-94. Like the exclusive dealing agreements, these provisions discouraged companies from obtaining corn traits from competitors of Monsanto, such as Syngenta, and from producing biotechnology corn seed competitive with Monsanto seed. *Id.* ¶ 96.

REDACTED

3.    **Proposed Classes**

Plaintiffs seek certification of three groups of classes under Federal Rule of Civil Procedure 23.

9

<u>National Direct Purchaser Classes</u>. Plaintiff American Seed and proposed intervenor Jerry Ellefson seek certification of four classes (in all cases excluding citizens of Iowa and Minnesota) (collectively, the "Direct Purchaser Classes"), consisting of all persons who, since July 26, 2001, have directly purchased the following from Defendants:

Direct Purchaser Glyphosate Class: corn seed that is tolerant of glyphosate herbicide.

Direct Purchaser Corn Borer Class: corn seed resistant to European corn borer.

Direct Purchaser Rootworm Class: corn seed resistant to rootworm.

Direct Purchaser Stacked Trait Class: corn seed with stacked traits.

<u>Iowa Classes</u>. Plaintiffs in Intervention Darrell Souhrada and Dave Johnson seek certification of four classes of Iowa citizens (collectively, the "Iowa Classes") who have purchased the following from Defendants or their independent distributors between July 29, 2001 and the present:

Iowa Glyphosate Class: corn seed that is tolerant of glyphosate herbicide.

Iowa Corn Borer Class: corn seed resistant to European corn borer.

Iowa Rootworm Class: corn seed resistant to rootworm.

Iowa Stacked Trait Class: corn seed with stacked traits.

<u>Minnesota Classes</u>. Plaintiff in Intervention Kent Duxbury seeks certification of four classes of Minnesota citizens (collectively, the "Minnesota Classes") who have purchased the following from Defendants or their independent distributors between July 29, 2001 and the present:

Minnesota Glyphosate Class: corn seed that is tolerant of glyphosate herbicide.

Minnesota Corn Borer Class: corn seed resistant to European corn borer.

10

Minnesota Rootworm Class: corn seed resistant to rootworm.

Minnesota Stacked Trait Class: corn seed with stacked traits.

The Iowa and Minnesota Classes include both "direct" purchasers (in that some members purchased directly from Monsanto's subsidiaries) and "indirect" purchasers (in that some members purchased from Monsanto's independent dealers). The Iowa and Minnesota Classes for which certification is sought do not, however, include persons who purchased Monsanto seed solely for resale.[2]

## 4.    Proposed Class Representatives

Plaintiff American Seed is a family-owned seed company located in Spring Grove, Pennsylvania. American Seed sells a variety of products, including biotechnology corn seed, to farmers and other purchasers. American Seed has purchased glyphosate-tolerant seed, corn borer-resistant seed, and seed with stacked traits from Defendant (and Monsanto subsidiary) Corn States Hybrid Service during the relevant period (that is, on or after July 26, 2001).                      REDACTED

Proposed Intervenor Jerry Ellefson, a proposed representative for the National Direct Purchaser Classes, is a farmer who lives in Flandreau, South Dakota. Mr. Ellefson has purchased glyphosate-tolerant seed, corn borer-resistant seed, rootworm resistant seed, and seed with stacked traits from Defendants during the relevant period. Ellefson Decl. ¶ 5.

---

[2] In this respect, the Iowa and Minnesota classes for which certification is sought are narrower than the classes specified in the Iowa and Minnesota complaints. *See* D.I. 46 ¶¶ 44, 50, 56, 62 (amended Iowa complaint); D.I. 45 ¶¶ 52, 58, 64, 70 (Minnesota complaint).

Plaintiffs Darrel Souhrada and Dave Johnson, proposed representatives of the Iowa Classes, are farmers from Lime Springs and Riceville, Iowa, respectively. During the relevant period (that is, after July 29, 2001), Mr. Souhrada has purchased corn borer-resistant seed from Monsanto subsidiary Crow's Hybrid Corn Company, and Mr. Johnson has purchased glyphosate-tolerant seed, corn borer-resistant seed, rootworm-resistant seed, and seed with stacked traits, also from Monsanto subsidiary Crow's Hybrid Seed Company.

