competitive return. If Monsanto's price for biotechnology corn seed includes a monopoly overcharge, this amount is necessarily embedded in the price charged by the independent distributor downstream. If the distribution market is not competitive, then the independent distributor may mark up Monsanto's overcharge still further. In either case, the full amount of Monsanto's monopoly overcharge is passed on. Therefore, with regard to damages, Dr. Kamien states that the same benchmark formulas can be used as for the National Direct Purchaser Classes to measure damages downstream for the Iowa and Minnesota Classes. Kamien Decl. at 13-14.

Even if Monsanto's monopoly overcharges were not fully passed through, it still would be possible to establish injury and damages through common proof. Dr. Kamien shows that there are alternative ways to measure the pass-on of overcharges to the Iowa and Minnesota Classes. One such method would be to estimate the demand function for biotechnology corn seed to determine the equilibrium mark-up in the corn distribution market, in light of the degree of competitiveness actually observed among distributors. (In economics, the "demand function" represents buyers' demand for a product or service at various price levels.) Dr. Kamien explains that the equilibrium mark-up is the one to which all distributors would independently and voluntarily adhere as a matter of their own self-interest. Once the equilibrium mark-up is established, the impact of Monsanto's overcharge on Iowa and Minnesota Class members who are indirect purchasers of biotechnology corn seed can be determined. *Id.* at 14-15.

16

**ARGUMENT**

Class certification rests within the sound discretion of the district court. *See In re Liner board Antitrust Litig.*, 305 F.3d 145, 149 (3d Cir. 2002). "[T]he standard for determining whether the class action prerequisites are met is rather lenient." *Spark v. MBNA Corp.*, 178 F.R.D. 431, 435 (D. Del. 1998). In doubtful cases – particularly in antitrust – issues of class certification should be resolved in favor of certification. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 487 (5th Cir. 1982) (per curiam); *Esplin v. Hirschi*, 402 F.2d 94, 99, 101 (10th Cir. 1968); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 476 (W.D. Pa. 1999); *Spark*, 178 F.R.D. at 434-35; *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D. Pa. 1994); *In re Chlorine & Caustic Soda Antitrust Litig.*, 116 F.R.D. 622, 625 (E.D. Pa. 1987).

At the class certification stage, "the court must not inquire into the merits of the claims, but rather must accept as true the allegations in the complaint." *Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 439 (E.D. Pa. 1998); *see also Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) ("'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 723 (11th Cir. 1987); *Finberg v. Sullivan*, 634 F.2d 50, 64 (3d Cir. 1980) (en banc); *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ("[t]he court is bound to take the substantive allegations of the complaint as true").

I.    **THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a)**

Federal Rule of Civil Procedure 23(a) sets forth the following four prerequisites to a class action:

(1) The class must be so numerous that joinder of all members is impracticable;

(2) There must be questions of law or fact common to the class;

(3) The claims or defenses of the representative parties must be typical of the claims or defenses of the class; and

(4) The representative parties must fairly and adequately protect the interests of the class.

*See also Eisen*, 417 U.S. at 162.

A.    **Each Class Is So Numerous That Joinder Is Impracticable**

The first requirement of Rule 23(a), "numerosity," is satisfied if a proposed class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). The Third Circuit has stated that classes of more than 40 members are usually large enough to satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

REDACTED

18

REDACTED

The National Direct Purchaser Classes include non-Iowa and non-Minnesota customers not only of Asgrow and DEKALB, but also of the seven other subsidiaries listed in the complaint,

REDACTED

**B.    There Are Many Common Factual And Legal Issues**

There is a "low threshold for satisfying" Rule 23(a)(2)'s requirement that common questions of law or fact exist among the class members' claims. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). This requirement is met so long as "the named plaintiffs share *at least one question* of fact *or* law with the grievances of the prospective class." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (emphasis added).

In general, antitrust plaintiffs are found to have satisfied the Rule 23(a)(2) element by alleging that a conspiracy or monopoly is a central or overriding issue. *See Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n*, 136 F.R.D. 372, 383 (D. Del. 1991).

This case is no exception. Common factual and legal issues arise from the pervasive pattern of Monsanto's conduct. Common issues of proof for all claims within each class include market definition, Monsanto's antitrust violation, and injury to competition arising from that violation, as well as the need to prove actual damages by estimating the competitive prices that would have prevailed in the absence of Monsanto's unlawful monopoly maintenance.

