**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMERICAN SEED CO. INC., | ) | |
| | ) | |
| Plaintiff, On Behalf of Itself<br>and Others Similarly<br>Situated, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-535-SLR |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Monsanto Controlled Subsidiaries: | ) | |
| | ) | |
| AMERICAN SEEDS INC.,<br>CORN STATES HYBRID,<br>  SERVICE INC.<br>ASGROW SEED CO., INC.,<br>HOLDEN FOUNDATION SEEDS, INC.,<br>DEKALB SEEDS,<br>CALGENE, L.L.C.,<br>CHANNEL BIO CO.,<br>NC+ HYBRIDS,<br>SEMINIS INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DARRELL SOUHRADA, and<br>DAVE JOHNSON, | ) | |
| | ) | |
| Plaintiffs, On Behalf of Themselves<br>and Iowa Citizens Similarly<br>Situated, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-535-SLR |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| KENT DUXBURY | ) | |
| | ) | |
| Plaintiff, On Behalf of Himself | ) | |
| and Minnesota Citizens | ) | |
| Similarly Situated, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-535-SLR |
| | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFFS' REPLY BRIEF IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

### Filed on Behalf of Plaintiff American Seed Co., Inc.,
### Intervenor Plaintiffs Darrell Souhrada, Dave Johnson, and Kent Duxbury,
### and Proposed Intervenor Plaintiffs Jerry Ellefson and Benjamin Rein

SMITH, KATZENSTEIN & FURLOW LLP

Joelle E. Polesky (ID No. 3694)
Robert K. Beste, III (ID No. 3931)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Facsimile: 302-652-8405
E-mail: jpolesky@skfdelaware.com

Attorneys for Plaintiffs

Dated: August 14, 2006

**TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   PLAINTIFFS CAN ESTABLISH INJURY ON A
     CLASSWIDE BASIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Regional Differences in Transgenic Corn Seed Pricing
          Are Consistent With Classwide Proof of Injury . . . . . . . . . . . . . . . . . . . 3

     B.   The Data Required To Establish Injury Through Classwide
          Benchmark Analysis Are Available . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     C.   *Blades v. Monsanto* Has No Bearing On Class Certification
          In This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          1.   Blades Does Not Preclude Certification of the
               Proposed Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.   Blades Lacks Persuasive Force in this Case . . . . . . . . . . . . . . . . 9

          3.   The Legal Standard Applied in Blades Is Not the Governing
               Standard in The Third Circuit . . . . . . . . . . . . . . . . . . . . . . . . . 11

     D.   Monsanto Seeks a Premature and Impermissible
          "Dueling of Experts" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.  PLAINTIFFS' BENCHMARKS ARE REASONABLE AND INVOLVE
     COMMON, FORMULAIC PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. PLAINTIFFS HAVE PROPOSED SUITABLE CLASS
     REPRESENTATIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     A.   Monsanto's Standing Arguments Are Not Relevant . . . . . . . . . . . . . . . 16

     B.   American Seed Satisfies the Typicality and Adequacy Requirements
          of Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

### TABLE OF CITATIONS

**CASES**

*Amchem Products, Inc. v. Windsor,*
 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*AG Fur Industrielle Elektronik AGIE v. Sodick Co.,*
 748 F. Supp. 1305 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248 (4th Cir. 2005) . . . . . . . 17

*Arden Architectural Specialities, Inc. v. Washington Mills Elec. Minerals Corp.,*
 2002 WL 31421915 (W.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Black's Law Dictionary,* 205 (8th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blades v. Monsanto Co.,* 400 F.3d 562 (2005) . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*
 402 U.S. 313 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . 19

*Bradburn Parent/Teacher Stores, Inc. v. 3M,*
 2004 WL 1842987 (E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.*
 63 F.3d 1227 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Comes v. Microsoft Corp.,* 696 N.W.2d 318 (Iowa 2005) . . . . . . . . . . . . . . . . . . . . . . 7

*Cotterall v. Paul,* 755 F.2d 777 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Deloach v. Phillip Morris Cos.,* 206 F.R.D. 551 (M.D.N.C. 2002) . . . . . . . . . . . . . . . 14

*LePage's Inc. v. 3M,* 324 F.3d 141 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 2, 8, 10, 11

*German v. Federal Home Loan Mortgage Corp.,*
 885 F. Supp. 537 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gordon v. Lewistown Hosp.,* 423 F.3d 184 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 3

