Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-305-SLR |
| | ) | |
| SYNGENTA SEEDS, INC., | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | | (Consolidated) |
| SYNGENTA SEEDS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-908-SLR |
| | ) | |
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MONSANTO'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO SYNGENTA SEEDS, INC. ON ITS ANTITRUST CLAIMS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.1, defendants Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), hereby request that plaintiff Syngenta Seeds, Inc. ("Syngenta") produce for inspection and copying the documents and things identified below within thirty (30) days, at the offices of Howrey LLP, 1299 Pennsylvania Avenue, N.W., Washington, D.C. 20004, or at such other place as may be mutually agreed upon.

## DEFINITIONS

The following definitions apply to this request:

A.      "**You**," "**your**," and "**Syngenta**" means Syngenta Seeds, Inc., its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, including, but not limited to, Syngenta AG, Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta USA. Inc., Advanta Seeds, CHS Research, Inc. and GreenLeaf Genetics.

B.      "**Syngenta AG**" shall mean and refer to the Swiss publicly-traded company Syngenta AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, including, but not limited to, Syngenta Seeds, Inc., Syngetna Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta USA. Inc., Advanta Seeds, Inc., CHS Research, Inc., Novartis, AstraZeneca and GreenLeaf Genetics.

C.      "**Golden Harvest**" shall mean and refer to Golden Harvest Seeds, Inc., its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including, but not limited to, Golden Seed Company, Garwood Seed Company, J.C. Robinson Seeds, Inc., Sommer Bros. Seeds Company, and Thorp Seed Company.

D.      "**Garst**" shall mean and refer to Garst Seed Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including, but not limited to, AgriPro Seeds, Inc., PSA Genetics, LLC, and Fred Gutwein & Sons, Inc.

- 2 -

E.    "**Monsanto**" means Monsanto Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including, but not limited to, Monsanto Technology, LLC.

F.    "**Amended Complaint**" refers to the Amended Complaint filed by Syngenta Seeds, Inc., on September 14, 2004 and docketed at Civ. No. 04-908-SLR, in the United States District Court for the District of Delaware.

G.    "**Inbred seed**" shall mean and refer to seed created by self-pollination of a homozygous or nearly homozygous parent plant or from the mating of genetically similar homozygous or nearly homozygous parent plants, such as seed created by the self-pollination of an inbred parent plant or seed created by backcrossing with a recurrent parent plant following a cross between a recurrent parent plant and a non-recurrent parent plant.

H.    "**Hybrid seed**" shall mean and refer to seed created by crossing genetically dissimilar parent plants, such as seed created by the crossing of genetically dissimilar inbred parent plants.

I.    "**Foundation corn seed**" shall mean and refer to any inbred seed or other parent seed stock used in the production of commercial hybrid seed corn.

J.    "**Transgenic corn technology**" shall mean and refer to technology or research related to artificially introducing genetic material into corn seed, plants, cells, or genetic material and also shall mean and refer to technology or research for propagating and characterizing such corn seed, plants, cells, or genetic material containing such artificially introduced genetic material.

K.    "**Document**" has the same meaning as in Fed. R. Civ. P. 34 and includes documents in the possession, custody or control of both Syngenta Seeds, Inc., including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

- 3 -

L.    **"Communication" or "Statement."** The term "communication" or "statement" means the written, electronic or oral transmittal of information (in the form of facts, ideas, inquiries or otherwise).

M.    **"Identify" (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with the subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

N.    **"Identify" (with respect to documents).** When referring to documents, "to identify" means to provide the : (i) type of documents; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(es) and recipient(s).

O.    **"Identify" (with respect to a communication or statement).** When referring to a communication or statement, "to identify" means to provide: (i) the person(s) making the communication; (ii) the person(s) to whom the communication was made; (iii) whether the communication is written, electronic or oral; (iv) the person(s) present during the communication; (v) the date of the communication; and (vi) the location of the communication.

