IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN SEED CO. INC., and<br>JERRY ELLEFSON,<br><br>    Plaintiffs, On Behalf of Themselves<br>    and Others Similarly Situated,<br><br>v.<br><br>MONSANTO COMPANY, et al<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-535-SLR<br><br>**JURY TRIAL DEMAND**<br><br>**Dated: November 10, 2006** |
| DARREL SOUHRADA, and<br>DAVE JOHNSON,<br><br>    Plaintiffs, On Behalf of Themselves<br>    and Others Similarly Situated,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-535-SLR |
| KENT DUXBURY and<br>BENJAMIN REIN,<br><br>    Plaintiffs on Behalf of Themselves<br>    and Minnesota Citizens Similarly<br>    Situated,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-535-SLR |

**MEMORANDUM OF GREENLEAF GENETICS LLC IN OPPOSITION TO
MONSANTO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND DEPOSITION TESTIMONY RESPONSIVE TO MONSANTO'S SUBPOENA AND
CROSS-MOTION TO QUASH MONSANTO'S SUBPOENA**

1

GreenLeaf Genetics LLC ("GreenLeaf") respectfully requests that this Court deny Monsanto Company's ("Monsanto") motion to compel production of documents and a 30(b)(6) deposition by GreenLeaf (the "Motion"), and grant GreenLeaf's motion to quash Monsanto's subpoena.

Monsanto's Motion should be denied because: (1) the subpoena was issued after the expiration of the time allowed by this Court for document discovery; (2) the subpoena requests information that has been obtained or Monsanto has attempted to obtain (and the Court refused) from Syngenta in a related case to which discovery has been coordinated with this case; and (3) the subpoena seeks highly confidential business plans, financial projections, confidential trade secrets and competitive information which would cause irreparable harm to GreenLeaf if disclosed to its soon-to-be competitor Monsanto.

## FACTUAL BACKGROUND

On July 26, 2005, plaintiffs in the above captioned action filed suit against Monsanto alleging that Monsanto engaged in monopolistic practices from July 26, 2001 to the present. On December 6, 2005, the Court entered a Scheduling Order that: (1) ordered that discovery in this case shall be coordinated with a related antitrust action filed by Syngenta Seeds, Inc. ("Syngenta") against Monsanto pending in this Court, *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, Civil Action No. 04-305 (D. Del.); and (2) ordered that "document discovery shall be completed on or before September 1, 2006." *See* Court Order, attached as Exhibit 1. GreenLeaf is unaware of any modification to the Scheduling Order.

Monsanto served a subpoena for documents and testimony on GreenLeaf on September 21, 2006. *See* Monsanto Subpoena dated September 21, 2006 attached as Ex. 2. Monsanto's subpoena seeks documents and testimony relating to GreenLeaf for the time period January 2004

2

to the present. GreenLeaf timely objected to the subpoena pursuant to Fed. R. Civ. P. 45 on several grounds, including that the subpoena is untimely since the document discovery deadline has passed. *See* Objection to Subpoena, attached as Ex. 3. In response to GreenLeaf's objection, Monsanto filed the Motion.

GreenLeaf is not a party to this litigation. GreenLeaf was formed in April 10, 2006 through a joint venture between Syngenta and Pioneer. *See* Syngenta Press Release dated April 10, 2006, "DuPont and Syngenta Form Joint Venture to Facilitate the Out-licensing of Seed Genetics and Biotech Traits," http://www.syngenta.com/en/media/press/2006/04-10.htm; *see also* LLC Certificate, attached as Ex. 4. Before April 10, 2006 a different legal entity existed – GreenLeaf Genetics, which was a division of Syngenta. GreenLeaf Genetics (as a division of Syngenta) was formed in 2004 and began offering to license biotechnology traits and foundation corn seed to independent seed companies in late 2004. Since its inception, GreenLeaf Genetics (as a division of Syngenta) was unable to successfully compete in the markets for corn traits because of Monsanto's anticompetitive conduct. In July 2004, Syngenta filed an antitrust case against Monsanto alleging, among other things, that Monsanto has unlawfully impacted its ability to compete in the licensing of certain corn traits. *See Syngenta Seeds, Inc. v. Monsanto*, Civil Action No. 04-305 (SLR). More specifically, Syngenta alleges that Monsanto has unlawfully maintained its monopoly position in corn traits through unlawful licensing practices, threatening seed companies not to do business with Syngenta, and filing baseless patent litigation. The division at Syngenta that has been foreclosed from the market by Monsanto's conduct is GreenLeaf Genetics.

