## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMERICAN SEED CO. INC., and
JERRY ELLEFSON,                    )
                                   )
                                   )    C.A. No. 05-535-SLR
    Plaintiffs, On Behalf of Themselves  )
    and Others Similarly Situated,  )
                                   )    **JURY TRIAL DEMANDED**
        v.                         )
                                   )    **PUBLIC VERSION**
MONSANTO COMPANY, et al.,          )
                                   )
    Defendants.                    )
                                   )

DARRELL SOUHRADA, and              )
DAVE JOHNSON,                      )
                                   )
    Plaintiffs, On Behalf of Themselves  )
    and Iowa Citizens Similarly Situated,  )
                                   )
        v.                         )    C.A. No. 05-535-SLR
                                   )
MONSANTO COMPANY,                  )
                                   )
    Defendant.                     )
                                   )

KENT DUXBURY, and                  )
BENJAMIN REIN,                     )
                                   )
    Plaintiffs, On Behalf of Themselves  )
    and Minnesota Citizens Similarly  )
    Situated,                      )
                                   )    C.A. No. 05-535-SLR
        v.                         )
                                   )
MONSANTO COMPANY,                  )
                                   )
    Defendant.                     )

## MONSANTO'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL AND OPPOSITION TO GREENLEAF'S CROSS-MOTION TO QUASH PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY RESPONSIVE TO MONSANTO'S SUBPOENA

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................3

I.      THE SUBPOENA WAS TIMELY SERVED WITH RETURN
        DATES WELL WITHIN THE DISCOVERY DEADLINE ...................................3

II.     MONSANTO ONLY SEEKS RELEVANT INFORMATION .............................5

III.    MONSANTO'S SUBPOENA DOES NOT REQUEST
        INFORMATION THAT HAS BEEN OBTAINED FROM
        SYNGENTA ........................................................................................................8

IV.     GREENLEAF MUST PRODUCE ANY DOCUMENTS WITHIN
        ITS POSSESSION OR CONTROL ...................................................................11

V.      THE PROTECTIVE ORDER IN THIS CASE PROVIDES MORE
        THAN ADEQUATE PROTECTION...................................................................13

VI.     MONSANTO HAS SHOWN SUBSTANTIAL NEED FOR THE
        DOCUMENTS...................................................................................................15

CONCLUSION...............................................................................................................16

## TABLE OF AUTHORITIES

### CASES

*Covey Oil v. Continental Oil,*
    340 F.2d 993 (10th Cir. 1965) ....................................................................13

*Mercy Catholic Medical Center v. Thompson,*
    380 F.3d 142 (3d Cir. 2004)........................................................................12

*Smith v. Midland Brake, Inc.,*
    162 F.R.D. 683 (D. Kan. 1995)................................................................4, 5

*Smith v. Midland Brake, Inc.,*
    162 F.R.D. 718 (D. Kan. 1995)....................................................................2

*In re Subpoena Duces Tecum On Bell Communications, Inc.,*
    1997 U.S. Dist. LEXIS 191 (S.D.N.Y. 1997).............................................13

*U.S. v. Lever Brothers Co.,*
    193 F. Supp. 254 (S.D.N.Y. 1961) .............................................................13

### FEDERAL STATUTES

Fed. R. Civ. P. 45(a)(1)(C) ...........................................................................1, 12

Fed. R. Civ. P. 45(e) .....................................................................................1, 12

## INTRODUCTION

Monsanto timely served GreenLeaf with a subpoena on September 21, 2006, nearly three months before the December 15, 2006 discovery cutoff.[1] The subpoena requested GreenLeaf produce certain narrow categories of documents and that it designate and produce a witness to testify on designated topics. Green flatly refused to produce either the requested documents or to appear for deposition, and it did not even seek a protective order or move to quash the discovery until after Monsanto moved to compel, avoiding its obligation to affirmatively seek such relief on a timely basis. During the meet and confer process, GreenLeaf offered little explanation for its refusal, leaving Monsanto no alternative but to move to compel.

