NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1265
_____

AMERICAN SEED CO., INC., On Behalf of Itself and Others
Similarly Situated; JERRY ELLEFSON; BENJAMIN REIN;

DAVE JOHNSON; KENT DUXBURY;
DARRELL SOUHRADA (Intervenors in D.C.)

v.

MONSANTO COMPANY; AMERICAN SEEDS INC, Monsanto Controlled
Subsidiaries; CORN STATES HYBRID SERVICE INC., Monsanto Controlled
Subsidiaries; ASGROW SEED CO INC, Monsanto Controlled subsidiaries; HOLDEN
FOUNDATION SEEDS, INC., Monsanto Controlled Subsidiaries; DEKALB SEEDS,
Monsanto Controlled Subsidiaries; CALGENE LLC, Monsanto Controlled
Subsidiaries; CHANNEL BIO CO., Monsanto Controlled Subsidiaries; NC+HYBRIDS,
Monsanto Controlled Subsidiaries; SEMINIS INC, Monsanto Controlled Subsidiaries;
GREENLEAF GENETICS LLC

American Seed Co., Inc., Jerry Ellefson,
Benjamin Rein, Dave Johnson, Kent
Duxbury and Darrell Souhrada,
                                    Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 05-cv-00535)
District Judge:  The Honorable Sue L. Robinson, Chief Judge
_____

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2008

Before: BARRY, CHAGARES and ROTH, Circuit Judges

(Opinion Filed:   April 1, 2008)

OPINION

BARRY, Circuit Judge

    Appellants in this case are five corn farmers and one family-owned corn seed company who claim to be purchasers of transgenic corn seed, that is, corn seed that has been genetically engineered to include traits that make the seed resistant to parasites or herbicides or both.  They claim that appellees, sellers of transgenic corn seed, have monopolized certain American corn-seed markets in violation of section 2 of the Sherman Act, sections 4 and 16 of the Clayton Act, and the antitrust laws of Iowa and Minnesota, by undertaking actions that have unlawfully driven out competitors and allowed them to gain from the resulting artificially-raised pricing.  Appellants sought class certification under Federal Rule of Civil Procedure 23(b)(3), which requires a putative class to demonstrate that common issues of law and fact predominate over any individual inquiries and that class resolution is superior to any other method of adjudication.  The District Court denied class certification on the ground that appellants failed to satisfy the predominance requirement.  For the following reasons, we will affirm.

**I.**

Appellees are the Monsanto Company ("Monsanto") and a number of its subsidiary corn-seed companies. Through its subsidiaries, Monsanto grows and sells to other seed companies "foundation seed," i.e., seed that can be crossbred with other seed in order to produce a new "hybrid seed." Appellees also sell their own hybrid seed to farmers and other retailers for planting. Finally, appellees license the corn-seed "traits" that they have developed (the attributes of a seed that make it resistant to parasites or herbicides or both) to other seed companies who in turn incorporate those traits into their hybrid seeds.

Appellants allege that appellees have unlawfully required licensees of their corn-seed traits to agree to certain exclusive-dealing obligations that penalize them for licensing traits from any of appellees' competitors. They further allege that appellees have entered into unlawful "bundling" agreements that require corn-seed companies to sell a minimum percentage of Monsanto-traited corn seeds for *any particular* line of corn seeds or else face monetary penalties with respect to *every* line of Monsanto-traited corn seed that they sell. These monopolistic tactics, appellants allege, have allowed appellees to unlawfully (1) exclude competitors from entering any of the various trait markets, (2) restrict competitors' ability to license traits from companies other than Monsanto or its affiliates, and (3) limit competitors' ability to distribute their own seeds.

Appellants seek to certify three classes of individuals who have directly purchased corn seed from appellees: one national class of such purchasers, one class of purchasers who are citizens of Iowa, and one class of purchasers who are citizens of Minnesota.

Each of these three classes is further broken down into four sub-classes based on the particular type of corn seed they purchased from appellees.[1]

Appellants filed their complaint on July 26, 2005 and, after a number of iterations, an amended complaint naming class representatives for all three classes was filed on September 20, 2006. Meanwhile, class-certification discovery had begun and concluded on March 15, 2006. The District Court denied appellants' motion for class certification in a memorandum opinion and order dated November 13, 2006, and we granted appellants' petition for leave to appeal under Federal Rule of Civil Procedure 23(f) on January 25, 2007.

## II.

We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). We review a district court's grant or denial of class certification under an abuse-of-discretion standard. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 149 (3d Cir. 2002). A district court abuses its discretion where its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165-66 (3d Cir. 2001) (internal quotation marks and citation omitted). While a district court must not decide a class-certification motion based on its assessment of the case's merits, we recognize that "[i]n reviewing a motion for class certification, a preliminary inquiry into

---

[1] Each class is broken down into purchasers of seed (1) tolerant of glyphosate herbicide, (2) resistant to the European Corn Borer pest, (3) resistant to the rootworm pest, and (4) containing two or more of the traits identified in the first three sub-classes.