REDACTED

Plaintiff Kent Duxbury is a farmer from Wykoff, Minnesota. Since July 29, 2001, Mr. Duxbury has purchased biotechnology corn seed with stacked traits from Defendant (and Monsanto subsidiary) DEKALB Seeds, including corn seed with glyphosate tolerance, corn borer resistance, and rootworm resistance traits.

the same period, Mr. Duxbury also purchased glyphosate-tolerant seed, rootworm-resistant seed, and corn borer-resistant seed with Monsanto traits.    REDACTED

REDACTED

---

it appears Mr. Duxbury may not have purchased non-stacked Monsanto seed. Subject to further investigation of that issue, counsel for Mr. Duxbury may seek leave to amend appropriately his complaint in intervention. That motion would be made expeditiously and Plaintiffs' counsel would agree to such scheduling arrangements as would be reasonably necessary to prevent prejudice to Defendants.

5.    **Proposed Benchmarks**

Plaintiffs seek relief including injunctive relief and damages arising from Defendants' unlawful monopolization of the relevant biotechnology corn seed markets through the practices described above. As discussed below, it is customary in antitrust cases such as this one for plaintiffs to prove injury and damages with the use of "benchmark" products that are sold in markets comparable to the relevant market in the case, but were not affected by the alleged anticompetitive conduct. The antitrust overcharge in a monopolized market can be measured by: (a) looking at a product in a market in which the monopolist (or an otherwise similar firm) has more competition and which is untainted by the alleged exclusion; (b) determining the defendant's (or similarly situated supplier's) gross margin in that more competitive market; and ©) determining what price the plaintiff would have paid in the monopolized market if the defendant had earned the benchmark margin in that market.

Dr. William Lesser of Cornell University's Department of Applied Economics and Management is an expert on the economics of agricultural technology. As set forth in his declaration, he has identified two benchmarks that he believes would be reasonable in estimating damages to class members in this case, and for which data are likely to be available:

REDACTED

13

REDACTED

**6.**    **Proposed Common Method Of Proving Injury And Damages For Each Class**

Dr. Morton Kamien of Northwestern University's Kellogg School of Management

is an expert on the economics of industrial organization. Dr. Kamien demonstrates in

support of class certification that, if Monsanto is proven to have engaged in the

anticompetitive conduct alleged by Plaintiffs, it will be feasible to show both injury and

14

damages for all members of a given class using common proof, in part using the benchmarks identified by Dr. Lesser.

Dr. Kamien explains, first, that if Monsanto's conduct is proven to have restrained competition – by excluding Syngenta as a meaningful biotechnology corn seed competitor, and discouraging entry by new competitors or expansion by existing ones – it is economically reasonable to conclude that this had the effect of raising or maintaining prices for all purchasers in the relevant biotechnology corn seed markets above what they otherwise would have been. This would show that all direct purchaser class members suffered at least some economic injury or impact. Kamien Decl. at 8-9.

Second, damages can be measured – and injury further established – by use of common damage formulas using the benchmarks identified by Dr. Lesser. Dr. Kamien testifies that such damages can be measured by determining what Monsanto's prices in the relevant markets in this case would have been, if Monsanto had earned the same gross margins in those markets that it earned in the competitive benchmark markets.

REDACTED

REDACTED

, *Id.* at 9-12.

With regard indirect purchasers in the Iowa and Minnesota Classes, to show common injury it is only necessary to show that it is likely that at least some portion (however small) of Monsanto's overcharges to direct purchaser distributors was passed through by those distributors. *See infra* Part II.C.

Dr. Kamien testifies that, in fact, all of the overcharges have been passed through. He points out that independent distributors must recover their costs of business plus a