**C.    Plaintiffs' Claims Are Typical Of The Claims Of The Classes They Seek To Represent**

The third prerequisite is "typicality": the claims or defenses of the representative must be "typical" of the claims or defenses of the class it seeks to represent. *See* Fed. R. Civ. P. 23(a)(3). Here, too, there is "a low threshold for satisfying" the requirement: "The criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Newton*, 259 F.3d at 183

(quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). Rule 23(a)(3) does not require identical claims. *See Newton*, 259 F.3d at 184. To the contrary, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (internal quotation marks omitted).

In the present action, the named Plaintiffs' claims arise from the same set of events and are based upon the same legal theories as those of the classes they seek to represent. The named Plaintiffs therefore satisfy the typicality requirement.

### D.  Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class Members

The fourth and final Rule 23(a) prerequisite is that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy of class representation focuses on (1) whether class counsel will competently represent the interests of the class and (2) whether the interests of the class representative are antagonistic to those of the class. *See Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982); *see also Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982); *Newton*, 259 F.3d at 185.

As to the first aspect of the adequacy test, the classes are represented by counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975), *quoted in Lewis*, 671 F.2d at 788. Federal Rule 23(g) provides that the Court is to appoint class counsel when the class is certified. Under the Rule, the Court is to consider:

21

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g). Plaintiffs' counsel, who prepared and filed the original complaints in these actions, have extensive experience in antitrust, class, and other complex litigation. *See* Declarations of Steven F. Benz and R. Stephen Berry (attached hereto).

The second of Rule 23(a)(4)'s requirements – lack of antagonism between the representative and class members – is similar to Rule 23(a)(3)'s typicality test. *See, e.g.*, *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268, 270 (D. Minn. 1989); *In re Independent Gasoline Antitrust Litig.*, 79 F.R.D. 552, 557 (D. Md. 1978). Just as Plaintiffs satisfy the typicality requirement, they also meet the "lack-of-antagonism" test. Each proposed class representative's claims arise from the same events and course of conduct that give rise to the claims of the class members, and each representative's claim for relief due to monopoly pricing mirrors that of the class that the plaintiff seeks to represent.[4]

---

[4] If a conflict were to arise later in the case, the court's decision to certify a class "is not irreversible and may be altered or amended at a later date." *Elster v. Alexander*, 608 F.2d 196, 197 (5th Cir. 1979) (quoting 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785, at 137 (1972)). *See* Fed. R. Civ. P. 23(c)(1)© ("An order under Rule 23(c)(1) may be altered or amended before final judgment"). Accordingly, any possibility that certification may prove inappropriate "is better addressed further down the road, if necessary, by altering or amending the class, not by denying certification at the outset." *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 268 (N.D. Ill. 1992) (internal quotation marks and brackets omitted); *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 700 (D. Minn. 1995).

Rule 23(a)(4) (on adequacy of representation) "is not concerned whether plaintiff . . . will personally be able to assist his counsel." *Lewis*, 671 F.2d at 789; *see also In re Regal Communications Corp. Sec. Litig.*, No. 94-179, 1995 WL 550454, at *6 (E.D. Pa. Sept. 14, 1995). In this case, however, Plaintiffs will be able to provide substantial assistance to counsel, and will vigorously prosecute the interests of the classes. American Seed has been in the business of selling seed to farmers and other purchasers for 15 years, and its owners have developed significant expertise concerning the relevant markets and Monsanto's business practices over that time. The individual plaintiffs are experienced corn farmers who are knowledgeable and well-informed regarding different types of biotechnology corn seed.

REDACTED                         Plaintiffs take their roles as class representatives seriously. ·                     REDACTED

All the proposed representatives are committed to encouraging competition and bringing down the price of biotechnology corn seed for themselves and other farmers and retailers, and all believe that they have been overcharged by Monsanto.

REDACTED

23

REDACTED

## II.    COMMON ISSUES PREDOMINATE ACROSS THE CLAIMS OF EACH CLASS

Once it is determined that the proposed class action satisfies the requirements of Rule 23(a), a class seeking damages and other relief may be certified under Rule 23(b)(3) if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

24

At the class certification stage, "the Court need not concern itself with whether Plaintiffs can prove their allegations regarding common impact; the Court need only assure itself that Plaintiffs' attempt to prove their allegations will predominantly involve common issues of fact and law." *Liner board*, 305 F.3d at 152 (internal quotation marks omitted).