*Gordon v. Microsoft Corp.,* 2001 WL 366432 (Minn. Dist. 2001) . . . . . . . . . . . . . . . . 7

ii

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968) . . . . . . 18-19

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195
    (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Agricultural Chemicals Antitrust Litigation*,
    1995 WL 787538 (N.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*In re Bulk [Extruded] Graphite Products Antitrust Litigation*,
    2006 WL 891362 (D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326 (E.D. Mich. 2001) . . . . . . 14-15

*In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472 (W.D. Pa. 1999) . . . . . . . . . . . . 7

*In re Industrial Diamonds Antitrust Litigation*, 167 F.R.D. 374
    (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*In re Linerboard Antitrust Litigation*, 305 F.3d 145 (3d Cir. 2002) . . . . . . . . 1, 11, 12, 16

*In re Mercedes-Benz Antitrust Litigation*, 213 F.R.D. 180 (D.N.J. 2003) . . . . . . . . . . . 12

*In re Nasdaq Market-Makers Antitrust Litigation*,
    169 F.R.D. 493 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Polypropylene Carpet Antitrust Litigation*,
    178 F.R.D. 603 (N.D. Ga. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Potash Antitrust Litigation*, 159 F.R.D. 682 (D. Minn. 1995) . . . . . . . . . . . . . . . 15

*In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346
    (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re School Asbestos Litigation*, 789 F.2d 996 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . 11

*In re Warfarin Sodium Antitrust Litigation*,
    391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Visa Check/MasterMoney Antitrust Litigation*,
    192 F.R.D. 68 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Visa Check/MasterMoney Antitrust Litigation,*
    280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*National Farmers Org., Inc. v. Associated Milk Producers, Inc.,*
    850 F.2d 1286 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Newby v. Johnston,* 681 F.2d 1012 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nichols v. SmithKline Beecham Corp,*
    2003 WL 302352 (E.D. Pa. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pennsylvania,*
    745 F.2d 248 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ungar v. Dunkin' Donuts of America, Inc.,* 531 F.2d 1211 (3d Cir. 1976) . . . . . . . . . . . 8

*Weisfeld v. Sun Chemical Corp.,* 210 F.R.D. 136 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969) . . . . . . . . . . . . . . 2

**STATUTES AND RULES**

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 20

Sherman Act, Section 2, 15 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**

With the exception of narrow arguments applicable solely to two plaintiffs, Monsanto does not dispute that this proposed class action satisfies the requirements of Rule 23(a). Monsanto instead rests its opposition almost entirely on the contention that plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement. On that point, Monsanto's argument is limited solely to one element of plaintiffs' claim: antitrust injury. Monsanto apparently agrees that common questions predominate over individual ones with respect to proof of Monsanto's monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2. And Monsanto implicitly admits that plaintiffs' proposed method of calculating damages is consistent with class certification.

The proposed classes should be certified unless individual questions regarding antitrust injury predominate over *all* of the concededly common issues relating to plaintiffs' claims. Rule 23(b)(3) requires a balancing of all questions relating to plaintiffs' claims, and courts routinely certify classes even though one issue will require predominantly individual proof. *See, e.g., In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002). Thus, even if Monsanto could show that individual questions predominate with respect to the issue of antitrust injury (which it cannot), the classes still should be certified.

Tacitly conceding the weakness of its arguments under Rule 23, Monsanto extensively argues the merits of plaintiffs' underlying monopolization claim. For instance, Monsanto contends that it lacks monopoly power in the relevant markets for transgenic corn seed and that the relevant seed markets are local instead of national, as plaintiffs allege. Monsanto's arguments are incorrect and, more importantly, inappropriate for decision at this preliminary stage of the case. Monsanto cannot defeat class certification with arguments that plaintiffs have not had the opportunity to investigate through merits discovery.

Plaintiffs have shown that common issues predominate over individual ones with respect to the elements of their claims. Class certification therefore is warranted.

**ARGUMENT**

**I.    PLAINTIFFS CAN ESTABLISH INJURY ON A CLASSWIDE BASIS**

To establish antitrust injury, plaintiffs must show only that they have suffered loss as a result of Monsanto's conduct, not the amount of that loss. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969). Here, all plaintiffs must show is that the price paid by class members for Monsanto transgenic corn seed is greater than the price class members would have paid in a competitive marketplace.