P.    **"Concerning."** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

Q.    **"Person" or "persons"** refers to all individuals and entities, including all natural persons, corporations, partnerships, ventures or other business associations, societies, associations-in-fact, all federal, foreign, state, local or other governmental entities, and all legal entities including all members, officers employees, agents, representatives, attorneys, successors, predecessors, assigns, divisions, affiliates and subsidiaries.

R.    **"Relating to" or "related to"** shall mean constituting, defining, describing, discussing, involving, concerning, containing, embodying, reflecting, identifying, stating,

- 4 -

analyzing, mentioning, responding to, referring to, dealing with, commenting upon, prepared in connection with, used in preparation for, appended to, pertaining to, having any relationship to or in any way being factually, legally or logically connected to, in whole or in part, the stated subject matter.

S.      **"Referring to"** means constituting, comprising, concerning, regarding, containing, setting forth, showing, disclosing, describing, explaining, summarizing, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

## INSTRUCTIONS

A.      If you withhold under a claim of privilege (including attorney work-product) any information covered by this discovery request, furnish a list specifying:  (a) the nature of the privilege claimed, (b) the authors of the document, (c) all persons who received copies of the document, (d) the date of the documents, and (e) the general subject matter of the documents sufficient to enable other parties to assess the applicability of the privilege.

B.      For any draft, copy or reproduction of any document responsive to any of the following requests that contains or has been revised to include any postscript, notation, change, amendment or addendum, not appearing in the document itself as originally written, typed or otherwise prepared, produce each such draft, copy or reproduction.

C.      All documents requested shall be produced in the same file or other organizational environment in which they are maintained by you, *viz*, if the document is part of a file or other grouping, it should be physically produced, together with all of the documents from said file or group in response to the request in the same order or manner of arrangement as the original.

D.      All documents that respond, in whole or in part, to any part of any request herein, should be produced in their entirety, in unredacted form, including all attachments

- 5 -

and enclosures, as they are kept in the ordinary course of business. If any information specified in any request appears on any page of any document, all pages of the document should be produced in response to the request. To the extent you redact any document covered by this discovery request, furnish a list specifying: (a) the document and pages redacted; (b) the nature of the material redacted; and (c) the basis of the redaction.

E.      If any document requested was at one time in existence and in your possession, control or custody, but has been lost, discarded, destroyed or otherwise removed from your possession, custody or control, provide with respect to each document a description of the document and the date it was lost, discarded, destroyed, or removed.

F.      Documents in any language other than English should be translated into English and submitted together with the translation.

## RELEVANT TIME PERIOD

Unless otherwise stated in the context of a specific request, for all documents and things requested the time period is January 1, 1996 to the present, and shall include all documents which relate, in whole or in part, to the relevant time period, or to events or circumstances during such time period, even though dated, generated, prepared, or received prior or subsequent to that period.

## DOCUMENTS AND THINGS TO BE PRODUCED

1.      Documents sufficient to show the ownership structure and reporting relationship between and among you and your owners, shareholders, parents, subsidiaries, or affiliates, including, but not limited to: (a) Syngenta AG; (b) Syngenta Biotechnology, Inc.; (c) Golden Harvest; (d) Garst; (e) Advanta B.V.; (f) Advanta USA. Inc.; (g) Advanta Seeds, Inc.; (h) CHS Research, Inc.; and (i) GreenLeaf Genetics.

2.      All organizational charts or any other diagrams that show reporting relationships and responsibility levels of any current or former directors, officers and

employees having any duty or responsibility for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of your corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds, transgenic corn technology and/or herbicides used in conjunction with any transgenic or conventional corn seeds for each of the following entities: (a) Syngenta; (b) Syngenta AG; (c) Syngenta Biotechnology, Inc.; (d) Golden Harvest; (e) Garst; (f) Advanta B.V.; (g) Advanta USA. Inc.; (h) Advanta Seeds, Inc.; (i) CHS Research, Inc.; and (j) GreenLeaf Genetics.