In the Syngenta antitrust case, GreenLeaf Genetics (as a division of Syngenta) produced to Monsanto hundreds of thousands of pages of documents relating to GreenLeaf Genetics'

3

efforts to compete in the licensing of corn traits, including documents relating to its pricing, incentives, licensees, agreements, and financial and business plans. *See* Monsanto's First Request for Production, attached as Ex. 5. Monsanto also took the deposition of the then Head of GreenLeaf Genetics, Mr. Ron Wulfkuhle, in the Syngenta antitrust case. Those documents and the transcript are available to the parties in this case as well.

In April 2006, when Syngenta and Pioneer announced the formation of the new legal entity, GreenLeaf LLC, Monsanto immediately requested that Syngenta supplement its document production with documents concerning the newly formed GreenLeaf LLC and that Monsanto be allowed to re-depose Mr. Ron Wulfkuhle (the Chief Executive Officer of GreenLeaf LLC). *See* April 12, 2006 letter attached as Ex. 6. The Court denied Monsanto's request to re-depose Mr. Ron Wulfkuhle and denied Monsanto's broad request for documents. Instead, the Court ordered Syngenta to produce the agreements relating to the formation of GreenLeaf LLC and any and all business plans or presentations relating to GreenLeaf LLC. *See* May 1, 2006 Order attached as Ex. 7. Syngenta produced those documents in May 2006.

The new legal entity of GreenLeaf LLC will not commence its actual business operations until January 2007, at which time GreenLeaf will offer corn and soybean breeding material and also facilitate the licensing of seed genetics and biotechnology traits, an area in which Monsanto has been the dominant player.

**ARGUMENT**

**I.    MONSANTO'S SUBPOENA WAS UNTIMELY AND THUS MONSANTO SHOULD BE BARRED FROM SEEKING ANY DISCOVERY FROM GREENLEAF**

While Monsanto claims that the September 1, 2006 cut off date for discovery is not applicable, it fails to provide any legal authority supporting that position. In fact, precedent

4

indicates Monsanto's claim is without foundation. In *Dag Enterprises, Inc. v. Exxon Mobil Corporation*, the plaintiff served a *subpoena duces tecum* on a non-party after the deadline for discovery. 226 F.R.D. 95 (D. D.C. 2005). Notably, the non-party, ConocoPhillips, objected to the subpoena on the basis that it was served after the discovery deadline. As in the present case, the party that issued the subpoena argued that the discovery deadline did not apply to non-party discovery. However, the Court concluded that a subpoena issued pursuant to Rule 45 to "a third-party is not exempt from discovery deadlines in scheduling orders." *Id.* at 104. Furthermore, "Rule 45 subpoenas are 'discovery' under Rules 16 and 26 of the Federal Rules of Civil Procedure, and are subject to the same deadlines as other forms of discovery." *Id. See also Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001) ("Most courts hold that a subpoena seeking documents from a third-party under Rule 45(a)(1)(c) is a discovery device and therefore subject to a scheduling order's general discovery deadlines").[1] "[H]ad the drafters of the Federal Rules of Civil Procedure intended to exclude Rule 45 Subpoenas from the generally applicable restrictions on discovery, ... they would not have taken such pains to assure a uniformity of treatment irrespective of the particular method of discovery being employed." *Marvin Lumber and Cedar Company v. PPG Industries, Inc.*, 177 F.R.D. 443, 444 (D. Minn. 1997).

It was incumbent upon Monsanto to obtain an amendment to the scheduling order prior to issuance of the GreenLeaf subpoena. *See Dag Enterprises* at 105. However, Monsanto failed to do so. Furthermore, Monsanto became apprised of GreenLeaf's existence no later than April 12, 2006 and, consequently, has made written demands upon Syngenta for essentially all of the

---

[1] *See also Alper v. U.S.*, 190 F.R.D. 281, 283 (D. Mass 2000) (holding that a document subpoena addressed to third party is a discovery device and must be served in conformity with the scheduling order); *F.T.C. v. Netscape Comms. Corp.*, 196 F.R.D. 559 (N.D. Cal. 2000)(same); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999)(same); *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443 D. Minn. 1997)(same); *Rice v. United States*, 164 F.R.D. 556 (N.D. Okla. 1995)(same).