In its opposition to Monsanto's Motion to Compel, GreenLeaf advances four arguments in support of its refusal to honor its obligations under Rule 45 to produce documents, none of which has merit. GreenLeaf made no attempt to justify its refusal to appear for deposition, focusing all of its arguments on the production of documents.[2]

First, GreenLeaf erroneously argues that the Court's September 1, 2006, deadline for the parties to exchange documents bars subpoenas to and document productions from

---

[1] The subpoena that Monsanto served on GreenLeaf is attached as Exhibit 1. GreenLeaf Genetics has improperly incorporated a motion to quash Monsanto's subpoena into its opposition to Monsanto's Motion to Compel in an effort to get the final say in this dispute. (D.I. 178). Monsanto objects to this motion as untimely because GreenLeaf had an opportunity to move to quash at the time of service of the subpoena, but failed to do so. In any event, the Court need not address GreenLeaf's motion since it does not raise any issues different from its opposition to Monsanto's Motion to Compel. Nevertheless, Monsanto submits this joint Reply and Opposition.

[2] Only one of its arguments is even potentially relevant to whether it should have appeared for deposition - disclosure of confidential information. As explained below, the Protective Order in this case has regularly been extended to cover third-party information (as Monsanto noted during the meet and confer process) and is plainly more than sufficient to protect any confidential GreenLeaf information (as evidenced by the fact that, *e.g.*, Pioneer and Dow/Mycogen, among literally dozens of seed companies, have produced otherwise confidential information in response to subpoenas in this and the *Syngenta* cases).

third parties. The Scheduling Order set September 1 as the deadline for the *parties* to exchange documents under Rule 34, but does not address subpoenas or other third party discovery. (D.I. 56; Scheduling Order ¶ 2(f), attached as Exhibit 2.) All other means of discovery are subject to the Order's December 15, 2006, deadline for fact discovery. *Id.* at ¶ 2(c).[3] Consequently, a subpoena issued under Rule 45, served and returnable during the discovery period is timely regardless of any deadline for the parties to complete document requests. *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 718 (D. Kan. 1995).

GreenLeaf then argues that it should be relieved of its obligations because the subpoena requests documents which 1) Syngenta has already produced, or 2) the Court has previously held need not be produced. Neither of these claims is correct. In the *Syngenta* case,[4] Monsanto requested only three categories of documents regarding GreenLeaf, none of which are requested in the GreenLeaf subpoena. Of those three categories, Syngenta agreed to produce one and the Court ordered Syngenta to produce the other two.

Third, GreenLeaf argues that the subpoena calls for sensitive documents and information whose production would cause it competitive harm. This argument ignores the fact that the Court long ago entered a protective order which has regularly and repeatedly been extended to information and documents produced by third parties. Those protections are available to GreenLeaf and will certainly safeguard GreenLeaf's confidential information.

Finally, GreenLeaf argues that the subpoena requests documents and, one supposes, deposition topics that are neither relevant nor reasonably calculated to lead to

---

[3] The Court has granted a joint motion by the parties to extend the discovery cutoff until January 15, 2006 (D.I. 181), and the parties have asked to stay discovery pending resolution of an appeal by plaintiffs of denial of their request for class certification. (D.I. 182). By its terms, that requested stay will not apply to resolution of the instant motion.

[4] *Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No. 04-305-SLR (Consol.).

the discovery of admissible evidence. This argument rests on a misreading of the subpoena. All of the requested information directly concerns GreenLeaf's entry and performance in the putative markets alleged by plaintiffs in this case, and none goes beyond those topics. Indeed, GreenLeaf's own arguments about confidentiality are predicated on the relevance of the information within the scope of the subpoena.

For these reasons and as explained in more detail below, Monsanto respectfully requests that the Court grant its motion to compel.

## ARGUMENT

### I.    THE SUBPOENA WAS TIMELY SERVED WITH RETURN DATES WELL WITHIN THE DISCOVERY DEADLINE.

Monsanto timely served GreenLeaf and the subpoena is returnable within the discovery period for this case. The Scheduling Order permits the parties to take discovery until December 15, 2006. Monsanto served its subpoena on September 21, 2006, and set dates for production (October 14) and deposition (November 1) well before December 15. GreenLeaf has had ample time in which to comply and should not be permitted through its own delay to escape its duties under Rule 45.