4

the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." *Id.* at 168.

### III.

The District Court denied class certification on the ground that appellants failed to demonstrate adequately that common questions predominated over individual questions as to injury (or, as it is interchangeably referred to, "impact") to each class member. The basis for its decision was that appellants failed to carry their burden of demonstrating that such class-wide impact can be established through the use of common proof.

Once an antitrust plaintiff proves a violation of the antitrust laws, it must still prove a "fact of damage" suffered as a result of the defendant's antitrust-violative conduct. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977). We held in *Bogosian* that "when an antitrust violation impacts upon a class of persons who do have standing, there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual." *Id.* The use of common proof would be appropriate where, by reason of the anticompetitive conduct, the class was forced to pay supracompetitive prices:

> If, in this case, a nationwide conspiracy is proven, the result of which was to increase prices to a class of plaintiffs beyond the prices which would obtain in a competitive regime, an individual plaintiff could prove fact of damage simply by proving that the free market prices would be lower than the prices paid and that he made some purchases at the higher price. If the price structure in the industry is such that nationwide the conspiratorially affected prices at the wholesale level fluctuated within a range which, though different in different regions, was higher in all regions than the range which would have existed in all regions under competitive conditions, it would be clear that all members of the class suffered some damage,

5

> notwithstanding that there would be variations among all dealers as to the extent of their damage.

*Id.* This presumption of class-wide injury through the use of common proof is now referred to as the "*Bogosian* short cut." *Linerboard*, 305 F.3d at 151.

Over twenty-five years later, in *Linerboard*, we affirmed a grant of class certification based on our determination that the district court had used a "belt and suspenders rationale to support its conclusion that the putative class had met its burden of showing impact. In addition to relying on the *Bogosian* short cut, it credited the testimony of plaintiffs' experts, opinions that were supported by charts, studies and articles from leading trade publications." *Id.* at 153. In affirming the district court's decision, we found it important that plaintiffs' expert witnesses had utilized supporting data to conduct analyses that authenticated their professional opinions. For that reason, we held "that this was not a case where plaintiffs relied solely on presumed impact and damages." *Id.* at 155. Thus, post-*Linerboard* it is important that a putative class's presumption of impact under *Bogosian* be supported by some additional amount of empirical evidence.

The District Court so interpreted *Bogosian* and its progeny: "The *Bogosian* presumption of impact does not support class certification where there is no additional evidence of class-wide impact." *Am. Seed Co. v. Monsanto Co.*, 238 F.R.D. 394, 398 (D. Del. 2006). The Court described the proof of common injury offered by plaintiffs/appellants as follows:

> As proof of common injury, plaintiffs' expert, Dr. Kamien, opines that it is economically reasonable to conclude that, if defendants' conduct is

6

>   proven to have restrained competition, this had the effect of raising or
>   maintaining prices for all purchasers in the GM corn seed market above
>   what they would have been.

*Id.* at 397. The Court held that this alone was inadequate, because under our caselaw a putative class must, in accordance with *Linerboard*, support a presumption of impact with an analysis of the relevant data. It detailed this inadequacy as follows:

>   Plaintiffs have not provided any actual data for the court's review as to the
>   'factual setting of the case,' against which to evaluate these formulas. Dr.
>   Kamien cites absolutely no factual authority in his declaration in support of
>   his theory of common injury and damages. . . There is no indication that
>   Dr. Kamien conducted at least a preliminary study of the market . . . Dr.
>   Kamien's submissions are not supported by charts, studies, and articles
>   from leading trade publications . . . .
>
>   Dr. Kamien did not independently analyze the documents produced
>   during class discovery. Dr. Kamien did not study the pricing and/or pricing
>   variability for any of the varieties of GM cord seeds.

*Id.* at 400-01.

The District Court did not abuse its discretion in concluding that appellants had failed to adduce evidence demonstrating that class-wide impact may be proven by evidence common to all class members. As the Court noted, Dr. Kamien conceded multiple times in his deposition that his theory was based solely on his assumption that all of the allegations in the complaint were true. He admitted that he had not substantiated his assumed theory by, for example, performing any analysis of the data made available to appellants in discovery.

On appeal, appellants argue that Dr. Kamien performed sufficient analyses, but his declarations and his deposition do not bear this out. The transcript of the certification hearing indicates that appellants believed, as a matter of law, that they could establish that

7

the question of class-wide injury predominated over any individual questions of injury by presuming impact based on the allegations in the complaint that appellees violated the antitrust laws, and that, therefore, there was a class-wide injury. The District Court, however, made clear that it believed our caselaw required more. But appellants stuck to their theory that a presumption of impact alone was adequate; indeed, when asked specifically to address what the factual basis of its arguments was, appellants' counsel stated that that issue was a "red herring."

In sum, the District Court did not abuse its discretion in denying class certification based on its determination that common questions concerning injury did not predominate. Because its conclusion did not rest upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact, we will affirm the order of the District Court.[2]

---

[2] Because this alone warranted denial of certification, we need not address the District Court's other reasons in support of its holding.