### A.    The Court's Predominance Inquiry Primarily Addresses Predominance As To Liability Issues

To recover under the antitrust laws, a plaintiff must show (1) a violation of the antitrust laws; (2) the fact of antitrust injury (sometimes called antitrust impact or causation) attributable to the violation; and (3) with respect to a damages claim, some approximation of the amount of damage. *See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1273 (3d Cir. 1995). Under the law of this Circuit, classes seeking damages can be certified if there is a predominance of common issues as to liability (that is, the existence of an antitrust violation and antitrust injury or causation), even if there are significant individual issues as to the amount of damages recoverable by each class member. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate."); *see also Eisenberg*, 766 F.2d at 786; *Spark*, 178 F.R.D. at 435; *Lumco Indus., Inc. v. Jeld-Wen, Inc.*, 171 F.R.D. 168, 174 (E.D. Pa. 1997); *Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 547, 550 (D. Del. 1979) (certifying class even though individual hearing on damages may be needed for each class member).

In fact, even individual questions as to causation and liability or the fact of injury have been found insufficient to defeat class certification so long as most issues are subject

25

to common proof. In *Liner board*, for example, the Third Circuit indicated that individual issues regarding fraudulent concealment, causation, and reliance did not preclude class certification:

> [A]ny individualized facts of fraudulent concealment may be adjudicated in the same fashion and at the same time as individual damages issues. As a leading treatise on class actions explains: "Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." Newberg & Conti, *Newberg on Class Actions* § 4.26 (3d ed.).

305 F.3d at 163. Similarly, in *Eisenberg*, the court reversed a district court's denial of class certification even though there were individual issues of reliance:

> Assuming that the district court's order may have turned on the existence of individual issues as to reliance, we believe it was an abuse of discretion not to certify the class on that ground. This case did not present extraordinarily complex questions of causation and reliance, despite the possibility that only some members of the class may have relied on the offering materials prepared by defendants in choosing to invest.

766 F.2d at 786-87; *see also, e.g., Klay v. Humana, Inc.*, 382 F.3d 1241, 1258 (11th Cir. 2004) (individual issues of reliance), *cert. denied*, 543 U.S. 1081 (2005); *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (affirming Rule 23(b)(3) certification despite substantial individual issues of causation); *Flat Glass*, 191 F.R.D. at 487-88 (individual issues of fraudulent concealment); *In re Cephalon Sec. Litig.*, No. 96-0633, 1998 WL 470160, at *4 (E.D. Pa. Aug. 12, 1998) (individual issues regarding reliance).

### B.    Common Issues Predominate With Regard To Monsanto's Antitrust Violations

The first requirement in proving an antitrust claim is establishing that a defendant violated the antitrust laws. In determining whether common proof will predominate with

26

respect to showing Monsanto's antitrust violations, it is appropriate to begin with the specific

elements that any plaintiff would need to prove – whether in a class action or in an individual

lawsuit. For instance, to prove monopolization of a relevant market under Section 2 of the

Sherman Act, the National Direct Purchaser Classes need (at most) to show the following:

- The relevant product markets and their geographic scope. This inquiry defines the competitive sphere within which the Court will assess whether there has been unlawful maintenance of a monopoly.

- Defendants' power to increase prices or exclude competition in the relevant markets (i.e., Defendants' "market power").

- Defendants' willful maintenance of their market power by conduct with the purpose or effect of excluding competition, "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992) (internal quotation marks omitted); *see also LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc) (upholding jury verdict against supplier in monopolization case involving exclusionary bundled rebates and *de facto* exclusive dealing), *cert. denied*, 542 U.S. 953 (2004).