Plaintiffs have described two methods for establishing classwide injury. First, plaintiffs' expert, Dr. Morton Kamien, explains using accepted principles of economic theory that, under the circumstances present here, a firm with monopoly power will price above competitive levels for all relevant products. *See* Kamien Decl. at 8-9 (D.I. 104). That conclusion is supported by the Third Circuit's decision in *LePage's Inc. v. 3M,* 324 F.3d 141, 164 (3d Cir. 2003) (en banc) ("Once a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit. This price is invariably higher than the price determined in a competitive market."), as well as ███████████████████████ *see* Second Kamien Decl. ¶¶ 10-19. Monsanto tries to dodge Dr. Kamien's analysis by rhetorically accusing him of relying on "nothing more than an assumption" of common injury to class members. Monsanto's Opp'n to Pls.' Mot. for Class Certification at 23 (D.I. 118). Yet Monsanto neither challenges the validity of the concrete economic principals on which Dr. Kamien relies, nor acknowledges the Third Circuit's decision in *LePage's* or ███████████████████

Second, Dr. Kamien and Dr. William Lesser together demonstrate that a common benchmark methodology can be used to show that all members of the proposed classes paid prices that Monsanto set above competitive levels (and, later in the case, to determine the amount of damages for each class member). Monsanto does not dispute that determining "but-for" prices using benchmarks is a widely

accepted method of common proof, or that the data necessary to implement the proposed benchmark

methodology for all class members are available.

### A.    Regional Differences in Transgenic Corn Seed Pricing Are Consistent With Classwide Proof of Injury

Monsanto principally argues that the existence of regional differences in transgenic corn seed

pricing render it impossible for plaintiffs to establish antitrust injury on a classwide basis through

either method described above. *See, e.g,* D.I. 118 at 21. █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *see also* D.I. 118 at 22.

Monsanto's position that the relevant markets are local rather than national goes to the merits

of plaintiffs' claims and cannot be resolved without full discovery. *Gordon v. Lewistown Hosp.*, 423

F.3d 184, 212 (3d. Cir. 2005) ("The geographic scope of a relevant product market is a question of

fact to be determined in the context of each case in acknowledgment of the commercial realities of

the industry being considered."). Class certification discovery and merits discovery were bifurcated

at Monsanto's request and merits discovery has just begun. ███████████████████████

███████████████████████████████████) In determining the relevant geographic

market, courts evaluate where "a potential buyer may rationally look for the goods or services he or

she seeks." *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pa.*, 745 F.2d 248, 260 (3d Cir.

1984). ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

3

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████    Thus, even if the merits were to be inappropriately prejudged, the relevant markets are national.

Monsanto further relies on the observation that most varieties of corn seed grow better and are more popular in some areas of the country than others, due to local climactic, soil, weed, and pest conditions. D.I. 118 at 32-34. This also does not suggest that the relevant antitrust markets are local. Many products that are sold on a national basis have varying levels of popularity in different parts of the country. In Philadelphia, Phillies baseball jerseys sell better than Chicago Cubs jerseys. The opposite is true in Chicago. But such variations do not support the contention that baseball jerseys – which are produced in centralized locations and advertised and sold nationally – are sold in local markets. So too for corn seed. For example, although farmers in the East may have a lesser preference for seed that is resistant to the European corn borer pest than farmers in the Midwest due to the greater prevalence of that pest in the Midwest, the market for corn borer-resistant seed is national. *See* Second Kamien Decl. ¶ 13.



███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

**B.**    **The Data Required To Establish Injury Through Classwide Benchmark Analysis Are Available**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

-----------------------------------

[1] Monsanto argues that it does not have sufficient market share to exercise monopoly power. D.I. 118 at 37. That is a merits argument appropriate for a summary judgment proceeding, not a class certification proceeding. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



With respect to indirect purchasers of transgenic seed in the proposed Iowa and Minnesota classes, *see* Pls' Br. in Supp. of Mot. for Class Certification at 10-11 (D.I. 100), ███████ ███████████████████████████████████████████████████████ ██████████████████████ As Dr. Kamien explains, common injury to indirect

purchasers can be demonstrated using common proof once overcharges to Monsanto dealers are shown using the common proof discussed above. Economic injury to all indirect purchasers will be a corollary to plaintiffs' showing of economic injury to the independent dealers that purchase directly from Monsanto and sell to the indirect purchasers. That is because, as plaintiffs will show using common economic proof, seed dealers pass through Monsanto's overcharges on transgenic seed to their farmer customers. *See* D.I. 104 at 14; Second Kamien Decl. ¶¶ 32-34; *see also Comes v. Microsoft Corp.*, 696 N.W.2d 318, 324 (Iowa 2005) (affirming certification of indirect purchaser class based in part on expert testimony that overcharges were passed on to consumers); *Gordon v. Microsoft Corp.*, No. 00-5994, 2001 WL 366432, at *9 (Minn. Dist. Ct. Mar. 30, 2001) (granting motion for certification of indirect purchaser class based on expert testimony that overcharges would be passed through to consumers).