3.    All documents that reflect the involvement of any Syngenta AG officer, director, or managerial employee in the management or operations of Syngenta, including membership on, or participation in, any board of directors, executive committee or management committee of Syngenta.

4.    Documents reflecting or relating to any communication, instruction, direction, policy or procedure from Syngenta AG to Syngenta regarding the development, production, purchase, sale, licensing, marketing and/or commercialization of your corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or transgenic corn technology in the United States.

5.    Documents sufficient to show the use by Syngenta of trademarks, patents or other intellectual property owned or utilized by Syngenta AG or any of its subsidiaries or affiliates.

6.    All documents that reflect the use or presentation of a common advertising, marketing or sales image or identity by Syngenta AG and Syngenta.

7.    Documents sufficient to identify all persons with responsibility for the development, production, purchase, sale, licensing, marketing and/or commercialization of your corn traits, hybrid corn seeds, inbred corn seeds/foundations corn seeds or transgenic corn technology in the United States that have been transferred between Syngenta AG and Syngenta.

8.     All documents that reflect any business activities of Syngenta AG in the United States, including, but not limited to, any assets owned or operated in the United States.

9.     Documents sufficient to show all visits by any officer, director, employee or agent of Syngenta AG to the United States in connection with the development, production, purchase, sale, licensing, marketing and/or commercialization of your corn traits, hybrid corn seeds, inbred corn seeds/foundations corn seeds, transgenic corn technology and/or herbicides used in conjunction with any transgenic or conventional corn seeds in the United States, including the purpose of each trip, and each location visited during each such trip.

10.    All documents that analyze or compare any Syngenta corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or transgenic corn technology with any Monsanto corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or transgenic corn technology

11.    All documents that constitute, refer or relate to any communications by you with Monsanto.

12.    All documents that constitute, refer or relate to any communications by you with distributors, dealers, retailers or growers concerning Monsanto or any corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or transgenic corn technology sold or licensed by Monsanto.

13.    All documents that constitute, refer or relate to any communications between Syngenta and any of the following entities regarding Monsanto or any corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or transgenic corn technology sold or licensed by Monsanto:  (a) Syngenta AG; (b) Syngenta Biotechnology, Inc.; (c) Golden Harvest; (d) Garst; (e) Advanta B.V.; (f) Advanta USA. Inc.; (g) Advanta Seeds, Inc.; (h) CHS Research, Inc.; and (i) GreenLeaf Genetics.

14.    All documents that constitute, refer or relate to any agreement between or among Monsanto and any of the following entities: (a) Syngenta AG; (b) Syngenta

- 8 -

Biotechnology, Inc.; (c) Golden Harvest; (d) Garst; (e) Advanta B.V.; (f) Advanta USA. Inc.;
(g) Advanta Seeds, Inc.; and (h) CHS Research, Inc. regarding corn traits, hybrid corn seeds,
inbred corn seeds/foundation corn seeds, transgenic corn technology or herbicides used in
conjunction with any transgenic or conventional corn seeds, including, but not limited to, any
Parent Corn Seed Agreement, Line Conversion Amendment, Breeding Agreement,
Trademark License Agreement, Seed Service Agreement, Licensee Incentive Agreement
and/or Technology Agreement.

15.     All documents that refer or relate to Syngenta's plans or strategies for
competing with Monsanto with respect to any corn trait, hybrid corn seed, inbred corn
seed/foundation corn seed, and/or transgenic corn technology.

16.     Documents which identify each entity from which you have purchased or
licensed any corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds or
transgenic corn technology, and for each such entity:

> a.    A copy of all applicable agreements under which such corn traits,
> hybrid corn seeds, inbred corn seeds/foundation corn seeds or
> transgenic corn technology are/were purchased or licensed;

> b.    Documents sufficient to show your total annual dollar and volume of
> purchases by corn traits, hybrid corn seeds, inbred corn
> seeds/foundation corn seeds or transgenic corn technology for each
> year, including any rebates or discounts received; and

> c.    Documents sufficient to show your total annual dollar royalties paid by
> corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds
> or transgenic corn technology for each year.