5

documents it currently seeks. *See* letters of April 12 and 19, 2006 attached as Exs. 5 and 6. Since Monsanto knew of GreenLeaf's existence well before the discovery deadline, it cannot demonstrate any good basis or cause for its undue delay in the issuance of the GreenLeaf subpoena. It is axiomatic that "when a plaintiff . . . is aware of the existence of documents before the discovery cutoff date and issues discovery requests, including subpoenas, after the discovery deadline has passed, then the subpoenas . . . should be denied." *Dag Enterprises* at 106 (*citing McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995)). As such, this Court should deny Monsanto's motion to compel and grant GreenLeaf's motion to quash.

## II.  MONSANTO'S SUBPOENA SEEKS INFORMATION THAT IT OBTAINED OR ATTEMPTED TO OBTAIN (AND THE COURT REFUSED) FROM SYNGENTA IN A RELATED CASE

Monsanto's subpoena seeks to obtain documents and testimony from GreenLeaf, a non-party to this litigation, that either: (1) Monsanto has already received from Syngenta in a related litigation; (2) or Monsanto has tried to obtain from Syngenta in a related case and the Court refused. Monsanto should not be allowed to obtain discovery from a *non-party* that the Court has refused to allow of a party.

January 1, 2004 to April 2006. The subpoena requests documents and testimony from January 1, 2004 to the present. As mentioned above, GreenLeaf LLC was formed in April 2006. As a result, GreenLeaf LLC has no information responsive to the subpoena from January 1, 2004 to April 2006.

In 2004, Syngenta formed a division of the company called GreenLeaf Genetics. From 2004, GreenLeaf Genetics (as a division of Syngenta) has been attempting to license germplasm and biotechnology traits to independent seed companies; however, because of Monsanto's

anticompetitive practices GreenLeaf Genetics has been unable to effectively compete in the market for licensing of certain corn traits. *See Syngenta Seeds, Inc. v. Monsanto*, Civil Action No. 04-305 (SLR). In the Syngenta antitrust case, Syngenta alleges that Monsanto's unlawful licensing practices, threatening seed companies not to do business with Syngenta, and filing baseless patent litigation has foreclosed GreenLeaf Genetics from the market. In that case, Syngenta produced more than a million pages of documents relating to its corn business, including documents relating to GreenLeaf Genetics (as a division of Syngenta). Among the categories of documents Syngenta produced include:

- Documents concerning the persons licensing traits from GreenLeaf Genetics and its trait license agreements;
- Documents concerning lists of corn traits GreenLeaf Genetics offers for license;
- Lists of GreenLeaf Genetics inbred and hybrid corn seed lines;
- Documents concerning GreenLeaf Genetics' royalties, pricing, and incentives;
- GreenLeaf Genetics' Financial plans, projections, analyses.

*See* Monsanto's First Request for Production, attached as Ex. 5. In that case, Monsanto also deposed numerous Syngenta people concerning these topics, including the then Head of GreenLeaf Genetics, Mr. Ron Wulfkuhle.

Consequently, with respect to the performance of GreenLeaf prior to April 2006 : (1) the proper party from which to request this information is Syngenta and not GreenLeaf; and (2) documents relating to GreenLeaf when it was a division of Syngenta (2004 to April 2006) were produced to Monsanto by Syngenta.

April 2006 to the Present. In April 2006, Syngenta and Pioneer entered a joint venture and formed the new legal entity, GreenLeaf LLC. Shortly after the announcement of GreenLeaf LLC, Monsanto requested: (1) that Syngenta produce documents concerning GreenLeaf LLC;

and (2) that it be allowed to re-depose Mr. Ron Wulfkuhle (the newly appointed Chief Executive Officer of GreenLeaf LLC). *See* April 12, 2006 letter attached as Ex. 6. Syngenta objected to Monsanto's request. The Court denied Monsanto's request to re-depose Mr. Wulfkuhle. *See* May 1, 2006 Order attached as Ex. 7. The Court also denied Monsanto's broad request for documents relating to GreenLeaf LLC, and instead ordered Syngenta to produce a subset of documents – namely, the agreements relating to the formation of GreenLeaf LLC and GreenLeaf LLC business plans and presentations. *Id.* Syngenta produced those documents in May 2006. In addition, in the Syngenta antitrust case, Monsanto also questioned numerous Syngenta employees (*e.g.*, Travis Dickinson, Ioana Tudor, Mike Mack) and a Pioneer employee (*e.g.*, Jim Miller) concerning the newly formed GreenLeaf LLC.

In sum, Monsanto has received hundreds of thousands of pages of documents relating to GreenLeaf Genetics (as an entity of Syngenta) as well as documents relating to the new legal entity, GreenLeaf LLC, as ordered by the Court. Monsanto's subpoena is nothing more than an attempt to supplement discovery it received in the Syngenta antitrust case and ignore the Court's previous order. Monsanto should not be allowed to obtain discovery from a *non-party* that the Court refused to allow of a party (Syngenta).