The Scheduling Order does not require, contrary to GreenLeaf's suggestion, that Monsanto serve all subpoenas, whether *duces tecum, duces tecum ad testificandum,* or *testificandum,* before the end of the party document production period, September 1. (D.I. 56; Scheduling Order ¶ 2.). The Scheduling Order, reasonably interpreted, requires the parties to serve and respond to document requests issued under Rule 34 by September 1, 2006, and to complete all fact discovery by December 15, 2006. Indeed, the Scheduling Order clearly contemplates that the parties will take further discovery following September 1, as the deadline for completion of discovery is set for December 15, three and a half months later. (D.I. 56; Scheduling Order ¶ 2(c).).

3

That the Scheduling Order contemplates third party discovery continuing after completion of document productions by the parties is eminently sensible. It encourages the parties to avoid duplicative or overbroad requests by narrowly tailoring subpoenas served on third parties. Contrary to GreenLeaf's position, the Scheduling Order was not designed to preclude parties from gathering additional documents and information from third parties.

In fact, in the *Syngenta* action, Syngenta served third parties with subpoenas *duces tecum* during the discovery period but after the deadline for the parties to exchange documents. The Scheduling Order in the Syngenta case imposed a January 13, 2006, deadline for document discovery, and a June 23, 2006 deadline for all discovery. (C.A. No. 3-305-SLR, D.I. 197; Scheduling Order ¶¶3(b), (b)(i), attached as Exhibit 3.) On April 12, 2006 – after the deadline for the parties to exchange documents – Syngenta issued a subpoena *duces tecum* to third party Savitz Research Solutions, among numerous other third parties.[5] According to GreenLeaf's interpretation of the Court's orders, Syngenta's subpoena would have been invalid.

Courts have previously rejected GreenLeaf's argument. *See, e.g., Smith v. Midland Brake, Inc.*, 162 F.R.D. 683 (D. Kan. 1995). In *Midland Brake*, the court set a discovery schedule requiring the parties to complete their document discovery by February 13, 1995, and to complete all discovery by a later date. *Id.* at 686. On March 23, 1995, after the document discovery deadline but within the discovery period, the plaintiff served a subpoena requiring a third party to appear for a deposition and to produce documents at that deposition. *Id.* at 684. The third party appeared for the deposition but refused to produce the documents. In response to a subsequent motion to

---

[5] Subpoena issued by Syngenta Seeds to Savitz Research Solutions, served April 12, 2006, attached as Exhibit 4. Savitz was not the only third party served with subpoena after the party document production cutoff. Syngenta served at least a half a dozen subpoenas to seed companies and market research companies.

compel, the third party argued that the subpoena was untimely because plaintiffs served it after document discovery closed.

The court rejected the third party's argument and found the subpoena was timely. *Id.* at 686. The court's scheduling order merely required the parties to serve and respond to document requests under Rule 34 by February 13, 1995. *Id.* The court held that the earlier deadline did not apply to third party discovery, including a subpoena *duces tecum*, under Rule 45. *Id.* Instead, the court found that the proper deadline would be the end of the discovery period. *Id.*

*Midland Brake* is exactly on point. Here, too, the Court set a deadline for document production between the parties and a separate, later deadline for completion of discovery. In this instance, just as in *Midland Brake*, a subpoena was timely served and returnable within the discovery period. In *Midland Brake*, the third party argued, just as GreenLeaf does here, that it was not obligated to produce documents. The same result should follow here as in *Midland Brake* – GreenLeaf must fulfill its obligations under Rule 45 by producing responsive documents and a knowledgeable deponent.