The proof of Monsanto's monopolization is common to the claims of all class

members within each class: indeed, courts routinely hold, in class actions such as this, that

the common questions regarding the existence of an antitrust violation predominate over

individual questions. *See Christiana Mortgage*, 136 F.R.D. at 383; *see also, e.g., Davis v.*

*Southern Bell Tel. & Tel. Co.*, 1993-2 Trade Cas. (CCH) ¶ 70,480, at 71,605 (S.D. Fla. 1993)

(proof of relevant market and market power involves "substantial" common evidence), *recon. denied in pertinent part*, 158 F.R.D. 173 (S.D. Fla. 1994); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 424-27 (D.N.M. 1988); *Daniels v. Amerco*, 1983-1 Trade Cas. (CCH) ¶ 65,274 (S.D.N.Y. 1983).

For each class, common issues such as the definition of the relevant market, Defendants' possession of market power in that market, and Defendants' use of exclusive dealing and bundling licenses as part of a strategy to maintain market power and exclude competition, will dominate the determination of Defendants' liability at trial. If each class member were to bring an individual action, each such plaintiff would have to establish the same facts using the same evidence. It is clearly more efficient for these issues to be resolved in a single case.

### C.    Common Issues Predominate With Regard To Injury

In addition to the existence of an antitrust violation, Plaintiffs must also show that they and the class members that they represent suffered at least some antitrust injury (or antitrust impact or causation) as a result of a Monsanto violation. Proof of antitrust injury addresses the defendant's liability, not the measure of damages, so there is no need to quantify the amount of injury in order to show injury on a class-wide basis. *See Bogosian*, 561 F.2d at 456; *see also MCI Communications Corp. v. AT&T Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983). Rather, all that is needed is to show that Plaintiffs will be able to provide, as to each class member, "proof of *some* damage." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969) (emphasis added).

Moreover, as to the fact of injury, "antitrust plaintiffs have not been held to an unduly rigorous standard of proving antitrust injury." *Stelwagon*, 63 F.3d at 1273. To the contrary, "the proof requirements under section 4 [of the Clayton Act] are 'less than stringent.'" *Id.* at 1274 (quoting *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1540 (3d Cir. 1990)).

At the class certification stage, the requirements are still less stringent. Plaintiff is not required actually to prove injury to all class members at the class certification stage; rather, the issue is only whether "Plaintiffs' *attempt* to prove their allegations will predominantly involve common issues of fact and law." *Liner board*, 305 F.3d at 152 (emphasis added; internal quotation marks omitted). The Second Circuit has explained that the district court's function at this stage is "not to determine whether plaintiffs ha[ve] stated a cause of action or whether they w[ill] prevail on the merits, but rather whether they ha[ve] shown, based on methodology that is not fatally flawed, that the requirements of Rule 23 [a]re met." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001); *see also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

In making this determination, the court "may not weigh conflicting expert evidence or engage in statistical dueling of experts." *Visa Check,* 280 F.3d at 135 (internal quotation marks omitted); *see also Commercial Tissue Prods.*, 183 F.R.D. 589, 596 (N.D. Fla. 1998); *Domestic Air Transp. Litig.*, 137 F.R.D. 677, 692 (N.D. Ga. 1991); *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 23 (N.D. Ga. 1997); *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 530 (M.D. Fla. 1996); *Bogosian*, 561 F.2d at 454. Indeed, standard *Daubert* analysis does not apply. *See Visa Check*, 280 F.3d at 132 n.4. Thus, "[t]he

29

question for the district court at the class certification stage is whether plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive." *Id.* at 135.

In this case, Plaintiffs will be able to show on a common basis that all class members have suffered at least some antitrust injury because of Monsanto's violations. To make such showings of common antitrust injury Plaintiffs rely, in part, on the declarations of Dr. Kamien and Dr. Lesser.

With regard to direct purchasers, Dr. Kamien concludes, first of all, that, if Defendants' conduct is proven to have restrained competition, then it is economically reasonable to conclude that this had the effect of raising or maintaining prices for all direct purchasers in the relevant markets above what the prices otherwise would have been. Kamien Decl. at 8-9; *see also LePage's*, 324 F.3d at 164 ("Once a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit. This *price is invariably higher than the price determined in a competitive market.* That is one of the principal reasons why monopolization violates the antitrust laws.") (emphasis added). The same is true of direct purchasers in the Iowa and Minnesota Classes. *See* Kamien Decl. at 4, 5.

With regard to indirect purchasers in the Iowa and Minnesota Classes, Dr. Kamien shows that the overcharge was embedded in the price charged to class members. Kamien Decl. at 13-14. Dr. Kamien explains that where (as here) price and quality are the areas of competition, in the presence of competition price will be driven down to the level at which

the supplier realizes a reasonable or "normal" rate of return, taking into account the quality dimension of his product. *Id.* at 8.