Furthermore, contrary to Monsanto's suggestion (D.I. 118 at 21-22), it will not be necessary for plaintiffs to show whether individual farmers received a negotiated discount from their seed dealer. If Monsanto had not unlawfully excluded competition in the relevant transgenic seed markets, then farmers would have received their discounts off of lower, competitive prices. In other words, plaintiffs' economic evidence will demonstrate that discounting by Monsanto's independent dealers in markets tainted by Monsanto's exclusionary conduct did not make indirect purchasers of Monsanto's transgenic seed better off than they would have been in "but for" competitive markets where prices were pushed down to competitive levels, and dealers offered any individual discounts off of those lower prices. *See* Second Kamien Decl. ¶ 30.

Where "the base price from which individual discounts were negotiated" was higher, *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999), a jury can reasonably determine that, although a given purchaser was able to obtain the lowest price available under the restrained market conditions, that purchaser could also have obtained the lowest price in an unrestrained market

– which, as the Third Circuit recognized in *LePage's* is "invariably" lower than the lowest price in a restrained market. *See* 324 F.3d at 164; *see also In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 383-84 (S.D.N.Y. 1996); and cases cited in D.I. 100 at 36.

For these reasons, the possibility that Monsanto's independent seed dealers negotiate discounts with individual farmers in Iowa and Minnesota does not prevent the use of common proof to show that indirect-purchaser class members suffered injury. ████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████ *See Indus. Diamonds*, 167 F.R.D. at 383-84.[4]

**C.    *Blades v. Monsanto* Has No Bearing On Class Certification In This Case**

In an effort to fill the gaps in its arguments concerning the facts presented here, Monsanto relies heavily on *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005), in which the Eighth Circuit affirmed the district court's denial of class certification. *Blades* involved different named plaintiffs, different legal claims, different facts, and a different test for class certification. It clearly is not binding on this Court, and it lacks even persuasive force.

*1.    Blades Does Not Preclude Certification of the Proposed Classes*

Monsanto claims that under principles of issue preclusion, the *Blades* court's denial of class certification requires the same result here. Monsanto asserts that "[i]ssue preclusion does not require that the same parties were parties to the prior action." D.I. 118 at 18. But it is only the party

---

[4] ████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████ Plaintiffs' claim is that Monsanto's trait licenses with seed companies *collectively* have excluded trait competitors and thus diminished competition in the relevant transgenic seed markets. Plaintiffs do not assert that any individual license itself had that effect. Further, Rule 23(b)(3) requires this Court to determine whether common issues predominate over individual ones with respect "to the members of the class." Fed. R. Civ. P. 23(b)(3). Monsanto's trait licensees, as such, are not members of the proposed classes. Questions regarding trait licenses are thus common to all class members. By contrast, the proposed class members in *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir. 1976), held the licenses that were the subject of the litigation, so the terms of any given license affected one class member uniquely.

8

*invoking* preclusion who may be different than in the prior action. The party *against whom* preclusion is applied must be the same as in the prior action. Litigants "who never appeared in a prior action . . . may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim." *Blonder-Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 329 (1971); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *Burlington N. R.R.. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1232 n.4 (3d Cir. 1995).

Not only did the proposed class representatives here not participate in *Blades*, but the classes they seek to represent are different from those in *Blades*, as are the antitrust claims. We are aware of no precedent for finding that one court's refusal to certify a class can have preclusive effect in a subsequent action brought in a different court by different plaintiffs on behalf of a different class alleging different claims, merely because the two cases involve some of the same products.

2.    Blades *Lacks Persuasive Force in this Case*

The decision in *Blades* was fact-specific. Moreover, the court of appeals in that case indicated that class certification was "a close issue" and its decision was merely that "we cannot say the trial court *abused its discretion* in denying class certification." 400 F.3d at 575 (emphasis added). The denial of class certification in that case is entirely consistent with granting class certification here.