17.     All documents concerning any license agreement to which you are a party that
relates to or concerns your development, production, purchase, sale, licensing, marketing
and/or commercialization of corn traits, hybrid corn seeds, inbred corn seeds/foundation corn
seeds or transgenic corn technology.

- 9 -

18. Documents which identify each customer to whom you sell or license any corn trait, hybrid corn seed, inbred corn seed/foundation corn seed, or transgenic corn technology, and for each such entity:

    a. A copy of any applicable agreements relating to the sale or license;

    b. Documents sufficient to show total annual dollar and volume of sales by corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds and/or transgenic corn technology for each year, including any allowances, rebates or discounts received; and

    c. Documents sufficient to show total annual dollar royalties received by corn traits, hybrid corn seeds, inbred corn seeds/foundation corn seeds and/or transgenic corn technology for each year.

19. All forecasts, projections or estimates for the purchase, sale or licensing in the United States of your corn traits, hybrid seed, inbred corn seed/foundation seeds or transgenic corn technology.

20. All price lists or documents reflecting royalty rates or license fees (including discounts and promotions) charged for your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and (e) herbicides used in conjunction with any transgenic or conventional corn seeds to:

    i. seed companies;

    ii. wholesalers, dealers and/or brokers;

    iii. retailers that purchase from you or wholesalers, dealers or brokers; and

    iv. growers that purchase from you or wholesalers, dealers or brokers.

21. Documents that reflect or show the manner in which you determine the prices, royalty rates or license fees (including documents that relate to any markups, formulas, standard margins, discounts or promotions) you charge for your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

22.    A copy of each catalog, brochure, product or service list, or other promotional or marketing material concerning your development, production, purchase, sale, licensing, marketing and/or commercialization of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

23.    All documents that refer to, analyze or discuss the quality, superiority or inferiority of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; and/or (d) transgenic corn technology.

24.    Documents sufficient to show the adoption rate for each of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; and/or (d) transgenic corn technology, broken down by:

    i.    United States;

    ii.    state;

    iii.    county; and

    iv.    any other geographic area in the United States you monitor.

25.    Documents sufficient to show any actual or contemplated marketing or promotional program offered by you to any seed company, dealer, broker, distributor, retailer or grower regarding the development, production, purchase, sale, licensing, marketing and/or commercialization of your: (a) corn traits; (b) hybrid corn seeds;(c) inbred corn seeds/foundation corn seeds; and/or (d) transgenic corn technology, including, but not limited to:

    i.    the objective of the program;

    ii.    duration of the program;

    iii.    geographic area in which the program was implemented;

    iv.    terms and conditions of the program;

    v.    products involved; and

    vi.    participants of the program.

26.    Each document, video, DVD or other materials distributed to or provided by you to any crop consultant, seed company, dealer, broker, distributor, retailer or grower regarding the development, production, purchase, sale, licensing, marketing and/or commercialization of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

27.    All business plans, operating plans, strategic plans, marketing plans, market analyses, marketing studies, competitive analyses, financial plans, development plans or any other types of plans prepared by or for you relating to the development, production, purchase, sale, licensing, marketing and/or commercialization of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; and/or (d) transgenic corn technology.

28.    Documents sufficient to show your market share (including, but not limited to, market share calculations, back-up materials, market share data, sales trend information, and third-party source materials (*e.g.*, Doane, Network Context)) broken down separately by: (a) the United States; (b) state; (c) county; and (d) any other geographic area in the United States tracked or monitored by you the following products or segments:

    i.    Glyphosate–tolerant corn traits;

    ii.    European corn borer-resistant corn traits;

    iii.    Foundation corn seeds;

    iv.    Conventional corn seed;

    v.    Transgenic corn seeds;

    vi.    Total corn seeds (*i.e.*, including traits, hybrid corn seed, inbred corn seeds/ foundation seeds or other transgenic corn technology);

    vii.    Herbicides used in conjunction with any transgenic or conventional corn seeds.