### III. MONSANTO'S SUBPOENA SEEKS GREENLEAF'S HIGHLY CONFIDENTIAL BUSINESS INFORMATION, FINANCIAL PLANS AND TRADE SECRETS, THE PRODUCTION OF WHICH TO MONSANTO WOULD CAUSE DEVASTATING AND IRREPARABLE HARM TO GREENLEAF

Monsanto's subpoena seeks highly confidential, business plans, financial projections, pricing plans and trade secrets. To date, Monsanto has been the dominant firm out-licensing seed traits to independent seed companies. To require GreenLeaf, Monsanto's competitor, to disclose its plans, strategies, and projections to Monsanto would place GreenLeaf at a serious competitive disadvantage.

In *Duracell v. SW Consultants, Inc.*, 126 F.R.D. 576, 589 (N.D. Ga. 1989), the court recognized that "a small company trying to break into a market dominated by a few large corporations would have a cognizable interest in keeping information regarding its marketing strategy, projected sales and customer lists confidential" and that disclosure of such information to a "large competitor" could put the new entrant "at a serious competitive disadvantage." *Id.* at 578-79 (noting that "if Duracell were able to identify Power Plus's present and future customers and the markets they are trying to enter, it could place Power Plus's future in the battery industry in jeopardy.").

To obtain the sensitive information that Monsanto is seeking from a non-party, Monsanto has the burden of establishing not only the information's relevance, but also that (i) the information is necessary; and (ii) Monsanto's need for the information outweighs the harm that disclosure would cause GreenLeaf. *See, e.g., Allen v. HowMedica Leibinger GmbH*, 190 F.R.D. 518, 525 (W.D. Tenn. 1999) (holding that once a party receiving subpoena demonstrates that requested information constitutes confidential business information, requesting party bars the burden of "establish[ing] that the information is both relevant and necessary to the pending action."); *Concord Boat Corp. v. Brunswick Corp.*, 1996 U.S. Dist. LEXIS 18012, *13 (N.D. Ill. 1996) ("[A] party requesting disclosure of confidential material 'must make a strong showing of need, especially when confidential information from a nonparty is sought.'").

*Slater Steel, Inc. v. Vac-Air Alloy Corp.* involved facts similar to this action. 107 F.R.D. at 246, 248 (W.D.N.Y. 1985). In that case, a party in a fraud and contract action in another district brought an action under Rule 34(c) "seeking access to the plan of [a nonparty] for the purposes of inspection, photographing and videotaping portions of said premises and activities occurring therein." *Id.* at 246-47. The court granted the nonparty's motion for a protective order

denying the party access to its plant. *Id.* at 248. The court specifically found that the nonparty "demonstrated that the information sought to be protected is highly confidential commercial matter, [and] that disclosure would cause it significant harm." *Id. See also Bio Vita, Ltd. v. Biopure*, 138 F.R.D. 13, 18 (D. Mass. 1991) (relying on *Slater Steel* to reach similar finding).

Monsanto cannot meet this standard because its subpoena is not limited to relevant information, and Monsanto's need for the information does not outweigh the harm that disclosure would cause to GreenLeaf.

### A. *The Requested Documents And Testimony Are Not Relevant And Necessary To The Underlying Litigation*

The plaintiffs' complaint is limited to Monsanto's monopolistic practices with respect to glyphosate tolerant corn, European Corn Borer resistant corn, root worm resistant corn, and stacked corn traits from **July 26, 2001**, to the present. More specifically, the plaintiffs' complaint is limited to the aforementioned traits as they exist in corn seed. Notwithstanding these limitations, Monsanto's subpoena does not seek documents or testimony limited to just these four traits. In fact, the subpoena is not limited to the aforementioned traits as they exist in corn seed. Instead, Monsanto's request seeks the production of documents regarding "each trait offered by GreenLeaf," "any hybrid lines offered by GreenLeaf," "all incentive programs," etc. *See* Ex. 2. Thus, the subpoena seeks documents and testimony that relates to other crops (such as soybeans) and other traits that are not relevant to the underlying lawsuit.

Because of the over breadth of the discovery requests, much of the information sought is not necessary to Monsanto's defense in the underlying suit.[2] While one or two of the requests

---

[2] *See Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the "necessary' restriction may be broader when a nonparty is the target of discovery"); *see also Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986)("The standards for nonparty discovery require a stronger showing or relevance than for simple party discovery"). As
(continued...)

may arguably seek marginally relevant information, the requests as a whole, for the reasons discussed above, are overbroad and seek highly confidential information not relevant to the litigation.