The cases cited by GreenLeaf are all inapposite. In each of the cases cited by GreenLeaf, the subpoena at issue was either served or not returnable until after the close of *all* discovery. (D.I. 178; GLG Br. 4-6.). Here, in contrast, the subpoena was served within the discovery period and required production and appearance for deposition within the discovery period.[6]

## II.    MONSANTO ONLY SEEKS RELEVANT INFORMATION

For Monsanto to properly defend its case, it must develop information from other companies, like GreenLeaf, who are involved in relevant markets alleged by plaintiffs. As explained in its moving brief, Plaintiffs allege that Monsanto charges monopoly prices

---

[6] GreenLeaf's timeliness argument only concerns the production of documents and does not even purport to apply to the requested deposition.

on its hybrid corn seed because it has excluded other companies from the trait licensing business, thereby creating or maintaining an illegal monopoly. (D.I. 153; Am. Compl. ¶¶ 77-96, attached as Exhibit 5.) More specifically, plaintiffs allege that Monsanto's license agreements with seed companies impose volume discounts that make those agreements *de facto* exclusive. *Id.* Thus, according to Plaintiffs, seed companies refuse to license any traits from companies such as GreenLeaf for fear of losing their discounts under the Monsanto license agreements.

GreenLeaf is precisely the type of company that Plaintiffs maintain Monsanto has foreclosed from the corn seed market. GreenLeaf competes with Monsanto by licensing both traits and germplasm to seed companies. For example, in announcing GreenLeaf's formation, Syngenta and DuPont explained that GreenLeaf's business would be to "offer corn . . . breeding material" and to "facilitate the licensing of biotech traits" from Syngenta and Dow.[7] GreenLeaf's website touts its ability to license Syngenta's Agrisure trait line, which includes a corn borer-resistant trait, a rootworm-resistant trait, a glyphosate tolerant trait, as well as stacks of those traits.[8] Each of these traits and stacks constitute a separate product market from which, according to Plaintiffs, Monsanto has foreclosed companies like GreenLeaf. (D.I. 153; Am. Compl. ¶¶ 77-96.) In other words, GreenLeaf does exactly what Plaintiffs claim no one but Monsanto can do. Thus, GreenLeaf's experience in the alleged product markets is certainly relevant to the claims of foreclosure (or lack thereof).

That is exactly the kind of information Monsanto seeks from GreenLeaf, which goes to the heart of Monsanto's defenses. The subpoena requests documents identifying GreenLeaf's licensees for corn traits and corn foundation lines, copies of the license

---

[7] *See* Media Release, dated April 10, 2006, attached as Exhibit 6.

[8] *See* GreenLeaf Genetics E-News I, vol. 2, printed from GreenLeaf's website at http://www.greenleafgenetics.com/pdf/GreenLeafGenetics/RollingNews.pdf. A copy of the newsletter is attached as Exhibit 7.

terms, information about the foundation corn seed lines and hybrid corn seed lines offered by GreenLeaf, and the royalty and pricing information related to GreenLeaf's corn seed offerings.[9]

For example, Monsanto requests documents disclosing GreenLeaf's licensees because that information goes to the issue of foreclosure.[10] There are approximately 300 seed companies in the United States. Plaintiffs allege that Monsanto has used exclusive dealing arrangements to prevent companies like GreenLeaf from licensing traits to any of these seed companies. The extent to which GreenLeaf, *in its first years of operation*, has successfully licensed its traits to these companies goes directly to whether any foreclosure occurred. Similarly, GreenLeaf's financial plans and projections are likely to cast light on whether GreenLeaf's performance and future expectations are consistent with a foreclosed market.[11]

Monsanto maintains that its success resulted from giving more choice and better performance to growers. Thus, Monsanto's subpoena requests documents explaining what traits, and what germplasm, GreenLeaf offers to customers, as well as the prices at which it offers those products.[12] If GreenLeaf offers a limited seed portfolio, or offers inferior products at a higher price, that supports Monsanto's defense that it has not foreclosed its competition, it is simply ahead of it through investment and innovation.

Similarly, Monsanto's requests for testimony directly relate to the claims and defenses in this case. Monsanto requests testimony about GreenLeaf's financial projections and actual performance.[13] As explained above, that information is relevant to

---

[9] *See* Exhibit 1, Schedule B, p.4.