Making the reasonable assumption that distributors of biotechnology corn seed do not sell below cost, prices paid by indirect purchasers therefore were inflated to all class members because those indirect purchasers paid 100% of the distributors' costs plus a reasonable return on those costs. *Id.* at 3-4, 13-14. As discussed below, both Iowa and Minnesota courts have certified damage classes of indirect purchasers. *See infra* Part II.D.

Dr. Kamien further points out that injury to all members of each class can also be shown using the same benchmarking methods described in Part II.D, below, in connection with the measurement of damages. Kamien Decl. at 9, 12-14.

Finally, Dr. Kamien points out that, even if for some reason Monsanto's overcharges were not entirely passed through to indirect purchasers, it would still be feasible to show injury to these purchasers through alternative methods, such as estimating the demand function for biotechnology corn seed to determine the equilibrium mark-up in the corn distribution market. *Id.* at 14-15.

**D.     Even Though Plaintiffs Are Not Required To Show Predominance As To Damages Issues, Common Issues Predominate As To Damages**

With regard to measurement of the damages suffered by members of the proposed classes, the certification inquiry is particularly limited. The Third Circuit has made clear that damage classes can be certified if there is a predominance of common issues as to violation and injury, even if there are significant individual issues as to the amounts of individual class members' damages. *See Eisenberg*, 766 F.2d at 786; *Bogosian*, 561 F.2d at 456; *see also Blackie*, 524 F.2d at 905; *accord, Klay*, 382 F.3d at 1259; *Visa Check*, 280 F.3d at 139-41.

31

Indeed, class certification can be granted even if (unlike here) a plaintiff is unable to propose a viable formula for measuring damages. *See Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 578 (E.D. Pa. 1984) ("Plaintiffs assert that a common formula for individual damages' calculation can be established . . . . But that need not be decided in order to rule on class certification at this time."); *Domestic Air*, 137 F.R.D. at 692 ("The absence of a formulaic method by which to calculate damages would not be sufficient reason to deny class certification.").

Moreover, once an antitrust violation and the fact of antitrust injury have been established, the burden of proving the amount of damages at trial is not severe. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981); *Zenith Radio*, 395 U.S. at 123; *LePage's*, 324 F.3d at 166; *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812-13 (3d Cir. 1984). This is because "elementary conceptions of justice and public policy" dictate that a defendant who prevented the existence of competition in the market bears the risk of any uncertainty as to the damages created by its antitrust violation. *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 354 (E.D. Pa. 1976). Accordingly,

> [i]n assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all. . . . [Plaintiffs] need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis.

*Klay*, 382 F.3d at 1259 (quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004)) (alterations in original); *see also, e.g., DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 565 (M.D.N.C. 2002); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 30 (D.D.C. 2001); *Cardizem CD*, 200 F.R.D. at 348; *Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 615 (E.D. Wis. 2000).

32

Professor Kamien demonstrates that the amount of damages can in fact be measured in a common fashion in this case, by using suitable benchmarks to develop a methodology to determine what prices would have been if Monsanto had not violated the law. As explained above (at p.13), benchmarks are markets that are more competitive than, but otherwise comparable to, the relevant market in the case. In effect, the economist isolates the effect of the anticompetitive conduct in the relevant market by finding another market that is close to the relevant market, *except* that it was not subject to anticompetitive conduct.

Dr. Lesser has identified two benchmarks that he believes would be reasonable in estimating damages to class members, and for which data will be available. Dr. Lesser's proposed benchmark methodologies are well-established in antitrust cases.


REDACTED


Dr. Kamien explains that the benchmarks identified by Dr. Lesser can be used to develop common damage formulas for each class, including the National Direct Purchaser Classes, the Iowa Classes, and the Minnesota Classes. Kamien Decl. at 8-15.

In *Liner board*, the Third Circuit upheld a class certification based on the same types of evidence available here: prices charged for Liner board during a competitive period before

33

the conspiracy, and prices for comparable products in more competitive markets. *See* 305 F.3d at 154-55. The court gave great weight to the affidavits of the plaintiffs' experts in upholding the district court's class certification ruling. *See id.* at 155. Numerous other courts have approved benchmarking.[5] The methods accepted in those cases are closely comparable to the methods proposed by Dr. Lesser – which is not surprising, because both Dr. Lesser and the expert economists in those cases are drawing on the same economic principles.