*Blades* was a Sherman Act Section 1 case in which Monsanto allegedly conspired with Syngenta, Pioneer, and Aventis to fix corn and soybean seed prices above competitive levels. Because the alleged anticompetitive conduct was fixing prices, and the proposed plaintiff class members bought from all four companies, it was essential for plaintiffs to prove that the alleged price-fixing agreement extended to every price charged by each of the companies. *See* 400 F.3d at 573.

9

There was *undisputed* evidence – repeatedly emphasized by the court – that Syngenta, Pioneer, and Aventis undercut Monsanto's pricing and could not have overcharged for some seeds sold to class members. 400 F.3d at 571, 573, 574. Under those circumstances, the court of appeals determined that it was reasonable to conclude that plaintiffs failed to propose a method to prove that the defendants effectively implemented a conspiracy covering all prices charged to all class members. *See* 400 F.3d at 573–74 ("[I]f appellees performed their agreement, their performance was not across the board, but extended to some list prices and not to others.").

Here, by contrast, Monsanto's inflated pricing is the inevitable effect of its alleged unlawful monopolization, and once the monopolization is shown using proof that is common to all class members, it will be relatively straightforward to show that monopoly overcharges resulted. Once again, as the en banc Third Circuit stated in *LePages*, "[o]nce a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit. *This price is invariably higher than the price determined in a competitive market.*" 324 F.3d at 164 (emphasis added).[5]

---

[5] Monsanto suggests without any supporting authority that class certification is less appropriate in monopolization cases than in cases involving other types of antitrust injury. D.I. 118 at 3. Tellingly, Monsanto has not cited anywhere in its brief a case in which a court denied a motion for class certification in a direct purchaser monopolization action such as this one. *In re Agricultural Chemicals Antitrust Litigation*, on which Monsanto heavily relies, in fact contradicts Monsanto's theory. In that price-fixing case, the district court denied class certification because, unlike this case, the plaintiffs had not alleged that the defendants exercised monopoly power. The court observed that common impact on a plaintiff class should "be presumed . . . in the context of an oligopolistic or monopolistic market in which the defendants exhibited pervasive market control sufficient to raise prices throughout the market." 1995 WL 787538, at *12 (N.D. Fla. Oct. 23, 1995) (internal quotation marks and citation omitted). As the Third Circuit has noted, "'[p]redominance is a test readily met in certain cases alleging . . . . violations of the antitrust laws,'" particularly where, as here, "plaintiffs allege purely an economic injury." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

3.   *The Legal Standard Applied in* Blades *Is Not the Governing Standard in The Third Circuit*

In *Blades*, the Eighth Circuit applied the legal rule that the plaintiffs had to show that "common evidence could suffice to make out a *prima facie* case for the class." 400 F.3d at 566. Consistent with Rule 23, however, plaintiffs in this Circuit do not need to show that common evidence can suffice to make out a *prima facie* case. Rather, all plaintiffs need to show is that common evidence predominates over individual evidence. *See Linerboard*, 305 F.3d at 163 (class can be certified even if there are substantial individual issues as to injury or causation); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (certification despite substantial individual issues of causation). This fundamental legal difference also makes reliance on *Blades* inappropriate.

**D.     Monsanto Seeks a Premature and Impermissible "Dueling of Experts"**

Apart from the misplaced reliance on *Blades*, almost all of Monsanto's opposition is based on factual disputes framed by its expert, Dr. Myslinski, concerning the correctness of plaintiffs' antitrust allegations on the merits. The Court should decline Monsanto's invitation to prejudge the merits of this case at the class certification stage.[6]

Because class certification is typically decided early in the case, courts "may not weigh conflicting expert evidence or engage in statistical dueling of experts." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001). Merits proceedings would be particularly inappropriate here, because Monsanto has blocked merits discovery until after class certification proceedings. For instance, the ultimate application of Dr. Kamien's proposed benchmark methodologies will involve measuring Monsanto's gross margins for transgenic corn seed in the United States and Spain. *See* D.I. 104 at 10-12; Second Kamien Decl. ¶ 25. In class discovery,

Monsanto withheld gross-margin information – and yet it unfairly attacks Dr. Kamien on the basis that he "does not know . . . Monsanto's current gross margins." D.I. 118 at 31.