29.    All documents that refer or relate to competition for the development, production, purchase, sale, licensing, marketing and/or commercialization of corn traits, hybrid corn seed, inbred corn seed/foundation seeds or transgenic corn technology.

30.    For each of your competitors in the development, production, purchase, sale, licensing, marketing and/or commercialization of corn traits, hybrid corn seed, inbred corn seeds/foundation seeds or transgenic corn technology, documents sufficient to show:

    a.    The products sold or licensed by that competitor;

    b.    The geographic area(s) in the United States in which your competitor sells its products;

    c.    The competitor's market share (broken down separately by the United States, state, county and any other geographic region in the United States tracked or monitored by you for: (i) glyphosate–tolerant corn traits; (ii) European corn borer-resistant corn traits; (iii) foundation corn seeds; (iv) conventional corn seeds; (v) transgenic corn seeds; and (vi) total corn seeds (*i.e.*, including traits, hybrid corn seeds, inbred corn seeds/foundation seeds or other transgenic corn).

    d.    The competitor's monthly and annual sales volumes (in units and dollars) by (i) glyphosate–tolerant corn traits; (ii) European corn borer-resistant corn traits; (iii) foundation corn seeds; (iv) conventional corn seeds; (v) transgenic corn seeds; and (vi) total corn seeds (i.e., including traits, hybrid corn seeds, inbred corn seeds/foundation seeds or other transgenic corn).

    e.    The price, royalty rates or license fees charged by the competitor for (i) glyphosate –tolerant corn traits; (ii) European corn borer-resistant corn traits; (iii) foundation corn seeds; (iv) conventional corn seeds; (v) transgenic corn seeds; and (vi) total corn seeds (*i.e.*, including traits, hybrid corn seeds, inbred corn seeds/foundation seeds or other transgenic corn).

31.    All documents that refer or relate to market share for any corn trait, hybrid corn seed, inbred corn seed/foundation corn seed, and/or transgenic corn technology product, segment, or market monitored or tracked by you, any competitor, trade association, consultant or other third party.

32.    All documents that refer to, relate to, support or refute the allegations contained in paragraphs 1-11 and 24-136 of the Amended Complaint.

33.    To the extent not produced in response to another request herein, all documents that refer or relate to the alleged relevant product markets identified in paragraphs 137-160 of the Amended Complaint, including, but not limited to, your alleged relevant product markets for glyphosate-tolerant corn traits, European corn borer-resistant corn traits, and foundation corn seeds.

34.    To the extent not produced in response to another request herein, all documents that refer or relate to the alleged relevant geographic markets identified in paragraph 137-160 of the Amended Complaint, including, but not limited to, your alleged relevant geographic markets for glyphosate-tolerant corn traits, European corn borer-resistant corn traits, and foundation corn seeds.

35.    All documents that refer or relate to the factors that seed companies, dealers, brokers, distributors, retailers and/or growers consider in determining whether to purchase or license any of your corn traits, hybrid corn seed, inbred corn seed/foundation seeds or transgenic corn technology.

36.    All documents that refer or relate to competition between transgenic corn seeds (used with or without associated herbicides) and the use of conventional corn seeds (used with or without associated herbicides) or the substitutability of one such type for another.

37.    All documents that reflect adoption rates for transgenic corn seeds.

38.    All documents that refer or relate to the advantages, disadvantages, pros and/or cons of using transgenic corn seeds (with or without associated herbicides) and the use of conventional corn seeds (with or without associated herbicides).