### B. Monsanto's Need For The Requested Documents And Testimony Does Not Outweigh The Harm That Would Result To Greenleaf If Greenleaf Were Forced To Disclose Its Highly Sensitive Information

Even assuming arguendo that Monsanto were able to demonstrate a legitimate need for the requested information, which it cannot, this Court would still have to determine whether Monsanto's need for the information outweighs the harm that disclosure would cause to GreenLeaf. *See Mannington Mills* at 529. With regard to this determination, "courts have traditionally recognized that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Id.* at 531. Courts also have noted that disclosing financial information is especially sensitive "for a company in a vulnerable competitive position." *See, e.g., Duracell, Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 579 (N.D. Ga. 1989).

That is precisely the case here. Here, Monsanto has engaged in anticompetitive tactics to exclude competition from GreenLeaf and other corn trait providers. (First Amend. Compl., ¶ 90). Under these circumstances, it is entirely understandable that GreenLeaf would have substantial concerns about revealing highly confidential information such as the "[l]icenses, contracts or agreements for each trait offered by GreenLeaf Genetics," "[d]ocuments sufficient to disclose the persons licensing or testing each hybrid line", or incentive and pricing information. *See* Monsanto's Subpoena attached as Ex. 2, at p. 4 of Schedule B. Disclosing this type of financial information will further impede GreenLeaf's ability to compete effectively with

---

(...continued)
such, Monsanto is incorrect to claim that the "potentially relevant" standard applicable to parties also applies here. *See* Monsanto's Br. at 3.

11

Monsanto. *See* Ronald E. Wulfkuhle Declaration attached as Ex. 8 at para. 7. It is clear that the potential harm to GreenLeaf which would result from disclosure greatly outweighs any benefit to Monsanto.

The existing Protective Order will not adequately protect GreenLeaf, even if disclosure is limited to outside counsel and experts. As courts have explained, in granting motions to quash, where sensitive planning and strategic information has been requested of a non-party:

> Even if information was classified "Highly Confidential," it would still be disclosed to Defendants' experts' The Court refused to compel disclosure in this case because, as another court reasoned,
>
>> Once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained... will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained?

*Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 537-38 (C.D. Ill. 1991) (quoting *Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990); *see also The Stanley Works v. Newell Co.*, 1992 WL 229652, *2 (N.D. Ill. Aug. 27, 1992)).

In addition, as the court held in *Mannington Mills v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D. Del. 2002), GreenLeaf, as a non-party, will have no control over how the confidential information would be handled at trial. "As a result, control is in the hands of [Greenleaf's] undisputed competitors and the court." *Id.* at 530.

In *Mannington Mills*, a party sought discovery of protected trade secrets from Congoleum, a non-party, and in the case of *In re Vitamins Antitrust Litigation*, 267 F.Supp.2d 738 (S.D. Ohio 2003), a manufacturer sought to discover trade secrets of a non-party vitamin supplier. In both cases, the courts quashed the subpoenas, notwithstanding the available option of protective orders. A third court noted that "[i]n both of these cases, the information sought was critical to the financial health of the non-party's business and was being requested by a direct competitor." *Lee Falicia et al. v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5 (D. D.C. 2006). Likewise, in the present case, Monsanto seeks information critical to GreenLeaf's financial health and, in fact, its very survival in the marketplace.

As in *Mannington Mills* and *In re Vitamins Antitrust Litigation*, the information being sought by Monsanto is critical to the financial health of GreenLeaf. *See* Ex. 8, at para. 7. To borrow from *In Re Vitamins Antitrust Litigation*, these plans and secrets are GreenLeaf's "lifeblood." *In Re Vitamins* at 741-42. Giving GreenLeaf's "lifeblood" to Monsanto will have a dramatic and deleterious impact on the future financial health of GreenLeaf. Monsanto's subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, Monsanto's motion to compel should be denied and GreenLeaf's motion to quash the subpoenas should be granted.

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

By: _____
William M. Kelleher, Esquire
Bar No. 3961
919 North Market Street, 12th Floor
Wilmington, DE 19801

14

Telephone: (302) 252-4465
Facsimile: (302) 252-4466

Attorney for GreenLeaf Genetics LLC

Of counsel:

Edward H. Tricker
Andrew Koszewski
Woods & Aitken LLP
301 S 13th St # 500
Lincoln, NE 68508
Telephone:  (402) 437-8500

14