[10] *See id.* at p. 4, ¶¶ 1, 6.

[11] *See id.* at p.4, ¶ 9.

[12] *Id.* at p.4, ¶¶ 3-5, 7-8, 10.

[13] *Id.* at pp. 1-2, ¶¶ 1-2.

whether companies like GreenLeaf are actually foreclosed from licensing traits to seed companies. Monsanto also requests testimony regarding GreenLeaf's products' performance and quality.[14] Monsanto requires that testimony to establish that Monsanto's success in the market resulted from superior products rather than anticompetitive activity. Monsanto has limited its requests to only these directly relevant subjects.

GreenLeaf's claim that the subpoena seeks irrelevant information about soybeans or cotton seed is simply inaccurate. The documents and topics set out in the exhibits to the subpoena clearly refer to *corn* seed foundation lines and hybrids, to *corn* seed with traits and convention *corn* seed.[15] Indeed, the definitions included in the subpoena refer directly to corn. For example, definition 2 (for both documents and topics) identifies traits as "artificially introduced genetic material into *corn* seed." The definition of foundation seed is similarly limited to corn seed. The definitions in the document request of the specific traits all refer expressly to corn seed.[16] There is, therefore, no basis for GreenLeaf's claim that the subpoena seeks information which is not relevant to the claims and defenses of this case.

## III.    MONSANTO'S SUBPOENA DOES NOT REQUEST INFORMATION THAT HAS BEEN OBTAINED FROM SYNGENTA

GreenLeaf argues that the subpoena seeks documents that either, i) Syngenta already produced to Monsanto; or ii) the Court already held that Monsanto was not entitled to receive in the *Syngenta* case . GreenLeaf erroneously claims that the "Court also denied Monsanto's broad request for documents relating to GreenLeaf LLC." (D.I.

---

[14] *Id.* at p. 2, ¶ 3.

[15] *Id.* at Attachment A, p. 2, ¶¶ 1-2, 4; p.3, ¶2; *Id.* at Schedule B, pp. 1-2, ¶¶ 1, 3-7, 9-10.

[16] *Id.* at pp. 1-2, ¶¶ 1, 3-7, 9-10.

178; GLG Br. 8.) GreenLeaf is wrong. The Court in fact granted Monsanto's request that Syngenta produce documents concerning GreenLeaf. (D.I. 355; Order, dated May 1, 2006, attached as Exhibit 8.)

In the *Syngenta* case, Monsanto asked the Court to compel just three narrow categories of documents from Syngenta regarding GreenLeaf Genetics:

1. Agreements between Syngenta and Pioneer concerning GreenLeaf Genetics;
2. Presentations seeking approval to launch GreenLeaf Genetics; and
3. Business plans for GreenLeaf Genetics.

(Discovery Hearing Transcript, May 1, 2006, at 11-14, attached as Exhibit 9.). Of those three categories of documents, Syngenta agreed to produce the first, and the Court ordered Syngenta to produce documents in the second and third categories. *Id* at 11.; (D.I. 355; Order ¶ 2.)

The GreenLeaf joint venture was announced on April 10, 2006. On May 1, 2006, at a scheduled discovery hearing, Monsanto asked the Court to compel production of the limited categories of GreenLeaf documents discussed above. (Exhibit 9, Hearing Tr. at 12-14.) The Court ordered Syngenta to produce business plans and presentations related to the GreenLeaf joint venture by May 8, 2006. (Exhibit 8, Order, dated May 1, 2005.) Because of the limited time period available for gathering information, Monsanto did not have time to investigate the joint venture and conduct the discovery necessary for this case, in which different and additional markets are at issue than in the *Syngenta* case.