Dr. Kamien likewise establishes that such damage formulas are feasible for indirect purchasers in the Iowa and Minnesota Classes. As he explains, in a competitive distribution market, any monopoly overcharge by Monsanto will be passed through on a dollar-for-dollar basis by independent distributors. In an oligopolistic distributor market, the monopoly overcharge by Monsanto will be passed through on a *more* than dollar-for-dollar basis. In either case, the benchmarks proposed by Dr. Lesser will show the amount of the overcharge to customers that resulted in direct benefit to Monsanto. Kamien Decl. at 12-14.

Dr. Kamien also identifies an alternative method of measuring damages to the Iowa and Minnesota Classes, through estimation of the demand function for biotechnology corn

---

[5] *See also, e.g., Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019, 1026-29 (5th Cir. 1983) (affirming jury award in antitrust class action based on presentation of benchmark evidence); *Bradburn Parent/Teacher Stores, Inc. v. 3M,* No. Civ. A. 02-7676, 2004 WL 1842987, at *13-*15 (E.D. Pa. Aug. 18, 2004); *Lumco Indus.,* 171 F.R.D. at 174; *Domestic Air,* 137 F.R.D. at 689; *Commercial Tissue,* 183 F.R.D. at 595; *Collins v. International Dairy Queen, Inc.,* 186 F.R.D. 689, 691-92 (M.D. Ga. 1999); *Disposable Contact Lens,* 170 F.R.D. at 531; *Catfish Antitrust Litig.,* 826 F. Supp. 1019, 1043 (N.D. Miss. 1993); *Potash,* 159 F.R.D. at 697-98. In *Image Technical Services, Inc. v. Eastman Kodak Co.,* Nos. C 87-1686 *et al.,* 1994 WL 508735 (N.D. Cal. Sept. 2, 1994), the court emphasized that it would not predetermine whether plaintiffs' methodology would persuade a jury of common impact, but rather "assume[d] that the plaintiffs' allegations are true." *Id.* at *3.

seed to determine the equilibrium mark-up in the biotechnology corn seed distribution market. The equilibrium mark-up is the one to which all the distributors independently and voluntarily find it their best interest to adhere, given the degree of competitiveness observed in the distribution market. Knowing the equilibrium mark-up will make it possible to isolate the damages inflicted on indirect purchaser class members by Monsanto's monopolistic price overcharge. *Id.* at 14-15.

The Third Circuit has already upheld a finding that common issues predominated when indirect purchasers brought state antitrust claims. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) (settlement class), *aff'd*, 391 F.3d 516 (3d Cir. 2004). Moreover, such a view is most consistent with the laws of Minnesota and Iowa under which these classes sue. In *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003), indirect purchasers of Microsoft operating systems sought class certification for overcharges on such systems, even though the software had been included in class members' purchases of personal computers from third parties. The court certified the class:

> As a practical matter, denying class certification usually constitutes the functional dismissal of a consumer antitrust lawsuit. Denying class certification based merely on economic complexity would effectively abrogate the indirect purchaser provision [of Minnesota law] altogether since economic complexity is inherent in indirect purchaser actions. In order to effectuate the Minnesota legislature's intent, standards for class certification should be interpreted if at all possible in a fashion that indirect purchasers can meet.

*Id.* at *1. The Iowa Supreme Court has upheld a similar class. *See Comes v. Microsoft Corp.*, 696 N.W.2d 318, 325 (Iowa 2005).

The *Microsoft* cases were significantly more complex than this case. ·

REDACTED

*Microsoft* cases, by contrast, involved software sold through different means of distribution

and in combination with a variety of other products (including hardware and other software).

Moreover, courts have held in numerous cases that antitrust plaintiffs show common

impact if they can show that the base price from which prices were negotiated was inflated.