Monsanto's accusation that Dr. Kamien's benchmark methodology "amounts to nothing more than an assumption" (D.I. 118 at 23) is disingenuous and wrong. Dr. Kamien cannot do a merits damage study and prove that there has been classwide injury without merits discovery – and he is not required to. *See Linerboard*, 305 F.3d at 152 ("the Court need not concern itself with whether Plaintiffs *can* prove their allegations regarding common impact") (emphasis added). The purpose of Dr. Kamien's initial declaration and Dr. Lesser's initial declaration was demonstrating the existence of reasonable, formulaic proof. In *In re Mercedes-Benz Antitrust Litig.*, the court pointed out that, for class certification, plaintiffs need only show "that the common evidence they intend to adduce *may* show antitrust impact on a class-wide basis." 213 F.R.D. 180, 191 (D.N.J. 2003) (emphasis in original). "[A]ll that is required" is for the expert to establish "a method by which he or another expert *might be able to derive an analytical model* to determine the existence of class-wide impact." *Id.* (emphasis added); *see also Nichols v. SmithKline Beecham Corp.,* 2003 WL 302352, at *6 (E.D. Pa. Jan. 29, 2003) ("In order to show impact is susceptible to class-wide proof, Plaintiffs are not required to show that the fact of injury actually exists for each class member.") (quotation marks and citations omitted).

The classwide approach that Dr. Kamien proposes here has already been approved by a district court in this Circuit as a basis for certifying a class action, over the same objections that Monsanto raises here. In *Bradburn Parent/Teacher Stores, Inc. v. 3M*, 2004 WL 1842987 (E.D. Pa. Aug. 18, 2004), Dr. Kamien stated that "[i]f 3M's conduct is proven to have restrained competition . . . it is economically reasonable to conclude that this has the effect of raising or maintaining prices for all purchasers in the market above what they would have been otherwise." *Id.* at *12 (quoting Kamien Declaration); *compare* D.I. 118 at 23 (quoting similar statement by Dr. Kamien in this case).

The district court found that "Dr. Kamien's theory is fully supported by the *en banc* decision of the Third Circuit" in *LePage's*. *Bradburn*, 2004 WL 1842987, at *13. The *Bradburn* court thus endorsed the very same conclusion, based on economic principles, that Monsanto would have this court reject as a matter of law.

The *Bradburn* court went on to note that Dr. Kamien had proposed two potential benchmarks, one of which looked at an earlier time period (before the exclusionary conduct) and the other of which focused on a different product in a different market. *Id.* 3M argued that Dr. Kamien had "fail[ed] to take into account the complexities of the market for transparent tape, noting that there are more than 1,000 different tape products in the market definition of transparent tape, and that the prices for each product vary greatly depending upon the customer and the time period." The court rejected 3M's argument and held that "the existence of market complexity does not in itself necessarily mandate the use of individualized proof of impact." *Id.* at *17.[7] 3M's unsuccessful contentions in *Bradburn* were thus almost exactly the same as Monsanto's here. Indeed, 3M even made the same assertion that Dr. Kamien "assumed" impact. The court stated:

> Defendant argues that Dr. Kamien has merely assumed the existence of impact in this case, without any empirical or theoretical basis for this assumption. Dr. Kamien . . . explained that this assumption was based upon the allegations made in Plaintiff's Complaint, which he assumed to be true for purposes of his research. . . . *Dr. Kamien's admission is in no way fatal to class certification, because Plaintiff is not required at this stage of the litigation to establish, as fact, that each class member has suffered economic injury.*

*Id.* at *14 (emphasis added).

The cases Monsanto cites hardly show that the benchmark methodology proposed by Dr. Kamien – which has routinely been accepted in other cases – should be rejected in this instance. In

---

[7] *Accord In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2006 WL 891362, at *13-*14 (D.N.J. Apr. 4, 2006) (granting class certification over defendants' contentions that "the market for bulk extruded graphite is not homogenous, and prices varied widely"); *Indus. Diamonds*, 167 F.R.D. at 383 (partially granting class certification due to existence of standard price lists, even though plaintiffs did "not seriously dispute that defendants market thousands of industrial diamond products and that individually negotiated prices are common").