39.    All documents that refer or relate to the agronomic factors that seed companies, dealers, brokers, distributors, retailers or growers consider in deciding to sell, purchase or license: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation

- 14 -

corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

40.    All documents that refer or relate to the marketing or sales strategies you use to attempt to influence a company's, distributor's, dealer's, retailer's, or grower's decision-making process to purchase, sell or license: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

41.    A copy of any advertisement, advertising copy, commercial, marketing literature, sales literature, promotional literature, sales guide, buying guide or other promotional or marketing materials used in the sale, purchase or license of your: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; (d) transgenic corn technology; and/or (e) herbicides used in conjunction with any transgenic or conventional corn seeds.

42.    To the extent not produced in response to another request herein, all documents that refer or relate to any intellectual property rights you allegedly purchased, acquired, licensed or otherwise obtained from Bayer relating to GA21 or any transgenic corn trait/seeds, including all communications, memoranda, analyses, license agreements, contracts, press releases, e-mails, financial statements, projections, notes, agreements, correspondence, and reports.

43.    To the extent not produced in response to another request herein, all documents that refer or relate to the development, production, purchase, sale, licensing, marketing and/or commercialization of a GA21 event or any product containing the GA21 event, including plans, agreements, invoices, correspondence, press releases and communications.

44.    To the extent not produced in response to another request herein, all documents that refer or relate to the transfer, sale, or license of the GA21 event or any

- 15 -

product containing the GA21 event to or from any affiliate, including, but not limited to, Golden Harvest.

45.    All documents that refer or relate to your sale or license or the intent to sell or license any stacked trait product that includes the GA21 event, including, but not limited to, projections, plans, analyses or studies.

46.    Documents sufficient to identify any trade name or trademarks used by you in the sale or licensing of any corn traits, hybrid corn seed, inbred corn seed/foundation seeds or transgenic corn technology, the owner of that trade name or trademark and any agreement between or among you and that owner regarding the use or licensing of that trade name or trademark, including, but not limited to, Agrisure or Agrisure Advantage.

47.    All documents submitted to any state, federal, or foreign other government agencies regarding the approval to sell or market any product containing a GA21 event.

48.    All documents that refer or relate to the Liberty Link marker contained in your Bt11 product.

49.    All documents that refer or relate to any permission or prohibition by you or any other competitor regarding the stacking of transgenic corn traits.

50.    All documents that refer or relate to any actual or contemplated request by anyone to Monsanto regarding the stacking of any of Monsanto transgenic corn traits.

51.    All documents that refer or relate to any effort, interest, discussion or negotiations regarding your licensing Monsanto's Roundup Ready® corn trait.

52.    All documents that refer or relate to any actual or contemplated effort by you to develop your own herbicide-resistant corn trait or corn seed.

53.    All surveys, polls, focus groups or other market research conducted by you or on your behalf regarding development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of: (a) corn traits; (b) hybrid corn seeds; (c) inbred corn seeds/foundation corn seeds; and/or (d) transgenic corn technology.

54.    Documents sufficient to show the actual or anticipated business activities of GreenLeaf Genetics, including, but not limited to, any business plans, operating plans, strategic plans, marketing plans, financial plans, development plans, budgets or actual or *pro forma* financial statements.

55.    Documents sufficient to show the actual or anticipated business activities of U.S. Agriseeds, including, but not limited to, any business plans, operating plans, strategic plans, marketing plans, financial plans, development plans, budgets or actual or *pro forma* financial statements.

56.    Documents sufficient to show each foundation seed line(s) Syngenta did/does have for each year in the Relevant Time Period.

57.    Documents sufficient to show each foundation seed variety Syngenta offered and/or sold to third parties for each year in the Relevant Time Period.

58.    Documents sufficient to show whether Syngenta is a supplier of foundation seed and, if so, all document that refer or relate to any products it has been foreclosed from selling to foundation seed companies or any other customers.

59.    Documents sufficient to show whether Syngenta is a customer of foundation seed companies and, if so, all documents that refer to or relate to what injury has it suffered as a customer.