The Court never denied any request by Monsanto to compel production of GreenLeaf's documents. The discovery "requests" that GreenLeaf claims the Court denied – for documents and to re-depose Wulfkuhle – were requests set out in a letter to *Syngenta*, not any motion to the Court. (D.I. 178; GLG Br. 7-8.) Had GreenLeaf simply read the May 1, 2006, discovery hearing transcript, it would have realized that Monsanto asked the Court to compel only certain categories of those documents. Further, the

9

Court's Order that GreenLeaf cites as "denying" Monsanto's requests, in fact, **grants** each of Monsanto's requests. *Id.*

The Court's May 1, 2006, Order does not moot Monsanto's subpoena. There simply is no significant overlap in the scope of the requests to Syngenta and GreenLeaf. In fact, Syngenta produced just twenty-seven documents in response to the narrow requests above. (D.I. 169; Mon. Br. 8.). These documents were limited to duplicative business plans, a small number of license and distribution agreements between GreenLeaf and its parent companies, the joint venture formation agreements, and a small number of memoranda relating to the joint venture. None of the documents produced were created after the formation of the joint venture, and none included projections and performance measures sought by Monsanto.

The twenty-seven documents that Syngenta produced are insufficient to satisfy **any** of Monsanto's document requests included in its September 21, 2006, subpoena. They did not cover, for example, documents concerning GreenLeaf's current licensees, or GreenLeaf's current financial performance. It is inconceivable that a joint venture between businesses as sophisticated as Syngenta and Pioneer, the number one and three seed companies in the United States and in the world, would not have the types of documents that Monsanto requests.

Moreover, in the *Syngenta* case, the parties were limited to discovery of documents created between January 1, 1996, and May 27, 2005.[17] The activities of GreenLeaf, even as a distinct division within Syngenta, largely post-date that cutoff. Certainly, discovery concerning the planning and execution of the joint venture between Syngenta and Pioneer was very limited, especially since Syngenta's witnesses ███

---

[17] *See* Letter, dated Sept. 2, 2005, from R. Schwed to J. Rosenthal, attached as Exhibit 10, at 2.

Thus, GreenLeaf's claim that Monsanto already possesses the documents responsive to the subpoena is incorrect.[18]

## IV. GREENLEAF MUST PRODUCE ANY DOCUMENTS WITHIN ITS POSSESSION OR CONTROL

GreenLeaf also contends that, because it was formed in April 2006, it has no documents from January 1, 2004 to April 2006. (D.I. 178; GLG Br. 6.). Thus, according to GreenLeaf, "with respect to performance of GreenLeaf prior to April 2006[,] the proper party . . . is Syngenta and not GreenLeaf." *Id.* at 7. This claim is without factual support and legally wrong.

GreenLeaf's factual claim is not credible and is unsupported by any evidence at all. GreenLeaf claims, in essence, that when the joint venture was formed, it took ***no*** records into the new entity. It has nothing in its files concerning the initial formation and launch, nothing in its files concerning its business plans and performance, nothing in its files concerning licensing and customers, actual or potential. It sprang forth wholly formed and without history, like Athena from Zeus. This is not credible.

GreenLeaf does not offer any reason why two sophisticated businesses like Syngenta and Pioneer would go about creating a joint venture but not transfer any records to that joint venture.[19] Nor does GreenLeaf provide, or refer to, the agreement that

---

[18] GreenLeaf also errs by claiming that Monsanto moved the Court to compel Mr. Wulfkuhle to continue his deposition. ███████████████████████████████████ ███████████████████████████████████████████. After the deposition, Monsanto raised the issue of resuming Mr. Wulfkuhle's deposition with Syngenta, not the Court. Although Monsanto believes that Mr. Wulfkuhle's refusal to answer was unjustified, Monsanto did not move to compel further testimony and, therefore, the Court has never ruled on that subject. Thus, GreenLeaf is again incorrect when it claims that the Court refused to allow Monsanto to re-depose Mr. Wulfkuhle.

[19] Under GreenLeaf's version of things, for example, GreenLeaf would have to ask Syngenta who GreenLeaf's customers are because GreenLeaf has no right to such information.

created GreenLeaf that might explain why no documents were transferred. GreenLeaf's claim is so odd that it should not be accepted without a sound evidentiary basis.