"[E]ven though some plaintiffs negotiated prices, if plaintiffs can establish that the base price

from which these negotiations occurred was inflated, this would establish at least the fact of

damage, even if the extent of the damage by each plaintiff varied." *Flat Glass*, 191 F.R.D.

at 486; *see also, e.g., Cardizem CD*, 200 F.R.D. at 317-18; *In re Vitamins Antitrust*

*Litigation*, 209 F.R.D. 251, 266 (D.D.C. 2002); *Midwestern Mach. v. Northwest Airlines,*

*Inc.*, 211 F.R.D. 562, 572 (D. Minn. 2001); *Commercial Tissue*, 183 F.R.D. at 595; *Lumco*

*Indus.*, 171 F.R.D. at 173; *Fisher Bros.*, 102 F.R.D. at 578; *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996). Likewise here, the base price to be

charged by distributors was inflated by the increase in the biotechnology corn seed traits

imposed by Monsanto. Thus, the base price from which distributors made their pricing

decisions was higher than it would have been in a more competitive market, "establish[ing]

at least the fact of damage, even if the extent of the damage . . . varied." *Flat Glass*, 191

F.R.D. at 486.

**III.    THE CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR ADJUDICATION OF THIS CONTROVERSY**

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Relevant factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The superiority requirement can generally be satisfied by showing that the class is so numerous that joinder of all the parties is impracticable. 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1779, at 553-54 (2d ed. 1986) ("Wright & Miller") (test similar to Rule 23(a)(1)'s numerosity requirement). As one court of appeals observed:

> This case involves multiple claims for relatively small individual sums. . . . If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see also Klay*, 382 F.3d at 1270-71.

A class action is superior to other methods of handling the present controversy because no alternative methods would be fair and efficient. Requiring individual actions with duplicative proof regarding (among other issues) relevant markets, monopolization, and benchmarking, would be repetitive, wasteful and substantially more burdensome on the courts. Moreover, given the cost and complexity of antitrust litigation (particularly against Monsanto, one of the largest corporations in the world, with vast financial and legal

37

resources), it is likely that even many class members with relatively large claims would forego them rather than pursue them individually. *See In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252 (S.D. Tex. 1978) (absent class certification, "[e]ven a successful business might well shrink from the investment in time and money which this type of litigation entails"). "This in turn would result in unjustly enriching the Defendants, precisely the result antitrust laws are designed to remedy." *Potash*, 159 F.R.D. at 699; *see also Klay*, 382 F.3d at 1270-71.

In such circumstances, courts regularly find a class action to be the superior method. Class action treatment here would save time, effort, and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. *See* 7A Wright & Miller § 1777, at 517.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the proposed Classes pursuant to Fed. R. Civ. P. 23(b)(3).

Dated: April 17, 2006

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

_____
Joellé E. Polesky (ID No. 3694)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
E-mail: jpolesky@skfdelaware.com
Attorneys for Plaintiffs

OF COUNSEL
(for all Plaintiffs and proposed Classes):


KELLOGG, HUBER, HANSEN,
TODD, EVANS & FIGEL P.L.L.C.
Steven F. Benz
Ronald L. Lord
Michael J. Fischer
Michael S. Zuckman
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

BERRY & LEFTWICH
R. Stephen Berry
J. Daniel Leftwich
Gregory Baruch
1717 Pennsylvania Ave., N.W., Suite 450
Washington, D.C. 20006
Telephone: (202) 296-3020
Facsimile: (202) 296-3038

OF COUNSEL
(for Darrell Souhrada, Dave Johnson,
Kent Duxbury, and the proposed
Iowa and Minnesota Classes):


BIRD, JACOBSEN & STEVENS
Charles Bird
Van Jacobsen
Jeremy R. Stevens
300 Third Avenue SE
305 Ironwood Square
Rochester, MN 55904
Telephone: (507) 282-1503
Facsimile: (507) 282-7736

39

## CERTIFICATE OF SERVICE

I certify that this 17th day of April, 2006, copies of the foregoing Plaintiffs'

Brief in Support of Motion for Class Certification (REDACTED) were caused to be served

on the following by efiling:

> Richard L. Horwitz
> Potter Anderson & Corroon LLP
> Hercules Plaza 6th Floor
> 1313 N. Market Street
> Wilmington, DE 19801
>
> Peter E. Moll
> Howrey LLP
> 1299 Pennsylvania Ave. N.W.
> Washington, D.C. 20004

_____
Joelle E. Polesky (I.D. No. 3694)

10013358.WPD