*Agricultural Chemicals*, the only methodology proposed by plaintiffs' expert was identifying the difference between actual prices and the minimum price that the defendant had set for its distributors, and asserting that the difference must be a monopoly overcharge. 1995 WL 787538 at *6. Furthermore, *Agricultural Chemicals* has been criticized by other courts for allowing an impermissible "battle of the experts" at the class certification stage. *See In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 77 (E.D.N.Y. 2000); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 621 (N.D. Ga. 1997). In *Weisfeld v. Sun Chemical Corp.*, 210 F.R.D. 136 (D.N.J. 2002), *aff'd* 84 F. App'x 257 (3d Cir. 2004) (non-precedential), the plaintiff's expert submitted a three-page declaration as his only report, 84 F. App'x at 261, and determining the existence of injury necessarily required consideration of individual circumstances such as the terms of individual class members' agreements with their employer. *See id.* at 264; 210 F.R.D. at 144.

## II.    PLAINTIFFS' BENCHMARKS ARE REASONABLE AND INVOLVE COMMON, FORMULAIC PROOF

Monsanto argues that plaintiffs' two proposed benchmark markets are inadequate to support class certification ███████████████████████████████████████████

███████████████████████████████████████████ D.I. 118 at 34-35. Courts, however, routinely approve the use of different products as benchmarks. *See, e.g., Bradburn*, 2004 WL 1842987; *Nichols*, 2003 WL 302352; *Deloach v. Philip Morris Cos.*, 206 F.R.D. 551, 566 (M.D.N.C. 2002); *Arden Architectural Specialties, Inc. v. Washington Mills Elec. Minerals Corp.*, 2002 WL 31421915, at *10 (W.D.N.Y. 2002); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 698 (D. Minn. 1995). There need only be some "meaningful economic similarity" between the benchmark market and the market that is at issue in the litigation. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1222 (9th Cir. 1997). ███████████████████████████████████

███████████████████████████████████████████

14



Finally, Monsanto's experts do not nominate any alternative benchmark market that would be superior to the Pioneer or Spanish benchmarks.[8] It thus must be assumed that if class members sued Monsanto individually, they would use the Pioneer and Spanish benchmarks to prove their injury and damages. The proposed benchmarks, including their suitability as proxies for Monsanto's competitive gross margins, present issues that are common to all class members and would have to be inefficiently re-litigated if class members were forced to sue separately.

## III. PLAINTIFFS HAVE PROPOSED SUITABLE CLASS REPRESENTATIVES

### A. Monsanto's Standing Arguments Are Not Relevant

Monsanto argues that two of the named plaintiffs and proposed class representatives, American Seed and Kent Duxbury, should not be allowed to represent the National Direct Purchaser and Minnesota classes, respectively, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Monsanto acknowledges (*id.* at 2 n.7), however, plaintiffs have already moved to amend their complaints to add two new class representatives (Jerry Ellefson and Benjamin Rein), and the addition of these individuals would moot Monsanto's "standing" objection to class certification. In *Cotterall v. Paul*, 755 F.2d 777, 781 (1985), the Eleventh Circuit held that it was reversible error to deny class certification due to inadequate representation without first ruling on whether proposed intervenors would be adequate representatives. Indeed, even when there is no pending motion for intervention, courts of appeals have held that if an otherwise valid class action cannot go forward because the named plaintiff lacks



standing, the court should maintain the case on its docket for a reasonable period of time to allow other class members to intervene for the purpose of carrying on the case. *See, e.g.*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 275 (4th Cir. 2005); *Newby v. Johnston*, 681 F.2d 1012, 1014 (5th Cir. 1982).

If the Court finds it necessary to consider Monsanto's arguments concerning the two plaintiffs' purchases from Monsanto, it should not accept Monsanto's contention that American Seed

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED][9]

Finally, Monsanto's contention that American Seed is not a direct purchaser is puzzling in light of other briefing in this case. On March 22, 2006, plaintiffs filed a motion to amend American Seed's complaint to add Jerry Ellefson as an additional class representative. See D.I. 81. Monsanto opposed the motion, in part on the ground that the addition of Mr. Ellefson as a second class representative "adds nothing to the plaintiff's claim." See D.I. 94 at 4. Monsanto has not challenged

---

[9] 

Mr. Ellefson's standing, despite its opportunities to do so in opposing plaintiffs' motion to amend and in opposing class certification.  Thus, either Monsanto was wrong when it asserted that the motion to amend is unnecessary, or it is wrong now, in asserting that American Seed is not a proper class representative.

Monsanto also argues that Minnesota plaintiff Kent Duxbury lacks standing. ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ In light of plaintiffs' pending motion, Monsanto's argument that Mr. Duxbury lacks standing to represent some of the Minnesota Classes is beside the point.