60.    All documents that refer or relate to any barriers to entry to Syngenta or any other person to the alleged market for foundation seed.

61.    All documents concerning your development, sale and license of any actual or purported Bt11 corn seed containing Bt10.

62.    All documents concerning any Environmental Protection Agency, Food and Drug Administration or any other agency's investigation or inquiry concerning your sale and license of any actual or purported Bt11 corn containing Bt10.

63.    All documents that refer to, relate to, support or refute the allegations of any antitrust injury or anticompetitive effect in paragraphs 162-171 of the Amended Complaint.

- 17 -

64.    All documents that refer or relate to your assertion that you have suffered damages, including, but not limited to, nominal, actual, exemplary and special damages, as a result of Monsanto's alleged conduct, including, but not limited to, the basis or method by which you calculated or computed the amount of damages allegedly suffered by Syngenta.

65.    Documents sufficient to show the projected or anticipated future performance of your corn traits, hybrid seed, inbred corn seed/foundation seeds, or transgenic corn technology business, including, but not limited to, financial projections, budgets, *pro forma* operating statements, marketing plans, and the like.

66.    Document sufficient to show your financial performance as it relates to your corn traits, hybrid seed, inbred corn seed/foundation seeds, or transgenic corn technology business, including, but not limited to, actual or projected financial statements, profit and loss statements, balance sheets, general ledgers, budgets, and operating statements.

67.    All documents concerning any lawsuit to which you were or are a party that relate to the allegations of the Amended Complaint.

68.    All communications, investigative demands, subpoenas and requests for documents you have received from any federal, state, or foreign governmental entity or investigatory body concerning the development, production, purchase, sale, licensing, marketing and/or commercialization of corn traits, hybrid seed, inbred corn seed/foundation seeds, or transgenic corn technology.

69.    All communications between you and the U.S. Department of Justice or any state attorney general office that refer or relate to Monsanto, including any submissions or productions by you.

70.    All documents received from or produced to the Department of Justice and/or Federal Trade Commission regarding your acquisition of: (a) Golden Harvest; (b) Garst; (c) Advanta B.V.; (d) Advanta USA, Inc.; (e) Advanta Seeds, Inc.; and/or (f) CHS Research, Inc.

71.    All studies, analyses, reports, presentations or other due diligence regarding your or Syngenta AG's actual or contemplated acquisition of any other company engaged in

- 18 -

the development, production, purchase, sale, licensing, marketing and/or commercialization of corn traits, hybrid seed, inbred corn seed/foundation seeds, or transgenic corn technology, including, but not limited to, the following acquisitions: (a) Golden Harvest; (b) Garst; (c) Advanta B.V.; (d) Advanta USA, Inc.; (e) Advanta Seeds, Inc.; and/or (f) CHS Research, Inc.

72.    All documents which evidence, refer or relate to any council, panel or committee of farmers or other advisors who advise or consult with Syngenta regarding its corn traits, hybrid seed, inbred corn seed/foundation corn seeds, transgenic corn technology and/or herbicides used in conjunction with any transgenic or conventional corn seeds.

73.    A copy of each public filing made by you or your affiliates with any exchange or government entity regulating publicly traded securities.

74.    All statements in whatever form taken or obtained from any potential witness concerning the facts and allegations of the Amended Complaint.

75.    Documents sufficient to show your Record Retention/Destruction Policies and Procedures.

76.    All documents identified in, requested to be identified in, referred to or relied upon in your answers to Monsanto's First Set of Interrogatories to Syngenta.

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

John F. Lynch
Susan K. Knoll
HOWREY LLP
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Of Counsel

Dated: May 13, 2005

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served by regular United States mail, postage prepaid, this 13 day of May, 2005, upon each of the parties listed below:

John W. Shaw
Karen E. Keller
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Plaintiff Syngenta*

Richard F. Schwed
Thomas A. McGrath III
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Of Counsel for Plaintiff Syngenta*

John J. Rosenthal