GreenLeaf may not avoid complying with the subpoena by claiming that Syngenta, rather than GreenLeaf, maintains physical possession of some of the requested documents. The federal rules foreclose such corporate shell games by requiring a party responding to a subpoena to produce documents that are within its possession, custody, *or control*. Fed. R. Civ. P. 45(a)(1)(C). Possession, custody, or control encompasses more than physical possession of a document. A document is in a person's possession, custody, or control if that person has the legal right to obtain its possession. *See Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

GreenLeaf makes no argument that it does not have possession, custody, or control of such documents, nor would that argument be credible. Syngenta previously created and wholly owned GreenLeaf, contributed many of its top executives to GreenLeaf, and continues as one of only two members that own GreenLeaf. Further, it would be highly irregular for GreenLeaf to have no access to its own documents from the previous entity transferred to the new joint venture.

Assuming, for the sake of argument, that GreenLeaf does not have access to any documents created before April 1, 2006, that does not constitute a reason to quash the subpoena. GreenLeaf must still produce responsive documents and produce a witness for the period from April 1, 2006. The absence of records for the period does not relieve GreenLeaf of a duty to provide documents and information for the remaining periods.

Furthermore, given the high degree of management overlap between the Syngenta division and the current joint venture, GreenLeaf cannot claim with a straight face that it lacks access to the information sought under the deposition subpoena. That information is available to GreenLeaf because it is available to GreenLeaf's management, all that is required to produce a witness under the subpoena.

**V.    THE PROTECTIVE ORDER IN THIS CASE PROVIDES MORE THAN ADEQUATE PROTECTION FOR ANY CONFIDENTIAL INFORMATION**

Rule 45 specifically provides for the Court to enter a protective order to safeguard a third party's confidential information, which the Court has already done. Yet, GreenLeaf, without citing any reason, dismisses the Rule's protection and the Court's Protective Order as inadequate to protect its confidential information.

As Monsanto explained in its moving brief, courts routinely compel discovery of relevant confidential information from third party competitors. *See, e.g. Covey Oil v. Continental Oil*, 340 F.2d 993 (10th Cir. 1965); *In re Subpoena Duces Tecum On Bell Communications, Inc.*, 1997 U.S. Dist. LEXIS 191 (S.D.N.Y. 1997). For example, in *Covey Oil*, the Court of Appeals affirmed a lower court's ruling that required a non-party competitor to produce trade secrets in an antitrust case. The claimed trade secrets related to a competitor's "price, cost, and volume of sales," precisely the sort of information sought by Monsanto. 340 F.2d at 999. The court explained that "inconvenience to third parties may be outweighed by the public interest in seeking the truth in every litigated case." *Id*. The court held that the need for the information was "paramount," particularly because the information sought was "pertinent to the antitrust charges and defenses," even though the parties "compete[d] in the wholesales market." *Id*. In fact, the sort of information that Monsanto seeks from GreenLeaf has been described as "necessary" in the preparation of a defense to an antitrust claim. *See, e.g. U.S. v. Lever Brothers Co.*, 193 F. Supp. 254, 255 (S.D.N.Y. 1961).

Incredibly, GreenLeaf portrays itself as a small company that would be harmed by producing confidential business information to Monsanto, a larger company. (D.I. 178; GLG Br. 9, 11.). GreenLeaf is a joint venture between Syngenta and DuPont. (D.I. 178; GLG Br. 3.). Syngenta's and DuPont's sales for 2005 were $8.1 billion and $26.3

billion, respectively.[20]  The combined sales of the two partners, $34.4 billion, exceeded

the GDP of five entire states.[21]  Further,

█████████████████████████████████████████

It has clearly been successful and should not be treated as a small company that would be

harmed by producing subpoenaed information.

Moreover, GreenLeaf ignores the practice of the parties, in this case and in the

*Syngenta* case, protecting third party information.  In both cases, the parties have

regularly extended all of the protections available under the Protective Order to third

parties such as GreenLeaf.  Both Pioneer and Dow/Mycogen have produced documents

in both cases on this basis, as have numerous third party seed companies.  Monsanto

made clear long ago that GreenLeaf's documents (and testimony) would be subject to and

protected by the Protective Order.  There is, therefore, no question that whatever sensitive

information of GreenLeaf is called for by the subpoena could be fully protected from

misuse.