**B.    American Seed Satisfies the Typicality and Adequacy Requirements of Rule 23(a)**

Monsanto argues that American Seed's claims are not typical of those of the National Direct Purchaser Class ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████████████

████████████████████████████████████████

18



Competing distributors of the same product often are in the same plaintiff class in antitrust class actions. *See, e.g., Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 439 (3d Cir. 1977). What is relevant for purposes of Rule 23(a)(4) is whether a conflict exists *"between the individual's claims* and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988) (emphasis added). Because American Seed's claims are identical to those of the other members of the class, American Seed satisfies the rule's adequacy requirement. In any event, plaintiffs' pending motion to add Mr. Ellefson as an additional class representative would correct any typicality or adequacy problem concerning American Seed, if one existed.

**CONCLUSION**

For the reasons set forth above and in plaintiffs' opening brief, plaintiffs respectfully request that the Court certify the proposed classes pursuant to Fed. R. Civ. P. 23(b)(3).

SMITH, KATZENSTEIN & FURLOW LLP

  /s/ Robert K. Beste
Joelle E. Polesky (ID No. 3694)
Robert K. Beste, III (ID No. 3931)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
E-mail: jpolesky@skfdelaware.com
Attorneys for Plaintiffs

OF COUNSEL
(for all plaintiffs and proposed classes):

OF COUNSEL
(for Darrell Souhrada, Dave Johnson,
Kent Duxbury, Proposed Intervenor Plaintiff Benjamin
Rein, and the proposed Iowa and Minnesota Classes):

KELLOGG, HUBER, HANSEN,
TODD, EVANS & FIGEL P.L.L.C.
Steven F. Benz
Austin C. Schlick
Michael J. Fischer
Michael S. Zuckman
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

BIRD, JACOBSEN & STEVENS
Charles Bird
Jeremy R. Stevens
300 Third Avenue SE
305 Ironwood Square
Rochester, MN 55904
Telephone: (507) 282-1503
Facsimile: (507) 282-7736

BERRY & LEFTWICH
R. Stephen Berry
J. Daniel Leftwich
Gregory Baruch
1717 Pennsylvania Ave., N.W., Suite 450
Washington, D.C. 20006
Telephone: (202) 296-3020
Facsimile: (202) 296-3038

Dated:  August 14, 2006

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN SEED CO. INC., | ) | |
| | ) | |
|     Plaintiff, On Behalf of Itself | ) | |
|     and Others Similarly | ) | |
|     Situated, | ) | |
| | ) | |
|     v. | ) | C.A. No. 05-535-SLR |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Monsanto Controlled Subsidiaries: | ) | |
| | ) | |
| AMERICAN SEEDS INC., | ) | |
| CORN STATES HYBRID, | ) | |
|    SERVICE INC. | ) | |
| ASGROW SEED CO., INC., | ) | |
| HOLDEN FOUNDATION SEEDS, INC., | ) | |
| DEKALB SEEDS, | ) | |
| CALGENE, L.L.C., | ) | |
| CHANNEL BIO CO., | ) | |
| NC+ HYBRIDS, | ) | |
| SEMINIS INC., | ) | |
| | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| DARRELL SOUHRADA, and | ) | |
| DAVE JOHNSON, | ) | |
| | ) | |
|     Plaintiffs, On Behalf of Themselves | ) | |
|     and Iowa Citizens Similarly | ) | |
|     Situated, | ) | |
| | ) | |
|     v. | ) | C.A. No. 05-535-SLR |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | |

10016596.WPD

KENT DUXBURY                                )
                                            )
    Plaintiff, On Behalf of Himself   )
    and Minnesota Citizens            )
    Similarly Situated,               )
                                            )
    v.                                )    C.A. No. 05-535-SLR
                                            )
MONSANTO COMPANY,                           )
                                            )
    Defendant.                        )

---

## CERTIFICATE OF SERVICE

    I certify that this 14th day of August, 2006, copies of the foregoing Plaintiffs' Reply Brief In Support Of Motion For Class Certification, Second Declaration of Dr. William H. Lesser in Support of Class Certification, Second Declaration of Morton I. Kamien Regarding Class Certification, and Appendix To Plaintiffs' Reply Brief In Support Of Motion For Class Certification were caused to be served on the following by efiling:

        Richard L. Horwitz
        Potter Anderson & Corroon LLP
        Hercules Plaza 6th Floor
        1313 N. Market Street
        Wilmington, DE 19801

                       */s/ Robert K. Beste*
                      Robert K. Beste (I.D. No. 3931)