GreenLeaf cannot specify any harm that it will face if Monsanto's *outside counsel*

and retained consultants and experts review certain GreenLeaf information.  Therefore,

this Court should order GreenLeaf to produce the requested information without

restriction.

---

[20]  *See* Syngenta Annual Report, p. 5, and DuPont Annual Review, p. 3.  The excerpts
from the respective reports are attached as Exhibits 12 and 13.

[21]  *See* News Release, U.S. Dept. of Commerce, Bureau of Economic Analysis, pp. 7-8,
Table 3, reprinted at http://bea.gov/bea/newsrelarchive/2006/gsp1006.pdf.  The cited
table is attached as Exhibit 14.

## VI.    MONSANTO HAS SHOWN SUBSTANTIAL NEED FOR THE DOCUMENTS

As explained in its moving brief, Monsanto needs the requested discovery to defend this case. (D.I. 169; Mon. Br. 3-6.). Plaintiffs allege that Monsanto monopolized the hybrid corn seed market by excluding others from licensing traits. GreenLeaf is a prime example of a competitor that plaintiffs allege that Monsanto has excluded; GreenLeaf licenses genetic traits and foundation seed lines in each of product markets alleged by Plaintiffs. Thus, GreenLeaf's recent success bears on the factual allegations advanced by Plaintiffs, including whether competition has been excluded from the alleged markets (it hasn't).

GreenLeaf also misstates the scope of Monsanto's subpoena, and alleges that Monsanto's subpoena seeks documents and testimony that relates to crops other than corn. This is simply not the case. The definitions for the document requests and deposition topics make obvious that the requests go to corn seed only.[22] For example, Monsanto defines foundation seed as "inbred seed or other parent seed stock used in the production of commercial *hybrid seed corn. Id.* Similarly, Monsanto defined the traits as genetic material added to corn seed, and even defined the specific traits involved as present in corn seed. *Id.* Monsanto is seeking information relating to corn seed, which, under any plausible theory, is the subject matter of this case.

---

[22] *See* Exhibit 1 at Attachment A, p. 2, ¶¶ 1-2, 4; p.3, ¶2; *Id.* at Schedule B, pp. 1-2, ¶¶ 1, 3-7, 9-10.

## CONCLUSION

For the foregoing reasons, and the reasons stated in its opening brief, Monsanto requests that this Court grant Monsanto's Motion to Compel GreenLeaf to produce information responsive Monsanto's subpoena, and deny GreenLeaf's motion to quash the subpoena.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Tel: (202) 942-5000

Dated: November 20, 2006
Public Version Dated: November 29, 2006

By: _/s/ David E. Moore_
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    P. O. Box 951
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Monsanto Company,*
*American Seed, Inc., Corn States Hybrid*
*Service, Inc., Asgrow Seed Co., Inc., Holden*
*Foundation Seeds, Inc., Dekalb Seeds,*
*Calgene, L.L.C., Channel Bio Co., Nc+*
*Hybrids and Semins, Inc.*

764558 / 29369

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 29, 2006, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Joelle E. Polesky
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899

I hereby certify that on November 29, 2006, I have sent by Electronically Mailed the

foregoing document to the following:

Steven F. Benz
Michael S. Zuckman
Kellogg, Huber, Hansen, Todd,
    Evans & Figel P.L.L.C
1615 M Street, NW
Suite 400
Washington, DC 20036
sbenz@khhte.com

R. Stephen Berry
J. Daniel Leftwich
Gregory Baruch
Berry & Leftwich
1717 Pennsylvania Ave., NW
Washington, DC 20006
sberry@berry-leftwich.com
dleftwich@berry-leftwich.com
gbaruch@berry-leftwich.com

Charles A. Bird
Jeremy R. Stevens
Bird, Jacobsen & Stevens
300 Third Ave. S.E.
Rochester, MN 55904
charles@birdjacobsen.com
jeremy@birdjacobsen.com

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

696607